Gregory B. Thomas (SBN 239870)
E-mail: gthomas@bwslaw.com
Temitayo O. Peters (SBN 309913)
E-mail: tpeters@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1901 Harrison Street, Suite 900
Oakland, CA 94612-3501
Tel: 510.273-8780 Fax: 510.839.9104

HANSON BRIDGETT LLP
PAUL B. MELLO - 179755
SAMANTHA D. WOLFF - 240280
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
pmello@hansonbridgett.com
swolff@hansonbridgett.com

Attorneys for Defendants
COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff s Office; CAROL BURTON in her official capacity as Interim Director of the Alameda County Behavioral Health Care Services Agency;

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; CAROL BURTON in her official capacity as Interim Director of the Alameda County Behavioral Health Care Services Agency; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:18-cv-07677-NC<br><br>**DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT**<br><br>Judge: Honorable Nathanael Cousins |

Defendants COUNTY OF ALAMEDA, GREGORY J. AHERN, and CAROL BURTON (collectively, "Defendants") answer Plaintiff's Civil Complaint for Declaratory and Injunctive Relief ("Complaint") and allege as follows:

**NATURE OF ACTION**

1. In response to Paragraph 1, Defendants admit the allegations and affirmatively assert that the number of in-custody deaths (including suicides) at Santa Rita Jail ("SRJ") has been steadily trending downward for the past five years.

2. In response to Paragraph 2, Defendants deny that the Alameda County Sheriff's Office ("ACSO") uses the term "mentally disordered" to classify inmates.[1] Defendants admit that inmates with mental health issues are housed in SRJ Behavioral Health Unit[2] or in Administrative Separation[3] with other special management inmates, but deny that these are the only locations. Defendants admit that some mental health appointments occur at open tables within a housing unit's dining room or at an inmate's cell door. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 2 of the Complaint.

3. In response to Paragraph 3, Defendants admit that Administrative Separation Units are generally more restrictive than the Behavioral Health Unit. Although very rare, Defendants admit that inmates who commit serious rule violations may be placed in Disciplinary Isolation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 3 of the Complaint.

///

[1] The vast majority of people who held in the Alameda County jails are pre-trial detainees. As a result, Defendants refer to everyone housed in the Alameda County jails, pre-trial detainees and sentenced prisoners alike, as "inmates" and will use this term throughout the remainder of their answer.

[2] Sometimes also referred to as "Housing Unit 9."

[3] Plaintiffs use the term "Administrative Segregation" throughout their Complaint. Defendants COUNTY and AHERN use the term "Administrative Separation" (also sometimes referred to as "Administrative Isolation") to refer to the classification of inmates who are housed separately from general population and will use this term throughout the remainder of their answer.

4. In response to Paragraph 4, Defendants admit that acutely suicidal inmates in need of immediate intervention may be housed in safety cells and given modesty garments and modesty blankets. Defendants also admit that safety cells contain no furniture, a small drain in the center of the cell, and that toilet paper is available upon request. Defendants further admit that inmates confined to safety cells sleep on the floor of the cell, eat their meals either on the floor of the cell or standing up, are not allowed to keep any personal possessions, including reading material, in their cells, and are not allowed any out-of-cell time due to their acute suicidal nature. Lastly, Defendants admit that safety cell placement should not exceed 72 hours per Alameda County Sheriff's Office ("ACSO") policy, but due to varying circumstances some inmates may have been confined to safety cells for longer than 72 hours. Defendants lack knowledge or information sufficient to form a belief about the truth of whether inmates "have stopped reporting suicidal feelings to staff in order to avoid begin thrown into safety cells," and on that basis deny this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 4 of the Complaint.

5. In response to Paragraph 5, Defendants admit that this is a putative civil rights class action brought against the named defendants seeking to remedy allegedly unconstitutional conditions. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 5 of the Complaint.

6. In response to Paragraph 6, Defendants admit that Plaintiffs are seeking relief as indicated. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 6 of the Complaint.

**JURISDICTION**

7. In response to Paragraph 7, Defendants admit that this Court has jurisdiction over Plaintiffs' federal and state law claims and that Plaintiffs are seeking declaratory and injunctive relief.

///

///

///

## VENUE

8. In response to Paragraph 8, Defendants admit that venue is proper.

## PARTIES

### I. PLAINTIFFS

9. In response to Paragraph 9, Defendants admit that Plaintiff ASHOK BABU was an inmate at Santa Rita Jail from approximately August 7, 2017 to December 31, 2018, and that Intensive Observation Logs ("IOL") are logs used to document direct visual observation of an inmate per ACSO policy 8.12. Defendants further admit that inmates on IOLs are not allowed to have socks or underwear, and that Plaintiff ASHOK BABU was previously housed in Housing Unit 9. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 9 of the Complaint.

10. In response to Paragraph 10, Defendants admit the factual allegations except the date of transfer, which was September 28, 2017. Except as admitted and affirmatively alleged herein, Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

11. In response to Paragraph 11, Defendants admit that Plaintiff BABU was incarcerated in SRJ's OPHU for several days after he was released from John George on October 13, 2017, that he was placed on an IOL upon his return to SRJ, and that his mental health visits were conducted through his open or closed cell door in the OPHU. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 11 of the Complaint.

12. In response to Paragraph 12, Defendants admit that Plaintiff BABU was transferred to SRJ's Behavioral Health Unit after he was released from the OPHU on or about October 19, 2017. Defendants also admit that Plaintiff BABU was discontinued from an IOL on January 20, 2018, but placed back on an IOL on or about February 19, 2018. Defendants deny that Plaintiff BABU is currently on an IOL since he is no longer incarcerated at SRJ, but admit that he was on an IOL from February 19, 2018 until he was released from ACSO custody on December 31, 2018. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

///

13. In response to paragraph 13, Defendants lack sufficient knowledge or information to form a belief as to truth of whether Plaintiff BABU was able to go outside during his detainment at SRJ, and on that basis deny this allegation and affirmatively allege that inmates in his pod were offered yard time during this timeframe. Defendants admit that Plaintiff BABU spent some of his time sleeping while he was incarcerated at SRJ, that he experienced shaking, dizziness and began using a cane while he was incarcerated, and that he was on an IOL. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff BABU spent time crying while he was incarcerated at SRJ, whether he hears voices and whether he continues to be suicidal, depressed and suffers from anxiety attacks since he is no longer in ACSO custody, and that basis deny this allegation. Defendants further admit that Plaintiff BABU was diagnosed by Behavioral Health Care Services ("BHCS") staff as having other specified schizophrenia spectrum and other psychotic disorder, which includes a differential diagnosis of Depressive Disorder with Psychotic Features and Schizophrenia Unspecified, while he was incarcerated at SRJ. Defendants are not required to admit or deny whether Plaintiff BABU is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), because this is a legal conclusion and not a factual allegation. However, to the extent the Court construes these allegations as a factual allegation, Defendants lack knowledge or information sufficient to form a belief about the truth of whether Plaintiff BABU is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and on that basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint.

