# Exhibit B



# Alameda County Sheriff's Office
# Santa Rita Jail
# ADA Non-Mobility Program Assessment
# Final Report

**Submitted to:**
Ernest Galvan
Jeffrey Bornstein
Kara Janssen
Hugo Cabrera
Attorneys at Law
Rosen, Bien, Galvan & Grunfeld, LLP

Gregory B. Thomas
Temitayo 0. Peters
Attorneys at Law
Burke, Williams, & Sorenson, LLP

Paul Mello
Samantha Wolff
Attorneys at Law
Hanson Bridgett, LLP

**Produced by:**
Mike Brady
Director
Sabot Consulting

Rick Wells
Senior Consultant
Sabot Consulting

December 2, 2019



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## Table of Contents

Executive Summary ........................................................................................... 1
Summary List of Findings ................................................................................. 5
List of Inmate Complaints/Concerns (via Confidential Interviews) ............. 13
Intake/Booking/Classification (Disability Identification) ............................... 16
    Observations ................................................................................................ 17
    Staff Interviews ............................................................................................ 21
    Inmate Interviews ........................................................................................ 22
    Conclusions .................................................................................................. 22
  TRACKING ..................................................................................................... 27
    Staff Interviews ............................................................................................ 27
    Conclusions .................................................................................................. 29
  HOUSING PLACEMENTS .............................................................................. 30
    Observations ................................................................................................ 31
    Staff Interviews ............................................................................................ 33
    Inmate Interviews ........................................................................................ 33
    Conclusions .................................................................................................. 34
  ACCESS TO OUT-OF-CELL TIME (OUTSIDE YARD – POD / DAYROOM) .... 35
    Observations ................................................................................................ 35
    Staff Interviews ............................................................................................ 36
    The waiver request was denied by ACA. ..................................................... 37
    Inmate Interviews ........................................................................................ 37
    Conclusions .................................................................................................. 38
  ACCESS TO PROGRAMS .............................................................................. 39
    Observations ................................................................................................ 39
    Staff Interviews ............................................................................................ 50
    Inmate Interviews ........................................................................................ 52
    Conclusions .................................................................................................. 53
  ACCESS TO WORK ASSIGNMENTS ............................................................ 54
    Observations ................................................................................................ 54
    Staff Interviews ............................................................................................ 54
    Inmate Interviews ........................................................................................ 55
    Conclusions .................................................................................................. 55
  INMATE ADA GRIEVANCES .......................................................................... 57
    Observations ................................................................................................ 58
    Staff Interviews ............................................................................................ 58
    Inmate Interviews ........................................................................................ 59
    Conclusions .................................................................................................. 59
  INMATE ORIENTATION .................................................................................. 61
    Observations ................................................................................................ 61
    Staff Interviews ............................................................................................ 62
    Inmate Interviews ........................................................................................ 62
    Conclusions .................................................................................................. 62
  TRAINING ....................................................................................................... 64
    Observations ................................................................................................ 64
    Staff Interviews ............................................................................................ 66
    Conclusions .................................................................................................. 66



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

**EFFECTIVE COMMUNICATION** ......................................................................... **67**
    Observations ............................................................................................................. 67
    Staff Interviews ........................................................................................................ 68
    Inmate Interviews .................................................................................................... 68
    Conclusions .............................................................................................................. 68
**STAFFING** ......................................................................................................... **70**
    Observations ............................................................................................................. 70
    Staff Interviews ........................................................................................................ 70
    Inmate Interviews .................................................................................................... 71
    Conclusions .............................................................................................................. 71
**ADA COORDINATOR** ......................................................................................... **72**
    Staff Interviews ........................................................................................................ 72
    Inmate Interviews .................................................................................................... 72
    Conclusions .............................................................................................................. 72
**USE OF FORCE / CELL EXTRACTIONS** ............................................................. **74**
    Observations ............................................................................................................. 74
**POLICIES AND PROCEDURES** .......................................................................... **75**
**LIST OF FORMS, NOTICES AND DOCUMENTS REVIEWED** ......................... **77**
**ABBREVIATIONS AND ACRONYMS USED** ...................................................... **79**



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## Executive Summary

In the matter of Babu v. County of Alameda, et.al. Case No. 5:18-cv-07677-NC, Sabot Consulting was retained as a joint ADA expert to conduct a comprehensive assessment of the Alameda County Sheriff's Office (ACSO), Detention and Corrections Division, Santa Rita Jail Facility (SRJ), as it relates to access to programs, services, and activities offered in the Santa Rita jail for prisoners with non-mobility disabilities (Serious Mental Illness, Developmental Disabilities and Learning Disabilities.)

The Sabot Subject Matter Expert conducted a total of five days of site visits at the SRJ during the months of June, July, and September 2019. As part of the review, he interviewed inmates, badge and non-badge employees of Alameda County, as well as contract staff who provide programs, services, and activities in the SRJ Facility, (e.g. Wellpath, Inc., Five Keys)

We commend the Alameda County Sheriff, as well as the management teams and all staff (both custody and non-custody) including contract employees for their welcoming, positive, cooperative and transparent interactions with our subject matter expert.

We fully recognize the quality time that staff spent in answering questions, showing or explaining processes to him. We were provided unfettered access, cooperation, and transparency for all applicable areas of the SRJ, which allowed us to maximize his time to conduct a comprehensive and meaningful assessment.

As a result, Sabot Consulting is pleased to provide this independent comprehensive assessment of the non-mobility ADA program at the Santa Rita County Jail.

The Santa Rita Jail is a local jail/detention facility used for the detention of pre-sentenced inmates and sentenced inmates. The SRJ facility is considered a "mega-jail" and designed to hold approximately 4,000 inmates/detainees. There were approximately 2,200 inmates/detainees housed at the facility at the time of the assessment. The facility is located at 5325 Broder Boulevard, Dublin, CA 94568.

The SRJ is the only jail/detention facility in the State of California to currently be accredited by the American Correctional Association (ACA). In fact, the facility very recently underwent through their three-year re-accreditation audit in August 2019, by the ACA Visiting Committee, and is expecting to be granted their ACA re-accreditation award at the upcoming ACA Winter Conference in January 2020.

The specific scope of the review was to conduct a comprehensive assessment of the jail programs, services, and activities with respect to access by inmates with non-mobility disabilities. The assessment consisted of a full review of policies/procedures, documentation and associated practices. Those areas examined included but were not limited to:



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- Intake and Booking Process;
- Classification Process;
- Tracking System;
- Health Care Services (including Disability Identification);
- Housing Units;
- Orientation;
- Law Library/Library Services;
- Religious Services/Activities;
- Academic and Vocational Education;
- Work Assignments;
- Application of Reasonable Accommodations;
- Training;
- Out-of-Cell Time;
- Misconduct/Disciplinary Process (and other due process related events);
- Grievances Process;
- Clinical Encounters; and
- Custody and Mental Health Staffing.

The Subject Matter Expert interviewed staff (Badge, Non-Badge, Behavioral Health, and Contract) throughout the SRJ directly and indirectly involved in the processes and practices listed above. The majority of the staff interviews were done in a confidential manner. Confidential interviews were also conducted with randomly selected inmates from each housing unit including those that are designated to house those inmates with an "MEN" designation. In most cases, between two to three inmates were selected from each of the housing units.

In order to ensure that non-mobility inmates housed in the county jails have equal access to the jail's programs, services and activities the jail must have a process in place to identify the inmates with non-mobility disabilities, their accommodation needs, and provide the necessary accommodations to them in a timely fashion.

Under the ADA, a psychiatric disability is a mental impairment that substantially limits one or more of the major life activities of an individual; a record of such an impairment; or being regarded as having such an impairment.

Accommodations for psychiatric disabilities include, but are not limited to; effective communication, designated housing, medications, counseling/therapy (group and individual), clinician input prior to disciplinary/misconduct hearings and other reasonable accommodations/modifications to ensure equal access to programs (work, vocation, education, religious, self-help groups, etc.).

Intellectual/Developmental disabilities includes limitations in both intellectual or cognitive functioning and adaptive behaviors. The disability originates prior to the age of 18 and will last indefinitely. Specific areas of adaptive deficits that an intellectual/developmental disabled prisoner may have could include any of the following: communication skills, academic skills, self-care or daily living activities,



socialization skills, self-advocacy or use of prisoner resources, work, health and safety, self-direction, and leisure activities. Each intellectual/developmental disabled inmate will have different and specific adaptive deficits. Some will have difficulty advocating for themselves, and some will have potential victimization concerns. Intellectual/developmental disabled inmates need monitoring, and prompting, and assistance, and many will need staff advocacy. Jail staff generally need to be proactive with this population.

Accommodations for intellectual/developmental disabled inmates may include, some or all of the following; designated housing, prompts/reasonable accommodations for adaptive supports needs, ensuring effective communication for events involving due process, healthcare encounters and other significant types of communications; staff speaking in simple terminology; staff rephrasing and/or repeating, and/or clarifying; staff ensuring the inmate understands the direction(s) or expectation(s) given by staff; reading and or writing (scribing) for the inmate (e.g., message requests, grievances, ADA reasonable accommodation requests, etc.); assistance with commissary (e.g., escorting to commissary or observing the inmate from afar, assistance filling out commissary slips, observing the inmate post commissary purchase [for possible victimization concerns]), assistance with completing laundry slips, assistance with personal hygiene (e.g., reminders to shower, brush teeth, wear clean clothes, clean cell/bed area, etc.), and clinician consult/input prior to disciplinary/misconduct hearings, as well as other assistance. Staff need to be aware as to what an intellectual/developmental disability prisoner's adaptive support needs are (when identified by a clinician).

Regional Centers (RCs) throughout the state of California are generally a great resource to determine whether an inmate is a previous consumer, and they can provide information regarding services available.

Prison and jail system disability programs should also include (for intellectual/developmental disabilities programs) inmates with dementia, as well as those with previous head trauma (resulting in significant limitations in cognitive and adaptive functioning), regardless of the age of onset of the condition.

A Learning Disability is a neurological disorder. Most people with Learning Disorders have average to above average intelligence. Learning disabilities cannot be cured or fixed. But those with Learning Disabilities often learn through different modalities, and so long as they receive the appropriate accommodations, they are generally able to perform all required functions. In fact, many people with Learning Disabilities may excel in other areas and/or have special talents. Inmates with Learning Disabilities may have difficulty with any of the following; reading, writing, spelling, speaking, listening, mathematics, remembering, sequencing, organizing, reasoning, time management, and social skills.

Accommodations for Learning Disabled inmates may include, but are not limited to; note-taking; allowing extra time for the inmate to gather his/her thoughts; read



and/or explain in lieu of relying on the inmate to read and understand (if necessary); write (scribe) for the inmate; proper lighting; rephrasing, repeating, and/or clarifying; and ensure inmate understands the encounter or directions given by staff, etc.

In order to comply with the Code of Federal Regulations and Title II of the ADA, the Jail  must have processes in place to identify a qualified individual that is processed into the jail in a reasonably private setting, to identify the accommodation needs that staff must provide in order to ensure the inmate has equal access to the Jail programs, services and activities, and to track the disabled population (e.g., psychiatric disabled inmates [those categorized as 'MEN'], intellectually/developmentally disabled (DD), and Learning/Disabled (LD). In order for custody and non-custody staff to be aware of the aforementioned disabled population and their accommodation needs, the Jail must ensure the local policies and procedures are modified, ensure staff are trained on their responsibilities under the ADA as well as the rights of the disabled inmate population regarding equal access to the SRJ's programs, services, and activities, and to assure nondiscrimination.

This report details the Subject Matter Expert's  review of the policies, procedures and staff practices regarding programs, services and activities provided to the SRJ psychiatric, intellectual/developmental, and learning disabled inmate population.

In addition, this detailed report outlines our expert opinions as to the non-compliant areas of the Santa Rita Jail Facility's Non-Mobility Inmate ADA Program, as well as general concerns, and best practices needed/recommended for an ADA compliant/comprehensive inmate non-mobility disability program.

To be clear, while the ADA does not specifically and explictly require: 1) a comprehensive, networked ADA tracking system, or 2) a comprehensive training program for all staff who have any inmate contact, it is our expert opinion that with these best practice components being implemented, along with modifications to policies, practices and procedures,  the defendants will have a significantly greater chance of  coming into compliance with the mandates of the ADA in a far shorter timeframe than without them.

The report of findings for each area reviewed is contained within the various sections of this document.

 ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## Summary List of Findings

Listed below is a summary of the Subject Matter Expert's findings regarding the Santa Rita Jail Facility Non-Mobility Inmate Disability Program:

- Training
  - ADA training is not sufficient
    - Training for custody, healthcare and support staff needs to be specific to the SRJ processes, based on local policies/procedures, forms/documents used, etc., especially pertaining to psychiatric disabilities, intellectual/developmental disabilities, and Learning disabilities;
  - ADA Coordinator has not had comprehensive ADA training to perform their jobs effectively;

- Staffing
  - Severe custody staffing vacancies/shortages/re-directions cause or significantly contribute to negative impacts on the following:
    - 5150 cases do not get processed out to John George Hospital;
    - Restricts inmate programs/access;
    - Causes education classes to get cancelled, delayed, early shut-down, or delayed start of classes;
    - Restricts quasi-yard outside recreation time;
    - Restricts pod/dayroom out-of-cell time (including showers and telephones);
    - Puts inmates and staff at risk of harm from lack of Officer presence in living units and reduced staffing to inmate ratios
    - Lack of escorts to mental health appointments causes clinicians to conduct clinical appointments therapy through cell doors
    - Significantly increases risk of successful suicides and medical emergencies with bad outcomes.
    - Staff redirection for hospital runs creates an unsafe environment for staff and inmates.
  - Significant Alameda County Behavioral Health jail staffing shortages, vacancies, sick leave, cause or significantly contribute to the following:
    - High stress and burn-out
    - Failure to provide timely and confidential appointments to SMI, DD, and LD inmates especially in restrictive housing.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- Delays Intake, Transfer, and Release (ITR) operations; Inability to provide 24-hour coverage in ITR and other crisis response needs
- Lack of appropriate clinical staff classifications and number of clinical staff prevents the creation of a robust screening program for suicide prevention, DD, and LD inmates.
- There is no formal structured treatment model or treatment space which causes a misuse/overuse of safety cells.
  - The Compliance Unit (ADA Unit) has staffing shortages;
    - Mentally, intellectually/developmentally, and LD inmates universally do not know who the ADA Coordinator is, and they are widely not being interviewed or communicated with by the ADA Coordinator or Compliance Unit staff;
    - Prevents ADA Unit Staff from walking the living units regularly to interact with disabled inmates to ensure their ADA accommodation needs are being met and to discover disabled inmates who have been missed in the screening process.
  - Five Keys (education) staffing is reportedly sufficient to accommodate current contract obligations, but admittedly under-staffed to meet the actual academic needs of the jail population;

- Tracking System
  - There is no comprehensive, real time, networked ADA tracking system to identify non-mobility disabled inmates, their specific accommodations needs (to ensure that they are being provided), and to ensure they are provided equal access to the Jail programs, services, and activities;
  - ADA information received from the CDCR DAPO regarding disabled prisoners (particularly intellectual/developmental disabled [DD1/DD2/DD3], and LD inmates are not being placed into any sort of tracking system for staff to know who the disabled inmates are, and more importantly as to what their reasonable accommodation needs are;

- Wellpath (Medical)
  - The current SRJ medical screening process is inadequate to identify intellectually/developmentally disabled and LD inmates, to determine if the inmate is a qualified individual, or to determine if the inmate has an impairment that requires a reasonable accommodation(s);



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- The screening process lacks privacy/confidentiality, few questions are asked specific to intellectual/developmental disabilities, and there are no intake screening questions pertaining to Learning disabilities;
- EC is not consistently being documented in the progress notes (or in any other documents) for medical encounters;

- ACBH (Mental Health)
    - Assessments are not always conducted in confidential settings;
        - Inmate-patient interviews/1-on-1s are conducted either at a cell door on the tier, or in a respective housing unit's multi-purpose/dining room (adjacent to the pod/dayroom area), which sometimes has multiple simultaneous interviews taking place (up to three at a time at adjacent tables) just several feet away from each other;
    - Other than the inmates classified as "MEN" (all inmates diagnosed as seriously mentally ill), there are no other levels of mental health designations other than those who are temporarily placed on Safety Cell/Intensive Observation status;
    - There is no group therapy, other than the "Breaking the Chains" program;
    - ACBH staff are not being contacted by the administration or custody personnel for consult regarding inmate disciplinary/misconduct reports or for the disciplinary hearing process;
    - EC is not consistently being documented in the progress notes (or in any other documents) for mental health encounters;
    - There is no formal or structured treatment program that includes different levels of treatment/housing needs and as a result safety cells are overused for inmates in crisis or with suicide ideation/attempts.
    - There are no suicide resistant cells
    - There is no validated suicide risk assessment tool or comprehensive suicide prevention training for custody staff (4-8 hours initial and 2-4 hour annual refresher training.)

- Intake Classification Process (in ITR)
    - Classification encounters are generally conducted in an open area, with staff and inmates in the vicinity, so there is no real level of confidentiality;
    - Includes general disability related questions, but nothing regarding Intellectual/Developmental Disabilities, or Learning Disabilities;
    - No confirmation of EC established during the process, and not all inmates are understanding the process and/or outcomes;



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- No mental health clinician in ITR 24 hours a day

- Inmate Orientation
    - The Jail does not adequately provide inmate Orientation information or materials/information related to the ADA for mentally, intellectually/developmentally disabled or LD inmates;
    - Because there is no verbal orientation provided, and/or no follow-up with "MEN", I/DD, or LD inmates subsequent to them viewing the orientation video, there is no way to confirm that these inmates comprehended the orientation material, or whether they have any questions or need any clarification;
    - Handbook/orientation material does not contain information regarding some of the programs, services, and activities at the Jail;

- Housing Units
    - No current centralized or consistent scheduling process for outside recreational quasi-yard activities, or for pod/dayroom activities;
        - Results in a lack of consistency amongst the units to meet the minimum out-of-cell exercise time requirements;
        - Reportedly a centralized master schedule process will be implemented soon;
    - No formal or informal housing unit specific orientation or information provided to new arrivals or housing unit transfers;
    - Housing unit staff indicated that they would not scribe (e.g., grievances) for mentally, intellectually/developmentally, or learning disabled inmates if the inmate was unable to read and write;
    - When conducting general unit or inmate observations, staff admittedly do not examine the cells/bed areas for cleanliness/sanitation; Having said that, the SRJ Facility is very clean except for episodic issues in the Safety Cells which are handled by a contract hazmat team.
    - Lack of proper available space for confidential inmate-patient 1-on-1s by healthcare staff;
    - No logging or tracking of inmates who refuse or otherwise choose not to go to the quasi-yard or pod/dayroom activities;
        - This includes inmates on IOL status and those who are not;
    - Inmates are widely unaware of their rights, schedules, and available programs, classes, services, and activities;
    - Inmates do not know who the ADA Coordinator is, or that there is an ADA Coordinator;



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- Lack of available programs for inmates housed on Ad/Sep status;
- Staff do not know who the intellectually/developmentally, or learning disabled inmates are, whether they have any in their housing units, or what their reasonable accommodation needs are;
- There are not any notices or posters in the pods/dayrooms, multi-purpose/dining area, or any other areas within the housing units to note the ADA Coordinator's name and contact information;
- Lack of equal opportunities for "MEN" inmates, e.g., employment, education, and other programs;

- Grievances
  - Grievance staff (like housing unit staff) indicated that they would not scribe (for the grievance process) for psychiatric, intellectually/developmentally, or learning disabled inmates if the inmate was unable to read and write;
  - Grievance staff do not interview (for possible clarification purposes) an inmate who "rambled" or was unclear in their grievance;
  - Even though "ADA" inmates are reportedly often interviewed as part of the grievance process, inmates categorized as "MEN" are generally not interviewed;
  - Medical and Use-of-Force are reportedly the most grieved categories, and Classification is highly grieved for Ad/Sep inmates;
  - There is no urgent or emergent expedited ADA grievance response timelines (except for PREA cases);

- Work/Work Assignment Process
  - Only general population inmates can be hired to work in the kitchen and laundry, which comprises the bulk of the jail inmate work positions
    - But inmates categorized as minimum "MEN" are not housed in the minimum general population, and therefore not being afforded an opportunity for these assignments;
    - There may be intellectually/developmentally, and learning disabled inmates living in the minimum security level housing units, but the SRJ is not identifying or tracking these inmates, therefore staff don't know who they are, or what their reasonable accommodation needs are;
    - Inmate worker positions do not have essential functions identified and listed;



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- ▪ This is a concern for the disabled inmates, as they may need specific reasonable accommodations to enable them to meet any essential functions pertaining to a job assignment. But without documented essential functions, and without disability identification and reasonable accommodations needs, mentally, intellectually/developmentally, learning disabled inmates are unable to participate in these job assignments.

