1   Gregory B. Thomas (SBN 239870)
E-mail: gthomas@bwslaw.com
2   Temitayo O. Peters (SBN 309913)
E-mail: tpeters@bwslaw.com
3   BURKE, WILLIAMS & SORENSEN, LLP
1901 Harrison Street, Suite 900
4   Oakland, CA  94612-3501
Tel: 510.273-8780 Fax:  510.839.9104
5
Paul B. Mello (SBN 179755)
6   E-mail: pmello@hansonbridgett.com
Samantha D. Wolff (SBN 240280)
7   E-Mail: swolff@hansonbridgett.com
HANSON BRIDGETT LLP
8   425 Market Street, 26th Floor
San Francisco, California 94105
9   Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366
10

JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
REKHA ARULANANTHAM -
317995
ROSEN BIEN GALVAN &
GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:   (415) 433-7104
Email:      jbornstein@rbgg.com
              egalvan@rbgg.com
              kjanssen@rbgg.com
              rarulanantham@rbgg.com

Attorneys for Plaintiffs

11   Attorneys for Defendants
COUNTY OF ALAMEDA; GREGORY J. AHERN
in his official capacity as Sheriff of the Alameda
12   County Sheriff s Office; KARYN TRIBBLE in her
official capacity as Director of the Alameda County
13   Behavioral Health Care Services Agency;

14                  UNITED STATES DISTRICT COURT

15      NORTHERN DISTRICT OF CALIFORNIA/SAN JOSE DIVISION

16

| 17 | ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated, | Case No.  5:18-cv-07677 NC |

Plaintiffs,
v.

COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff s Office; KARYN TRIBBLE in her official capacity as Interim Director of the Alameda County Behavioral Health Care Services Agency; and DOES 1 to 20, inclusive,

Defendants.

**JOINT RESPONSE TO SUMMARY ORDER FOLLOWING APRIL 17 STATUS HEARING RE: SANTA RITA JAIL COVID-19 RESPONSE**

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

[3533180.4]                                   - 1 -

JOINT RESPONSE TO SUMMARY ORDER
FOLLOWING APRIL 10 STATUS HEARING
RE: SANTA RITA JAIL COVID-19 RESPONSE

Plaintiffs Ashok Babu, Robert Bell, Ibrahim Keegan-Hornesby, Demarea Johnson, Brandon Jones, Stephanie Navarro, Roberto Serrano, and Alexander Washington ("Plaintiffs") and Defendants County of Alameda, Gregory J. Ahern, and Karyn Tribble ("Defendants") (collectively, the "Parties") submit the following joint response to the Court's summary order following the April 17 status hearing regarding Santa Rita Jail's COVID-19 response.

**DEFENDANTS' RESPONSE**

Defendants continue to work around the clock to address the COVID-19 pandemic. Defendants provide the following updates and responses to the Court's "Summary Order Following April 17 Status Hearing Re: Santa Rita Jail COVID-19 Response." ("Order") (ECF 105.)

In response to the final paragraph of the Order, the following information is provided with respect to Alameda County Public Health Department's ("ACPHD") role regarding Santa Rita Jail's COVID-19 response:

1.      Alameda County Public Health Department

Alameda County Public Health Department ("ACPHD") inspects Santa Rita Jail annually to audit its policies, procedures, and practices as provided under Title 15 of the California Code of Regulations.  ACPHD does not provide day-to-day health services at the jail; non-party Wellpath does.

The COVID-19 pandemic is far broader than the confines of Santa Rita Jail, and ACPHD has public health responsibilities countywide (excluding Berkeley), including nursing homes and other institutions.  While Wellpath, not ACPHD, is providing the medical care in response to COVID-19 at Santa Rita Jail, ACPHD remains very actively involved in reviewing, evaluating and recommending policies, procedures and appropriate responses to the pandemic in Santa Rita Jail's correctional environment.

ACPHD has closely reviewed and continuously provides input into Wellpath's COVID-19 Outbreak Control Plan.  Indeed, ACPHD and Wellpath participate in a standing call, every other day, to ensure open and regular communication regarding this constantly-evolving pandemic and cases in the jail. In addition, there are ad-hoc meetings to discuss any public health issues.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Oakland

[3533180.4]

- 2 -

JOINT RESPONSE RE SANTA RITA JAIL'S
COVID-19 RESPONSE – 5:18-CV-07677-NC

1    Further, ACPHD receives a daily list from Wellpath identifying inmates who are COVID-19

2    positive, have a COVID-19 test that is pending, or who have symptoms concerning for COVID-

3    19.  ACPHD reviews the list and will make specific recommendations, as needed or appropriate,

4    based on public health investigation and up to date guidance, on which inmates should be tested

5    based on epidemiologic evidence.  Thus, there is a comprehensive system in place for overseeing

6    and evaluating Wellpath's medical response to the COVID-19 pandemic at Santa Rita Jail.

