| | |
|---|---|
| Gregory B. Thomas (SBN 239870)<br>E-mail: gthomas@bwslaw.com<br>Temitayo O. Peters (SBN 309913)<br>E-mail: tpeters@bwslaw.com<br>BURKE, WILLIAMS & SORENSEN, LLP<br>1901 Harrison Street, Suite 900<br>Oakland, CA 94612-3501<br>Tel: 510.273-8780 Fax: 510.839.9104<br><br>Paul B. Mello (SBN 179755)<br>E-mail: pmello@hansonbridgett.com<br>Samantha D. Wolff (SBN 240280)<br>E-Mail: swolff@hansonbridgett.com<br>HANSON BRIDGETT LLP<br>425 Market Street, 26th Floor<br>San Francisco, California 94105<br>Telephone: (415) 777-3200<br>Facsimile: (415) 541-9366<br><br>Attorneys for Defendants<br>COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; KARYN TRIBBLE in her official capacity as Director of the Alameda County Behavioral Health Care Services Agency; | JEFFREY L. BORNSTEIN – 099358<br>ERNEST GALVAN – 196065<br>KARA J. JANSSEN – 274762<br>REKHA ARULANANTHAM - 317995<br>ROSEN BIEN GALVAN & GRUNFELD LLP<br>101 Mission Street, Sixth Floor<br>San Francisco, California 94105-1738<br>Telephone: (415) 433-6830<br>Facsimile: (415) 433-7104<br>Email: jbornstein@rbgg.com<br>egalvan@rbgg.com<br>kjanssen@rbgg.com<br>rarulanantham@rbgg.com<br><br>Attorneys for Plaintiffs |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA/SAN JOSE DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; KARYN TRIBBLE in her official capacity as Interim Director of the Alameda County Behavioral Health Care Services Agency; and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No. 5:18-cv-07677 NC<br><br>**JOINT RESPONSE TO SUMMARY ORDER FOLLOWING APRIL 17 STATUS HEARING RE: SANTA RITA JAIL COVID-19 RESPONSE** |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

[3539658.3]   - 1 -   JOINT RESPONSE TO SUMMARY ORDER FOLLOWING APRIL 24 STATUS HEARING RE: SANTA RITA JAIL COVID-19 RESPONSE

16525936.1

Plaintiffs Ashok Babu, Robert Bell, Ibrahim Keegan-Hornesby, Demarea Johnson, Brandon Jones, Stephanie Navarro, Roberto Serrano, and Alexander Washington ("Plaintiffs") and Defendants County of Alameda, Gregory J. Ahern, and Karyn Tribble ("Defendants") (collectively, the "Parties") submit the following joint response to the Court's summary order following the April 17 status hearing regarding Santa Rita Jail's COVID-19 response.

**DEFENDANTS' RESPONSE**

Defendants continue to work around the clock to address the COVID-19 pandemic. Defendants provide the following updates and responses to the Court's "Summary Order Following April 24 Status Hearing Re: Santa Rita Jail COVID-19 Response." ("Order") (ECF 116.)

1. <u>Defendants are further conferring with the Alameda County Public Health Department on issues of testing, quarantine, and intake protocols.</u>

As indicated in the last joint filing (ECF 113), Alameda County Public Health Department ("ACPHD") agrees with the updated California Department of Public Health ("CDPH") testing priority, noting that screening asymptomatic residents in congregate living facilities prior to admission or readmission may be useful in this setting to ensure appropriate isolation and placement of new inmates. Given that there may be a public health benefit to identifying individuals upon entry to Santa Rita Jail who may be COVID-19 positive, ACPHD reviewed the recommendation that all new inmates be screened for COVID-19 with the Alameda County Sheriff's Office ("ACSO") and Wellpath, the health provider responsible for provision of medical care at Santa Rita Jail and the medical provider implementing the recommendation. Per ACPHD guidance, any intake testing must be subject to the following public health principles:

1) COVID-19 test results should be used immediately to guide decisions on isolation and quarantine of inmates;
2) further COVID-19 testing (of the same inmates) will not be conducted unless indicated for clinical or public health purposes; and
3) in the rare event that COVID-19 testing or supplies become limited in the future and there is evidence of ongoing COVID-19 transmission within the jail, then public

health may review the clinical data gathered from intake screening and potentially stop or limit the number of tests conducted at intake to prioritize testing of other inmates that would guide inmate isolation, quarantine, or other movement within the facility.