14. In response to Paragraph 14, Defendants deny that Plaintiff ROBERT BELL ("BELL") is a California detainee who is currently being held at SRJ. Defendants admit that Plaintiff BELL was detained at the Glenn Dyer Detention Facility ("GDDF") on January 9, 2018 and that after he made suicidal statements he was transferred to SRJ, placed on an IOL, and housed in the Behavioral Health Unit. Defendants also admit that Plaintiff BELL was on an IOL from January 9, 2018 until on or about June 2, 2018. Defendants admit that Plaintiff BELL was

not allowed to wear socks or underwear while he was on an IOL, but deny that Plaintiff BELL was always confined to his cell for at least 23 to 24 hours per day and rarely received clean clothing during his incarceration at SRJ. Defendants lack sufficient knowledge or information to form a belief about the truth of the remaining allegations contained in Paragraph 14 of the Complaint, and on that basis deny each and every remaining allegation.

15. In response to paragraph 15, Defendants lack sufficient knowledge or information to form a belief about the truth of whether Plaintiff BELL did not tell mental health staff or deputies that he was feeling suicidal from time-to-time while he was incarcerated at SRJ "because he fear[ed] being placed back on IOL," and on that basis deny this allegation. Defendants admit that Plaintiff BELL told BHCS clinicians while he was incarcerated at SRJ that he was hearing voices. Defendants also admit that Plaintiff BELL took psychotropic medications during his incarceration at SRJ to address his various mental health symptoms. Defendants admit that Plaintiff BELL was diagnosed by BHCS staff as having Major Depressive Disorder, Post-Traumatic Stress Disorder, Panic Disorder, and Cannabis Use Disorder while he was incarcerated at SRJ. Lastly, Defendants are not required to admit or deny whether Plaintiff BELL is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m) because this is a legal conclusion and not a factual allegation. However, to the extent the Court construes these allegations as a factual allegation, Defendants lack knowledge or information sufficient to form a belief about the truth of whether Plaintiff BELL is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and on that basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 15 of the Complaint.

16. In response to Paragraph 16, Defendants deny that Plaintiff IBRAHIM KEEGAN-HORNSBY ("KEEGAN-HORNSBY") is a pre-trial detainee. Except as denied herein, Defendants admit the remaining allegations contained in Paragraph 16 of the Complaint.

17. In response to Paragraph 17, Defendants admit that when Plaintiff KEEGAN-HORNSBY returned to SRJ on December 28, 2017 from John George, a BHCS clinician

recommended that Plaintiff KEEGAN-HORNSBY be returned to John George for further treatment. Defendants also admit that the Sergeant on duty in SRJ's Intake, Transfer and Release Unit confirmed that Plaintiff KEEGAN-HORNSBY had been cleared for incarceration by John George, admitted Plaintiff KEEGAN-HORNSBY into ACSO custody, and placed him into a safety cell in SRJ's OPHU. Defendants admit that Plaintiff KEEGAN-HORNSBY did not have access to programming, day room, or outside recreation while he was placed in an OPHU safety cell for less than 24 hours between December 28, 2017 and December 29, 2017. Defendants further admit that while Plaintiff KEEGAN-HORNSBY was detained in the safety cell he did not have access to his jail-issued clothing, but was provided a modesty blanket and a modesty garment. Defendants admit that Plaintiff KEEGAN-HORNSBY was subsequently transferred to the Behavioral Health Unit and kept on an IOL for approximately five months due to his reporting of ongoing suicidal ideation during that time period. Defendants admit that Plaintiff KEEGAN-HORNSBY was unable to wear underwear or socks while he was on an IOL during his detainment at SRJ, but deny that he had no opportunities to take class or go outside. Except as admitted herein, Defendants lack sufficient knowledge or information to form a belief about the truth of the remaining allegations contained in Paragraph 17 of the Complaint, and on that basis deny each and every remaining allegation contained in this paragraph.

18. In response to Paragraph 18, Defendants admit that Plaintiff KEEGAN-HORNSBY has been diagnosed by BHCS' staff as having Adjustment Disorder with Depressed and Anxious Mood. Defendants deny that BHCS' staff "have refused" to prescribe Plaintiff KEEGAN-HORNSBY the same psychotropic medications he received at John George, but admit that Plaintiff KEEGAN-HORNSBY reported experiencing side-effects he believed to be related to the psychotropic medications he received at SRJ. Lastly, Defendants are not required to admit or deny whether Plaintiff KEEGAN-HORNSBY is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m) because this is a legal conclusion and not a factual allegation. However, to the extent the Court construes these allegations as a factual allegation, Defendants lack sufficient knowledge or information to form a belief about the truth of whether Plaintiff KEEGAN-HORNSBY is a

person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and on that basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19. In response to Paragraph 19, Defendants admit that Plaintiff DEMAREA JOHNSON ("JOHNSON") is a California pretrial detainee who has been detained at SRJ on several occasions since 2008. Defendants admit that Plaintiff JOHNSON was most recently booked into SRJ on June 27, 2018 and that he has been housed in Housing Unit 1 since that date. Defendants also admit that Plaintiff JOHNSON has been housed in several other housing units, including the Behavioral Healthcare Unit, during his previous detainments at SRJ. Defendants further admit that Plaintiff JOHNSON has been diagnosed by BHCS as having schizophrenia and substance abuse disorders (previously detailed as Amphetamine and Cocaine Use Disorders), and that his psychiatric history includes self-reported suicide attempts and command auditory hallucinations. Defendants are not required to admit or deny whether Plaintiff JOHNSON is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m) because this is a legal conclusion and not a factual allegation. However, to the extent the Court construes these allegations as a factual allegation, Defendants lack sufficient knowledge or information to form a belief about the truth of whether Plaintiff JOHNSON is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and on that basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 19 of the Complaint.

20. In response to Paragraph 20, Defendants admit that Plaintiff BRANDON JONES ("JONES") is a federal pretrial detainee currently being held at SRJ, that Plaintiff JONES was previously detained at SRJ on various occasions between 2006 and 2018, and that Plaintiff JONES's most recent detainment began on July 5, 2018. Defendants also admit that Plaintiff JONES has been housed in several other housing units, including the Behavioral Health Unit, during his previous detainments at SRJ. Defendants admit that Plaintiff JONES was temporarily

placed in an isolation cell on or about December 7, 2016. Defendants admit that that BHCS staff interviewed Plaintiff JONES in the isolation cell and that Plaintiff JONES was transferred to John George on December 8, 2016. Defendants admit that Plaintiff JONES returned to SRJ on December 8, 2016 and was placed into an OPHU cell on an IOL. Defendants admit that Plaintiff JONES was cleared to return to the Behavioral Health Unit on December 9, 2016 and that he was returned to the Behavioral Health Unit on December 11, 2016. Defendants are informed and believe that Plaintiff JONES's BHCS staff visits at SRJ during this time period occurred at or around his cell door. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 20 of the Complaint.

21. In response to Paragraph 21, Defendants admit that Plaintiff JONES's most recent and current detainment at SRJ began on July 5, 2018 and that he was not seen by BHCS staff until September 4, 2018. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether ACSO staff transferred Plaintiff JONES to the Behavioral Health Unit on June 5, 2018 without notifying BHCS staff, and on that basis deny this allegation. Defendants admit that the BHCS staff notes from Plaintiff JONES's September 4, 2018 appointment state that he was "not seen by AFBH staff upon arrival at the jail, though classification officers noted a hx of 'mental classification,'" and that the notes also state that Plaintiff JONES was transferred to the Behavioral Health Unit without notification. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22. In response to Paragraph 22, Defendants admit that Plaintiff JONES has been diagnosed by BHCS clinicians as having Unspecified Bipolar Spectrum Disorder and Cannabis, Nicotine and Alcohol Use Disorders, by history. Defendants are not required to admit or deny whether Plaintiff JONES is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m) because this is a legal conclusion and not a factual allegation. However, to the extent the Court construes these allegations as a factual allegation, Defendants lack knowledge or information sufficient to form a belief about the truth of whether Plaintiff JONES is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and

on that basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 22 of the Complaint.