- ▪ ADA Coordinator and Compliance Accreditation Unit
  - ▪ The ADA Coordinator's role and responsibilities for managing the ADA program have not been clearly defined;
  - ▪ The ADA Coordinator has multiple duties, e.g., PREA ACA, and others;
  - ▪ ADA Coordinator (and Compliance Team) admittedly do not have much interaction with "MEN" inmates, and only occasionally deal with them;
  - ▪ There is no reference to the ADA Coordinator in the SRJ handbook/orientation material;

- ▪ Disciplinary Process
  - ▪ Hearing summaries do not indicate whether the inmates (e.g., mentally, intellectually/developmentally disabled, or learning disabled) understand the charges, process or proceedings. It is unclear if Staff make the distinction between behaviors that are an affect of the disability or willful misconduct. There appears to be at least basic EC information in most of the hearing summaries, but it is not consistent;
    - ▪ Staff must ensure all attempts are made to establish effective communication at all phases if the inmate disciplinary process, e.g., serving initial copy of the report, during the investigative process (if applicable), during the hearing, and upon issuance of any final copies of the report, after completion of the hearing.
  - ▪ Staff are inconsistent as to whether they consider an inmates mental or intellectual/developmental disability before choosing to write a disciplinary report;

- ▪ Inmate Programs
  - ▪ Five Keys (education) staff claim to have enough staff to fulfill their SRJ obligations based on the current contract with Alameda County, but admittedly do not have the staffing or



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

resources to fulfill the actual needs of the SRJ inmate population;

- For the Five Keys Independent Study program, there does not appear to be any proof of practice documentation for what has been completed by the inmate;

- Five Keys staff are not forwarding general information (an inmate's learning or intellectual/developmental disability and specific accommodation needs information) to the ADA Coordinator or ACBH staff;
  - This would be helpful to better ensure that such inmates are seen by ACBH, placed in the disability program, and tracked to ensure the inmate receives accommodations in other SRJ processes;

- There is not equal programming amongst all units regarding inmate programs, including re-entry, education and other programs;

- Policies/Procedures
  - SRJ Alameda County Sheriff's Office, Detention and Corrections Policy and Procedures (custody) and Adult Forensic Behavioral Health (AFBH)/ACBH Policies and Procedures need to be revised/modified to incorporate ADA language related to inmates with intellectual/developmental disabilities, and learning disabilities (where applicable), and to include at least general EC related information (where applicable); It is recommended that the forms have a specific effective communication section that staff is required to fill out when effective communication is necessary.

- OPHU
  - Safety Cell 116A (although not currently being used at the time of the site visit) had not been flushed, and it smelled of urine. However, in fairness I do not know how long the Safety Cell was unoccupied/unclean.
  - Inmates housed in the OPHU are not being provided access to equivalent programs, services and activities consistent with their custody level as inmates who are housed in other units;
    - With the exception of the chaplain providing services, and the book cart, there are no programs for inmates housed in the OPHU;
    - Reportedly the inmates are permitted to attend quasi-yard if they ask, and if there are no overriding medical reason which would prevent it.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- Effective Communication Policy

    - There is no EC policy in place. The SRJ should have a comprehensive EC policy in place to ensure that reasonable accommodations are provided and EC is achieved (or all reasonable attempts are made) for disabled inmates during clinical encounters, due process events, and other types of significant communications.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## List of Inmate Complaints/Concerns (via Confidential Interviews)

Listed below is a summary of some of the complaints or concerns identified by inmates during the interviews with the Subject Matter Expert. A majority of the listed complaints/concerns were each identified by multiple inmates from various housing units. However, it's fair to point out that some inmates either in the same or different housing units made statements contradictory to some of the identified concerns. The validity of some of these concerns could not be substantiated or refuted.

- Staff/Housing Units
    - Units are understaffed for Deputies;
    - No verbal orientation specific to assigned housing unit
        - Inmates claim they learn of their rights, expectations, program, services, and activities and general information from other inmates;
    - Forced to go to (participate in) assigned pod/dayroom time in order to access pill-call;
    - Breakfast served as early as 5:00 AM, and morning pod/dayroom ran as early as 6:00 AM, which is difficult for inmates on psychotropic medications
        - Inmates cited difficulty waking up that early then having to remain awake for pod/dayroom if they wanted out-of-cell recreation activities);
    - Deputies do not walk the unit pods/dayrooms or tiers enough;
    - Deputies do not check on the inmates in the cells enough;
    - Not all staff are helpful or approachable;
    - Inmates do not feel safe;
    - Inmates don't trust staff;
    - Inmates tease another inmate, but staff are aware and don't do anything about it;
    - Staff need sensitivity training;
    - Cell/toilet dirty, and have difficulty getting cleaning materials to clean cell, or to get assistance to have cell cleaned;
    - Showers are dirty;
    - Limited recreation activities available, e.g., no dominoes, no handballs, no cards, no board games;
    - Not enough yard or pod/dayroom time;
    - Inconsistencies in duration of yard and pod/dayroom time allotted;
    - Pod/dayroom television is never turned on;
    - Other inmates give him problems regarding commissary;
    - Am LD, but it's not acknowledged by staff, and no accommodations provided;
    - Trouble entering phone pin number, but nobody helps;



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- **Grievances/Message Requests**
    - Takes too long for grievance responses (sometimes no response at all);
    - Takes too long for Message Request responses;
    - No substantive responses for grievances, often just 21-day extensions for further investigation;
    - Never heard of a grievance form or grievance process;
    - Instead of trying to solve grievances at the lowest level, Deputies just question us about filing grievances (makes me not want to submit grievances);

- **Healthcare**
    - Takes too long (and too many requests) to be seen by healthcare staff (ACBH clinicians, Wellpath doctors, and the dentist);
    - Issue with getting psychotropic medications;
    - Sometimes made to do my hormone injections in my cell;
    - No adequate treatment at John George Hospital;
    - No privacy or confidentiality for ACBH psychiatrists or clinicians for 1-on-1 appointments/sessions
        - Conducted at cell door, or in housing unit multi-purpose/dining area in the immediate area where other clinicians and inmates are meeting at adjacent tables just several feet away;
    - Don't like the medical triage process;
    - Medical line/pill-call processes are not confidential;
    - Didn't know about sick call process;
    - Didn't know about dental availability/process;

- **Inmate Programs**
    - Re-entry services not offered in Ad/Sep housing units;
    - Did not know that Independent Study or education services existed;
    - Only program available in the unit is Independent Study;
    - Didn't know that education opportunities existed;
    - Did not know that law library/legal services were available;
    - Law Library process does not have confidentiality, so I don't use
    - Need more reading books/newer books;
    - Didn't know about any available programs;
    - No programs available in unit;
    - Limited programs available in unit, and takes "forever" to get in;



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- ▪ Classification
    - ▪ Did not understand the Intake Classification process/outcome;
    - ▪ Did not receive orientation material/jail handbook;
    - ▪ Put in a request to be considered for a work assignment, but was told I was ineligible because I am classified as mentally ill;
    - ▪ Have never been seen by a Classification Deputy except at intake;

- ▪ Miscellaneous
    - ▪ Food complaints;
    - ▪ Do not know who the ADA Coordinator is;
        - ○ Note: 100 percent of the inmates interviewed from all housing units said the same thing;
    - ▪ Video-visiting could be more private (monitor is out in the open in the pod).



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## Intake/Booking/Classification (Disability Identification)

The following Alameda County Sheriff's Office Detention and Corrections Policies/Procedures outline staff responsibilities relative to the Intake/Booking/Classification processes regarding mentally, intellectually/developmentally, and learning disabled inmates: 1.14 Americans with Disabilities Act; 11.02 Intake Procedure; Intake Classification; 11.40 Scope of Intake, Classification, and Medical Screening Procedures; 12.01 Intake Classification; and 13.02 Inmate Medical/Health Appraisal Screening, Special Clinics, Communicable Disease, Quarantines, and Terminally Ill Inmates.

Policy/Procedure 12.01 Intake Classification, Section G.4, states in part, "Classification staff will classify disabled inmates with the inmate's disability given consideration when making a housing assignment, placing the inmate's safety at the forefront. Being disabled in any way is not justification for a higher security classification."

Policy/Procedure 1.14 Americans with Disabilities Act, Section IV. A (Forms)., states in part, "Intake and medical staff shall use the Inmate Disability Evaluation Form report to verify an inmate's disability." Section IV. B., states in part, "The Disability Tracking Form will be used by Booking staff to track inmates who have a physical impairment or disability and to ensure the appropriate accommodations are provided. This form will be forwarded to medical staff and the ADA Coordinator."  Section IV. G., states in part, "The Pre-Booking Medical/Mental Health Screening Form will be used to evaluate a medical condition, mental health status, and to evaluate an arrestee's need for any special accommodations as a result of a disability,"

In order to identify inmates that are processed into the SRJ that have a qualified psychiatric, intellectual/developmental, or learning disabilities, there must be a comprehensive screening process in place.  The disability screening must be part of the Intake/Booking process (or at least begin there) and must identify any applicable reasonable accommodation needs. Without a comprehensive disability screening process, Staff (both custody and non-custody) may not be aware of all psychiatric, intellectual/developmental, and LD inmates being processed and/or housed in the jail. Likewise, staff may not in-turn be aware of accommodation needs they are required to provide to ensure that the disabled inmates are afforded equal access to the jail programs, services and activities as required pursuant to ADA as well as local jail policies.

Currently at the SRJ, it is the responsibility of Booking/Intake staff and healthcare staff to access inmates for evidence of a disability or any special management needs. The jail healthcare (medical/mental health) Intake process includes a fairly comprehensive evaluation for psychiatric disabilities to identify specific mental health care, programming, and housing needs. However, with regard to



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

intellectual/developmental and learning disabilities, currently there are only cursory attempts to ascertain such information via a medical intake questionnaire.

The current Alameda County Behavioral Healthcare staff is inadequate in number and classification to appropriately conduct secondary testing for intellectual/development and learning disabilities. Currently there are no Clinical Psychologists assigned to the SRJ that are working in that capacity, and there are no evidenced based screening tools for intellectual/developmental disabilities or learning disabilities being utilized. The result is a significant number of disabled inmates are not being provided the accommodations to which they are entitled, and they are being denied equal access to the programs, services, and activities at the Santa Rita County Jail Facility.

**Observations**

The Subject Matter Expert observed the Intake/Booking processes in the ITR area (for male inmates). This included the initial arrival of inmates by outside law enforcement officers, the jail pre-booking process, completion of the medical pre-screening process, custody booking process and the intake classification process. With regard to utilizing the required intake medical and classification screening forms, Intake, Transfer, and Release (ITR) staff followed the requirements pursuant to the aforementioned policies/procedures.

Custody (booking and classification) and medical staff complied with the Alameda County policies and procedures (e.g., 11.02 Intake Procedure, 11.40 Scope of Intake, Classification and Medical Screening Procedures, 12.01 Intake classification, 13.02 Inmate Medical/Health Appraisal Screening, and 1.14 Americans with Disabilities Act [ADA]).

The pre-booking Intake process is initiated in the law enforcement lobby area or at one of the front windows at the booking counter. A custody deputy was assigned to the ITR area for the Intake/Booking process and to ensure a completed Consolidated Arrest Report (CAR) and an Intake Medical Review Form accompanied each inmate through the process.

Initially, law enforcement personnel from the arresting agencies conducted searches of the arrestee's persons. The arrestee's surrendered their personal belongings to the ITR custody staff member. Staff performed clothed body searches of the arrestees, some basic pre-screening questions were asked, and the arrestees were subsequently escorted inside ITR to respective holding cells pending processing. The inmates were then removed and processed for booking a short time later.

The inmates were seen by a Classification Deputy for Intake Classification. The Classification Deputy completed Classification Reports (via the Advanced Technology Information Management System [ATIMS] for each respective new arrival. The Classification Deputy asked the following general questions or discussed information relative to: specific charges, prior prison/jail incarceration,



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

prior custody/security levels, history of prison/jail violence, gang status, enemies, victimization concerns, mental or physical disabilities, medications, Prison Rape Elimination Act (PREA), prior housing history (e.g., general population or special housing), and housing to be assigned to. Notably there was a stack of jail information packets (e.g., handbook/jail orientation material) sitting next to the podium where the Classification Deputy conducted his Classification interviews. However, none of the two inmates observed received or were asked if they wanted a packet.

Although the Classification Deputy asked about physical or mental disabilities, it appeared as the emphasis was solely on psychiatric (those that would potentially be categorized as "MEN" status), and not necessarily inquiring about intellectual/developmental disabilities or learning disabilities. Likewise, this appeared to be the case throughout the entire Intake screening processes for both custody and medical. The observed inmates who were interviewed did not have any apparent cognitive disabilities, so there did not appear to be any effective communication concerns. But when asked by this Subject Matter Expert, the Classification Deputy indicated that he asks (at the end of each Classification interview) if the inmate has any questions, and that he would repeat or rephrase any information if needed, and answer any questions to help ensure the inmate understands the information.

The inmates also received their Intake medical screening from an ITR Nurse. Prior to specific questions being asked, vitals were taken and assessed, and pupils were examined. Questions asked and/or information discussed during the Intake medical screening process included: allergies to medications, eye glasses, Tuberculosis (TB), Human Immunodeficiency Virus (HIV), diabetes, steroids, nurse read the PREA package, explained sick call and sick call slip/request processes, prior incarceration history (including at SRJ), injuries, illness/sick, prior hospitalization, medications, trauma, hypertension, substance abuse or drug/alcohol addictions, prior mental health hospitalization or out-patient care, violence, suicidal thoughts or attempts, family suicide history, homicidal thoughts, current state of mind (e.g., worried), hopelessness, depression, anxiety, hallucination history, hearing voices, and assistive devices (e.g., reading glasses).

This Subject Matter Expert observed during the Intake Medical screening process that the inmates were seated with a nurse who was asking health care related questions. However, the inmates were in a small office with one, and sometimes two other inmates present, as simultaneous Intake Medical screenings were being conducted by other nurses. As a result, the inmates were able hear the questions being asked to the other inmates, as well as their responses. There was certainly no privacy or confidentiality afforded to any of them. Not only is this a HIPPA non-compliant, but inmates historically will not provide forthcoming answers to sensitive questions that may subject themselves to ridicule or victimization by other inmates in this non-confidential setting.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

Moreover, while the nurses who conducted the intake medical screenings appeared very knowledgeable with the process, not all of them appeared to be reading from the Medical Intake Questionnaire Forms or the Inmate Disability Evaluation Form.

New arrivals are seen by ITR Behavioral Health clinicians if applicable, based on custody or medical referrals via the aforementioned Intake screening processes. This Subject Matter Expert observed one of the interviews conducted by a Licensed Clinical Social Worker (LCSW). For this specific inmate, he had been housed at the SRJ previously and had been referred to the Behavioral Health staff by custody staff at Intake.

The clinician didn't appear to have a specific list of standardized questions. Questions that were asked to the inmate included: where are you, who is the President, suicidal, thoughts of hurting others, hearing voices, are they telling you to hurt anyone, depression, do you see things, and any recent drug use. The inmate acknowledged that he hears voices, but that he was not suicidal. The interview was conducted in the hallway outside of the holding cells. The clinician's decision was to not place the inmate in an Isolation or safety cell. When asked by this Subject Matter Expert, the clinician indicated that safety cell placement is a joint decision between the Behavioral Health and Custody personnel. The lack of an appropriate treatment model with different levels of care and specialized housing for inmates in varying states of crisis results in the over reliance on and misuse of Safety Cells. This Subject Matter Expert observed another inmate waiting in a temporary holding cell to be interviewed by a clinician for mental health concerns as well.

It is important to note here that there are no Clinical Behavioral Health Staff assigned to the ITR from 2300hrs to 0700hrs each day.  While there are clinicians on call, there are no clinical staff available to conduct these secondary screenings during these hours. This results in inmates with serious mental health issues, drug/alcohol induced psychosis, and other non-mobility disabilities remaining in holding cells/safety cells until Clinical Behavioral Health staff arrive for work up to 8 hours longer than non-disabled inmates.

Policy/Procedure 11.40 Scope of Intake, Classification and Medical Screening require Booking staff to notify the ADA Coordinator and Classification staff, when an ADA inmate is going to be housed in the SRJ via the Disability Tracking Form. Notations to the ADA Coordinator shall be made within 24 hours.

Policy/Procedure 13.02 Inmate Medical/Health Appraisal Screening, Special Clinics, Communicable Disease, Quarantines and Terminally Ill inmates, states in part (for new admissions); "Inmates who have or are suspected of having developmental disabilities shall be separated from the general population pending assessment, to prevent them being victimized by predators. The health authority or designee shall contact the Regional Center of East Bay regarding any suspected or confirmed to be developmentally disabled, for diagnosis and/or



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

treatment within 24 hours of such determination, excluding holidays and weekends."

Intake Wellpath (Medical) staff are required to complete an Intake Medical Review Form, and an Inmate Disability Evaluation Form (to verify an inmate's disability) during the Intake screening process. A Disability Tracking Form is used by Booking staff to track inmates who have a physical impairment or disability and to ensure that the appropriate accommodations are provided. This form is to be forwarded to medical staff and the ADA Coordinator. The Pre-Booking Medical/Mental Health Screening Form is used to evaluate a medical condition, mental health status, and to evaluate need for any special accommodations as a result of a disability.