7         2.     Testing Criteria and Availability

8         Wellpath follows CDC guidelines for COVID-19 testing in institutional settings with

9    oversight by ACPHD.  Per CDC, "guidance will not necessarily address every possible custodial

10   setting and may not use legal terminology specific to individual agencies' authorities or

11   processes. **The guidance may need to be adapted based on individual facilities' physical**

12   **space, staffing, population, operations, and other resources and conditions**." A situation

13   could arise in which ACPHD would make recommendations based on local epidemiology or

14   outbreak specific information that may be a modification from CDC guidelines with local health

15   department recommendations, though no such situation has arisen to date.  For example, if there

16   is evidence indicating that a significant number of people within the same housing unit tested

17   positive, ACPHD could recommend testing that varies from CDC guidelines despite the fact that

18   Wellpath has implemented patient monitoring measures in quarantined housing units.  ACPHD

19   has not indicated that any such variation is appropriate at this time.

20        ACPHD continually reviews patient data and discusses the significance of the data with

21   Wellpath and any necessary steps that should be taken in response, if appropriate.  When a

22   housing unit is under quarantine, there is minimal risk of further spread to the rest of the jail

23   population from any of these individuals.  This 14-day quarantine starts from date of onset of

24   symptoms for the index patient and is a public health measure to protect the rest of the jail

25   population. If additional cases are detected in a housing unit, then the quarantine period is

26   extended to 14 days from the last date of exposure of the housing unit to the last detected case

27   during the inmate's infectious period.  Wellpath also performs daily medical monitoring in

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

JOINT RESPONSE RE SANTA RITA JAIL'S
COVID-19 RESPONSE – 5:18-CV-07677-NC

1  quarantined units for positive symptoms that would warrant testing.  ACPHD is also involved in

2  the decision to lift the quarantine on any quarantined unit.

3      Plaintiffs' suggestion or request to expand testing within Santa Rita Jail to every inmate or

4  every inmate within specific housing units or pods would deviate from CDC Guidelines and will

5  not provide substantial additional information to assist public health guide appropriate

6  interventions.  This is because from a medical perspective, it is presently unknown when is the

7  optimal time to test asymptomatic patients after a potential exposure.  At present, the best data,

8  suggests testing patients 3-7 days after exposure may result in detection of COVID-19 among

9  asymptomatic individuals.  From a public health perspective, there is no need to test

10 asymptomatic patients who reside in a quarantined housing unit because they are already

11 quarantined (a public health intervention) and are not mixing with non-quarantined inmates.

12 Further, testing asymptomatic patients too early could lead to the need for further testing if or

13 when a patient becomes symptomatic, and/or a false sense of security that a particular patient is

14 not infected, all of which can lead to overutilization of testing assets and unreliable clinical and

15 public health data.  At present Wellpath has not reported any problems or concerns about access

16 to tests or turnaround times with LabCorp, which provides testing services to Wellpath.

17      3.    ACPHD has reviewed and Approved Wellpath and Custody COVID-19 Policies

18      Next, ACPHD wants to assure the Court and the public that ACPHD has reviewed and

19 approved all applicable COVID-19-related policies and procedures in place at Santa Rita Jail.

20 Further, it must be emphasized that Wellpath and custody staff proactively implemented

21 numerous COVID-19 measures, policies and procedures to protect both inmates and staff in late

22 March before Santa Rita Jail had its first positive case.  These policies include Wellpath's

23 COVID-19 Outbreak control plan and screening measures, as well as custody policies and

24 procedures with respect to screening every person entering the jail and use of personal protective

25 equipment, among others.

26      Finally, to respond to the Court's inquiry with regard to whether there is a specific point-

27 of-contact at ACPHD with regard to Santa Rita Jail, Dr. Amit Chitnis with ACPHD has been

28 most involved in assessing and advising Santa Rita Jail and Wellpath in regards to their response

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

[3533180.4]                    - 4 -              JOINT RESPONSE RE SANTA RITA JAIL'S
                                                  COVID-19 RESPONSE – 5:18-CV-07677-NC

to the pandemic.  Dr. Chitnis has reviewed and approved of the content in this filing, however, due to the pandemic and responsibilities including (1) COVID-19 response at Santa Rita Jail, (2) assistance with clinical consultation or guidance for COVID-19, (3) oversight of tuberculosis ("TB") control in Alameda County, and (4) clinical management of TB patients at Highland Hospital,[1]  however, Dr. Chitnis must respectfully decline the Court's invitation to collaborate in future proceedings.