With these principles in mind, for the last two weeks ACSO and Wellpath have met regularly with ACPHD to discuss implementation of expanded testing, the assets and resources necessary to meet this updated testing guidance, and to develop relevant policies and procedures. While more work must be done to implement this updated testing guidance at Santa Rita Jail, the goal is for Wellpath and ACSO to implement the expanded testing guidance on or around May 15, 2020. Under the updated guidance, all newly housed inmates will be subjected to a 14-day quarantine and tested approximately 48 hours after admission to the jail. CDC guidance is that, if possible, all newly housed inmates should complete a 14-day quarantine. Thus, a new inmate will be not be introduced into a non-quarantined housing unit at the jail unless the new inmate tests negative for COVID-19 and has completed a 14-day intake quarantine. Santa Rita Jail implemented this 14-day quarantine period effective May 5. This 14-day quarantine complies with CDC Guidelines for correctional facilities and extends the jail's previous 5-day intake quarantine. Further, any inmate who is suspected of having COVID-19 and/or tests positive for COVID-19 will be reviewed and assessed under established CDC-compliant medical isolation protocols.

Wellpath, as the health care provider at Santa Rita Jail, will continue to regularly meet with ACSO and ACPHD to discuss policies, procedures and appropriate responses to the pandemic, including updates to guidance and protocols. ACPHD recently recommended that the jail test all inmates in quarantined housing units (excluding those inmates in intake quarantines) at day 10 of the 14-day quarantine. Wellpath started testing on May 6 in HU32, pods A, B and C. ACPHD also continues to review clinical data regarding COVID-19 testing and transmission at the jail, and Wellpath will continue to meet and discuss the significance of the data with ACPHD, including appropriate responses as may be warranted by the data and public health guidance.

ACSO, Wellpath, and ACPHD's discussions also extended to identifying equipment and supplies necessary to facilitate increased testing. ACPHD has secured 5,000 swab tests that are

ready for use. Further, ACPHD can provide additional Personal Protective Equipment ("PPE") that may be needed to supplement Wellpath's own supplies with respect to the expanded testing. ACPHD is finalizing a Memorandum of Understanding ("MOU") with UCSF for lab processing of these tests, and ACSO will provide courier service to UCSF for such lab processing.

2. Incident at East County Hall of Justice

ACPHD uses CDC guidelines to determine when the exposure risk period begins with respect to individuals with COVID-19 (colloquially, when such individuals become "infectious"). https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html. According to CDC guidelines, the exposure risk starts 48 hours prior to symptom onset. Information regarding the two inmates mentioned in the previous Joint Statement is summarized below:

|  | **Symptom Onset** | **Beginning of Exposure Risk Period** |
|---|---|---|
| Inmate 1 | 04/11/20 | 04/09/20 |
| Inmate 2 | 04/12/20 | 04/10/20 |

As shown in the table below, the two inmates appeared in court before ***both*** symptom onset as well as the start of the infectious period.

|  | **Symptom Onset** | **Beginning of Exposure Risk Period** | **Court Visit** |
|---|---|---|---|
| Inmate 1 | 04/11/20 | 04/09/20 | 04/03/20 |
| Inmate 2 | 04/12/20 | 04/10/20 | 04/08/20 |

From a public health perspective, neither appearance by those inmates in court could be considered or classified as an exposure to COVID-19. As such, with respect to the court or other individuals in contact with those inmates during their court appearances, neither the court nor other individuals were exposed to COVID-19 according to CDC Guidelines.