23. In response to Paragraph 23, Defendants admit that Plaintiff ROBERTO SERRANO is a federal pretrial detainee who has been primarily housed in Administrative Separation at GDDF since he arrived at the facility on or about April 22, 2017. Defendants admit that Plaintiff SERRANO has sometimes been confined to his cell for 23 to 24 hours a day, but deny that he has sometimes gone months without being able to go outside for exercise and recreation. Defendants also deny that the ACSO has not given Plaintiff SERRANO meaningful opportunities to challenge his classification in Administrative Separation. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the Complaint, and on that basis deny each and every remaining allegation.

24. In response to Paragraph 24, Defendants admit that Plaintiff NAVARRO was detained at SRJ and that she was held in a safety cell on September 9, 2014. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff NAVARRO was confined to two separate safety cells in a span of 24 hours on September 9, 2014, and on that basis deny this allegation. Defendants admit that Plaintiff NAVARRO has been given a behavioral health classification at various times during her current incarceration at SRJ, but lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff NAVARRO has been told that she cannot be housed in any units besides "the women's Behavioral Health unit" and the "woman's [sic] Administrative Segregation unit," and on that basis deny this allegation. Defendants admit that Plaintiff NAVARRO was transferred to Napa Psychiatric State Hospital for competency restoration and that she returned to SRJ on February 13, 2018. Defendants admit that Plaintiff NAVARRO was previously housed in SRJ's Housing Unit 24 and was sometimes confined to her cell for 23-24 hours per day. Defendants also admit that Plaintiff NAVARRO's housing pod held many inmates with diagnosed mental illnesses, but lack sufficient knowledge or information to form a belief as to the truth of whether the behavior of other inmates causes Plaintiff NAVARRO "to hear a constant buzzing in her head," and on that

basis denies this allegation. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff NAVARRO was prescribed medications to treat her PTSD in the community, and on that basis deny this allegation. Defendants admit that BHCS staff diagnosed Plaintiff NAVARRO as having Bipolar Disorder, Borderline Personality Disorder, PTSD, and Alcohol, Cannabis and Amphetamine Use Disorders. Defendants are not required to admit or deny whether Plaintiff NAVARRO is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m) because this is a legal conclusion and not a factual allegation. However, to the extent the Court construes these allegations as a factual allegation, Defendants lack sufficient knowledge or information to form a belief about the truth of whether Plaintiff NAVARRO is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and on that basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25. In response to Paragraph 25, Defendants admit that Plaintiff ALEXANDER WASHINGTON is a California pretrial detainee and currently detained at SRJ. Defendants admit that Plaintiff WASHINGTON was identified as suicidal upon intake, initially placed on an IOL, and assigned to the Behavioral Health Unit during his previous detainment, which began in March 2017. Defendants further admit that Plaintiff Washington was temporarily placed into an isolation cell in Housing Unit 2 on March 13, 2017, and that once he was placed in the cell he began flooding the cell, banging his head and yelling that he wanted to die. Defendants admit that later that same day, Plaintiff WASHINGTON was moved to a safety cell in the same unit for one day, that the safety cell contained no furniture and had a drain in the floor, that Plaintiff WASHINGTON was not allowed any of his possessions or clothes while he was in this cell, that he was provided with a modesty garment and modesty blanket, and that toilet paper was available upon request. Defendants affirmatively allege that the light in the safety cell in which Plaintiff WASHINGTON was placed on March 13, 2017 stopped working shortly before Plaintiff WASHINGTON was moved from the cell. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 25 of the Complaint.

26. In response to Paragraph 26, Defendants admit that Plaintiff WASHINGTON has been housed in the Behavioral Health Unit since August 17, 2018, but deny that Plaintiff WASHINGTON was on an IOL for one month after being placed on an IOL on August 17, 2018. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff WASHINGTON "told mental health staff that he was no longer suicidal so that he could be discharged from IOL" and whether Plaintiff WASHINGTON "has tried discussing traumatic events in his life with therapists at Santa Rita," and on that basis deny this allegation. Defendants admit that BHCS staff have diagnosed Plaintiff WASHINGTON as having Unspecified Depressive Disorder, PTSD, Cocaine Use Disorder, Cannabis Use Disorder, and Alcohol Use Disorder. Defendants are not required to admit or deny whether Plaintiff WASHINGTON is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m) because this is a legal conclusion and not a factual allegation. However, to the extent the Court construes these allegations as a factual allegation, Defendants lack sufficient knowledge or information to form a belief about the truth of whether Plaintiff WASHINGTON is a person with a disability as defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and on that basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 26 of the Complaint.

**II. DEFENDANTS**

27. In response to paragraph 27, Defendants admit that Defendant COUNTY OF ALAMEDA ("COUNTY") is a public entity, duly organized and existing under the laws of the State of California, that the COUNTY employs 50 or more persons, that the COUNTY manages and operates SRJ and GDDF (collectively, the "Jails"), that the COUNTY receives state and federal funds for use in the operation of the Jails and that the ACSO and BHCS are COUNTY entities. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 27 of the Complaint.

28. In response to paragraph 28, Defendants admit the allegations.

29. In response to paragraph 29, Defendants admit the allegations.

30. In response to paragraph 30, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis deny each and every one of these allegations.

31. In response to paragraph 31, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis deny each and every one of these allegations.

## FACTUAL ALLEGATIONS

### I. DEFENDANTS' JAIL FACILITIES

32. In response to paragraph 32, Defendants COUNTY and AHERN admit that they operate and control two Jail facilities in Alameda County, GDDF in Oakland, California and the SRJ in Dublin, California. Defendant BURTON denies that she operates and controls SRJ and GDDF.

33. In response to paragraph 33, Defendants admit the allegations.

34. In response to paragraph 34, Defendants admit the allegations.

### II. DEFENDANTS ROUTINELY OVERUSE AND IMPROPERLY USE ISOLATION AND SUBJECT PRISONERS IN ISOLATION, INCLUDING PRISONERS WITH DISABILITIES, TO INHUMANE CONDITIONS.

35. In response to paragraph 35, Defendants deny that they are deliberately indifferent to the substantial and obvious risk of harm caused by their policies and practices of locking inmates in "isolation." Defendants admit that "[o]ver the last several decades, mental health and correctional experts have documented the harmful effects of prolonged isolation." Defendants lack sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations contained in Paragraph 35 of the Complaint, and on that basis deny each and every remaining allegation.

36. In response to paragraph 36, Defendants deny the allegations.

37. In response to Paragraph 37, Defendants deny that the ACSO defines Class II Special Management inmates on IOL status and deny that the term "isolation" accurately refers to

all of the housing terms used herein.[4] Except as specifically denied herein, Defendants admit the remaining allegations contained in Paragraph 37 of the Complaint.

38. In response to Paragraph 38, Defendants admit that approximately 10% of all inmates at SRJ and approximately 16% of all inmates at GDDF are housed in Administrative Separation. Defendants also admit that some Administrative Separation inmates are housed alone in a cell and only permitted to go outside of their cell alone. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 38 of the Complaint.