Alameda County Behavioral Health Care Services Criminal Justice Mental Health Policy/Procedure B5c Disabled Inmates, states in part, "At any time that a ACBH clinician suspects that an inmate may be developmentally disabled, the clinician must contact the Regional Center of East Bay to determine eligibility and/or current status of the patient's case." With no testing processes in place for intellectual/developmental disabilities, or learning disabilities, it is essential that a comprehensive screening questionnaire be used by healthcare staff at ITR during the intake process. However, this is not taking place. Custody and medical staff are not identifying intellectual/developmental disabilities or learning disabilities. Thus, they are not aware of who the qualified intellectual/developmental or learning disabled inmates are and their accommodation needs. Such disabilities, without accommodations being provided, would likely limit  an inmate's ability to understand the Intake Medical and Classification processes, as well as other important processes. It may also subject these disabled inmates to victimization by other inmates.

Between the Intake Medical Review Form, Inmate Disability Evaluation Form, Pre-Booking Medical/Mental Health Screening Form, Disability Tracking Form, and the Request for Mental Health Triage Form, the disability related questions focused heavily on mental illness. There were not any questions pertaining to intellectual/developmental disabilities, or learning disabilities. The Inmate Disability Evaluation Form had an "Other" check box for categories of disabilities. The remainder of the boxes were, "Vision, Mobility, Hearing, and Speech." Under the "Disabilities Affecting Placement" section, there was also an "Other" check box. The remainder of the check boxes were, Wheelchair User, Non-Ambulatory, Mobility, Mentally Impaired, Hearing, and Vision."

The only form that had any intellectual/developmental disabled questions was the Classification Assessment Supplemental PREA Worksheet. One question on the form that was asked is "Do you have any mental, physical or developmental disabilities? A second question on the form is, "Does the Inmate exhibit any signs of mental, physical, or developmental disabilities?



After completion of the Intake Medical, Mental Health, and Classification processes, this Subject Matter Expert observed the Transfer area and related processes. After all Intake screening was completed, the new arrivals were escorted to the Transfer area where they were either placed in a temporary holding cell, or were seated on a bench in a large "tank" dress-out area (dependent upon their custody/security level or other possible special handling concerns). Inmates were given unclothed body searches (by appropriate gender staff) and dressed in appropriate colored clothing (commensurate with their classified custody/security level as well as other status [e.g., gang status, protective custody, etc.]). Lastly, before being escorted to their new assigned housing units, the new arrivals received their "bed-rolls", inclusive of basic hygiene items. This Subject Matter Expert was observing this process to see if the new arrivals would receive their jail information packet (jail handbook/orientation material) in this area because they had not previously received anything during the Intake or Classification processes (as mentioned above).  The jail handbook/orientation material was not disseminated in this area either.

Although it was not a designated Behavioral Health housing unit, or a unit designated to house inmates with psychiatric ("MEN") concerns, in order to observe the entire Intake and housing processes, this Subject Matter Expert observed new arrivals being escorted and housed to Unit 31 (minimum security level, general population). Upon arrival to the housing unit, there was no jail or housing unit specific orientation information provided to the new arrivals. Again, there were no jail information pamphlets or jail handbook/inmate orientation materials provided (although one of the housing unit Deputies indicated that they have them in stock in the event an inmate asks for one). Overall, the timeliness of the entire Intake process through the eventual housing process was very timely and without delay.

**Staff Interviews**

The Subject Matter Expert interviewed custody and healthcare (medical and mental health) staff assigned to work the ITR Booking and Intake areas. Staff explained that Intake assessments are done 24 hours per day, seven days per week as needed on all incoming inmates within the ITR area. There are three nurse stations, and a separate office for mental health clinicians where complete mental health screenings are completed as needed except from 2300hrs to 0700hrs when no Behavioral Health staff are on duty.

Staff stated that outside law enforcement personnel bring the new arrivals to the SRJ Bubble or front desk area for processing. An ITR Deputy or Technician processes the new arrival's personal items and takes their photo. Intake nurses conduct a brief medical screening on each new arrival. If the Nurse or Deputy is concerned about any possible mental health concerns, they will ask an ITR Behavioral Health clinician to assess the inmate. The clinician will assess an inmate's suicide risk, mental stability, safety, drug and alcohol usage, etc.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

Healthcare staff have the medical and clinical authority to refuse to accept an inmate for medical or psychiatric reasons, (e.g., conditions may warrant outside hospital placement or treatment).

The custody and healthcare screening processes include medical and mental health related questions, but admittedly not much regarding intellectual/developmental disabilities or learning disabilities, but mental health referrals are done if necessary. This Subject Matter Expert was told that there is a supplemental Intake screening form for that has specific questions to ascertain whether there is a possible intellectual/developmental disability. But if such document exists, it was not used, provided, nor included in the mass document production received.

Staff admitted that there are some confidentiality concerns with the Intake screening process at times due to the high volume of new arrivals and lack of available private office space.

Healthcare staff informed this Subject Matter Expert that the ITR area is normally staffed with one or two mental health clinicians on-duty, but there have been occasions where there were no staff on duty.

With regard to Inmate Orientation, pursuant to Policy 18.03 Inmate Orientation,

ITR and numerous other staff indicted that a video is shown on the televisions in the ITR holding cells/areas on a continuous loop (including English, Spanish, and in closed captioning).

**Inmate Interviews**

During the inmate interviews, one hundred percent of all inmates interviewed indicated that they never received a jail handbook/orientation material during the Intake/Booking/Classification processes. Several inmates complained or acknowledged that there was no privacy/confidentiality during the medical screening portion of the Intake process. There were at least two inmates who indicated that they had some trouble understanding the Intake Classification process.

**Conclusions**

Although the SRJ staff appear to do a good job identifying inmates with mental illness, the current jail Intake/Medical/Classification screening processes do not effectively identify qualified intellectually/developmental disabled, or learning disabled inmates, or whether they require reasonable accommodations to ensure the they have equal access to the jail's programs, services and activities. As such, these types of inmates are not being identified, and therefore not placed on a tracking list. As a result, key staff are not aware of their disabilities or accommodation needs (e.g., housing staff, disciplinary staff, education staff, healthcare staff, religious services staff, Inmate Services staff, etc.). As such, staff are likely going to be unable to provide or ensure effective communication



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

for these inmates. This is especially important for healthcare encounters as well as events where due process may be involved, or other types of significant communications. Lastly, as stated above, custody and medical screenings are sometimes being conducted in non-confidential settings. In some studies, experts estimate jail and prison populations have between two and four percent (2-4%) who are intellectually/developmentally disabled. Thus the Alameda County, SRJ Facility likely houses between forty four and eighty eight (2-4% of 2200 inmates = 44-88) intellectually/developmentally disabled inmates at any point in time that have not been identified or provided the necessary accommodations to have equal access to the jail program, services, and activities. Additionally, some of these inmates may have victimization concerns.

The Intake questionnaires need to include at least some basic questions pertaining to intellectual/developmental disabilities and learning disabilities. Some inmates who are intellectually/developmentally or learning disabled may not be aware of that or know exactly what that means. So, asking them directly in and of itself may not truly answer the question. Short of using cognitive and adaptive support screening tools at intake, a Registered Nurse (RN) can ask several basic questions of the inmate during Intake Medical screening.

The RN should ask the following recommended questions or similar questions during the Intake Medical screening related to a possible intellectual/developmental disability:

1. What is the highest grade completed in school?

2. Were you ever in special education classes in school?

3. Did you have an IEP in school?

4. Did you ever receive services from a Regional Center growing up as a kid or as a teenager?

5. Do you have any problems with reading or writing?

6. Do you have any problems with understanding or following instructions?

7. Do you sometimes need to be reminded to do stuff?

   a. To be somewhere where you are supposed to be at?

   b. To get someplace on time?

   c. To do something you were supposed to do?

8. Have you ever had any problems with people taking things from you?

9. Have you ever had any problems with people fighting you?

10. Have you ever had problems with people asking for sexual favors?



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

11. Can you read this paragraph for me and tell me in your own words what it means?

I am in the Santa Rita Jail Facility. I have the right to have equal access to all the programs, services and activities provided in this jail. If I need help understanding what programs, services and activities are offered here, someone will explain it to me.

12. Were you ever in state prison (in the California Department of Corrections and Rehabilitation [CDCR])?

    a. If so, what prison were you last housed at?

    b. If so, when did you parole or discharge from prison?

    c. If so, were you in the Clark/Developmental Disability Program (DDP)?

    d. If so, were you a DD1, DD2, or DD3 (DDP category)?

Based on the inmate's responses to the questions, if the RN has reason to believe that the inmate being interviewed is likely to have an intellectual/developmental or learning disability, he/she should refer the inmate for more extensive evaluation by a psychologist who has been trained in the intellectual/developmental and learning disability screening/testing processes. Again, due in large part to AB 109 and the fact that inmates on average are doing longer county jail stays, and there are now more programs and services opportunities, strong consideration should be given to evaluating/testing inmates who are not cited and released/cannot make bail and are expected to be housed at the jail pending disposition of their cases. It is for the parties to decide the length of time an inmate is to be housed in the jail for them to be tested. Both cognitive and adaptive support testing/evaluations should be performed. Behavioral Health staff will need to research to determine what screening/testing tools are available and are most cost effective for Alameda County. There are several validated testing instruments designed to measure cognitive levels (TONI-3rd, WAIS-III, WAIS-IV), and there are Correctional Adaptive Support Evaluations and similar screening instruments available to identify specific adaptive support deficits and needs. As addressed earlier, within a jail environment, examples of areas in which adaptive deficits may exist, include: communication skills, academic skills, self-care skills, socialization skills, self-advocacy/use of inmate resources, work, health and safety, self-direction, and leisure activities.

Ultimately what is important is that an intellectual/developmental disability be identified if it exists, including any reasonable accommodations required (e.g., coaching, assistance, monitoring, and prompting), for all or any aspects of jail life. This includes accommodations that may need to be provided during housing unit activities, work, education, inmate programs (e.g., self-help groups, re-entry



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

services, religious services, commissary, electronic tablet usage, clothing exchange, etc.), recreational activities, reading and/or writing, and personal hygiene, etc. They may also generally need assistance (EC to be provided) for processes such as disciplinary, grievances, message requests, ADA accommodation requests, healthcare encounters, and possibly re-entry services, etc.

Each intellectually/developmentally disabled inmate will be different, and any adaptive deficit and adaptive support needs (reasonable accommodations) will be unique to each individual.

For example, Inmate X #12345 may have a moderate level of cognitive impairment and adaptive support needs. Specifically, he or she may have victimization concerns, may need semi-frequent assistance.  He or she may have time-management issues and needs to be reminded to report to activities on time (e.g. work, school, appointments, etc.); needs assistance with commissary activities (e.g., filling out a commissary slip and being escorted to and from the commissary, and/or staff need to keep an eye on him to ensure he or she is not being "pressured" to give away his or her commissary items); reminders to shower, brush his teeth, and clean his or her cell; needs assistance with reading and writing; and staff need to advocate for him or her (as he or she is mentally unable to do so).

Inmate Y #54321 may have mild cognitive deficits and adaptive support needs and may only need occasional assistance. Specifically, he may only need help reading and writing, and may only need other types of assistance or monitoring if he is under unusual stress or unfamiliar situations (e.g., he was just transferred to a new unit, a family member recently passed-away, etc.).

Regardless of the level of intellectual/developmental disability, or the amount or types of prompting and assistance needed, staff must always be pro-active with this population as was indicated. Most of these types of inmates may be hesitant to approach staff or to advocate for themselves. This population also widely has a tendency to try to please others. With regard to staff, this population may tend to tell staff what they think staff want to hear, rather than being truthful. Staff also have to watch out for "Parroting". When asking an intellectual/developmental disabled inmate whether he/she understood the staff directions, or requirements, or process, etc., the inmate may reply "yes." But knowing this population, staff should properly take it to the next step (to ensure effective communication) and ask the inmate to briefly explain (in his/her own words) what they just discussed. Some intellectually/developmentally disabled inmates may "Parrot" back almost word for word as to what the staff member said. Staff need to be aware of this. Staff need to ensure the inmate understood. But again, each inmate will be different.

With regard to intellectually/developmentally disabled inmates and them dealing with other inmates, an intellectually/developmentally disabled inmate may do or



say whatever they think the other inmates want them to say or do, without fully understanding any possible consequences.

Regarding learning disabled inmates, Intake Medical staff can ask some of the same questions as outlined above (for intellectually/developmentally disabled inmates). Although it should still be asked, the highest grade completed may not be completely indicative of a LD, as most learning-disabled people have average to above average intelligence. So long as they had the proper reasonable accommodations, they may have graduated high school or even college. Other questions that should be asked include; special education and IEP history, and what specific accommodations have been provided in the past. Inmates should be able to have their education transcripts or Special Education/IEP information sent to the jail if desired, and have the material examined at the jail for confirmation of a specific learning disability. There are also literacy tests available like Tests of Adult Basic Education (TABE) that the Santa Rita Behavioral Health staff or Five Keys program staff could administer to determine an inmate's reading level. In the absence of having a specific learning disability testing process, utilizing TABE test results for reading level could serve as a trigger for staff to query an inmate during a healthcare encounter, due process event, or other type of significant communication. For example, inmates who test at a 4.0 or below reading level could be placed on a list. Staff who conduct healthcare encounters, due process events, and other types of significant communications could simply ask the inmate (during the proceeding) whether he or she understands the proceeding, process, and dialogue. If the inmate is able to read and understand the proceeding or information on his or her own, then no assistance would be required. But for inmates who are unable to read or understand, then the respective staff member would work with the inmate to ensure the inmate understands, e.g., read, explain, re-phrase, simplify, give the inmate more time to process the information, etc. For the SRJ staff, the purpose of having this information or otherwise confirming that a specific learning disability exists is not solely for possible education purposes through Five Keys, but also for many other aspects of jail activities and processes, such as the inmate disciplinary process, grievance process, message requests, ADA Accommodation requests, healthcare encounters, re-entry services, etc., in order to ensure effective communication is achieved.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## TRACKING

To ensure that the SRJ is not excluding non-mobility disabled inmates from participating in or denying them equal access to the services, programs, or activities offered in the SRJ, there must be a comprehensive, real time, networked tracking system to alert staff of qualified individuals and their accommodation needs. In addition, this tracking system will allow the jail staff to store historical information regarding disabled inmates and their accommodation needs in case the inmate returns to custody multiple times over the years.

### Staff Interviews

The Subject Matter Expert interviewed custody staff (including housing unit Deputies), as well as staff from the medical (Wellpath), mental health (ACBH), education (Five Keys), Inmate Services, food services (Aramark), work supervisors, and other staff. Most of the custody staff members interviewed indicated they would be able to identify the mentally disabled inmates ("MEN") primarily by their assigned housing unit. To the contrary, the staff admitted that they did not know who the intellectual/developmental or learning disabled inmates are and would not know what reasonable accommodations may be required to provide to them. Nearly all of the staff interviewed acknowledged that there is not a single electronic or hard copy list that indicates the disabled inmates' disabilities along with their accommodation needs, and none of them were able to produce a copy of one.

Most of the staff interviewed stated that Intake at ITR has a built-in process to screen for these types of disabilities as well as for others. Staff indicated that the process includes Intake Medical screening, Intake Mental Health screening (if referred by medical or custody), and Intake Classification screening. Most of the staff added that the ITR Classification Deputy assigns housing for new arrivals based on their respective medical and mental health factors (including disabilities), as well as for security/classification reasons. Staff differed on how they would become aware of an inmate's disability and accommodation needs once an inmate is housed. Some cited classification or bed cards, and others cited the electronic Jail Management System (JMS) as containing needed information. A couple of the staff members admitted that they would not know unless an inmate informed them. One of the staff members interviewed stated that intellectually/developmentally disabled inmates were all housed in the "clinic."

On the first scheduled visit at the SRJ Facility of five-day on-site schedule, and per request, the jail administrative staff were able to produce two separate lists of inmates categorized as "MEN". One of the lists is titled, "Mental Flag", which lists (as applicable) inmates assigned to housing units 1, 2, 8, 9, 21, 22, and 24. This particular list identifies the inmate names, PFN numbers, housing unit (including assigned bed number), and any special alerts, e.g., out-to-court, ITR, or other. The second list was titled, "Alameda County Sheriff's Office Active Roster – Inmate." This list provided the inmate names, dates of birth, units and assigned



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

bed numbers, sex, race, custody/security classifications, in-dates, days housed at SRJ, and any special alerts, e.g., out-to-court, ITR, or other. The administrative staff acknowledged that they do not track intellectually/developmentally or learning disabled inmates. However, healthcare staff explained that although Behavioral Healthcare staff do not test for intellectual/developmental or learning disabilities, if they believe an inmate has such a disability, they contact the East Bay Regional Center (or other Regional Centers) if the inmate was a past Regional Center consumer. Health care staff attempt to obtain accommodation and resource information that would be helpful for jail staff and for the inmate upon release to the community.

Education staff acknowledged dealing with learning disabled inmates in the classrooms. However, it doesn't appear that either healthcare, education, classification, the ADA Coordinator, or any other entities exchange disability related information with each other with respect to intellectual/developmental disabilities or learning disabilities. As a result, these inmates are not being tracked, which means key staff are unaware as to who these inmates are and are not aware of their accommodation needs. However, it must be noted that later documents that were produced had several learning disabled inmates listed along with their reasonable accommodation needs.

The CDCR DAPO provides inmate disability notification to the jail in compliance with the August 28, 2012 Federal court order (County Jail Plan for addressing Armstrong Class Members housed in county jails). But administrative staff were unable to produce a tracking list of their CDCR Armstrong class members that are housed at the jail. When custody management staff receives the notification from CDCR DAPO, the notification is reportedly sent to the Compliance Unit. Compliance Unit staff and other staff admitted that they were not sure as to what some of the CDCR Armstrong codes meant, and what exactly they are supposed to do with that information.

Regarding the intellectually/developmentally disabled inmates, Developmental Disability Program (DDP) codes would include NCF, DD1, DD2, and DD3. NCF is a code which in essence means the inmate is not intellectually/developmentally disabled (no cognitive deficits). DD1, which is the highest functioning of the intellectually/developmentally disabled inmates, includes cognitive deficits and mild adaptive support needs. DD2, which is a moderate functioning level of the intellectually/developmentally disabled inmates, includes cognitive deficits and moderate adaptive support needs, and they may have victimization concerns. DD3, which is the lowest functioning level of the intellectually/developmentally disabled inmates, includes cognitive deficits and severe adaptive support needs, and has an even higher likelihood of victimization concerns. The documentation that CDCR DAPO provides should include one of the aforementioned DDP codes as well specific adaptive support needs. However, if the specific adaptive support needs are not included then the code alone should serve as a trigger to obtain more information from CDCR DAPO.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

With regard to specific learning disabilities, the documentation from CDCR may include specific accommodation needs that are required to be provided to the inmate, particularly pertaining to healthcare encounters and events where due process may be involved, as well as other processes. If the specific accommodation needs are not included, then the code alone should serve as a trigger to obtain more information from CDCR DAPO.

**Conclusions**

The SRJ Facility staff must ensure that mentally, intellectually/developmentally, and learning disabled inmates are properly identified in order for staff to effectively provide reasonable accommodations as required by the ADA. Because regulations implementing the ADA requires a public entity to accommodate persons identified as disabled, a real-time networked tracking system is a necessary part of compliance.

The SRJ does not have a comprehensive networked ADA tracking system to track mentally, intellectually/developmentally, or learning disabled inmates, or their specific accommodation needs in order to ensure that their identified accommodation needs are provided, and to ensure they are afforded equal access to the jail programs, services, and activities.