       4.     <u>Concern about Inmate Movement to Court</u>

       ACPHD is aware of the concern raised at the April 17 hearing in this case with respect to the movement of inmates to court who later tested positive for COVID-19.  The two instances occurred at the East County Hall of Justice in two different departments on April 3 and then on April 8.  In the first instance, an inmate who attended court tested positive for COVID-19 eleven days later; in the second instance, the inmate tested positive four days later.  As part of its routine process once an inmate tests positive for COVID-19, ACPHD requested and received the movement history from the Sheriff's Office for each inmate and confirmed that the inmates were not in court during their infectious period (note: the infectious period starts two days prior to symptom onset.)  ACPHD notified Public Defender Brendan Woods of this on April 16, before the April 17 court hearing in this matter.  ACPHD also notified the public defender that, to date, ACPHD has not identified an exposure that has occurred at the Court among confirmed COVID-19-positive inmates.

       5.     <u>Plaintiffs' ongoing California Gov. Code § 8658 and Population Reduction Requests</u>

       The Sheriff's Office will continue to cooperate with state and federal justice stakeholders and will release inmates as ordered. As detailed in our filings in this court, Santa Rita Jail is at the forefront of correctional institutions nationwide with regard to actions taken to address the COVID-19 pandemic. While the Sheriff's Office will continue to work with justice stakeholders

---

[1] Dr. Chitnis sees TB patients at Highland Hospital.  As a result of shelter-in-place orders, Dr. Chitnis has implemented remote visits and remote monitoring of patients.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Oakland

[3533180.4]

- 5 -

JOINT RESPONSE RE SANTA RITA JAIL'S
COVID-19 RESPONSE – 5:18-CV-07677-NC

1    to safely reduce the jail's population as to those inmates who are not in custody for serious and

2    violent felonies, out of concern for public safety, the Sheriff declines to invoke California

3    Government Code Section 8658.

4         Indeed, the need to balance public safety is significant, as evidenced by a recent news

5    report[2] of an inmate who was arrested, released on April 20 pursuant to zero-dollar bail under

6    Emergency Rule 4, and allegedly committed a carjacking 37 minutes after his release.  The

7    inmate then attempted a second carjacking before fleeing and kicking a police K-9 in pursuit.

8         6.    Answers to Questions from Plaintiffs' Counsel

9    **(1)    Staffing**

10   Are you satisfied with the level of staffing and the care being provided by Wellpath during the

11   Pandemic?  If you have any concerns, we would appreciate at least a high level briefing on the

12   nature of your concerns.

13

14   **ACPHD has no concerns related to the level of staffing and care being provided by**

15   **Wellpath during the pandemic.**

16

17   **(2)    Oversight**

18   What if any steps are you taking proactively to monitor the conditions at Santa Rita?  Is this a

19   regular part of the oversight you usually provide or specific to the pandemic?  Have you made

20   suggestions that were implemented?

21

22   **We have worked with both Wellpath and the Sheriff's Department staff to review a COVID**

23   **prevention and outbreak plan prior to the first case of COVID 19. Since the first cases were**

24   **reported in Alameda County, we continue to work with Wellpath to prevent secondary**

25   **cases and manage COVID cases at SRJ. We have been given the opportunity to provide**

26

27   [2] https://sanfrancisco.cbslocal.com/2020/04/20/stolen-car-suspect-carjacks-victim-37-minutes-after-release-santa-rita-jail/

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

[3533180.4]                - 6 -                JOINT RESPONSE RE SANTA RITA JAIL'S
COVID-19 RESPONSE – 5:18-CV-07677-NC

1   **input on measures implemented.  All COVID cases are reportable to Public Health by law –**

2   **(Title 17, Section 2500 H&S Code) – similar notifications for other reportable**

3   **communicable diseases are required at all times, unrelated to the pandemic.  We routinely**

4   **work with staff at SRJ on other communicable disease issues**.

5

6   **(3)     Hospitalization**

7   Are you satisfied that the people in the jail will have access to hospitals timely if there is a need

8   for anyone with Covid symptoms who needs hospitalization?