3. The increase in "orange" category inmates at the Jail

In connection with its COVID-19 Outbreak Control Plan, Wellpath performed an initial evaluation of all inmates then in Santa Rita Jail's custody in mid-March in accordance with CDC Guidelines. The number has varied on that date due to the fluid nature of a county jail inmate population. The number of orange patients fluctuates based upon Wellpath's evaluation of newly housed inmates and the number of released inmates on a daily basis.

**PLAINTIFFS' RESPONSE**

**Defendant Alameda County's Failure to Meet and Confer with Plaintiffs.** Alameda County has always been named as a Defendant in this action and is directly responsible for the operation and management of the Alameda County Public Health Department ("ACPHD"), which is empowered "to take any preventive measure that may be necessary to protect and preserve the public health from any public health hazard" which includes class members housed at the Santa Rita Jail. Cal. Health & Safety Code § 101040. Alameda County's failure to control the spread of COVID-19 in the Jail not only affects our class members' physical health, it affects the issues at the core of this case as its spread triggers reductions in out of cell time, programming, and mental health services causing significant additional harm to our class members. Additionally, as discussed further below, class members with serious mental illness are at a higher risk for COVID-19 because they "are more likely to be perceptually impaired and have more difficulty in identifying their symptoms, explaining their symptoms to staff, and in following instructions related to the use of masks or social distancing."[1]

In recognition of the seriousness of these issues, on April 10, 2020, this Court directed that the parties include ACPHD in discussions regarding the coronavirus response at the Santa Rita Jail. Docket No. 99. On April 17, 2020 the Court again ordered the parties, which includes Plaintiffs, to confer with ACPHD in preparing their next status update to the Court, and specifically to "address ACPH's role in the Jail's COVID-19 response supervision." Docket No. 105. On April 23, 2020, Defendants, including Defendant Alameda County, agreed to make a

---

[1] CDC Guidance, People with Disabilities, dated April 6, 2020 available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withdisabilities.html.

representative from ACPHD available for a thirty-minute teleconference with the parties, and in response, the Court further ordered the parties to confer further and update the Court in regards to the issues of testing, quarantine and intake protocols. Docket Nos. 113, 116. Following the April 24, 2020 hearing, Plaintiffs sent Defendants a detailed list of questions and suggestions to contain the spread of COVID-19, including the cohorting of people who arrive at or around the same date, monitoring Wellpath's responsiveness using the sick call system, monitoring of individuals for stroke-like symptoms after medical staff has deemed them "recovered" from COVID-19, in-person public health education meetings for individuals living and working in the Jail, and an on-site inspect of the Jail by ACPHD but have received no response.

Despite the Court's orders and Plaintiffs' repeated requests to be included in discussions with ACPHD, Defendants were not able to schedule the promised teleconference until the eve of this filing. The parties are now scheduled to speak with Dr. Chitnis of ACPHD on Friday May 8, 2020 for thirty minutes. However, the amount of time it has taken to schedule just this one thirty minute phone call is deeply concerning due to the importance of increased testing, quarantine, and intake protocols to limiting the spread of COVID-19 in the Jail and its impact on class members.

**Increased Testing.** It is critical that Plaintiffs be included in discussions with ACPHD so that Plaintiffs can fully understand ACPHD's plans to expand testing given the enormous risks COVID-19 poses in congregate settings. While the written update from ACPHD provided herein is helpful it is still not clear why Defendants are waiting until May 15th to begin testing. Additionally, ACPHD has not responded to Plaintiffs' requests to test "red" patients at the termination of their isolation to confirm they no longer carry the virus and have not clarified whether "orange" patients, who are quarantined from others in the Jail due to their vulnerability to COVID-19, will be tested under the expanded testing guidance. Plaintiffs are willing to continue to meet and confer around these issues but it is critical that a representative from ACPHD and/or County Counsel is present for those discussions to ensure they are meaningful.