39. In response to paragraph 39, Defendants deny that ACSO staff use "isolation" to punish behaviors that are related to an individual's psychiatric disabilities. Defendants further deny that "serious rule violations" per ACSO policy include the examples listed in Paragraph 39 of the Complaint and deny that only the ACSO Commanding Officer's authorization is needed to keep inmates in Disciplinary Isolation for more than 30 days for a single rule violation. Except as denied herein, Defendants admit the remaining allegations contained in Paragraph 39 of the Complaint.

40. In response to paragraph 40, Defendants admit that they control housing assignments in various housing units throughout the Jails, that Housing Units 1 and 2 are Administrative Separation housing units for male inmates, that Housing Unit 8's C-pod is currently used as an Administrative Separation housing unit for male inmates, that portions of Housing Unit 24 are used as Administrative Separation housing units for female inmates and that that Housing Unit 9 is the men's Behavioral Health Unit. Defendants admit that inmates housed in Administrative Separation eat in their cells, are permitted out-of-cell time in accordance with Title 15, which they may use to shower, make phone calls or order commissary. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 40 of the Complaint.

---

[4] Defendants deny that the term "isolation" as defined by Plaintiffs in paragraph 37 of their complaint accurately describes the types of housing classifications used by Alameda County Sheriff's Office. Plaintiffs also use the word "isolation" in its ordinary sense at various points in the complaint, which made it difficult for Defendants to adopt Plaintiffs' definition of "isolation" to respond to the complaint. As such, as much as possible, Defendants placed the word isolation in quotes when adopting Plaintiffs' definition for purposes of responding to the complaint only.

41. In response to Paragraph 41, Defendants admit that during pod time multiple inmates are permitted to access services such as phone, showers, and hygiene tools, that sometimes pill call occurs during pod time, and that some inmates in the Behavioral Health Unit are double-celled. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 41 of the Complaint.

42. In response to Paragraph 42, Defendants admit that inmates in Administrative Separation are restrained when they are removed from their cells for movement. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 42 of the Complaint.

43. In response to paragraph 43, Defendants deny that disability-related behaviors may be used to justify extending "isolation." Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 43, and on that basis deny each and every remaining allegation.

44. In response to paragraph 44, Defendants admit that medically-cleared inmates housed in OPHU are "supposed to be escorted by deputies to exercise facilities on other units." Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff BABU left his cell when he was housed in OPHU for seven days during his detainment at SRJ, and on that basis deny this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 44 of the Complaint.

45. In response to Paragraph 45, Defendants admit that some isolation cells at SRJ are located outside of the main housing units in the hallway and that inmates in these cells are unable to interact with other inmates while in their cell. Except as stated herein, Defendants deny the remainder of the allegations contained in Paragraph 45 of the Complaint.

46. In response to Paragraph 46, Defendants admit that isolation cells have a window. Except as admitted herein, Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 46 of the Complaint, and on that basis deny each and every remaining allegation.

47. In response to Paragraph 47, Defendants deny the allegations.

48. In response to Paragraph 48, Defendants admit that Plaintiff SERRANO is currently being housed in a single-person cell at GDDF, that he is housed alone in his cell, that he is only allowed to participate in pod time alone, and that it is possible that some inmates may be housed in Administrative Separation for several years at GDDF while awaiting the resolution of their case. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff SERRANO has been and continues to experience "paranoia, fear and distrust of others, loss of social skills, chronic insomnia, anxiety, agitation, and depression as a result of long-term extreme isolation." Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 48 of the Complaint.

49. In response to Paragraph 49, Defendants deny that Plaintiff SERRANO has had no meaningful opportunity to challenge his placement in Administrative Separation, and that he has not been disciplined for any serious rules infractions. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether inmates facing the same or similar charges as Plaintiff SERRANO are housed in the general population at the Jails, and on that basis deny this allegation. Except as denied herein, Defendants admit the remaining allegations contained in Paragraph 49 of the Complaint.

50. In response to Paragraph 50, Defendants lack sufficient knowledge or information to form a belief as to the truth as to whether Plaintiff JOHNSON "was told to write to classification to find out why he is in isolation" and whether inmates facing the same or similar charges as Plaintiff JOHNSON are housed in the general population at the Jails, and on that basis denies these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 50 of the Complaint.

51. In response to Paragraph 51, Defendants deny the allegations.

52. In response to Paragraph 52, Defendants admit that per ACSO policy "mentally disordered" inmates and inmates on IOL for suicidal tendencies, bizarre behavior, psychotropic medication, or medical observation may be housed in special management units (which includes the Behavioral Health Unit), maximum security units, or in the OPHU if needed. Defendants also admit that these housing units, with the exception of the Behavioral Health Unit, are more

restrictive than some of the other housing units and that inmates housed in these units receive less out-of-cell time per week than inmates housed in other housing units. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 52 of the Complaint.

53. In response to Paragraph 53, Defendants deny the allegations.

54. In response to Paragraph 54, Defendants deny the allegations.

55. In response to Paragraph 55, Defendants admit that BHCS clinicians at SRJ have noted that Plaintiff JOHNSON once had "a cardboard cell phone that he had drawn on, in which he talks with his grandpa, uncle and 6 kids," that he has yelled "time travel. Fiji man" out of context in the past, that he is unpredictable, and that he has a "fixed delusion about McDonald's." Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 55 of the Complaint.

56. In response to Paragraph 56, Defendants admit that Plaintiff JOHNSON currently spends much of his time in his cell and that he is permitted solo out-of-cell time in accordance with Title 15. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff JOHNSON spends his time watching TV in his unit's dayroom, and on that basis denies this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 56 of the Complaint.

57. In response to Paragraph 57, Defendants admit that per ACSO policy inmates housed in Administrative Separation must be let out of their cells for at least one hour per day, five days per week. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 57 of the Complaint.

58. In response to Paragraph 58, Defendants admit that the sections of the California Code of Regulations cited therein are accurate and that Title 15 of the California Code of Regulations applies to the Jails, but deny the remainder of the allegations.

59. In response to Paragraph 59, Defendants deny the allegations.

60. In response to Paragraph 60, Defendants admit that inmates in Administrative Separation units at SRJ receive fewer outdoor exercise opportunities than inmates housed in the general population. Except as admitted herein, Defendants deny the remaining allegations

contained in Paragraph 60 of the Complaint.

61. In response to Paragraph 61, Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff KEEGAN-HORNSBY has requested yard time from deputies at various times and whether his requests have been denied, and on that basis denies this allegation. Defendants deny the remaining allegations contained in Paragraph 61 of the Complaint.

62. In response to Paragraph 62, Defendants admit that inmates who are classified as Administrative Separation inmates are offered fewer programs than inmates in general population as a result of their classification. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether certain offered classes can result in sentence reductions and better enable inmates to reintegrate into the community, and on that basis deny this allegation. Defendants also lack sufficient knowledge or information to form a belief as to the truth of whether inmates housed in the OPHU participate in programming, and on that basis deny this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 62 of the Complaint.

63. In response to Paragraph 63, Defendants deny that inmates housed in GDDF's Administrative Separation units only have access to the GED program and One-on-One Faith-Based Counseling, and further deny that these inmates do not have access to recreational games and other programming. Except as denied herein, Defendants admit the remaining allegations contained in Paragraph 63 of the Complaint.