As a result of not having a tracking system in place, healthcare staff, housing unit staff, disciplinary hearing officers and investigators, education staff, grievance staff, work supervisors, parole/probation staff, and other key personnel are unable to identify these types of disabled inmates. As a result, effective communication is not being consistently provided for these types of important events.

The healthcare and custody administrative staff (e.g., Compliance Unit, and ADA Coordinator) must monitor and follow-up more closely regarding the CDCR Armstrong disability information and better use that information to include the inmates into the current tracking system, whether via JMS, or CorEMR, etc. Additional outside information may also be used to aid in ensuring better assessments, (e.g., education information through Five Keys, outside school districts if available, and Regional Center information.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## HOUSING PLACEMENTS

The housing placement policy for disabled inmates is outlined in Policy/Procedures 1.14, 12.01, 12.04, and 13.02.

Policy/Procedure 12.01 Intake Classification, Section III, states in part, "Upon an inmate being assessed by mental health personnel while in ITR, mental health personnel will complete the mental health assessment form and provide a copy to the Classification Deputy." It also states, "Classification staff will classify disabled inmates with the inmate's disability given consideration when making housing assignments and placing the inmate's safety at the forefront. Being disabled in any way is not justification for a higher security classification."

Policy/Procedure 12.04 The Santa Rita Jail – Housing Unit Classification. The policy states in part, "Inmates will be assigned to housing units based on existing laws and regulations, the facility classification plan, and the needs of the facility pursuant to Minimum Jail Standards 1050." The procedure states in part, "A Housing Classification Detail document shall be updated and distributed on at least a monthly basis, or as necessary to accurately reflect the actual housing configuration of the Santa Rita Jail." The procedure also makes reference to Attachment 1: Santa Rita Housing Classification.

Policy/Procedures 1.14 Americans with Disabilities Act (ADA), and 13.02 Inmate Medical/Health Appraisal Screening, Special Clinics, Communicable Disease, Quarantines and Terminally Ill Inmates also addressed housing for disabled inmates. However, it appears that in both policies/procedures, the references to housing disabled inmates primarily centers around those inmates with physical disabilities. However, Policy/procedure 1.14, Section V. C., Housing Disabled Inmates, sub-section 12., states, "Disabled inmates who need assistance performing basic life functions on a daily basis will be housed in the Outpatient Housing Unit (OPHU). These inmates shall be given access to all programs and services available to inmates of the same classification." However, none of the policies/procedures specifically address the housing of inmates with intellectual/developmental or LD.

At the time of the Subject Matter Expert's site visits, nearly 400 "MEN" inmates were housed in designated behavioral health housing units. There was one inmate who was housed in a different unit (housing unit 34).

There is also an Alameda County Behavioral Health Care Services Adult Forensic Behavioral Health Policy/procedure – Disabled Inmates.

Section III sites that "inmates with serious mental impairments are referred to Adult Forensic Behavioral Health (AFBH) for access to mental health services.

At any time that an AFBH clinician suspects that an inmate may be developmentally disabled, the clinician must contact the Regional Center of East

Case 5:18-cv-07677-NC   Document 111-2   Filed 04/22/20   Page 35 of 85

SABOT
CONSULTING

ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

Bay to determine eligibility and/or current status of the patient's case. Contact is for the purpose of diagnosis and/or treatment."

**Observations**

The aforementioned Santa Rita Housing Classification attachment denotes the following housing designations and classifications for the housing units/pods:

|      |                        |
|------|------------------------|
| 1 A  | Ad/Sep (Males)         |
| 1 B  | Ad/Sep (Males)         |
| 1 C  | Ad/Sep (Males)         |
| 1 D  | Ad/Sep (Males)         |
| 1 E  | Ad/Sep (Males)         |
| 1 F  | Ad/Sep (Males)         |
|      |                        |
| 2 A  | Ad/Sep (Males)         |
| 2 B  | Ad/Sep (Males)         |
| 2 C  | Ad/Sep (Males)         |
| 2 D  | Ad/Sep (Males)         |
| 2 E  | Ad/Sep/IOL (Males)     |
| 2 F  | Ad/Sep/IOL (Males)     |
|      |                        |
| 8 A  | Special Overflow (Males) |
| 8 B  | Ad/Sep (Males)         |
| 8 C  | Ad/Sep (Males)         |
| 8 D  | Ad/Sep (Males)         |
| 8 E  | Ad/Sep (Males)         |
| 8 F  | Ad/Sep (Males)         |
|      |                        |
| 9 A  | Mental/IOL (Males)     |
| 9 B  | Mental/Min (Males)     |
| 9 C  | Mental/Med/Max (Males) |
| 9 D  | Mental/Med/Max (Males) |
| 9 E  | Mental/Min (Males)     |
| 9 F  | Mental/Med/Max (Males) |

Note: Unit 9 (Males) categorized as "MEN" (IOL, Min, Med, Max,) houses the more seriously mentally ill (SMI) who are not otherwise housed elsewhere due to other overriding security classification factors.

|       |                         |
|-------|-------------------------|
| 21 A  | Med/Max (Males)         |
| 21 B  | Special Overflow (Males) |
| 21 C  | Med/Max (Males)         |
| 21 D  | Max/Sep (Males)         |
| 21 E  | Border Brothers (Males) |
| 21 F  | Max/Sep (Males)         |



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

22 A   Protective Custody (PC)/Max (Males)
22 B   PC/Max/ and PC/Mental (Males)

24 A   Min (Females)
24 B   Min (Females)
24 C   Min (Females)
24 D   Mental/IOL (Females)
24 E   Ad/Sep and Max/Sep (Females)
24 F   Ad/Sep and Max/Sep (Females)

Out-Patient Housing Unit (as assigned per healthcare needs)

The Subject Matter Expert toured all of the aforementioned housing units where "MEN" inmates are housed, and also conducted staff interviews of medical, mental health, custody and classification staff, and reviewed applicable policies/procedures, and other relative documentation. This Subject Matter Expert did not review each "MEN" inmates classification to determine if they were appropriately housed. However, based on my review, there is serious concern that some "MEN" inmates are being inappropriately housed in higher classifications based solely on their disability. Inmates with an "MEN" designation are not generally housed in minimum security housing units.  At the time of the onsite review only one inmate with an "MEN" designation was housed in a minimum security housing unit.

There are no designated housing units or pods for intellectually/developmentally disabled or learning disabled inmates. Even if there were, they are not being identified or tracked.

When the Subject Matter Expert observed the ITR Intake processes, it was noted that Classification Deputies appropriately used and followed the ACSO Classification Report when interviewing the new arrivals. However, the form only asked about receiving prior treatment at mental institutions. The form and questioning did not include anything relative to intellectual/developmental disabilities.

Staff also appropriately used and followed the Classification Assessment Supplemental PREA Worksheet. The form and questioning covered whether the inmate has a mental, physical or developmental disability, whether the inmate exhibits any signs of mental, physical or developmental disability, and whether the inmate would like to speak to a mental health counselor.

Healthcare staff appropriately used and followed the Request for Mental Health Triage from, which covered history of psychiatric treatment, bizarre behavior, psychiatric medications, sign/symptoms of depression, safety cell, and IOL.

Medical staff also used the Inmate Disability Evaluation form, which asks about mental impairment, Assistance with Daily Living (ADL), and how identification is



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

made, e.g., inmate self-identifies, third part request, etc. There is also a Mental Health Referral form that was used.

Lastly, medical staff used and followed the Initial Health History and Physical Exam form. This includes mental health questions, as well as physical disabilities. When checkboxes are electronically marked on the form, it automatically generates an alert to obtain any related CDCR Armstrong disability information. However, the checkboxes only include physical disabilities and does not include those inmates with intellectual/developmental or learning disabilities.

The Subject Matter Expert did not note that any healthcare or custody staff violated or worked outside the scope of the aforementioned Intake screening and housing policies/procedures and forms, or housed inmates outside the above-mentioned housing matrix.

**Staff Interviews**

The Subject Matter Expert conducted interviews of healthcare staff as well as numerous Deputies, including those assigned to housing units, ITR (intake and classification), and other areas. Staff acknowledged that inmates are all housed based on classification and various security factors, including medical, mental health and disability concerns. Intake medical, mental health, custody, and classification staff all provided that disability information is gathered from the interview questionnaires (medical intake, custody intake, and classification intake) and prior Santa Rita Jail history, inmate self-identification, and on occasion a third-party referral, e.g., family member or attorney.

**Inmate Interviews**

The Subject Matter Expert conducted numerous inmate interviews. However, there were no identified concerns specific to housing placements. A couple of the inmates stated that they did not understand the Classification interview and subsequent housing decisions. This appears to be more of an effective communication issue, or lack of effective communication provided during the encounters.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## Conclusions

The Santa Rita Jail staff must establish policies/procedures and protocols to ensure that intellectually/developmentally and learning disabled inmates are properly identified, added into an electronic tracking system (list), and subsequently housed appropriately. But this is not being done.

The local policies/procedures should also include housing designations for these inmates. Intellectually/developmentally disabled inmates with high adaptive support needs and victimization concerns (if properly identified) are often clustered in to designated units or pods, in large part for closer monitoring, and for housing unit staff to be better equipped to provide required or needed assistance and prompting. However, the jail must monitor any clustering very carefully as this population should be clustered to a degree, but generally should not be exclusively clustered away from other general population inmates. In fact, unless there are other security or safety reasons to prevent it, intellectually/developmentally disabled inmates are generally often celled with or reside in the same housing units as non-disabled inmates. Although their Intelligence Quotient (IQ) or cognitive levels will not increase, these inmates can often improve on their everyday life-skills through observations of other inmates and positive interactions with them on an everyday basis. An ideal clustering situation could be a pod(s) mixed with intellectually/developmentally disabled inmates as well as non-disabled inmates. However, the SRJ administration must ensure that Classification staff carefully screen all inmates (non-disabled inmates as well as intellectual/developmental disabled inmates) for potential victimization, vulnerability, and predatory concerns as well as other factors when considering housing placement.

Ultimately, staff would need to be trained to best work with this population. Staff must be aware of their respective adaptive support needs (accommodation needs), and to be very proactive with this population in term of monitoring them and checking in on them on a regular basis.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

# ACCESS TO OUT-OF-CELL TIME (OUTSIDE YARD – POD / DAYROOM)

ACSO Detention and Corrections Policy and Procedure, Section III. C., Access to Recreation and Activity Programs at the Santa Rita Jail (SRJ) outlines the out-of-cell recreation activities requirements. Regarding Indoor Recreation, the policy/procedures states in part, "Inmates incarcerated at the SRJ shall have access to a variety of small games (chess, checkers, cards, etc.) which have been supplied to each housing unit. The Inmate Services Programs Supervisor will order games when needed." With regard to Quasi-Outdoor Recreation, the policy/procedure states in part, "All housing units have an outdoor security yard. Max-med and special handling units will utilize for outdoor recreation.

Outdoor Recreation: Minimum-security inmates are provided with a large open yard adjacent to minimum-security housing units."

Mentally, intellectually/developmentally, and learning disabled inmates are required to have equal access to SRJ's Recreation Yards and pods/dayrooms.

**Observations**

The Subject Matter Expert toured the SRJ grounds. There is a large outdoor yard designated for minimum security level general population inmates. The yard contains a baseball/softball field, exercise equipment/apparatus, as well as other activities, e.g., soccer, etc. As indicated earlier in this report, with the exception of one inmate, "MEN" inmates are not housed in the minimum housing units. Behavioral Health staff are not identifying intellectually/developmentally disabled or learning disabled inmates so it is unknown where these disabled inmates are being housed.

All other housing units have quasi-yards that are semi-covered, but nevertheless offer outside sunlight. Activities on the quasi-yards include basketball, handball, and soccer. There is no other recreation equipment. Access to the yards is through the rear of the respective housing units. Depending on unit designs, and classification/security level designations, e.g. "MEN", Ad/Sep, PC, max, med, min, etc., inmates either attend yard alone (e.g., walk-alone status), with their assigned cellmate only (if applicable), or with their assigned yard or pod/dayroom group (such as their assigned group or by tier, e.g., lower tier or upper tier).

The housing units have pods/dayrooms for inside recreational activities. The same process generally applies regarding either walk-alone status, pod time with a cellmate, or pod time with a group or tier of inmates. Available activities include; television, cards, dominoes, chess, checkers, board games, books, showers, and phones. However, each unit had different activities available, and there was no consistency. Most of the units had paperback books, but not all of them.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

The biggest and most obvious concern is that the SRJ currently does not have a standardized yard or pod/dayroom scheduling process. Reportedly, the SRJ is preparing to implement a new scheduling system which will produce an SRJ Master Schedule for yard and pod/dayroom activities. At the present time, housing unit Deputies or Sheriff's Technicians currently make out the monthly or weekly schedules for their respective units. There is no central authority reviewing the schedules to make sure that yard and pod/dayroom activities are equitable and in compliance with local policies/procedures.

**Staff Interviews**

During the Subject Matter Expert's interviews, housing unit Deputies and Technicians indicated that all inmates have access to their respective outside quasi-yard and pod/dayroom. But based on the dialogue with staff, there is no consistency amongst the housing units as to how much yard or pod/dayroom time is allotted within a given week or month. Each unit sets their own schedules.

One staff member reported that they provide one-hour per week yard time (Ad/Sep), but usually allow for more. Some of the staff admittedly reported that they can't keep up or come into compliance with yard time requirements (even with refusals) because there are not enough hours to provide for the various yard groups, walk-alones, etc.

When asked, staff provided that yard and pod/dayroom refusals are not logged (unless staff notices a pattern). Likewise, they admitted they generally do not ascertain as to why, unless there is a noticeable pattern. The overall yard time (for the yard times operated as-a-whole) are logged. There is an exception to the above logging of refusals for Ad/Sep inmates with regard to both yard and pod/dayroom. The refusals are logged, and the information is reportedly turned in to a Sergeant on a daily basis.

Another housing Deputy stated that his unit also provides one-hour of quasi-yard per week (Ad/Sep) and also acknowledged that if everyone elected to go to the yard, that "it would be difficult" to comply with yard mandates. To compound this problem, the Deputy admitted that they "yell yard", and the first ones to respond get to go. The Deputy acknowledged that most inmates tend to refuse yard call.

Of interesting note is the ACA Audit Report from the ACA Visiting Committee audit conducted in 2016.  For ACA Standard 4-ALDF-5C-01 – Recreation, the ACA Visiting Committee report stated the following: "During this audit period the Santa Rita Jail has continued to have difficulty ensuring all inmates have at least one hour of daily physical exercise outside their cell and outdoor when weather permits. The Santa Rita Jail is found to be non-compliant with ACA Standard 4-ALDF-5C-01"



In 2016, SRJ filed a waiver request to ACA for this ACA Standard, due to:

1) "….nature of these inmate's classification, they are housed, transported, and recreate individually and separately from other inmates";
2) "Outdoor recreation for all inmate security classifications above minimum security is performed in a partially enclosed quasi-yard accessed from inside the housing unit. This quasi-yard is not subdivided into smaller yards, and can only accommodate one A/I inmate at a time;"
3) "As of this writing, there are 255 A/I inmates, which is consistent with the average number of A/I inmates held at this facility at any particular time; and
4) "Given these numbers it is numerically impossible to provide every A/I inmate with their hour outside each day."

The waiver request was denied by ACA.

Staff also reported that special events such as sports and holiday activities are conducted throughout the year in the Transition Center (minimum yard area) and are approved through the Inmate Services Programs and custody administration.

Special events that was scheduled for May and June 2019, included:

- o Inmate Services
    - May 12, 2019 – Mother's Day Chapel Services
    - May 19, 2019 – Softball game with Temple De La Cruz Church
    - Scheduled June 2019 events:
        - June 8, 2019 – Softball game with The Well Church
        - June 9, 2019 – Father's Day themed services, Chapel
        - June 19, 2019 – Inmate Programs Graduation Ceremonies

However, most of these events are geared for the minimum security level inmates. Inmates categorized as "MEN" who would otherwise be minimum level if they were not "MEN" status, would be able to participate. Again, they appear to be discriminated against pursuant to ADA, due to their disabilities.

Regarding reading material, Inmate Services staff as well as housing Deputies indicated that book carts consisting of paperback books and magazines are brought to the housing units each month. This is consistent with local policy/procedure.

**Inmate Interviews**

An unusually high number on inmates who were interviewed stated that they never (or rarely) go to yard. Reasons for this varied, but included inconsistent yard schedules; being too tired (for inmates on psychotropic medications) based on unusually early morning yard calls immediately following early breakfast call;



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

having to hurry to get to yard before it's called off due to too many inmates going to yard; and nothing to do on the yard except basketball.

From the inmate interviews, allotted quasi-yard time ranged from a high of two-four times weekly (one hour each), to a low of one-two times per month (one hour each). Pod/dayroom time ranged from a high of two times daily (six or more hours total), to a low of one time every other day (one hour). One inmate reported that the unit does not open pod/dayroom at all.

Some of the inmates indicated that the book carts are brought to their unit monthly (as indicated in the policy/procedure), but numerous inmates stated that the book cart is brought to their respective housing units every two months. Some of the inmates indicated that over the last two or three months that Inmate Services staff stopped bringing the book carts. Others complained that there are not any (or enough) new books. A few inmates mentioned that they have to ask for books or magazines, as there are none in the unit. With regard to cards and board games, some of the inmates said that there are cards in their unit, while others stated that they had to purchase cards from the commissary. At least two inmates indicated that it is confusing to check out board games.

**Conclusions**

There are some real concerns regarding the system in which yard and pod/dayroom times and allotted timeframes are scheduled. As indicated above, the jail staff represented that they will soon be implementing a centralized Master Schedule. The schedules currently are not fair or equitable, and mentally, intellectually/developmentally, and learning disabled inmates are not being afforded equal access to recreation time, both indoor and especially outdoor. To ensure non-discrimination under the ADA, the jail staff must ensure that mentally, intellectually/developmentally, and learning disabled inmates receive equivalent yard and dayroom exercise and recreation time. Simply put, many of these inmates are not getting enough quasi-yard time in Title 15 and local policy/procedure. Also, as mentioned above, the quasi-yards due not have exercise equipment/apparatus as the minimum security level yard has.

For non-mobility disabled inmates it is important for housing deputies to ascertain why individual inmates are refusing or not attending yard or pod/dayroom activities, and to log and track such information. Although this tracking appears to be happening for Ad/Sep inmates, it should be the case for all of the aforementioned disabled inmates. There could be reasons such as decompensation, victimization, or other reasons as to why they are not participating.

Access to games and activities needs to be equitable and in accordance with the local policy/procedure. Lastly, staff from the Inmate Services Unit do not appear to be consistent with making their monthly rounds with the book cart and should be required to do so.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## ACCESS TO PROGRAMS

The SRJ is required to make all programs, services and activities accessible to

non-mobility disabled inmates. These inmates shall not be excluded from participation in, or be denied the benefits of the SRJ's programs, services and activities. The SRJ is required to make reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the SRJ can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity. Programs, services and activities include but are not limited to, self-help programs/groups, work assignments, vocational assignments, academic education assignments, religious services/activities, re-entry programs, visiting (social and attorney), exercise, showers, and dining, etc.