9

10  **Yes.  At the present time, the number and frequency of COVID-19 hospitalizations have not**

11  **placed undue strain on hospital resources and availability.**

12

13  Have you reviewed and approved any specific contingency plans for this occurrence?

14

15  **Public Health has reviewed and approved Wellpath's Santa Rita Jail COVID-19 Outbreak**

16  **Plan, as well as the Sheriff's and Wellpath's release and discharge plans.**

17

18  **(4)     Testing**

19  Are you satisfied with the quality and number of tests being administered to people who are

20  incarcerated or working at Santa Rita?

21

22  **At this time, Public Health has no information to suggest a specific problem with testing at**

23  **SRJ.  Testing availability is limited in other settings due to supply issues**.

24

25  **(5)     Other Recommendations**

26  Have you made other recommendations for treatment during this pandemic that you would like to

27  be followed by the jail that have so far not been implemented?

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

[3533180.4]                - 7 -           JOINT RESPONSE RE SANTA RITA JAIL'S
COVID-19 RESPONSE – 5:18-CV-07677-NC

**Though Wellpath is the medical provider responsible for the medical care and treatment of the inmates, ACPHD has and continues to communicate with Wellpath on a regular schedule and on an ad hoc basis with regard to public health issues.**

**(6.)     Public Health Response re Applicability of New Cal. Department of Public Health Guidelines**

ACPHD thanks Judge Cousins for asking us to comment on the California Department of Public Health (CDPH) Guidelines for expanding COVID-19 testing.

At present, guidance regarding COVID-19 testing is rapidly evolving and as noted in the CDPH guidance document expansion of testing hinges on testing capacity and public health priorities (i.e., discretion of the public health officer). During the COVID-19 response at Santa Rita jail, ACPHDs priority has been to control the spread of ongoing transmission in the jail, which would correspond to priority 1 in the CDPH guidance document. The rationale for this approach was largely based on the following data obtained during this investigation and the public health measures implemented to date: 1) Nearly all inmates have been in jail for 14 or more days prior their illness onset; 2) No inmates have been detected as COVID-19 positive on intake; and 3) Wellpath and Sheriff staff have implemented a screening procedure such that all inmates are placed in a quarantined unit for the first 5 days after intake and are symptomatically monitored, which corresponds to the median incubation period for COVID-19. All these factors suggest that the primary public health problem is controlling transmission in existing housing units where a COVID-19 positive inmate has been detected rather than screening inmates on entry.

ACPHD agrees with the updated CDPH testing priority noting that screening asymptomatic residents in congregate living facilities prior to admission or readmission may be useful in this setting to ensure appropriate isolation and placement of new inmates. Given that there may be public health benefit in the long-term to identify individuals on entry to Santa Rita Jail who may be COVID-19 positive, ACPHD is adopting this new testing policy. Moving forward ACPHD recommends that all new inmates be screened for COVID-19; however,

1    ACPHD recommends that if testing is to be conducted on intake then the following public health

2    principles also be adopted: 1) The COVID-19 results should be used immediately to guide

3    decisions on isolation and quarantine of inmates; 2) Additional COVID-19 tests will not be

4    conducted unless indicated for clinical or public health purposes; and 3) In the rare event that

5    there is limited COVID-19 testing or supplies in the future and there is evidence of ongoing

6    COVID-19 transmission within the jail, then public health can review the clinical data gathered

7    on screening on intake and potentially stop or limit the numbers of tests conducted at intake to

8    prioritize testing of other inmates that would guide inmate isolation, quarantine, or other

9    movement or movement restriction from or within the facility.

10   **PLAINTIFFS' RESPONSE**

11           The Court is correct to focus on the level of testing at the Jail and the role of the

12   Department of Public Health.  Plaintiffs' responses on those issues are note below. Defendants'

13   carjacking anecdote is not well taken.  If Defendants care about this question, they should invest

14   in a statistically sound study of recidivism under their pre-COVID-19 release policies and under

15   their current policies.  One crime taken out of context is just rhetorical grandstanding.  There is an

16   unprecedented public health emergency and public safety and public health are best protected by

17   taking all possible steps to limit the spread of COVID-19.

18           **Need to Increase Testing of Asymptomatic Individuals**.  Governor Newsom has stated

19   that testing goals need to triple in order for the state to reopen.[3]  Unless we test, the disease will

20   continue to progress.  Increased testing in the Jail would better protect vulnerable individuals and

21   better Defendants' understanding of the spread of COVID-19 in Santa Rita Jail.  It is not true that

22   there is no value in testing when a unit has already been quarantined, one key value added by

23   testing is the ability to do contact tracing on the other individuals who may turn out to be positive

24   to isolate their prior contacts.  For example, the Jail recently reported its first case of COVID-19

25   in Housing Unit 6, a maximum security housing unit that had not previously had any cases.