**Inmate Movement to Court as Examples of Need for Increased Testing and Contact Tracing.** The example of the inmates being brought to Court was initially raised as an example

of two related issues (1) the need for increased testing to limit exposing COVID-19 positive individuals to others and (2) the need for contact tracing to identify where those individuals may have contracted the virus so that those areas may be quarantined. Defendants have focused on the first point and argued that these individuals posed no risk because they were not yet infectious at the time. However, the CDC guidance Defendants link to in their portion notes that it was last reviewed on March 30, 2020 and appears to be countered by more recent statements by the CDC, as described in Plaintiffs' section of the April 23 Joint Response, and last updated on May 6, 2020, that "[t]he onset and duration of viral shedding and the period of infectiousness for COVID-19 are not yet known."[2] Additionally, Defendants have not addressed the second point, which is whether contact tracing is being down going back at least 14 days from the onset of symptoms. This is yet another issue that would significantly benefit from a direct conversation with ACPHD and/or County Counsel to clarify these issues and answer Plaintiffs' questions.

**Increase in "Orange" Patients.** According to Defendants, Wellpath's evaluation of newly housed individuals and the number of newly released individuals causes fluctuations in the number of "orange" patients. Although this explains small changes in the number of "orange" patients, Defendants do no address Plaintiffs' concern that Defendants are underestimating the number of high-risk individuals in the jail. According to correctional health experts, a disproportionate number of inmates in County Jails have serious health conditions that make them more susceptible to COVID-19. However, Defendants have only identified 3.3 percent of the population as high-risk individuals.[3] The low number of individuals identified as high-risk calls into question whether Defendants' criteria for the "orange" category improperly excludes susceptible individuals, including people with disabilities, those age 50 and above, and those with chronic medical conditions, including diabetes, asthma, hypertension, risk of blood clots, etc., as

---

[2] Clinical Questions about COVID-19: Questions and Answers, last updated May 6, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Transmission

[3] See Daily COVID-19 Update for May 6, 2020, available at: https://www.alamedacountysheriff.org/admin_covid19.php.

indicated by CDC guidance.

Particularly relevant to Plaintiffs' case, Defendants must expand the "orange" category to include individuals with serious mental illnesses, who are class members in this case. As explained in CDC guidance, individuals with serious mental illness "are more likely to be perceptually impaired and have more difficulty in identifying their symptoms, explaining their symptoms to staff, and in following instructions related to the use of masks or social distancing."[4] Additionally, individuals with serious mental illness who take psychotropic medications may be sensitive to heat from fevers and warrant extra monitoring for COVID-19 symptoms. By not including these groups in the high-risk category, Defendants place these vulnerable individuals, including class members in this case, at risk of serious sickness or death. Again, this is another issue that would significantly benefit from a direct conversation with ACPHD and/or County Counsel to clarify these issues and answer Plaintiffs' questions.

**Masks.** On May 1, 2020, the Parties met telephonically and discussed setting a schedule for distribution of masks to individuals living in the Jail. On May 6, 2020, Defendants informed Plaintiffs that the Jail agreed to a regular distribution of synthetic masks every Sunday. These masks will be distributed to inmates with lunches. Once the cloth masks are implemented, synthetic masks will continue to be distributed on Sundays and the cloth masks will be exchanged during laundry exchange in parallel.

---

[4] CDC Guidance, People with Disabilities, dated April 6, 2020 available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withdisabilities.html.

| | | |
|---|---|---|
| 1 | Dated: May 6, 2020 | ROSEN BIEN GALVAN & GRUNFELD LLP |

Dated: May 6, 2020        ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Kara Janssen*
    Jeffrey L. Bornstein
    Ernest Galvan
    Kara J. Janssen
    Attorneys for Plaintiffs

Dated: May 6, 2020        BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Gregory B. Thomas*
    Gregory B. Thomas
    Temitayo O. Peters
    Attorneys for Defendants

Dated: May 6, 2020        HANSON BRIDGETT LLP

By: */s/ Paul B. Mello*
    Paul B. Mello
    Samantha D. Wolff
    Attorneys for Defendants

- 9 -   JOINT RESPONSE RE SANTA RITA JAIL'S COVID-19 RESPONSE – 5:18-CV-07677-NC

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

[3539658.3]

16525936.1