64. In response to Paragraph 64, Defendants admit that the ACSO offers approximately twenty-three classes to inmates, but deny that it offers Barbering and Cosmetology.

65. In response to Paragraph 65, Defendants deny the allegations.

66. In response to Paragraph 66, Defendants deny that Plaintiffs cannot participate in the ACSO's educational programs, group, and/or religious services because of their psychiatric disabilities. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 66 of the Complaint, and on that basis deny

these remaining allegations.

67. In response to Paragraph 67, Defendants admit that there have been inmates who have smeared themselves and the walls of their cell with excrement, but lack sufficient knowledge or information to form a belief as to whether these inmates have "inadequately treated illnesses," and on that basis deny this allegation. Except as admitted and denied herein, Defendants deny the remaining allegations contained in Paragraph 67 of the Complaint.

68. In response to Paragraph 68, Defendants admit that some inmates in custody can present a wide variety of mental health issues. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 68, and on that basis deny these remaining allegations.

69. In response to Paragraph 69, Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations, and on this basis deny them.

70. In response to Paragraph 70, Defendants deny the allegations.

71. In response to Paragraph 71, Defendants admit that former SRJ inmate Jesus Dickey was "initially housed in Housing Unit 8, pod E, cell #6 as a 'mental PC,'" but deny that he died in an "isolation cell" and deny that Housing Unit 8, pod F is an Administrative Separation pod. Except as denied herein, Defendants admit the remaining allegations contained in Paragraph 71 of the Complaint.

72. In response to Paragraph 72, Defendants deny the allegations.

73. In response to Paragraph 73, Defendants admit that they have a policy requiring visual observation safety checks, including 30-minute safety checks, but deny the remaining allegations.

74. In response to Paragraph 74, Defendants admit that cells at GDDF do not have emergency call buttons, but deny the remaining allegations.

75. In response to Paragraph 75, Defendants admit that former inmate Logan Masterson was classified as Administrative Separation and housed in Housing Unit 2 when he committed suicide on April 7, 2018. Defendants further admit that he had been in a safety cell two days prior, that incident reports relating to Mr. Masterson's suicide state that general

observation checks were not performed on Mr. Masterson for over an hour before he was found in his cell, and that incident reports indicate that the housing unit deputy's view of Mr. Masterson was "slightly obstructed," the deputy "could not tell what Masterson was doing," and the deputy "did not spend more than a few seconds looking in the direction of Masterson's cell." Defendants further admit that when Mr. Masterson was found, his cell had "fecal matter on the walls, floor, and window of the cell." Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 75 of the Complaint.

76. In response to Paragraph 76, Defendants deny that former inmate Edwin Villalta was being held in an isolation cell at the time of his November 28, 2017 suicide. Except as denied herein, Defendants admit the remaining allegations.

77. In response to Paragraph 77, Defendants deny the allegations.

78. In response to Paragraph 78, Defendants deny the allegations.

**III. DEFENDANTS FAIL TO PROVIDE MINIMALLY ADEQUATE MENTAL HEALTH CARE TO PRISONERS AND DISCRIMINATE AGAINST PRISONERS WITH PSYCHIATRIC DISABILITIES**

79. In response to Paragraph 79, Defendants deny the allegations.

80. In response to Paragraph 80, Defendants admit the allegations.

81. In response to Paragraph 81, Defendants admit that BHCS exclusively provides mental health services inside the Jails. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 81 of the Complaint.

82. In response to Paragraph 82, Defendants deny the allegations.

83. In response to Paragraph 83, Defendants deny the allegations.

84. In response to Paragraph 84, Defendants admit that when an inmate is newly booked into SRJ, the first step of the intake process involves ACSO staff, with the assistance of medical and/or BHCS staff if needed, interviewing the inmate and completing a general intake form entitled, "Intake/Receiving Screening Form." Defendants further admit that after the initial screening, newly booked inmates are interviewed by a member of the medical staff. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether any of the

Plaintiffs were told anything about mental health treatment available at the Jails during the intake process, whether Plaintiff BELL was told only that he would be placed on an IOL without further explanation, or whether Plaintiff KEEGAN-HORNSBY was placed directly into a safety cell after coming to SRJ from John George without explanation, and whether he was told when he would be moved to a "normal" cell, and on that basis denies these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 84 of the Complaint.

85. In response to Paragraph 85, Defendants admit that BHCS staff evaluate inmates at intake if the "medical care or custody staff who complete the intake assessment forms refer the [inmate] to mental health care staff." Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 85 of the Complaint.

86. In response to Paragraph 86, Defendants deny the allegations.

87. In response to Paragraph 87, Defendants admit that inmates may use the message request system to access mental health services, but deny the remaining allegations.

88. In response to Paragraph 88, Defendants deny the allegations.

89. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff JOHNSON has "filed sick call slips requesting to be moved from the Administrative Separation unit to the men's Behavioral Health Unit, in the hopes of receiving more mental health care." Defendants deny the remaining allegations contained in Paragraph 89 of the Complaint.

90. In response to Paragraph 90, Defendants deny the allegations.

91. In response to Paragraph 91, Defendants deny the allegations.

92. In response to Paragraph 92, Defendants lack sufficient knowledge or information to form a belief as to the truth of whether "Plaintiff JOHNSON told medical staff on December 13, 2017 that he was hearing voices telling him to harm himself," and on this basis deny this allegation. Defendants deny the remaining allegations contained in Paragraph 92 of the Complaint.

93. In response to Paragraph 93, Defendants deny the allegations.

94. In response to Paragraph 94, Defendants admit that during a September 11, 2017

meeting of the Alameda County Mental Health Advisory Board, the Board heard reports from the Criminal Justice Committee about "the challenges experienced by the mentally ill in Santa Rita Jail." Defendants deny that they have "publically acknowledged that necessary and appropriately prescribed medications may not be available at the Jails." Defendants lack sufficient knowledge or information to form a belief as to the truth of whether "individuals, who enter with 'normal' behavior, becom[e] like 'zombies' soon after starting on the antipsychotic medications prescribed by mental health staff." Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 94 of the Complaint.

95. In response to Paragraph 95, Defendants deny the allegations.

96. In response to Paragraph 96, Defendants deny the allegations.

97. In response to Paragraph 97, Defendants admit that Plaintiff JOHNSON was released from SRJ on May 14, 2018, had been housed in the men's Behavioral Health Unit at that time and was prescribed psychiatric medications. Defendants also admit that Plaintiff JOHNSON's current detainment began on June 27, 2018 and that he is currently classified in Administrative Separation. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff JOHNSON had "valid community prescriptions for Remeron, Abilify, Zyprexa, and Risperdal for paranoid schizophrenia" when he entered SRJ on June 27, 2018, and on that basis deny this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 97 of the Complaint.

98. In response to Paragraph 98, Defendants deny the allegations.

99. In response to Paragraph 99, Defendants deny the allegations.

100. In response to Paragraph 100, Defendants deny the allegations.

101. In response to Paragraph 101, Defendants admit that mental health consultations can take place at a cell front if the inmate refuses to leave his or her cell or if there is a safety concern. Defendants further admit that mental health consultations can take place in pods and other locations, that custody deputies may be present depending on a variety of circumstances and that the encounter may be observed by others depending on the location. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 101 of the Complaint.