**Observations**

The Subject Matter Expert toured all applicable housing units at SRJ including areas where re-entry services, educational classes, and religious programs, and other activities are often conducted.

The Subject Matter Expert reviewed the current inmate program schedules for religious services and other non-religious programs, services and activities. The following is a breakdown of the listed schedules:

*Inmate Programs Schedules (Education, Religious and Non-Religious Programs)*

| Monday | Independent Study | 1300-1445 | Multiple Locations |
|---|---|---|---|
| | Substance Abuse | 0800-0945 | HU 3 Max (MP) |
| | Art Therapy | 1000-1145 | HU 3 Max (MP) |
| | JRT Max | 1300-1445 | HU 3 Max (MP) |
| | Substance Abuse | 0800-0945 | HU 4 Max (MP) |
| | Habits | 1000-1145 | HU 4 Max (MP) |
| | Financial Literacy | 1300-1445 | HU 4 Max (MP) |
| | CTE Roots | 0800-0945 | HU 7 Max (MP) |
| | CTE Roots | 0800-0945 | HU 7 Max (MP) |
| | A.S.E. | 1000-1145 | HU 7 Max (MP) |
| | Intro Construction | 1300-1445 | HU 7 (MP) |
| | A.S.E. | 0800-0945 | HU 21 F/Max |
| | Parenting | 0800-0945 | HU F/Max |
| | Serve Safe | 1000-1145 | HU 21 F/Max |
| | Baking | 1000-1145 | HU 21 F/Max |
| | Healing Trauma | 1300-1445 | HU 21 F/Med-Max |
| | Healing Trauma | 1000-1145 | Min Female |
| | A.S.E. | 1300-1445 | Min Female |
| | Baking | 0800-0945 | HU 25 Min |
| | Serve Safe | 0800-0945 | Min Male |



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

| | | | |
|---|---|---|---|
| | Intro Construction | 1000-1145 | Min Male |
| | Art Therapy | 1000-1145 | Min Male |
| | CTE | 1000-1145 | Min Male |
| | Parenting | 1300-1445 | Min Male |
| | Entrepreneurship | 1300-1445 | Min Male |
| | Financial Literacy | 1300-1445 | Med Male |
| | ESL Beginner | 0800-0945 | PC Male |
| | Intro to Construction | 0800-0945 | PC Male |
| | Healing Trauma | 1000-1145 | PC Male |
| | Computers | 1000-1145 | PC Male |
| | E.S.L. Advanced | 1000-1145 | PC Male |
| | CTE | 1300-1445 | PC Male |
| | Substance Abuse | 1300-1445 | PC Male |
| | Islamic Service | 1300-1400 | HU 24E |
| | Chaplain Nobles | 0700-1230 | |
| | Chaplain Rosales | 1300-2130 | |
| Tuesday | Independent Study | 1300-1445 | Multiple Locations |
| | CTE Roots | 0800-0945 | HU 3 Max |
| | Financial Literacy | 1000-1145 | HU 3 Max |
| | ASE | 1300-1445 | HU 3 Max |
| | Art Therapy | 0800-0945 | HU 4 Max |
| | Parenting | 1000-1145 | HU 4 Max |
| | CTE Roots | 1300-1445 | HU 4 Max |
| | ESL | 0800-0945 | HU 7 Max |
| | Substance Abuse | 1000-1145 | HU 7 Max |
| | Anger Management | 1300-1445 | HU 7 Max |
| | ASE | 0800-0945 | HU 9 MEN Med/Max |
| | CTE | 1000-1145 | HU 9 MEN Med/Max |
| | Substance Abuse | 1300-1445 | HU 9 MEN Med/Max |
| | Substance Abuse | 0800-0945 | HU 21 F Med/Max |
| | Art Therapy | 0800-0945 | HU 9 F Med/Max |
| | CTE | 1000-1145 | HU 21 F Med/Max |
| | Intro to Construction | 1000-1145 | HU 21 F Med/Max |
| | Hospitality | 1300-1445 | HU 21 F Med/Max |
| | Anger Management | 0800-0945 | Min Male |
| | Habits | 1000-1145 | Min Male |
| | ASE | 1000-1145 | Min Male |
| | Anger Management | 0800-0945 | Min Male |
| | Substance Abuse | 1300-1445 | Min Male |
| | Intro to Construction | 0800-0945 | Med Male |
| | Healing Trauma | 0800-0945 | Med Male |
| | Anger Management | 1000-1145 | Med Male |
| | CTE | 1300-1445 | Med Male |
| | JRT | 0800-0945 | PC Male |



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

|  | Anger Management | 0800-0945 | PC Male |
|---|---|---|---|
|  | ESL - ASE | 1000-1145 | PC Male |
|  | Art Therapy | 1000-1145 | PC Male |
|  | ASE | 1000-1145 | PC Male |
|  | Parenting | 1300-1445 | PC Male |
|  | Financial Literacy | 1300-1445 | PC Male |
|  | Art Therapy | 1300-1445 | PC Male |
|  | Christian Service | 1930-2100 | HU 24E |
|  | Bible Study (& 1on1s) | 1000-1200 | HU 9 |
|  | Various Chaplains | 0700-2100 |  |
|  | AA | 1900-2030 |  |
|  | Library | Varies | Varies |
| Wednesday | Independent Study | 1300-1445 | Multiple Locations |
|  | Substance Abuse | 0800-0945 | HU 3 Max (MP) |
|  | Art Therapy | 1000-1145 | HU 3 Max (MP) |
|  | JRT Max | 1300-1445 | HU 3 Max (MP) |
|  | Substance Abuse | 0800-0945 | HU 4 Max (MP) |
|  | Habits | 1000-1145 | HU 4 Max (MP) |
|  | Financial Literacy | 1300-1445 | HU 4 Max (MP) |
|  | CTE Roots | 0800-0945 | HU 7 Max (MP) |
|  | CTE Roots | 0800-0945 | HU 7 Max (MP) |
|  | A.S.E. | 1000-1145 | HU 7 Max (MP) |
|  | Intro Construction | 1300-1445 | HU 7 (MP) |
|  | A.S.E. | 0800-0945 | HU 21 F/Max |
|  | Parenting | 0800-0945 | HU F/Max |
|  | Serve Safe | 1000-1145 | HU 21 F/Max |
|  | Baking | 1000-1145 | HU 21 F/Max |
|  | Healing Trauma | 1300-1445 | HU 21 F/Med-Max |
|  | Healing Trauma | 1000-1145 | Min Female |
|  | A.S.E. | 1300-1445 | Min Female |
|  | Baking | 0800-0945 | HU 25 Min |
|  | Serve Safe | 0800-0945 | Min Male |
|  | Intro Construction | 1000-1145 | Min Male |
|  | Art Therapy | 1000-1145 | Min Male |
|  | CTE | 1000-1145 | Min Male |
|  | Parenting | 1300-1445 | Min Male |
|  | Entrepreneurship | 1300-1445 | Min Male |
|  | Financial Literacy | 1300-1445 | Med Male |
|  | ESL Beginner | 0800-0945 | PC Male |
|  | Intro to Construction | 0800-0945 | PC Male |
|  | Healing Trauma | 1000-1145 | PC Male |
|  | Computers | 1000-1145 | PC Male |
|  | E.S.L. Advanced | 1000-1145 | PC Male |
|  | CTE | 1300-1445 | PC Male |



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

| | | | |
|---|---|---|---|
| | Substance Abuse | 1300-1445 | PC Male |
| | Various Chaplains | 0700-2100 | |
| | | | |
| Thursday | Independent Study | 1300-1445 | Multiple Locations |
| | CTE Roots | 0800-0945 | HU 3 Max |
| | Financial Literacy | 1000-1145 | HU 3 Max |
| | ASE | 1300-1445 | HU 3 Max |
| | Art Therapy | 0800-0945 | HU 4 Max |
| | Parenting | 1000-1145 | HU 4 Max |
| | CTE Roots | 1300-1445 | HU 4 Max |
| | ESL | 0800-0945 | HU 7 Max |
| | Substance Abuse | 1000-1145 | HU 7 Max |
| | Anger Management | 1300-1445 | HU 7 Max |
| | ASE | 0800-0945 | HU 9 MEN Med/Max |
| | CTE | 1000-1145 | HU 9 MEN Med/Max |
| | Substance Abuse | 1300-1445 | HU 9 MEN Med/Max |
| | Substance Abuse | 0800-0945 | HU 21 F Med/Max |
| | Art Therapy | 0800-0945 | HU 9 F Med/Max |
| | CTE | 1000-1145 | HU 21 F Med/Max |
| | Intro to Construction | 1000-1145 | HU 21 F Med/Max |
| | Hospitality | 1300-1445 | HU 21 F Med/Max |
| | Anger Management | 0800-0945 | Min Male |
| | Habits | 1000-1145 | Min Male |
| | ASE | 1000-1145 | Min Male |
| | Anger Management | 0800-0945 | Min Male |
| | Substance Abuse | 1300-1445 | Min Male |
| | Intro to Construction | 0800-0945 | Med Male |
| | Healing Trauma | 0800-0945 | Med Male |
| | Anger Management | 1000-1145 | Med Male |
| | CTE | 1300-1445 | Med Male |
| | JRT | 0800-0945 | PC Male |
| | Anger Management | 0800-0945 | PC Male |
| | ESL - ASE | 1000-1145 | PC Male |
| | Art Therapy | 1000-1145 | PC Male |
| | ASE | 1000-1145 | PC Male |
| | Parenting | 1300-1445 | PC Male |
| | Financial Literacy | 1300-1445 | PC Male |
| | Art Therapy | 1300-1445 | PC Male |
| | Christian Service | 1930-2100 | HU 24E |
| | Bible Study (& 1on1s) | 1000-1200 | HU 9 |
| | Various Chaplains | 0700-2100 | |
| | NA | 1930-2030 | HU 24 & 34 |
| | Library | Varies | Varies |



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

| Friday | Independent Study | 1300-1445 | Multiple Locations |
|---|---|---|---|
| | Substance Abuse | 0800-0945 | HU 3 Max (MP) |
| | Art Therapy | 1000-1145 | HU 3 Max (MP) |
| | JRT Max | 1300-1445 | HU 3 Max (MP) |
| | Substance Abuse | 0800-0945 | HU 4 Max (MP) |
| | Habits | 1000-1145 | HU 4 Max (MP) |
| | Financial Literacy | 1300-1445 | HU 4 Max (MP) |
| | CTE Roots | 0800-0945 | HU 7 Max (MP) |
| | CTE Roots | 0800-0945 | HU 7 Max (MP) |
| | A.S.E. | 1000-1145 | HU 7 Max (MP) |
| | Intro Construction | 1300-1445 | HU 7 (MP) |
| | A.S.E. | 0800-0945 | HU 21 F/Max |
| | Parenting | 0800-0945 | HU F/Max |
| | Serve Safe | 1000-1145 | HU 21 F/Max |
| | Baking | 1000-1145 | HU 21 F/Max |
| | Healing Trauma | 1300-1445 | HU 21 F/Med-Max |
| | Healing Trauma | 1000-1145 | Min Female |
| | A.S.E. | 1300-1445 | Min Female |
| | Baking | 0800-0945 | HU 25 Min |
| | Serve Safe | 0800-0945 | Min Male |
| | Intro Construction | 1000-1145 | Min Male |
| | Art Therapy | 1000-1145 | Min Male |
| | CTE | 1000-1145 | Min Male |
| | Parenting | 1300-1445 | Min Male |
| | Entrepreneurship | 1300-1445 | Min Male |
| | Financial Literacy | 1300-1445 | Med Male |
| | ESL Beginner | 0800-0945 | PC Male |
| | Intro to Construction | 0800-0945 | PC Male |
| | Healing Trauma | 1000-1145 | PC Male |
| | Computers | 1000-1145 | PC Male |
| | E.S.L. Advanced | 1000-1145 | PC Male |
| | CTE | 1300-1445 | PC Male |
| | Parenting | 1000-1145 | Med Male (MP) |
| | Substance Abuse | 1300-1445 | PC Male |
| | Various Chaplains | 0700-2100 | |
| | | | |
| Saturday | Parenting | 1100-1245 | Fem SRJTC |
| | Parenting | 0900-1045 | Min Male SRJTC |
| | Various Religious Serv | Varies | HU 31, 34 |
| | Various Chaplains | 0700-1500 | |
| | Start w/ a Story & AA | Varies | HU 21, 24 |
| | | | |
| Sunday | Various Religious Serv | Varies | HU 31, 34 |
| | Various Religious Serv | Varies | HU 9 |
| | Various Chaplains | 0700-2130 | |



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

### Religious Services

The Catholic Chaplain makes all religious activity/service schedules (e.g., Catholic, Protestant, and all others). There are seven Chaplains, one administrative staff member, and two volunteer Rabbi's for Jewish services, as well as other volunteers.

Chapel services are held in the Chapel (on the minimum side, next to the Transition Center). Minimum custody inmates can go to the chapel once per week, where English & Spanish services are available. Chapel for minimum security level inmates is conducted on Saturday morning, Sunday afternoon, and Tuesday afternoon. Catholic services are held either 3 or 4 Sundays per month, and each unit has at least one service per week. Non-Catholic Christians and other faiths can receive services (SRJ Chaplaincy will contact community volunteers as necessary).

Other services include: Television channel 3 plays religious services video, 1-on-1 counseling is available, related notices/posters in each living area, and the Message Request slip process is used for religious services requests. Chaplains usually conduct the 1-on-1s in the housing unit multi-purpose rooms. The multi-purpose rooms can accommodate up to 20 inmates at a time for services. Religious artifacts are provided. All religious services information will soon be in the electronic tablets.

Inmates can fill-out and submit Message Request forms for the following religious services/activities or other requests. Special activities include: spiritual and grief counseling, providing inspiration and encouragement during difficult times, prayer and resources, assisting all faiths with spiritual material relating to their beliefs, Baptism (offer Baptismal services and certificates to Christian faiths), communion, Bible study, chapel worship service, and re-entry support upon release.

Chaplaincy staff reportedly conduct Needs Assessments twice annually for religious services, and monthly statistics reports are completed. When asked, chaplaincy staff indicated that chaplaincy or custody staffing shortages and emergencies can cause cancellations or delays in religious programs.

The Intake/Booking video as well as the Title 15 contain information on religious services/activities at SRJ. The SRJ has contracts with the Acts Full Gospel and with the Oakland Diocese. There is also a Muslim Imam on contract.

SRJ provided a spreadsheet listing religious services for Ad/Sep and special handling Units: One-on-one Counseling, Correspondence Course – Religious Studies, Special Events (Baptisms, Reconciliation Services, Religious Artifacts, Religious Diets, etc.) are all offered in Housing units 1, 2, 9, 21, 24, and OPHU.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

**Education**

The "Five keys Schools and Programs" operates education programs at SRJ.
Class Availability varies based upon the housing unit that a student resides in.
The length of classes are one hour and 45 minutes (within a Five Keys semester).

Classes vary, as some classes meet once a week, some meet twice a week
(T/TH or M/W), some convene three days per week (M/W/F), and others are in
session five days a week (M-F).

Five Keys uses an open enrollment process, with new students starting each
week. Some classes have pre-requisites, and the enrollment process includes
students requesting a class and being cleared by Inmate Services and
Classification. Prospective students must fill-out a Five Keys Programs form,
which lists current classes available for students living in their respective housing
units. It also lists other classes not currently available for their respective housing
units but allows the students to list other classes that they have an interest in, so
that Five Keys could consider adding in the future (assuming there is enough
interest from other inmates). The form asks if they are covered under the ADA
(yes or no), whether they have a high school diploma, to select class(es) desired,
and it describes the programs. Students reportedly can earn certificates in all
classes.

Programs following programs are available at SRJ:

- Adult Basic Education/Independent Study
- Anger Management Art Therapy
- Baking/Serve Safe
- Computer Technology (CPU)
- Employment/Job Readiness
- ESL
- Financial Literacy
- 7 Habits of Highly Effective People
- Hospitality / Catering
- Intro to Construction
- Math for the Trades
- Parenting Inside out
- Restorative Justice
- Roots to Success – Environment Literacy & Job Readiness (CTE)
- Substance Abuse

The following is a breakdown of classes offered in specific housing units (as
listed in the class information form):

*Five - Keys Education Schedules (by housing units)*

- **1, 2, 8, 21** (Pods D, E, F), **22**
  - Independent Study Program (ISP)/High School Diploma
    and/or GED



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- 3
  - Roots of Success
  - Substance Abuse
  - Art
  - High School Diploma/Independent Study (A.S.E./HiSet/ESL)
  - Financial Literacy
  - Job Readiness Training
- 4
  - Roots of Success
  - Substance Abuse
  - Financial Literacy
  - Parenting
  - 7 Habits of highly Effective People
  - Art
- 6
  - Roots of Success
  - Substance Abuse
  - Art Therapy
  - High School Diploma/Independent Study (A.S.E./HiSet/ESL)
  - Job Readiness Training
- 7
  - Roots of Success
  - Introduction to Construction
  - Substance Abuse
  - High School Diploma/Independent Study (A.S.E./HiSet/ESL)
  - English as a Second language (ESL)
  - Anger Management
- 9 (Maximum Men)
  - Roots of Success
  - Substance Abuse
  - High School Diploma/Independent Study (A.S.E./HiSet/ESL)
- 21 (Medium/Maximum Women)
  - Roots of Success
  - Parenting
  - Substance Abuse
  - Introduction to Construction
  - Baking
  - Healing Trauma
  - High School Diploma/Independent Study (A.S.E./HiSet/ESL)
  - Financial Literacy
  - Serve Safe
  - Art Therapy
  - Hospitality
- 24
  - High School Diploma/Independent Study Program



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- Healing Trauma
- o **31 (Minimum Men's)**
  - Serve Safe
  - Substance Abuse
  - High School Diploma (A.S.E./HiSet/GED)
  - Roots of Success
  - Art
  - Entrepreneurship
  - Parenting
  - Anger Management
  - Intro to Construction
  - Baking
  - 7 Habits of highly Effective People

- o **32 (Medium Men's)**
  - Roots of Success
  - Anger Management
  - Substance Abuse
  - Intro to Construction
  - High School Diploma/Independent Study (A.S.E./HiSet/GED/ESL)
  - Parenting
  - Financial Literacy
  - Healing Trauma
- o **34 (Men's Protective Custody)**
  - Roots of Success
  - Anger Management
  - Substance Abuse
  - Employment Readiness
  - Computers
  - Art Therapy
  - Serve Safe (Food Handlers Certification)
  - High School Diploma/Independent Study (A.S.E./HiSet/GED/ESL)
  - Parenting
  - ESL
  - Financial Literacy
  - Entrepreneurship
  - Intro to Construction
  - Building Resilience/Exploring Trauma

For the month of May, 35 students received certificates in the following subjects:

- Anger Management: 6
- Art Therapy: 3



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- Computers: 3
- Entrepreneurship: 11
- Financial literacy: 1
- Habits: 4
- Roots: 6
- Substance Abuse: 1

To qualify for any class, the inmate's release date must be more than 30 days, except for "Parenting Inside Out."

**Commissary**

Many of the inmates who were interviewed indicated that they utilize the commissary weekly. Nearly all inmates provided nothing but positive feedback relative commissary processes.