26   _____

27   [3] Catherine Ho, "Testing Goals Must Triple for State to Reopen," San Francisco Chronicle (Apr. 23, 2020), https://www.pressreader.com/usa/san-francisco-chronicle/20200423/282325387117067.

28

1   Defendants have not been able to explain to Plaintiffs how COVID-19 got into that unit.  Testing

2   the other asymptomatic people on the unit would allow Defendants to identify whether it was

3   introduced by an asymptomatic inmate and then to trace that person's movements to determine

4   the source of the spread.

5          As noted by the Court, this past Sunday, April 19, 2020, the California Department of

6   Public Health announced increased testing of asymptomatic people, prioritizing those living and

7   working in places like correctional facilities.[4]  All persons booked into the jail should be tested, as

8   should all "red" patients at the termination of their quarantine to confirm they no longer carry the

9   virus before they are reintroduced to non-quarantined units.  It is not clear from Defendants'

10  response whether the new screening process for all new bookings will automatically include a test

11  or if Defendants intend to continue with current screening practices.  In response to the Court's

12  Order (Docket 109), Plaintiffs have requested that Alameda County's Public Health Department

13  and Santa Rita jail implement greater testing as soon as possible and contacted Defendants'

14  counsel about scheduling a meet and confer about this new development.

15         **Quarantine of Newly Booked Individuals**.  Plaintiffs' request that Defendants identify

16  research explaining why individuals newly booked into the jail are quarantined for only five days

17  before they are introduced to the general population.  CDC guidelines advise individuals who feel

18  healthy, but have been exposed to COVID-19 isolate for 14 days.  "Social Distancing,

19  Quarantine, and Isolation," Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-

20  ncov/prevent-getting-sick/social-distancing.html.  Plaintiffs' counsel has not found support for a

21  shorter, five-day isolation period.  While this may be the "median incubation period for COVID-

22  19," setting the isolation point at the median ignores the fact that half of the cases will take longer

23  to incubate.  This is why the CDC recommends isolating for 14 days.  Defendants themselves

24

25  [4] *See* Sonia Y. Angell, MD, MPH, State Public Health Officer & Director,
    Expanding Access to Testing: Updated Interim Guidance on Prioritization for COVID-19
26  Laboratory Testing, CALIFORNIA DEPARTMENT OF PUBLIC HEATH (available at
    https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Expanding-Access-to-
27  Testing-Updated-Guidance-on-Prioritization-for-COVID-19-Testing.aspx) (last accessed Apr. 23,
    2020 at 8:43 a.m.).
28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

[3533180.4]

- 10 -

JOINT RESPONSE RE SANTA RITA JAIL'S
COVID-19 RESPONSE – 5:18-CV-07677-NC

1   appear to recognize this because where COVID-19 cases are confirmed within the Jail, the units

2   or pods on which they occur are quarantined for 14 days.  Treating new bookings differently

3   opens the door to increased COVID-19 spread within the Jail.

4       **Concern about Inmate Movement to Court.**  Plaintiffs have requested the source or

5   authority behind Defendants' statement that COVID-19 is only infectious "two days prior to

6   symptom onset" but have not been provided with any authority for that statement.  The statement

7   also runs contrary to CDC guidelines which provide:

8       The *onset and duration of viral shedding and the period of infectiousness for*
    *COVID-19 are not yet known*. It is possible that SARS-CoV-2 RNA may be

9   detectable in the upper or lower respiratory tract for weeks after illness onset,
    similar to infections with MERS-CoV and SARS-CoV. However, detection of

10   viral RNA does not necessarily mean that infectious virus is present. There are
     reports of asymptomatic infections (detection of virus with no development of

11   symptoms) and pre-symptomatic infections (detection of virus prior to
     development of symptoms) with SARS-CoV-2, but their role in transmission is not

12   yet known. *Based on existing literature, the incubation period* (the time from
     exposure to development of symptoms) of SARS-CoV-2 and other coronaviruses

13   (e.g. MERS-CoV, SARS-CoV) *ranges from 2–14 days*.[5]

14

15   Based on the above guidance the individuals brought to Court could have been contagious for as

16   many as 14 days before they tested positive, including on the dates they were brought to Court.