102. In response to Paragraph 102, Defendants admit that statements from their construction financing application are accurately quoted and that the layout at SRJ has not changed substantially since 2015. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 102 of the Complaint.

103. In response to Paragraph 103, Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff WASHINGTON "has been afraid to talk to mental health staff about his trauma," and on that basis deny this allegation. Defendants deny the remaining allegations contained in Paragraph 103 of the Complaint.

104. In response to Paragraph 104, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 104 of the Complaint, and on that basis deny each and every one of these allegations.

105. In response to Paragraph 105, Defendants admit that Plaintiff KEEGAN-HORNSBY's meetings with mental health staff sometimes occur within earshot of deputies. Except as admitted herein, Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 105 of the Complaint, and that basis deny each and every remaining allegation.

106. In response to Paragraph 106, Defendants deny the allegations.

107. In response to Paragraph 107, Defendants deny the allegations.

108. In response to Paragraph 108, Defendants deny the allegations.

109. In response to Paragraph 109, Defendants lack sufficient knowledge or information to form a belief as to the truth of whether "in the community, [Plaintiff] JONES manages his bipolar disorder through non-psychopharmacological means, such as diet and exercise," and on that basis deny this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 109 of the Complaint.

110. In response to Paragraph 110, Defendants deny the allegations.

111. In response to Paragraph 111, Defendants admit that during Plaintiff WASHINGTON's mental health appointments, there are deputies nearby. Except as stated herein, Defendants deny the remaining allegations contained in Paragraph 111 of the Complaint.

112. In response to Paragraph 112, Defendants admit that when an inmate at GDDF discloses that he or she is having a psychiatric crisis, the inmate is transferred directly to John George or SRJ for mental health treatment. Defendants further admit that if an inmate is transferred to SRJ from GDDF for mental health treatment, treatment may occur immediately upon arrival or the inmate may have to wait a period of time. Defendants lack sufficient knowledge or information to form a belief as to the truth as to whether GDDF inmates avoid seeking help for mental health issues to avoid being transferred to SRJ for treatment and on that basis deny that allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 112 of the Complaint.

113. In response to Paragraph 113, Defendants admit that cells at GDDF do not have emergency call buttons. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 113 of the Complaint.

114. In response to Paragraph 114, Defendants deny the allegations.

115. In response to Paragraph 115, Defendants deny the allegations.

116. In response to Paragraph 116, Defendants deny that their suicide prevention and treatment programs have any "shortcomings." Defendants lack sufficient knowledge or information to form a belief as to remaining allegations contained in Paragraph 116 of the Complaint, and deny them on that basis.

117. In response to Paragraph 117, Defendants deny the allegations.

118. In response to Paragraph 118, Defendants admit that former inmate Logan Masterson was being housed alone in an Administrative Separation cell when he committed suicide on April 8, 2018. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 118 of the Complaint.

119. In response to Paragraph 119, Defendants admit that incident reports relating to Mr. Masterson's suicide state that general observation checks were not performed on Mr. Masterson for over an hour before he was found hung in his cell, and that incident reports indicate that the housing unit deputy's view of Mr. Masterson was "slightly obstructed," the deputy "could not tell what Masterson was doing," and the deputy "did not spend more than a few seconds

looking in the direction of Masterson's cell." Defendants further admit that when Mr. Masterson was found his cell had "fecal matter on the walls, floor, and window of the cell." Defendants further admit that an inmate reported hearing Mr. Masterson state that he "wanted to talk to mental health, but he said the Housing Unit technician did not respond to his intercom button." Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 119 of the Complaint.

120. In response to Paragraph 120, Defendants deny that Jesus Dametrius Dickey died on June 27, 2018 and that he was "unsupervised" prior to his June 27, 2018 in-custody death. Except as stated herein, Defendants admit the remaining allegations contained in Paragraph 120 of the Complaint.

121. In response to Paragraph 121, Defendants admit that safety cells are single cells with no furnishings or toilets. Defendants further admit that safety cells have a door, which has a cuffing port through which food can be delivered, a window, a grate in the floor, that an inmate's clothing is removed and he is provided with a modesty garment and/or modesty blanket when housed in a safety cell, that toilet paper is provided upon request, and that safety cells do not contain mattresses, pads or beds. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 121 of the Complaint.

122. In response to Paragraph 122, Defendants lack sufficient knowledge or information to form a belief as to the truth as to whether suicidal inmates perceive safety cells as a method of punishment or whether this perception dissuades them from telling staff they are suicidal, and on this basis deny these allegations. Defendants deny the remaining allegations contained in Paragraph 122.

123. In response to Paragraph 123, Defendants admit that Plaintiff WASHINGTON was placed in a safety cell on March 13, 2018 because he was suicidal. Defendants lack sufficient knowledge or information to form a belief as to the truth as to whether Plaintiff WASHINGTON "perceived the safety cell to be punishment" and whether "he no longer reports suicidal feelings to mental health staff because he fears being returned to a safety cell," and on this basis deny these allegations. Except as admitted herein, Defendants deny the remaining

allegations contained in Paragraph 123 of the Complaint.

124. In response to Paragraph 124, Defendants admit that Plaintiff NAVARRO was held in a safety cell on September 9, 2014, but lack sufficient knowledge or information to form a belief as to the truth of whether Plaintiff NAVARRO was confined to two separate safety cells in a span of 24 hours, and on that basis deny this allegation. Defendants lack sufficient knowledge or information to form a belief as to the truth as to whether Plaintiff NAVARRO "describes her experience in the safety cells [as] the most humiliating and degrading experience of her life" and whether "[s]he does not intend to report suicidality to mental health again to avoid being sent back to the safety cell," and on this basis deny these allegations. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 124 of the Complaint.

125. In response to Paragraph 125, Defendants admit that Plaintiff WASHINGTON has been placed in a safety cell and that he was provided a modesty blanket. Defendants lack sufficient knowledge or information to form a belief as to the truth as to whether Plaintiff JOHNSON "hopes never to go back to a safety cell ever again," and on this basis deny this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 125 of the Complaint.

126. In response to Paragraph 126, Defendants admit that Plaintiff JOHNSON has been placed in a safety cell, but lack sufficient knowledge or information to form a belief regarding Plaintiffs' definition of "these same conditions," and on this basis are unable to either admit or deny this allegation. Except as admitted herein, Defendants deny the remaining allegations contained in Paragraph 126 of the Complaint.

127. In response to Paragraph 127, Defendants admit that Plaintiff KEEGAN-HORNSBY has been placed in a safety cell, but deny that he was held in a safety cell as punishment for being suicidal. Defendants lack sufficient knowledge or information to form a belief as to the truth as to whether Plaintiff KEEGAN-HORNSBY "felt like he was being punished for being suicidal" when he was placed in the safety cell and whether he "is afraid to tell staff he feels suicidal because he does not want to go back to the safety cell," and on this basis deny these allegations.

128. In response to Paragraph 128, Defendants deny the allegations.

129. In response to Paragraph 129, Defendants admit that they consider safety cells safe for suicidal and seriously mental ill inmates. Except as stated above, Defendants deny the remaining allegations contained in Paragraph 129 of the Complaint.

130. In response to Paragraph 130, Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131. In response to Paragraph 131, Defendants deny the allegations.