*Visiting*

The following visiting rules apply to all three custody/security classifications (maximum, medium, and minimum); three non-contact visits per week, and three video visits per week. No computer expertise is needed to operate the video visiting capability (just an on/off switch), to which staff actually operate the equipment. Video visits are monitored equally amongst all classifications of inmates, and the families charged $6.25 for 25 minutes. Video visiting info is included in the Orientation materials. Inmates are not authorized to participate in visits while on Safety Cell status. Visitors who are felons, may only participate in video visiting. Visiting is closed on Mondays and Tuesdays. The following is a breakdown of the SRJ Visiting schedule:

*Visiting Schedule (by Housing Unit)*
- **1, 2, 3, 4**
  - Wednesday (0800 – 1100)
  - Thursday (1800 – 2100)
  - Saturday (0800 – 1100)



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- **6, 7, 8, 9**
  - Wednesday (1200 – 1500)
  - Friday (0800 – 1100)
  - Saturday (1800 – 2100)

- **21 (Pods A, B, C), 22, 24**
  - Sunday (0800 – 1100)
  - Thursday (0800 – 1100)
  - Friday (1800 – 2100)
- **21 (Pods D, E, F) 31, 34 (Pods A, B, C), OPHU**
  - Sunday (1200 – 1500)
  - Wednesday (1800 – 2100)
  - Friday (1200 – 1500)
- **32, 34 (Pods D, E, F)**
  - Sunday (1800 – 2100)
  - Thursday (1200 – 1500)
  - Saturday (1200 – 1500)

Visiting is equitable amongst all custody levels and housing units.

### *Re-entry Programs/Transition Center*

The SRJ operates a Transition Center (SRJTC) for re-entry programming, per AB 109. The Mission is to bridge the gap between prerelease and post release services that are managed through intensive case management in collaboration with the Alameda County Probation Department. In the month of May 2019, reportedly 544 inmates were seen in the SRJTC. The SRJTC has partnered with a wide range of services, community-based organizations, non-profits and other county offices that continues to move forward and grow in collaboration with its partners to reduce recidivism by helping the offender to facilitate a smooth successful transition from jail back into the community. The Subject Matter Expert toured the SRJTC. There were two inmates using computers and actively, participating in some of the programs. The following is a list of re-entry service providers:

*Re-Entry Service Providers*

Adobe Services, Alameda County Probation Department, ACSO Youth and Family Services Bureau, Birth Justice Project, Center for Employment Opportunities (CEO), Center Point, East Oakland Community Project (EOCP), Men of Valor Academy, Chabot College Open Gate, Oakland Private Industry Council, Inc., Leaders in Community Alternatives (LCA), Metrix Learning, Roots Community Health Center, Tri-Valley Haven, Tri-Valley Haven (Men's Class),California Forensic Medical Group (CFMG), Alameda County Behavioral Health Care Services (BHCS), Alameda County Community Development Agency, Alameda County Public Defender's Office, Alameda County Workforce Investment Board, Axis Community Health, A Safe Place, Refocus, Five Keys Charter School, and American Job Center of California.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

Alameda County Re-Entry Resources include but are not limited to: Legal assistance, primary care services, substance use, behavioral/mental health, benefit enrollment services (Medi-Cal), career vocational education, crisis line, education, employment, family reunification, food, and housing (emergency/transitional/permanent).

### *Library*

For library and literacy services, there is a current Memorandum of Understanding (MOU) between the Alameda County Sheriff's Office and the Alameda County Library to meet the objectives and requirements of the California Code of Regulations, Title 15, Minimum Jail Standards. The library's responsibilities include the following: all housing units will be minimally visited once every four weeks, book carts will be filled with materials appropriate to each unit (e.g., security), there is an aggressive donation program, there are multiple language books (e.g., Spanish, Chinese and other languages), staff and inmate literacy volunteers are required to attend a civilian jail orientation class, library staff must spend at approximately 60 percent of their time at SRJ, there is a Literacy Specialist position, and a part-time Clerk II, Librarian, and Senior Program Specialist. There is also a requirement to produce Literacy Program Reports to include inmates name and PFN numbers who receive tutoring from an instructor, class start date, and time and location. There is reported inconsistencies with the delivery of the book carts. The local policy/procedure dictates monthly service to each unit, but this isn't always being done.

### *Sanitation/Cleanliness/Showers/Hygiene*

The Subject Matter Expert's overall impression is that the jail appeared to be very neat, clean and orderly. It is apparent that staff and inmates take pride in their living environment. There were isolated areas that needed attention, such as the OPHU safety cell as mentioned earlier in this report. There was at least one other safety cell that was not being used that contained cobwebs and was dusty.

The reviews from the inmates who were interviewed were mixed. Some of the inmates reported that their assigned cells and living areas were in need of cleaning, as well as the showers. But a majority of the inmates interviewed indicated that their cells were clean, and that staff do a good job to offer them cleaning supplies once per week, and even assign unit workers to help clean the cells or areas if needed. There were virtually no complaints regarding laundry and exchange and linens.

Inmates have the opportunity to receive haircuts as well as receive facial grooming.

### Staff Interviews

The Subject Matter Expert interviewed a multitude of staff who provide program services to inmates housed at the SRJ. This included Deputies from the housing units as well as numerous other badge staff. The Subject Matter Expert also



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

interviewed additional staff members, including Inmate Services staff, which included those responsible for religious services, re-entry programs, education, visiting, and library, as well as others. Staff admitted that they have the resources to facilitate all classes in accordance with the contract, but do not have the resources to fulfill the needs of the entire SRJ inmate population.

The Subject Matter Expert toured the Sandy Turner education building, but all classes were in session, therefore was unable to interview any Five Keys (education) staff or inmates. However, separate confidential interviews of education staff were conducted. Classes are held in the Sandy Turner Building as well as in the multi-purpose rooms in the respective housing units. Multi-purpose rooms can hold up to 12 students, while the classrooms in the Sandy Turner Building can accommodate between 18-20 students each. Five Keys has 12-13 Career Technical Education (CTE) instructors, four Academic teachers, one Student Services Specialist, and administrators, e.g., Principal and Assistant Principal. Staff indicated that there is not any CTE programs in Ad/Sep or special housing units. Instructors reportedly conduct 1-on-1 sessions at least once per week. Students can earn high school units and can take the GED. Attendance records are kept in the electronic "Oasis" system. The Assistant Principal oversees day-to-day scheduling and enrollment. Students can earn their diploma, GED, take ESL, participate as an in-class student, and they offer an Independent Study option. Staff indicated that Five Keys is working to provide college classes in the future.

Five Keys reportedly has a Special Education Teacher on staff. Depending on an inmate's Individualized Education Program (IEP) requirements (if there is one on file from an outside school district), an inmate may be provided extra time, 1-on-1 help, or other accommodations. The IEPs are reevaluated once per year.

A school psychologist comes to the SRJ periodically to provide emotional support for the inmates. Currently there are five active IEP cases.

When asked, Five Keys staff indicated that the intellectual/developmental and learning disabled information they have is not shared with custody or healthcare administrators or staff.

The Subject Matter Expert interviewed three custody staff members regarding the Transition Center. Deputy Baughman was very passionate about the program, which was great to see.

Staff indicated that grant money funds the programs, and the specific grants received is what determines the target or group that SRJ re-entry staff attempt to secure. There are 21 community-based organizations that offer everything from housing, healthcare, education, employment, drug treatment, and more. The organizations generally send staff to SRJ at least once per month. Ad/Sep inmates or those in specialized housing are unable to access the Transition



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

Center, but contracted re-entry organizations staff go to them via their assigned housing units.

Re-entry staff use a scheduling system for the service providers. For inmate eligibility, their date, age, and qualifications are all determining factors. Inmates have to be AB 109 qualified to participate. Otherwise, nobody is excluded, and Deputies interview each inmate candidate. Re-entry staff reportedly recruit when they are in the various housing units. Classes and services that are offered are posted in the housing units. Re-entry/Transition Center staff also stated that they attend meetings around California and are able to see what other jails/detention centers are doing for their re-entry programs.

Two custody staff members were also interviewed regarding the piloted electronic tablets. The tablets were piloted in early 2019, for all interested inmates in Unit 24. The target date for jail-wide implementation was reportedly Sept 2019. There is free software (for now), and eventually inmates will be able to purchase programs. Programs that can be accessed include; medical requests, mental health requests, dental requests, optometry requests, inmate services, commissary, Title 15, grievances pending, message requests, 5 Keys information, and more. The inmates will also be able to access movies, music, websites, photos, emails, and text messages in future. When asked, staff admitted that there has not been any training or information provided to the inmates for operation of the equipment. As applicable, inmates will continue to have to option of either using the tablet system or paper, e.g., grievances, inmate programs, etc.

The Subject Matter Expert interviewed three Deputies regarding inmate transportation. Inmates are transferred to and from state or federal courthouse, to outside medical appointments, and to the San Quentin State Prison – Reception Center. Transport staff normally have documents, including Court disposition paperwork (each inmate has), sometimes they have red hazard flags (e.g., violent behavior, wheelchair user, housed in Ad/Sep, etc.). Transport information is logged in to Automated Integrations Time Management System (ATIMS) System. But the staff acknowledged that they do not always have any specific disability or accommodation information, e.g., EC needs.

The Subject Matter Expert interviewed three staff members regarding library services. They indicated that the control booth Technicians have a "Red Book", for all logged out-of-cell activities, e.g., visits, classes, etc. There is no actual law library per se, but legal services can be requested through Inmate Services via the Message Request process. The requested information is provided to the Legal Research Association.

**Inmate Interviews**

The major complaints from inmates regarding programs is that there are not enough of them. Inmates were complaining that they didn't know what programs



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

are available. This ties back into a lack of orientation materials/handbook being provided.

**Conclusions**

The SRJ handbook/orientation materials does not include any ADA/Disability program information or ADA Coordinator position and contact information. The materials need to be updated and must be provided to all new arrivals.

Inmates categorized as "MEN" status who are housed in units 1, 2, 8, 9, 21, and 22 clearly are not being afforded the similar or equal Inmate Services programming (e.g., self-help groups/classes) to that of other units. Inmates who are classified as "MEN", Administrative Segregation, or inmates who fail to meet the criteria for general population classes, are only eligible for Independent Study and Literacy.

Some inmates have reported inconsistencies with the delivery of the book carts. The local policy/procedure dictates monthly service to each unit, but this allegedly isn't always being done. Jail management staff should look at this issue more closely to ensure policy is being followed.

Five Keys staff represented that they have the resources to facilitate all classes in accordance with the current contract, but do not have the resources to fulfill the needs of the entire inmate population. Inmates on AD/Sep status and "MEN" inmates are not being afforded the same educational opportunities as other inmates housed in other areas. This is a complicated issue that needs to be addressed consistent with the safety and security of the jail facility.

The major complaints from inmates regarding programs is that there are not enough of them. Inmates were also complaining that they didn't know what programs are available. Again, this ties back into a lack of orientation materials/handbook being provided to inmates.

Transportation staff are not provided with disability and accommodation needs information.

Mentally, intellectually/developmentally disabled, and learning disabled inmates must be trained on the electronic tablets upon jail-wide roll-out.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## ACCESS TO WORK ASSIGNMENTS

The SRJ must ensure that mentally, intellectually/developmentally, and LD disabled inmates have the opportunity to participate in the SRJ work assignments.

**Observations**

The Inmate Worker Program policy/procedure is outlined in Alameda County Sheriff's Office Detention and Corrections Policy and Procedure 12.08.

All sentenced minimum-security level inmates are allowed to participate in the work program unless already assigned to education or prohibited by classification. The policy/procedure also states that SRJ provides opportunities for "developmentally disabled" inmates. Along with other selection criteria, the policy/procedure states that inmates with disabilities who wish to participate in the inmate worker programs, who, with reasonable accommodations can perform the essential functions or duties of the work program, shall be allowed to participate.

If qualified, maximum and medium security inmates may be assigned to: pod worker, quasi-yard worker, housing unit back-house area worker, dining room worker, laundry exchange, or meal distribution. Sentenced minimum security workers may be assigned to laundry or the kitchen.

The policy/procedure also states that utilization of persons with disabilities in the work programs is mandatory.

**Staff Interviews**

The Subject Matter Expert interviewed two kitchen staff from (Aramark). When asked, staff indicated that all inmates are general population inmates, and they do not hire inmates categorized as "MEN", or intellectually/developmentally disabled inmates, and they don't believe they have any learning disabled inmates. One of the staff members doesn't believe they have ever had a worker with mental health concerns. One of the staff said she would not have a problem supervising an intellectually/developmentally disabled inmate, or one with mental illness. Aramark Corporation reportedly has about 60 workers for each shift.

Staff stated that breakfast is served weekdays at 5 AM or later, and on weekends at 6 AM or later.  Bag lunches are sent out to the housing units starting at about 9 AM. Dinner is generally dispatched to the units prior to 3 PM (in cart warmers), and unit staff usually serve the food in the units between 1600-1630 hours. There are meals for different diets provided.

Male inmates work the morning through early evening time periods, and female inmate workers work the late-night shift (cleaning crew).



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

The Subject Matter Expert interviewed two laundry staff Deputies. The laundry has a minimum of 9-17 inmate workers (average about 13 at any time), and there were 14 assigned on the day of the walkthrough. Inmate worker positions include; washers, sorters, off-loading from dryers to laundry carts, dryers, and folders (in the pit). As is also the case for kitchen workers, Classification staff determine eligibility (in accordance with the aforementioned policy/procedure) for laundry workers. Staff indicated that laundry exchange is one day per week in each unit. Some units do on-site 1-for-1 exchange in unit, and other units do laundry slips.

When asked about "Mentally, intellectually/developmentally, and learning disabled inmates, staff indicated that they don't have any of those inmates employed. They also admitted that they don't have a tracking list of disabled inmates or accommodation needs. One of the staff indicted that staff would only know an inmate's accommodation needs if an inmate were to tell them, otherwise they would "figure it out." They said they would accommodate but would refer the inmate back to medical or mental health.

### Inmate Interviews

There were no mentally, or intellectually/developmentally disabled inmates assigned to the laundry, and no tracking list, so there was no way to know whether a non-mobility inmate was assigned. However, I asked one of the assigned laundry Deputies if he had any assigned inmates who he thought might possibly be intellectually/developmentally or learning disabled. As a result, I interviewed an inmate who had been assigned to the laundry for a short period of time. The inmate was a general population inmate and stated that he used to work in the kitchen. He said he was in special education in school while growing up, and had IEPs in school, and had been diagnosed years earlier as having a learning disability. He said that informal 1-on-1s with work supervisors helps him understand his job. He said that nobody at SRJ has ever asked him about his learning disability or accommodation needs.

### Conclusions

The SRJ currently does not track (or adequately track) inmates with intellectual/developmental disabilities, or learning disabilities. The SRJ is violating ADA and their own policy/procedure by not providing opportunities for non-mobility disabled inmates. Along with other selection criteria, the aforementioned policy/procedure states that inmates with disabilities who wish to participate in the inmate worker programs, who, with reasonable accommodations can perform the essential functions or duties of the work program, shall be allowed to participate.

Inmates categorized as "MEN" who otherwise have (or would have) minimum security classification level are not being afforded the opportunity to participate in kitchen or laundry jobs, which comprise the bulk of available positions. In essence, they are being discriminated against because of their disability.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

With the exception of a few "MEN" inmates assigned as housing unit workers, these inmates are widely not being hired. Until an adequate identification and tracking process is implemented, mentally, intellectually/developmentally, and learning disabled inmates will likely continue to be discriminated against.

The SRJ provided a current list of Workers with "MEN" Flag (as of 9/27/19). There were only seven inmates on the list for all of SRJ. It is most certain that each of these positions are housing unit worker positions.

The work positions that do exist do not have corresponding essential functions identified. This is problematic as non-mobility disabled inmates may need a reasonable accommodation(s) in order to be able to perform the essential functions of a given position. But without any clear essential functions listed, it is more difficult for a disabled inmate to obtain and or retain a position.

The aforementioned inmate who was interviewed appears to have a learning disability, but the SRJ did not identify it. The SRJ administration must ensure that adequate Intake screening questions are asked in ITR Intake, the Compliance unit or ADA Coordinator (or other appropriate staff) identifies any applicable disabilities from the CDCR DAPO information regularly provided, ensure the information is placed on an SRJ tracking system, and ensure that Five Keys administration shares any applicable disability related information with appropriate SRJ custody and Behavioral Health personnel.

The SRJ must do a better job of identifying mentally, intellectually/developmentally, and LD inmates, and ensuring they have equal access to work assignments. The SRJ must ensure there are detailed job duties, or duty statements for inmate worker positions; the essential functions associated with each position must be contained; and SRJ must utilize specific approved hiring criteria which will not automatically screen-out or tend to screen out any disabled inmates. Staff must also ensure that mentally, intellectually/developmentally, and learning disabled inmates receive reasonable accommodations during their work hours, even if the accommodations are necessary to ensure an inmate meets the essential functions of the job.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## INMATE ADA GRIEVANCES

One of the best tools for any jail/detention center to best monitor "the pulse of the jail" is through the grievance process. A grievance system enables inmates to file complaints regarding conditions as well as events in the jail where the inmate believes their rights are violated, including being denied ADA accommodations and requests for accommodations. In essence, it's an effective and proven avenue they have to know that their voices are heard, and their issues will be taken seriously and addressed as appropriate.

To comply with the August 28, 2012, federal court order (County Jail Plan for addressing Armstrong Class Members housed in county jails), issued by Judge Claudia Wilkins, in the matter of Armstrong vs. Brown, Case Number 94-2307CW, the SCSD detention facilities received CDCR 2275-CJ Forms-Requests for Reasonable Modification or Accommodation for Access to Housing and/or Program(s) in a County Jail from CDCR.  Armstrong class members housed in county jails must have ready access to disability grievance forms.  This can be either the CDCR's Reasonable Modification or Accommodation Request form (CDC 1824) or a separate county jail grievance form. The county jail grievance form must be;

- Readily available to all class members housed in that county's jail facilities;
- Have an initial response deadline of no later than fifteen calendar days from receipt by the designated jail staff member;
- Contain a provision for expediting a response if the appeal alleges a condition, which is a threat to the parolee's health or safety, or is necessary for participation or effective communication in a parole revocation proceeding;
- Include a provision for review of the parolee's request by medical staff, if necessary;
- Provides a right to appeal denials; and
- Requires that a copy of each and every grievance and response be provided to Armstrong Defendants at the same time it is provided to the *Armstrong* class member.

The SRJ grievance process is outlined in the Alameda County Sheriff's Office Detention and Corrections Policy and Procedure 16.03 Inmate Grievance Procedure. It describes the Inmate Grievance Form (ML-51), the Inmate Grievance Response Supplemental Information Form (ML-53), Informal Resolution Process, Grievance Filing Process, Emergency Grievance Process, Standard Grievance Filing Process, Grievances Pertaining to ADA, and other topics. The policy/procedure requires that staff provide assistance to those in need to understand and complete the grievance process (e.g., "developmentally delayed").



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

The policy/procedure requires that staff shall provide assistance to inmates who require assistance in understanding and completing the process. this is especially true if the inmate requires assistance in writing or if the inmate is physically impaired or "developmentally delayed."