17   This is yet another reason why Defendants need to expand testing to include asymptomatic people

18   and conduct proper contact tracing to identify all locations that individual had been to in the prior

19   14 days.

20       **Role of Alameda County Public Health Department**.  The Alameda County Public

21   Health Department is responsible for public health in the Santa Rita Jail, just as in the rest of the

22   County.  Defendants' response outlines how the Department has delegated to Wellpath health

23   care in the Jail; however, it cannot delegate its oversight responsibility.  While the Department

24   has reviewed Wellpath's Master Outbreak Plan and policies, County health personnel cannot

25   ensure those plans, policies, and procedures are followed if they do not make regular in-person

26   visits to the Jail to observe those practices.  For this reason, Plaintiffs request that Alameda

27

28   ---
     [5] https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Transmission (emphasis added).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

[3533180.4]                                          - 11 -                    JOINT RESPONSE RE SANTA RITA JAIL'S
                                                                              COVID-19 RESPONSE – 5:18-CV-07677-NC

1    County Public Health Department officials conduct random, unannounced rounds at the facility to

2    properly monitor Wellpath's care, as well as social distancing, cleaning, testing, use of masks,

3    etc. in the Jail.

4            Defendants informed Plaintiffs that Dr. Chitnis will make himself available to conduct a

5    thirty minute teleconference with the parties and their attorneys at a mutually agreeable time.

6    Plaintiffs were also informed that the Department is willing to further discuss Plaintiffs' request

7    for an additional inspection of the Jail during that meeting and are willing to continue meeting

8    and conferring regarding these issues.

9            **Population Reduction**.  Reducing population remains the best way to prevent a COVID-

10   19 hotspot from developing at the Jail.  Failure to reduce jail populations across the country could

11   cause 100,000 more deaths than currently estimated, according to a new study by analysts and

12   researchers at the American Civil Liberties Union, Washington State University, University of

13   Pennsylvania, and University of Tennessee.[6]  Defendants in Alameda can save lives by releasing

14   those who are medically vulnerable and those who pose no risk of imminent serious physical

15   harm to others.[7]  Defendant Sheriff Ahern can also avoid increasing the jail population by citing

16   and releasing those who are charged with crimes for which bail would be set at $0 per Emergency

17   Rule of Court 4, rather than booking these individuals and waiting until arraignment to release

18   them on bail, if this is not already the practice.  Defendants should cite and release these

19   individuals outside of the Jail to prevent these individuals from bringing the virus into the Jail or

20   taking the virus out in the community after exposure in the Jail.

21           Plaintiffs encourage Defendants to initiate talks with federal authorities to encourage more

22   releases; this is particularly important given the lack of systemic action to limit the population of

23   federal detainees at the Jail.  Plaintiffs' also ask the Court to request an update from the District

24   Attorney of Alameda County regarding releases and to encourage weekly meetings with pretrial

25

26   [6] "COVID-19 Model Finds Nearly 100,000 More Deaths Than Current Estimates, Due to Failures
     to Reduce Jails," American Civil Liberties Union, https://www.aclu.org/report/flattening-curve-
27   why-reducing-jail-populations-key-beating-covid-19?redirect=covidinjails.
     [7] *See id.* at 4.
28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

[3533180.4]                                    - 12 -              JOINT RESPONSE RE SANTA RITA JAIL'S
                                                                  COVID-19 RESPONSE – 5:18-CV-07677-NC

1   to release more people if possible.

2

3   Dated:  April 23, 2020                    ROSEN BIEN GALVAN & GRUNFELD LLP

4

5                                            By: /s/ Kara Janssen

6                                                Jeffrey L. Bornstein
                                                 Ernest Galvan
7                                                Kara J. Janssen
                                                 Attorneys for Plaintiffs
8

9   Dated:  April 23, 2020                    BURKE, WILLIAMS & SORENSEN, LLP

10

11                                           By:  /s/ Gregory B. Thomas

12                                               Gregory B. Thomas
                                                 Temitayo O. Peters
13                                               Attorneys for Defendants

14  Dated:  April 23, 2020                    HANSON BRIDGETT LLP

15

16

17                                           By:  /s/ Paul B. Mello

18                                               Paul B. Mello
                                                 Samantha D. Wolff
                                                 Attorneys for Defendants
19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

[3533180.4]                         - 13 -        JOINT RESPONSE RE SANTA RITA JAIL'S
                                                  COVID-19 RESPONSE – 5:18-CV-07677-NC