132. In response to Paragraph 132, Defendants deny the allegations.

133. In response to Paragraph 133, Defendants deny the allegations.

134. In response to Paragraph 134, admit that former inmate Logan Masterson committed suicide while housed in Housing Unit 2 "fewer than 36 hours after being released from a safety cell." Except as admitted herein, Plaintiffs deny the remaining allegations contained in Paragraph 134 of the Complaint.

135. In response to Paragraph 135, Defendants deny the allegations.

136. In response to Paragraph 136, Defendants deny the allegations.

137. In response to Paragraph 137, Defendants deny the allegations.

138. In response to Paragraph 138, Defendants deny the allegations.

139. In response to Paragraph 139, Defendants deny the allegations.

140. In response to Paragraph 140, Defendants deny the allegations.

## CLASS ALLEGATIONS

**Prisoner Class**

141-156. In response to Paragraphs 141-156, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every one of the allegations contained in these paragraphs.

///

///

///

**FIRST CAUSE OF ACTION**

**(Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983)**

**(ALL PLAINTIFFS and the Prisoner Class**

**Against ALL DEFENDANTS)**

157. In response to paragraph 157, Defendants re-allege and reincorporate by reference herein all responses previously asserted above.

158. In response to paragraph 158, Defendants deny the allegations.

159. In response to paragraph 159, Defendants deny the allegations.

160. In response to paragraph 160, Defendants deny the allegations.

161. In response to paragraph 161, Defendants deny the allegations.

**SECOND CAUSE OF ACTION**

**(Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983)**

**(ALL PLAINTIFFS and the Prisoner Class Against ALL DEFENDANTS)**

162. In response to paragraph 162, Defendants re-allege and reincorporate by reference herein all responses previously asserted above.

163. In response to paragraph 163, Defendants deny the allegations.

164. In response to paragraph 164, Defendants deny the allegations.

165. In response to paragraph 165, Defendants deny the allegations.

**THIRD CAUSE OF ACTION**

**(Article I, Section 7 of the California Constitution)**

**(ALL PLAINTIFFS and the Prisoner Class Against ALL DEFENDANTS)**

166. In response to Paragraph 166, Defendants re-allege and reincorporate by reference herein all responses previously asserted above.

167. In response to paragraph 167, Defendants deny the allegations.

168. In response to paragraph 168, Defendants deny the allegations.

///

///

///

**FOURTH CAUSE OF ACTION**

**(Article I, Section 7 of the California Constitution)**

**(ALL PLAINTIFFS and the Prisoner Class Against ALL DEFENDANTS)**

169. In response to Paragraph 169, Defendants re-allege and reincorporate by reference herein all responses previously asserted above.

170. In response to paragraph 170, Defendants deny the allegations.

171. In response to paragraph 171, Defendants deny the allegations.

**FIFTH CAUSE OF ACTION**

**(Americans with Disabilities Act, 42 U.S.C. § 12132)**

**(Plaintiffs BABU, BELL, KEEGAN-HORNSBY, JOHNSON, JONES, NAVARRO, and WASHINGTON and the Disability Subclass Against ALL DEFENDANTS)**

172. In response to Paragraph 172, Defendants re-allege and reincorporate by reference herein all responses previously asserted above.

173. In response to Paragraph 173, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

174. In response to Paragraph 174, Defendants lack sufficient knowledge or information to form a belief as to the truth of Plaintiffs' allegations that Plaintiffs and putative members of the Disability Subclass "are individuals with disabilities as defined in the ADA," and whether they are "qualified – with or without reasonable modifications – to participate in the programs, services, and activities offered by Defendants," and on that basis deny these allegations. Defendants further assert that Plaintiffs remaining allegations are legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every one these remaining allegations.

175. In response to Paragraph 175, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

176. In response to Paragraph 176, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

177. In response to Paragraph 177, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

178. In response to Paragraph 178, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

179. In response to Paragraph 179, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

180. In response to Paragraph 180, Defendants deny the allegations.

181. In response to Paragraph 181, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

182. In response to Paragraph 182, Defendants deny that they "have imposed eligibility criteria and methods of administration that screen out persons with disabilities and subject them to discrimination by housing inmates with disabilities in isolation due to their disabilities and disability-related behaviors." Defendants further assert that Plaintiffs remaining allegations are legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every remaining allegation.

183. In response to Paragraph 183, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

184. In response to Paragraph 184, Defendants deny the allegations.

185. In response to Paragraph 184, Defendants deny the allegations.

**SIXTH CAUSE OF ACTION**

**(Rehabilitation Act, 29 U.S.C. § 794)**

**(Plaintiffs BABU, BELL, KEEGAN-HORNSBY, JOHNSON, JONES, NAVARRO, and WASHINGTON and the Prisoner Class Against ALL DEFENDANTS)**

186. In response to Paragraph 186, Defendants re-allege and reincorporate by reference herein all responses previously asserted above.

187. In response to Paragraph 187 of the Complaint, Defendants admit that the provisions of 29 U.S.C. § 794(a) quoted herein are quoted accurately. Except as admitted herein, Defendants deny each and every remaining allegation contained in Paragraph 187 of the Complaint.

188. In response to Paragraph 188, Defendants admit that the Jails are recipients of federal financial assistance. Defendants further assert that Plaintiffs remaining allegations are legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every remaining allegation.

189. In response to Paragraph 189, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

190. In response to Paragraph 190, Defendants deny the allegations.

191. In response to Paragraph 191, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

192. In response to Paragraph 192, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

193. In response to Paragraph 193, Defendants deny the allegations.

194. In response to Paragraph 194, Defendants deny the allegations.

195. In response to Paragraph 195, Defendants deny the allegations.

196. In response to Paragraph 196, Defendants deny the allegations.

**SEVENTH CAUSE OF ACTION**

**(Cal. Gov't Code § 11135)**

**By Plaintiffs BABU, BELL, KEEGAN-HORNSBY, JOHNSON, JONES, NAVAROO, and WASHINGTON and the Disability Subclass Against ALL DEFENDANTS)**

197. In response to Paragraph 197, Defendants re-allege and reincorporate by reference herein all responses previously asserted above.

198. In response to Paragraph 198, Defendants admit that the Jails receive state financial assistance. Defendants further assert that Plaintiffs' remaining allegations are legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every remaining allegation.

199. In response to Paragraph 199, Defendants assert that Plaintiffs have alleged legal conclusions, that Defendants lack knowledge or information sufficient to form a belief about the truth of said allegations, and that on that basis Defendants deny each and every allegation.

200. In response to Paragraph 200, Defendants deny the allegations.

**PRAYER FOR RELIEF**

Defendants deny that Plaintiffs, or any individual or any member of the alleged representative class or any putative member of the purported class, are entitled to any of the relief for which they pray, and Defendants accordingly deny all of the allegations contained in Plaintiffs' Prayer for Relief.

Except as specifically admitted herein, Defendants deny each and every allegation in the Complaint. Defendants reserve the right to amend this Answer and to assert additional defenses based on further investigation and discovery.

**AFFIRMATIVE DEFENSES**

Defendants allege the following affirmative defenses with respect to the claims alleged in Plaintiffs' Complaint, without assuming the burden of proof where the burden of proof rests on Plaintiffs. Defendants also hereby give notice that they intend to rely upon such other and further

defenses as may become available or apparent during pretrial proceedings in this action and hereby reserve any right to amend this answer and to assert all such defenses.

**FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' claims, and each of them, brought on behalf of members of the purported class as set forth in the Complaint, are barred because Plaintiffs have failed to state any claim upon which relief can be granted in that negligence in diagnosing or treating a medical condition does not state a valid claim for a federal civil rights violation. *Parratt v. Taylor*, 451 U.S. 527 (1981).

**SECOND AFFIRMATIVE DEFENSE**

Plaintiffs are estopped from claiming any injury, loss or damages because Plaintiffs failed to make reasonable efforts to prevent or mitigate any such injury, loss or damages.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred under such equitable defenses as the evidence demonstrates, including but not limited to the doctrines of laches, estoppel and unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims, and each of them, brought on behalf of members of the purported class as set forth in the Complaint, are barred or limited by the applicable statutes of limitations under either federal or California law. Further, the applicability of the statute of limitations requires individualized determinations for each putative member of the purported class, thereby precluding class-wide resolution.

**FIFTH AFFIRMATIVE DEFENSE**

The COUNTY is not liable to Plaintiffs, in whole or in part, because the losses or harm that the Plaintiffs have allegedly suffered was not caused by any act or omission of the COUNTY.

**SIXTH AFFIRMATIVE DEFENSE**

None of the Plaintiffs have suffered any damages or harm whatsoever by reason of the conduct alleged against the COUNTY, and, by reason of the foregoing, each Plaintiff lacks standing and is otherwise barred from any relief against the COUNTY and barred from prosecuting this action.

///

**SEVENTH AFFIRMATIVE DEFENSE**

The purported claims made by Plaintiffs and members of the purported class on whose behalf they purport to sue are precluded because the alleged conduct would have affected, if anyone, only an insubstantial number of putative class members.

**EIGHTH AFFIRMATIVE DEFENSE**

The purported class cannot be certified under Federal Rule of Civil Procedure 23 because, inter alia, the purported class, class representatives and/or class counsel fail to meet the necessary requirements for class certification, including adequacy of the class representative, ascertainability, numerosity, commonality, typicality, adequacy, manageability, superiority and injunctive relief requirements for class actions.

**NINTH AFFIRMATIVE DEFENSE**

The purported claims made by Plaintiffs and members of the purported class on whose behalf they purport to sue are precluded or limited because Plaintiffs and members of the purported class on whose behalf they purport to sue failed to exhaust other remedies.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs failed to give notice to Defendants in connection with the filing of certain of the claims that require notice.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred for failure to join necessary or indispensable parties.

**TWELFTH AFFIRMATIVE DEFENSE**

Defendants at all times acted in good faith and with reasonable grounds for believing that they had not violated federal or California law.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs are not qualified individuals with disabilities as defined by federal and state law.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' requested modifications and relief would cause an undue burden on Defendants.

///

**FIFTEENTH AFFIRMATIVE DEFENSE**

The Complaint, and each cause of action thereof, is barred because Plaintiffs and putative members of the purported class as set forth in the Complaint failed to notify Defendants of the alleged statutory violations at the time such violations allegedly occurred, which prevented the COUNTY from taking any action to remedy such alleged violations.

**SIXTEENTH AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim against the COUNTY upon which attorneys' fees or costs can be awarded.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Some of Plaintiffs' claims may be barred or limited, in whole or in part, by the doctrine of after-acquired evidence.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims, and each of them, brought on behalf of themselves and the putative members of the purported class as set forth in the Complaint, if allowed to be tried upon or with so-called representative evidence, would violate the procedural and substantive due process clauses of the California and federal Constitutions.

**NINETEENTH AFFIRMATIVE DEFENSE**

Defendants deny having any wrongful or discriminating motivation with respect to Plaintiffs, and each of them, but assert that the actions of which Plaintiffs complain would have been taken for lawful reasons independent of any alleged wrongful motivation.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiffs' claims, and each of them, brought on behalf of themselves and the putative members of the purported class as set forth in the Complaint, are in whole or in part de minimis.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Defendants do not have supervisory liability or vicarious liability for any act or omission alleged in Plaintiffs' Complaint.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

This Complaint is barred by the relevant portions of the California Government Code,

including, but not limited to sections 815, 815.2, 818.2, 820.2, 820.4, 820.6, 820.8,821,844.6 (a)(20, 845.6, 855.6, 855.8, 856, and 856.4.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Defendants did not deprive Plaintiffs, and each of them, of any right, privilege or immunity guaranteed by the Constitution, the laws of the United States and the laws of California.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiffs' claims are barred in whole or in part because Plaintiffs lack standing to challenge programs, services, assignments, or activities for which they failed to apply or for which they were not denied.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Defendants allege that the Complaint fails to state a cause of action for violation of 42 U.S.C. § 1983 under *Monell v. Department of Social Services in the City of New York*, 436 U.S. 658 (1978). There can be no recovery for a federal civil rights violation when there is no constitutional deprivation occurring pursuant to governmental custom or policy. *Id.*

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Defendants allege that all relevant times, Defendants and their agents or employees acted within the scope of their discretion, with due care and good faith fulfillment of their responsibilities in accordance with applicable Court orders, statutes, rules, regulations, and established and lawful policies and procedures, within the bounds of reason under all circumstances known to them, and with the good faith belief that their actions comported with all applicable federal and state laws, and they are therefore immune from liability.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiffs do not state a claim for deliberate indifference to a serious medical or mental health need because a difference in opinion as to the need to pursue one course of treatment over another is insufficient as a matter of law to establish deliberate indifference, and Plaintiffs cannot show that the course of treatment chosen was medically unacceptable under the circumstances. *Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

Defendants allege that they are not responsible for the alleged acts or omissions of Defendants' employees under a respondeat superior theory of liability. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiffs have failed to plead that each Government-official defendant has violated the Constitution through his or her own conduct, and they therefore may not be held liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

**THIRTY AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiffs' claims, and each of them, are barred in whole or in part by the doctrine of qualified immunity.

**THIRTY-FIRSTH AFFIRMATIVE DEFENSE**

Defendants allege that the acts and conduct of Defendants, who were at all times herein government officials or government entities performing discretionary functions, did not violate clearly established statutory or constitutional rights of Plaintiffs of which a reasonable person would have known. Furthermore, Defendants reasonably believed in good faith that their acts and conduct were constitutional. *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982); *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981).

///

///

///

///

///

///

///

///

///

WHEREFORE, having fully answered the Complaint, Defendants pray for relief as follows:

1. That the Complaint and each cause of action therein be dismissed with prejudice;

2. That the Plaintiffs and the putative class take nothing by way of the Complaint;

3. That the Court order such other and further relief for County as this Court deems just and proper.

Dated: March 8, 2019

BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Gregory B. Thomas*[5]
Gregory B. Thomas
Temitayo O. Peters
Attorneys for Defendants
COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff s Office; CAROL BURTON in her official capacity as Interim Director of the Alameda County Behavioral Health Care Services Agency

Dated: March 8, 2019

HANSON BRIDGETT LLP

By: */s/ Paul B. Mello*
Paul B. Mello
Samantha D. Wolff
Attorneys for Defendants
COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff s Office; CAROL BURTON in her official capacity as Interim Director of the Alameda County Behavioral Health Care Services Agency

OAK #4836-7932-8905 v1

[5] Counsel attests that e-filing authorization was obtained from all signatories on March 8, 2019.