**Observations**

The aforementioned policy/procedure does not contain any language pertaining to expedited timeframes for emergent or urgent issues (only for PREA issues). Likewise, there is no language regarding interviewing for clarification in the event grievance unit staff (or other staff) are unable to discern what the inmate is claiming and/or requesting.

Grievance forms are located in all housing units. However, inmates must ask the housing Deputies for the grievance forms. There are no associated timelines for inmates to submit grievances. Inmates must check the ADA Check box on the grievance form (at the top right-hand portion of the form). Inmates can give their completed grievance to staff, or they can place it in the grievance box in the unit (multi-purpose/dining area). Sergeants check the grievance boxes at least twice daily (once each shift). Other methods for submitting include; via TTY, purple tablet and foreign language forms.

Housing unit Deputies attempt to solve the issues at the lowest possible level (informally) if possible. If successful, the grieving inmate signs the bottom of the grievance form, and the Deputy writes a supplemental report. There will not be a tracking number for these grievances.

If unresolved, the Deputy calls for a tracking number. The Deputy then submits the grievance to grievance unit, where it is assigned to one of three Deputies to try to resolve, by investigating the issue and reaching a finding. Disability related grievances are also routed to the ADA Compliance Office and investigative Deputy. The official decision is rendered by the Grievance Sergeant. The Sergeant signs off on the decision.

Inmates have a right to appeal the grievance decision. A Lieutenant then administers the appeal findings. However, the final authority rests with the Commanding Officer.

The SRJ Grievance Office can produce point-in-time list of ADA grievances. A monthly report is produced.

**Staff Interviews**

When interviewing a staff member about the grievance process, and when asked about scribing or providing assistance to a mentally, intellectually/developmentally, or learning disabled inmate, the Deputy said "DD" inmates are housed in "medical", and that he would contact Behavioral Health for any assistance if an inmate needed it. Although the policy/procedure does not specifically indicate who has to provide the accommodations to "developmentally



delayed" or other inmates, housing unit staff should not have resort to reaching out to Behavioral Health staff to provide the assistance.

With regard to grievance interviews, If the grievance is missing information, or staff need clarification from the inmate, staff told the Subject Matter Expert that they don't interview inmates solely because the inmate is unable to read or write effectively (e.g., mental health inmate rambling in his/her grievance), but staff try to address the main issue of the grievance the best they can. A grievance response denial also does not constitute a requirement to interview the inmate. However, the Deputies who were interviewed indicated that the ADA Deputies often interview ADA inmates, even if the assigned grievance office Deputies did not.

Even through there are no urgent or emergent expedited timeframes for responses per policy/procedure (except for PREA related issues), staff indicated that emergency grievances are handled immediately. For all other grievances, they shall be responded to in no more than 21 days, or, the grievance unit will issue an extension if they need more time to investigate the grievance.

**Inmate Interviews**

Several of the inmates interviewed were not aware of the grievance process, or their rights under ADA to receive reasonable accommodations to have staff assist in the grievance process, e.g., scribe, explain the process, etc. Several inmates were not even aware that there was a reasonable accommodation request process. This affirms the major concern regarding staff failure to abide by local policy/procedure to provide the jail handbook/orientation materials at ITR (to which it contains grievance information). Some inmates are relying on other inmates learn about the grievance process as well as other types of available programs and services.

Several inmates complained that when asking for a grievance form from a housing unit Deputy, staff question them to the point that they feel uncomfortable and no longer want to approach Deputies to ask for the grievance forms.

**Conclusions**

A grievance process is a vital tool for jail administration to monitor and resolve claims or issues within the facility. Monitoring and being proactive can reduce problems before they arise and help to avert future litigation. But SRJ staff (e.g., Intake Classification staff) must do a better job to ensure new arrivals are provided the jail handbook/orientation materials in order for the process to be effective. the Minimum Standards for Local Detention Facilities Title 15 - Crime Prevention and Corrections Division 1, Chapter 1, Subchapter 42010 Regulations requires that information regarding the grievance process be made available during inmate orientation.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

Staff need to be trained that they must provide assistance to mentally, intellectually/developmentally, and learning disabled inmates as required or needed, to help them understand and participate in the grievance process. This may come in the form of explaining the process, scribing, etc. Housing staff are generally best equipped to provide this assistance and should not seek out Behavioral Health staff to provide the assistance for them.

Although the policy/procedure is silent on the issue, the SRJ administration should consider updating the local policy/procedure to have staff interview mentally, intellectually/developmentally, or learning disabled inmates who submit a grievance that may be difficult to discern what they are claiming or seeking. This is especially important for grievances that are denied.

This Subject Matter Expert recommends that SRJ staff revise the policy/procedure to include expedited timeframes for urgent or emergent grievances or ADA accommodation requests from ADA inmates (including mentally, intellectually/developmentally, and learning disabled inmates).

The SRJ should examine other alternatives to having inmates approach housing unit Deputies to obtain grievance forms (or message requests, reasonable accommodation requests, etc.). Staff are required per the grievance policy/procedure to attempt to resolve the situation at the lowest level (if possible). As stated above, some inmates are not comfortable approaching staff, and sometimes feel harassed and no longer feel comfortable with the process. This is especially true with inmates with mental and intellectual/developmental disabilities, as they may have advocacy concerns or just don't feel comfortable approaching staff. Other options that could be considered could include having the forms readily available or having a pod worker hand out blank forms once a day, or a couple of times per week.  It is our understanding that the grievance and ADA forms will be available in electronic form on tablets that are issued to inmates at some point in the future. If this comes to pass it will resolve this issue.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## INMATE ORIENTATION

The SRJ Inmate Orientation process is outlined in the Alameda County Sheriff's Office Detention and Corrections Policy and Procedure 18.03 Inmate Orientation.

Inmate orientation is essential in advising inmates of programs, services, and activities that are available, whether self-help groups, re-entry programs, education, grievances, disciplinary process, religious activities, general rules of the jail, etc. The absence of an orientation process is problematic for many disabled inmates (whether they have been identified or not through disability evaluation/screening processes). It is important that inmates receive the necessary information that would enable them to know what services are available, to know how to seek assistance, and to learn what accommodations they may have access to and how to request accommodations they need.

**Observations**

Policy/Procedure 18.03 Inmate Orientation provides detail regarding the orientation video to be shown in ITR 24-hours per day. It also states in part, "In addition to the orientation video, inmates will receive the inmate Rules and Regulations booklet (handbook/orientation materials) which has written information contained in the video on inmate programs, services, and activities. The booklets are available in Spanish, English, and Braille.

Some of the contents contained in the Rules and Regulations booklet (handbook/orientation information) includes: PREA information; Classification Interview; Assaulting Another Inmate; Emergency Procedures; Information for Pregnant Female Inmates; Americans with Disabilities Act (ADA); Suicide Prevention Information; Message Request/Inmate Services Programs; Inmate Rules and Regulations and Disciplinary Violations. Other general information includes: Conduct; Hygiene; Announcements; Personal Property; Court Movement Information; Clothing/laundry Exchange; Ordering Commissary; Religious Services; Inmate Services Unit; Education Services; Notary Services; Child Support; Mail Procedures; Books, Newspaper, and Subscriptions; Library Services; Medical Services; Family Planning Services; Sign Language interpreters and Telecommunications; Santa Rita Jail Visiting Schedule; Services for Hearing and Visually Impaired Visitors; Visiting Rules; Video Visiting; Grievance Procedure; Demands for a Speedy Trial; Petitions for Habeas Corpus; Law Library – Legal Assistance; Inmate Telephone Usage; Inmate Telephones – Dialing Procedures; Community Health Care Requests and Resource Info; Mental Health Drug Rehabilitation; and Other Clinics and Community Resources. There are many additional topics contained as well.

There is also an Inmate Orientation Video with much of the same information, including: Rights to treatment; informed of rules; religious services; nutritious meals; clothing; medical/dental; exercise; court/attorneys; law library services; legal assistance (LRA); library services; recreational reading materials/book



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

carts; will receive inmate handbook; disciplinary rule violations (major, moderate, minor); no tobacco; contraband; phones; correspondence; communicating with staff; message request forms; inmate services unit; education; special events (e.g., re-entry exposition); religious programs; food and nutrition; housing unit clean-up; robotic cart system (delivers food and laundry); minimum five hours out-of-cell time; must be fully clothed; showers; responsible for cleaning cell; lights out time; and clothing exchange once per week (1-for-1 exchange). There are other topics contained as well.

The Subject Matter Expert observed the orientation video playing while observing the ITR area. At least one inmate interviewed confirmed that the video is played on television on a specific channel as well. But during the Subject Matter Expert's observation of ITR, it was noted that the orientation materials were sitting out in the open next to the podium where the Classification Deputy conducted his Classification interviews. However, no orientation information was ever offered to the inmates going through the process.

### Staff Interviews

The Subject Matter Expert interviewed Deputies assigned to the ITR Booking and Classification processes, as well as Deputies from some of the housing units, and Deputies from other assignments.

Universally, all staff interviewed indicated that inmates are being provided the inmate orientation materials during the classification process at Intake. Staff also mentioned the orientation video plays continuously at intake and is played at intervals throughput the week on one of the television channels. Some of the staff indicated that they provide orientation materials to inmates in the housing units, if they ask for it.

### Inmate Interviews

As mentioned earlier in this report, every inmate interviewed indicated that they never received any handbook/orientation materials when they went through ITR (Intake/Booking/Classification). A few inmates acknowledged seeing the orientation video, and a few others stated that they asked their housing unit staff at some point after they were housed. But several inmates stated that they had to learn from other inmates. A few others mentioned that they have been at SRJ for a prior incarceration and therefore didn't need the materials. A couple of inmates provided that they had difficulty understanding the classification portion of Intake.

### Conclusions

Although the SRJ has a quality orientation video, PREA video, and handbook/orientation materials, it is meaningless to have written orientation materials If the information is not provided to inmates as they enter the SRJ at ITR. This information is vital to help ensure that inmates understand the SRJ expectations; and to also have knowledge as to their ADA program as well as their rights under ADA; Title 15 expectations, available programs, services, and



activities; e.g., disciplinary process; grievances; healthcare; message request process; inmate services; etc. The SRJ staff simply are not following the aforementioned policy/procedure.

The following information should be incorporated as part of the inmate orientation materials:

- The purpose of the ADA or disability program and ADA Coordinator contact information;
- Availability of the Title 15 and any pertinent existing and future disability-related forms or materials (in accessible formats as necessary); and
- Reference to any specific forms otherwise not included, e.g., ADA Reasonable Accommodation Request form, etc.

The SRJ should also have a process in place to either provide verbal orientation to inmates with psychiatric, intellectual/developmental, and learning disabilities, or to conduct individual 1-on-1 follow-ups with them to ensure they understood the orientation information provided.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## TRAINING

The SRJ must develop and incorporate a comprehensive ADA training component for custody and non-custody staff. The ADA or inmate disability program/plan must have a comprehensive training regimen consisting of: formalized lesson plans; certified or otherwise qualified ADA expert trainers; close monitoring of the training program; and curriculum consisting of all major aspects of the ADA; including but not limited to: disability identification/verification; tracking system; housing, reasonable accommodations; effective communication; equal access; transportation; inmate grievances; message requests; ADA requests for reasonable accommodations process/form; orientation; work assignments; vocational and academic education; inmate programs, including religious services; and visiting. Simply put, a quality ADA training program must be in place to ensure staff are appropriately trained to perform their job duties and to help ensure mentally, intellectually/developmentally, and learning disabled inmates are provided equal access to programs, services and activities provided at the jail facilities, and thus are not be discriminated against.

The SRJ Training Requirements (for custody staff) is outlined in the Alameda County Sheriff's Office Detention and Corrections Policy and Procedure 20.02 Training Requirements.

The SRJ ADA training program must ensure staff are knowledgeable with respect to mentally, intellectually/developmentally, and learning disabled inmate accommodation needs. The training should help foster an understanding that providing accommodations or modifications does not deter staff from accomplishing their job duties and does not create an additional workload, but rather puts the mentally, intellectually/developmentally disabled, and learning disabled inmates on a level playing field and provides equal access to that of non-disabled inmates in accordance with the ADA.

### Observations

The ACSO provided several lesson plans or course outlines for review.

The 7-Day Training Core Class does not include any ADA training.

The Persons with Disabilities LD#37 – Recruit Basic Academy class is taught to academy cadets. The course outline that was provided shows the following material as being covered: ADA, equal access (to not be excluded from) and participation in services, programs, and activities; discrimination; Lanterman Developmental Disabilities Services Act; Lanterman-Petris-Short Act; disability definitions; specific procedures that of the law which apply to persons with disabilities; role of peace officers when interacting with a disabled person; and information regarding other disabilities.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

The ADA Inmates Auxiliary CORE Course Outline includes the following information: ADA 1990; definitions; equal opportunities; types of disabilities; physical (hearing, visual, neurological, amputations); developmental (mental, cerebral palsy, autism, Down's Syndrome); mental (thought disorders, mood disorders); ADA applies to law enforcement facilities; accessibility; accommodations; sign Language Interpreters; video Relay Service/Videophones; Braille material; Disability Accommodation Requests; transportation of disabled inmates; protection of disabled inmates; physical harm; exploitation; specific procedures for emergency evacuation; providing special accommodations; ADA liaison/compliance; and peace officer interaction.

The ADA Inmate Services Auxiliary CORE Course Outline does not include any ADA information.

The Classification of Inmates Supplemental CORE Course Outline does not include any ADA information, except for general information indicating that new arrivals will not receive a disciplinary report for failure to answer questions related to disabilities; and housing assignments are based on disabilities and security classifications/factors. There is some information regarding screening for vulnerabilities.

The Booking and Receiving Supplemental CORE Course Outline contains information regarding hearing impaired and speech impaired inmates only.

The Releasing Supplemental CORE Course Outline does not contain any ADA or EC information.

The Supervising Inmates - Supplemental CORE Course Outline does not contain any information regarding "MEN", or intellectually/developmentally disabled inmates.

The Distribution of Supplies and Commissary Supplemental CORE Course Outline contains information relative to inmates who cannot use the phone ordering system because of an ADA issue, that inmate will report this to the facility ADA Coordinator via message request who will work with Inmate Services to facilitate the ADA inmate's commissary order. There is nothing specific regarding "MEN", or intellectually disabled inmates. There is material regarding Distribution of commissary goods, but nothing pertaining to "MEN", or intellectually/developmentally disabled inmates.

The Management of Inmate Workers Supplemental CORE Course Outline mentions physical ability of inmate workers, and mentions the message request form and classification process, but not specific to "MEN", or intellectually disabled inmates.

The Crisis Intervention Team Training course outline includes the following material: psychotic disorders; medical and mental health services; state hospitals, jail today; veterans; mental illness; mood disorders; depressive disorders; bipolar



disorders; anxiety disorders; substance abuse; co-occurring disorders; prevalence in custody; drug use and abuse; communication and de-escalation; use of force; transportation; officer safety; post-traumatic stress disorder; suicidal evaluations; intervention; and more.

The AFBH Training Manual provides info regarding mental health, safety cells, IOLs, 5150s, and many other topics. There is no information regarding intellectual/developmental disabilities, or learning disabilities.

### Staff Interviews

Staff who were interviewed varied on what types of ADA training they had received. Some staff cited they have only received ADA training within their eight-hour orientation. Others cited annual training included portions ADA, as well as mental health and CIT training, as well as random training throughout the year.

### Conclusions

There are multiple training courses that include components of mental illness as well as other disabilities. Some of the curriculum is very good, such as the Commission on Peace Officer's Standards and Training – Basic Course Domain 37 People with Disabilities.  But other curriculum is not sufficient. The SRJ needs to establish a comprehensive formalized training curriculum relative to an SRJ disability program, which first must include updating local policies/procedures and training materials. As cited throughout this report, the SRJ must first greatly improve the disability identification and tracking processes.

Any new training materials must capture any specific forms processes, and include essential disability related information such as identification, tracking, housing, programs, work, grievances, ADA requests for accommodations, effective communication, equal access to programs, services, and activities, non-discrimination, etc. Training materials should also include reasonable accommodations including examples, and specific topics relative to mentally, intellectually/developmentally, and learning disabled inmates (as applicable to each). For example, for intellectually/developmentally disabled inmates; victimization, adaptive supports, monitoring, providing assistance, etc.

The SRJ should ensure that ADA instructors receive appropriate ADA training and provide the level of subject matter expertise needed to effectively provide formalized classroom ADA training to staff.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## EFFECTIVE COMMUNICATION

### Observations

The SRJ does not have a written Effective Communication Policy (EC). Specifically, there is no EC policy for daily encounters or interactions, nor is there an EC policy for clinical encounters (e.g., mental health, medical, or dental), due process events (e.g., classification process, inmate disciplinary process, pre-release process, conditions of release process, Notice of Charges, or probation encounters/meetings), or other specific activities such as self-help groups e.g., Alcoholics Anonymous (AA), Narcotics Anonymous (NA) or other events such as religious activities. Likewise, there is no comprehensive policy relative to providing reasonable accommodations for mentally, intellectually/developmentally disabled or learning disabled inmates to ensure equally effective communication during the aforementioned types of events or processes.

While most of the local policies (of those that are applicable) are silent with respect to EC, some of the policies have brief but incomplete language regarding the subject. Whether the SRJ develops a stand-alone EC policy, or incorporates and/or strengthens existing EC language in appropriate policies/procedures, SRJ must decide whether documenting EC is going to be mandatory for due process related events as well as clinical encounters. Applicable policies/procedures should define EC, address the events or circumstances when EC is required, address how staff ensure that the inmate understood the encounter or process, and how to document the information.

The Subject Matter Expert observed a number of processes at various sites throughout the SRJ to examine for the establishment of EC. Specific processes that were examined included but were not limited to: Intake/Booking/Classification (including medical screening and mental health screening); inmate follow-up classification; and reviewed inmate disciplinary reports/hearing summaries, as well as other processes. There are additional processes whereas EC must be established as well; including education, library services, religious services, and various programs and self-help groups, e.g., AA, NA, etc.

The Subject Matter Expert examined to determine whether staff were making all reasonable attempts to communicate with mentally/ intellectually/developmentally disabled inmates as well as learning disabled inmates, for all contacts, including normal daily interactions. The Subject Matter Expert also examined whether staff made all reasonable attempts to achieve EC while applying a higher threshold or standard for due process events (e.g., classification process, disciplinary related processes, and clinical encounters).

The higher standard of EC includes: identifying an inmate's disability whereas there may be a barrier to comprehension or communication and therefore a



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

reasonable accommodation(s) may be necessary; providing a reasonable accommodation(s) that is effective to overcome the communication barrier; and documenting the EC, including the method used to achieve EC and how the staff person determined that the inmate understood the encounter, process, and/or proceeding.

The biggest hurdle for staff to overcome (e.g., grievance staff, housing staff, disciplinary staff, academic, healthcare staff, religious services staff, and inmate programs staff, etc.) is that they don't know what the accommodation needs are, and in the case of intellectual/developmental disabled inmates and learning disabled inmates, staff do not know who they are, as they are not being identified or tracked.

Staff Interviews

Through interviewing housing unit Deputies, programs staff, and others, the Subject Matter Expert concluded the following: none of the staff appear to have received adequate ADA training regarding EC and reasonable accommodations. Again, staff widely do not know which inmates have disabilities whereas communication barriers exist or may exist, therefore staff are not aware of specific EC needs for the inmates in the housing units or in their work areas.

Staff have not been trained on how to provide EC. Some staff (e.g., some clinicians and some disciplinary hearing staff) are documenting EC (or documenting to a certain degree), but it is not consistent. It is common for non-healthcare staff to not understand the difference between inmates with mental illness, intellectual/developmental disabilities, and learning disabilities, or at minimum, do not understand the types of accommodations that are necessary to ensure EC for these types of inmates.

Most staff when asked, indicated that they would use patience with mentally, intellectually/developmentally disabled inmates, as well as those with learning disabilities. Possible accommodations to achieve EC may include; speak slowly, use simple phrases/words, and allow more time for the inmate to process information, etc.

**Inmate Interviews**

At least a couple of the inmates interviewed acknowledged being in special education in public school and/or having a learning disability. A couple of other inmates indicated that they did not understand the Intake Classification process.

**Conclusions**

The SRJ should have a comprehensive EC policy in place to ensure that reasonable accommodations are provided and EC is achieved (or all reasonable attempts are made) for disabled inmates during clinical encounters (medical, mental health and dental), due process events (e.g., classification process, inmate disciplinary processes, pre-release or re-entry services processes, parole



or probation encounters/meetings), or other specific activities such as self-help groups e.g., AA/NA or other events such as religious activities. The SRJ can opt to have one comprehensive EC policy, or incorporate necessary language within the numerous local policies as cited above.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## STAFFING

### Observations

All staff seemed to have a good working knowledge of and comply with all existing operations orders, post orders, policies, procedures and directives. Virtually all staff who were observed and/or interviewed were very transparent and helpful. However, it was abundantly clear from this Subject Matter Expert's observations during my five days onsite that Custody and Behavioral Health are not adequately staffed.

### Staff Interviews

With the exception of Wellpath (medical) personnel (who did not believe they were short-staffed), most of the staff who were interviewed acknowledged staffing shortages. However, this was most prevalent amongst Custody and Behavioral Health staff. Custody staffing shortages affect Custody operations compliance, Wellpath healthcare appointments, and Behavioral Health operations. Custody staff are regularly redirected from their posted positions to transport inmates to outside hospitals and other appointments. During the interviews, information was provided that staff who are on Worker's Compensation status, or otherwise are not physically working the unit are sometimes placed on the staff roster, so it appears on the staff rosters that positions are filled, when they are actually vacant. Moreover, Custody carries enforcement officers out on 4850s on their staffing rosters which exacerbates custody staffing shortages.

Moreover, it was also very apparent to this Subject Matter Expert that Behavioral Health is inadequately resourced, including inadequate office and treatment space, to provide the necessary treatment program services to the inmate population in a timely and competent manner. The staff shortages are exacerbated when the already significantly under-resourced behavioral health clinical staff are out (sick, medical leave, vacation).

Custody and mental health staff shortages have created significant safety, security, and program concerns. Also as reported throughout this report, some of the results of staffing shortages have caused or contributed to: stress/staff burnout, inconsistent ITR Behavioral Health staffing (which affects overall ITR operations), no mental health clinicians in the ITR from 2300hrs -0700hrs, IOL patients are not seen by clinicians in a timely fashion, clinical appointments are not conducted in a confidential setting (through the cell door or in the open inmate living unit day rooms) staff IOL and GOL checks and logging get missed, critical clinical 72-hour and 7-day required IOL assessments are missed, healthcare appointments are cancelled or delayed because no custody staff are available to escort inmates to and from their appointments, there are staff shortages in the control booths which put officers and inmate at risk of harm, 5150 transfers to John George get delayed sometimes for longer than 24 hours,



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

housing unit yard/dayroom activities gets cancelled or delayed, religious services get cancelled or delayed, re-entry services get cancelled or delayed, and various inmate programs get cancelled or delayed.  Housing unit officers are stretched thin and as a result oftentimes do not have time to do timely inmate safety and welfare checks.

**Inmate Interviews**

A few inmates indicated that sometime several hours elapse before they see staff. In all fairness, this was not the norm, but was raised by quite a few inmates. Some of the inmates reported that they do not feel safe. A larger number of inmates interviewed didn't extend that far, but many indicated that would feel more comfortable if staff were in the units and walking the pods/dayrooms more often.

**Conclusions**

Staffing levels in Custody and Behavioral Health must be such whereas safety and security protocols, and the treatment needs of the inmate population are being consistently met., and the non-mobility disabled (Seriously Mentally Ill, Intellectually/Developmentally and Learning disabled) inmates are receiving equal access to all programs, services, and activities while they are housed in the Santa Rita Jail Facility.

It is strongly recommended that the Alameda County Sheriff's Department and the Alameda County Behavioral Health Department conduct an independent comprehensive staffing analysis of both Custody and Behavioral Health operations in order to address the significant staffing shortages that exist today. It is Sabot Consulting's opinion that adequately resourcing Custody and Behavioral Health operations will significantly reduce the risk of harm to staff and inmate's alike.

From media accounts, Sabot Consulting is aware of the very public tension that exist between the Alameda County Community Advocates and the Alameda County Sheriff's Department over the Sheriff's Department' operations and funding. However, it is Sabot Consulting's opinion, based on decades of corrections operations experience, that if additional staffing and resources are not provided to the Sheriff's Department Detention and Correction Division, there is little hope of them curing the deficiencies identified in this report, and there will continue to be a significant risk of harm to the staff and inmates at the Santa Rita Jail Facility.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## ADA COORDINATOR

### Staff Interviews

A Sergeant from the Compliance Unit was identified as being in the role of ADA Coordinator. During the interview there was actually a Lieutenant who was experienced working for Alameda County but was new in the unit. The Sergeant has assumed responsibility over ADA. The Sergeant has additional duties, e.g. ACA, and SRJ compliance duties.

It was not clear whether the ADA Coordinator is involved in the tracking of the mentally, intellectually/developmentally disabled or learning disabled inmates, or their accommodation needs. But the ADA Coordinator/Compliance Unit receives copies of ADA grievances. The ADA Coordinator admittedly does not interview mentally, intellectually/developmentally, or learning disabled inmates, with some exceptions.

### Inmate Interviews

As indicated earlier in this report, none of the approximately 28 inmates interviewed knew who the ADA Coordinator is, or that there is an ADA Coordinator. None of the pods/dayrooms had any contact information posted for the ADA Coordinator either.

### Conclusions

The ADA Coordinator has multiple duties besides ADA. The SRJ should consider having a dedicated ADA Coordinator. Whether the SRJ opts to keep the ADA Coordinator duties as they currently are, or assign a dedicated ADA Coordinator, the ADA Coordinator must have a clearly defined role (as needs to be defined in a set of post orders or a duty statement). The ADA Coordinator must take a hands-on approach to train staff and work to ensure compliance with ADA and local policies/procedures. The ADA Coordinator needs to be directly or indirectly involved with all aspects of an SRJ disability program. Duties should include, but not be limited to: training, tracking system (after identification); daily monitoring of the ADA or disability program, including; grievances, disciplinary reports, message requests, ADA requests for accommodations, classification actions, orientation, touring all relative housing units, interviewing inmates, interviewing staff (e.g., housing Deputies, medical staff, mental health staff, dental staff, education staff, re-entry services staff, inmate program staff, library staff, religious services staff, etc.), monitor CDCR DAPO Armstrong email notifications, and a myriad of other ADA related responsibilities. Ultimately, the ADA Coordinator must work with staff to help ensure that disabled inmates are afforded equal access to programs, service, and activities of SRJ, receive reasonable accommodations as required or necessary, and help to ensure that disabled inmates are not discriminated against.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

The ADA Coordinator must also be a trainer and help ensure local policies/procedures are compliant with ADA Title II Requirements.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## USE OF FORCE / CELL EXTRACTIONS

The Subject Matter Expert did not have access to the Alameda County Sheriff's Office Detention and Corrections Policies/Procedure for cell extractions.

**Observations**

The Subject Matter Expert reviewed video footage of numerous calculated/planned Use-of-Force/cell extractions performed by custody staff on various inmates. Each of the cell extractions were conducted due to the respective inmates "covering up" their cell windows so that staff could not see inside the cell. For safety reasons, staff must be able to see inside the cell window at all times.

The video footage in all cases showed the assigned Sergeant informing the inmate that he was violating SRJ rules and regulations. In each case the video footage then showed the Sergeant asking the respective inmates if they would remove the window coverings from the cell, or otherwise staff would perform a cell extraction. The respective Sergeant then asked the inmate's if they understood, and whether they wanted to comply. It was difficult to hear in most of the cases whether the inmates acknowledged understanding or not. But in all cases, the inmates chose to not remove their cell coverings. The cell extraction teams were present and ready to perform a cell extraction at the time that the Sergeant gave the order for each respective inmate to remove the cell window coverings.

Each case resulted in a calculated/planned use of force incident. There didn't appear to be any excessive or unnecessary use of force by staff. There wasn't any higher level than the Sergeant to attempt to talk the inmate into voluntarily removing the window coverings. There were no mental health clinicians consulted during any of the extractions or time frame leading up to the extractions. Without having had the opportunity to review the Cell Extraction policy/procedure, it is impossible to determine whether staff acted pursuant to policy. There was also no way to determine whether any of the inmates were "MEN" status. Without having reviewed the policy/procedure, best practice is always to have a mental health clinician attempt to talk with any inmate who has mental illness. There should also be a reasonable cooling-off period between the time that staff attempted to talk with the respective inmates, and the actual time of the respective cell extractions. In some of the extraction videos, it appeared that there was ample "cooling-off" time, but videos of other extractions the cooling-off period was questionable.



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## POLICIES AND PROCEDURES

The Subject Matter Expert reviewed the Alameda County Sheriff's Office Detention and Corrections Policies and Procedures, and the Alameda County Behavioral Health Care Services Criminal Justice Mental Health Policy and Procedures, that specifically pertain to, or should pertain to inmates with mental, intellectual/developmental disabilities, and learning disabilities. The following list details the Custody and healthcare policies and procedures that require or may require revisions with ADA specific requirements for mentally, intellectually/developmentally disabled, and/or learning disabled inmates.

**Alameda County Sheriff's Office, Detention and Corrections Policy and Procedures**

| | |
|---|---|
| Policy #1.12 | Unit Specific Forms |
| Policy #1.14 | Americans with Disabilities Act |
| Policy #3.29 | Special Management Unit Staffing |
| Policy #8.09 | Transportation/Movement and Use of Restraints |
| Policy #8.11 | Emergency Medical Inmate Transportation |
| Policy #8.13 | Safety Cells, Special Use Cells and Multi-Use Cells |
| Policy #9.01 | Disciplinary Separation |
| Policy #9.02 | Administrative Separation |
| Policy #9.03 | Protective Custody Inmates/Gang Drop-Out inmates |
| Policy #9.04 | Mentally Disordered Inmates |
| Policy #9.10 | Maximum Separation Inmates |
| Policy #10.05 | Housing Floor/Unit Deputy Post Order |
| Policy #11.02 | Intake Procedure |
| Policy #11.40 | Scope of Intake, Classification and Medical Screening Procedures |
| Policy #12.01 | Intake Classification |
| Policy #12.02 | Re-Classification |
| Policy #12.04 | The Santa Rita Jail – Housing Unit Classification |
| Policy #12.08 | Inmate Work Program |
| Policy #13.01 | Medical and Mental Health Care |
| Policy #13.02 | Inmate Medical/Health Appraisal Screening, Special Clinics, Communicable Disease, Quarantines and Terminally Ill Inmates |
| Policy #13.12 | Mental Health Referral Form |
| Policy #15.01 | Sanitation Schedule |
| Policy #15.02 | Safety and Sanitation Inspections |
| Policy #15.03 | Inmate Hygiene |
| Policy #15.04 | Linen/Clothing Issue and Exchange |
| Policy #16.01 | Disciplinary Procedure |
| Policy #16.02 | Inmate Rules and Information |
| Policy #16.03 | Inmate Grievance Procedure |



| | |
|---|---|
| Policy #17.03 | Innate Visiting |
| Policy #17.05 | Inmate Message Requests |
| Policy #18.01 | Introduction to Inmate Services |
| Policy #18.02 | Inmate Operational Programs and Services |
| Policy #18.03 | Inmate Orientation |
| Policy #18.06 | Commissary Procedure |
| Policy #18.07 | Religious Programming |
| Policy #18.08 | Library Services |
| Policy #18.09 | Educational Program Planning |
| Policy #18.10 | Vocational Training Programs |
| Policy #18.11 | Social Service Programs |
| Policy #18.12 | Recreation and Inmate Activity Program and Planning |
| Policy #18.13 | Inmate Entertainment Systems |
| Policy #18.17 | Parenting Program |
| Policy #18.18 | Notary Public Services |
| Policy #18.21 | Legal Assistance Program |
| Policy #18.24 | Sandy Turner Educational Center Emergency Evacuation Plan |

**Alameda County Behavioral Health Care Services Adult Forensic Behavioral Health Policies and Procedures**

| | |
|---|---|
| Policy #B2 | Health Services Staff – Mental Health Services |
| Policy #B5a | Special Management Inmates |
| Policy #B5 b1 | Access to Mental Health Care Services |
| Policy #B5b 15a | Access to Care Pre-Screening / Screening Triage |
| Policy #B5b 15b | Access to Care ITR Screener Duties |
| Policy #B5c | Disabled Inmates |
| Policy #B6a | Safety Cells |
| Policy #B12 | State CDCR Parolees |
| Policy #B14 | Clinician's Progress Notes |
| Policy #B14a | Electronic Record: Clinician's Gateway |
| Policy #B20 | Outpatient Housing Unit (OPHU) |
| Policy #B22 | Inmate Grievance Process |
| Policy #B25 | BHCS Intra-Agency Client Messages |

## LIST OF FORMS, NOTICES AND DOCUMENTS REVIEWED

The Subject Matter Expert conducted an exhaustive review of the following SRJ forms, notices and documents as part of the assessment. Some of the items listed below are mentioned throughout the report as related to the review. Many of the forms, notices and documents reviewed were applicable to inmates with mental, intellectual/developmental, and/or learning disabilities and/or were relevant to the overall assessment, while others were found not to be pertinent.

- Mental Health Referrals
- Disciplinary Reports
- Alameda County Sheriff's Office Medical Request Form
- Santa Rita Housing Classification Chart
- Classification Operations Manual
- Inmate Disciplinary Notification Report
- Request for Mental Health Triage Form
- Re-Classification Sheet
- Classification Assessment PREA Worksheet
- Alameda County Sheriff's Office Classification Report
- Protective Custody Form (Questionnaire)
- Alameda County Sheriff's Office Security Site Clearance Form
- Alameda County Sheriff's Office Inmate Disciplinary Notification Report
- Request for Mental Health Triage Form
- Maximum Separation (Max-Sep) Compatibility Waiver
- Alameda County Reclassification Sheet
- Inmate Grievance Form
- Inmate Disciplinary Hearing Record
- Notice of Pending Disciplinary Action
- Psych Referral
- Disciplinary Report
- Inmate Disciplinary Interview
- General Observation Log
- Intensive Observation Log
- Loss of Privilege
- Inmate Transfer Notification
- Re-Class Ad/Seg
- Re-Class Inmates
- Mental Health Referral
- Dental Consent
- Screening Form
- Consent to Medical
- Pod Time Log



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

- Request for Health Care
- Message Request Form
- Job Responsibility Acknowledgment
- Inmate Disability Evaluation Form
- Disability Tracking Form
- Disability Request for Accommodations
- ADA Coordinator Review Form
- ADA Coordinator Record of Contact
- Explanation of the Booking Process
- Video Tablet Check-Out Log
- General Observation Log
- 30 Minute Staff Observation Log
- Inmate Observation Log
- Intensive Observation Log
- Special Event Video Script
- Cell Extraction Log
- Mental Health Referral Form
- ITR Holding Cell Cleaning Log
- Alameda County Sheriff's Office Disciplinary Report
- Alameda County Sheriff's Office Notice of Disciplinary Action Pending
- Alameda County Sheriff's Office Inmate Disciplinary Interview
- Alameda County Sheriff's Office Inmate Disciplinary Hearing Record
- Inmate Grievance Response
- Scope of Service (for Legal Assistance Program)
- Miscellaneous Lesson Plans
- Inmate Rules and General Information

## ABBREVIATIONS AND ACRONYMS USED

**AA** – Alcoholics Anonymous

**AB** – Assembly Bill

**ABE** – Adult Basic Education

**ACA** – American Correctional Association

**ACBH** – Alameda County Behavioral Health

**ACSO** – Alameda County Sheriff's Office

**ADA** – Americans with Disabilities Act

**Ad-Sep** – Administrative Separation

**AFBH** – Adult Forensic Behavioral Health

**ATIMS -** Advanced Technology Information Management System

**BHCS** – Behavioral Health Care Services

**BPH** – Board of Parole Hearings

**BTB** – Breaking Through Barriers

**CAR -** Consolidated Arrest Report

**CDCR** – California Department of Corrections and Rehabilitation

**CEO –** Center for Employment Opportunities

**CorEMR** – Corrections Electronic Medical Record (System)

**CFMG** – California Forensic Medical Group

**CG -** Clinician's Gateway

**CIT** – Crisis Intervention Training

**CTE** – Career Technical Education

**DDP** – Developmental Disability Program

**DD1 -** Code for DDP Inmate (Cognitive Impairment/Mild Adaptive Support Needs)

**DD2 -** Code for DDP Inmate (Cognitive Impairment/Moderate Adaptive Support Needs)

**DD3 -** Code for DDP Inmate (Cognitive Impairment/Severe Adaptive Support Needs)

**DOJ** – Department of Justice

**EC** – Effective Communication

**EEOC –** Equal Employment Opportunity Commission

**EOCP –** East Oakland Community Project

**ESL –** English as a Second Language

**SABOT** CONSULTING

ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

**GOL** – General Observation Log

**ICC** – Immediate Care Clinic

**IEP** - Individualized Education Program

**IOL** - Intensive Observation Log

**ITR** – Intake, Transfer, & Release

**GED** – General Education Diploma

**HU** – Housing Unit

**JMS** – Jail Management System

**LCA** – Leaders in Community Alternatives

**LCSW** – Licensed Clinical Social Worker

**LD** – Learning Disability

**MEN** – Mental Health Designation

**MI** – Mental Illness

**MOU** – Memorandum of Understanding

**NA** – Narcotics Anonymous

**OPHU** – Out-Patient Housing Unit

**PC** – Protective Custody

**PREA** – Prison Rape Elimination Act

**RC** – Regional Center

**SMI** – Serious Mental Illness

**SWAP** – Sheriff's Work Alternative Program

**SRJ** – Santa Rita Jail

**SRJTC** - Santa Rita Jail Transition Center

**TB** – Tuberculosis



ALAMEDA COUNTY SHERIFF'S OFFICE – SANTA RITA JAIL
ADA NON-MOBILITY PROGRAM ASSESSMENT FINAL REPORT
DECEMBER 2, 2019

## Signature

Submitted on behalf of Sabot Technologies, Inc. dba Sabot Consulting to the County of Alameda

_____
Mike Brady
Director
Sabot Consulting

12 - 6 - 19
_____
Date