1  JEFFREY L. BORNSTEIN – 099358
   ERNEST GALVAN – 196065
2  KARA J. JANSSEN – 274762
   REKHA E. ARULANANTHAM – 317995
3  ROSEN BIEN GALVAN & GRUNFELD LLP
   101 Mission Street, Sixth Floor
4  San Francisco, California 94105-1738
   Telephone:  (415) 433-6830
5  Facsimile:  (415) 433-7104
   Email:      jbornstein@rbgg.com
6              egalvan@rbgg.com
               kjanssen@rbgg.com
7              rarulanantham@rbgg.com

8  Attorneys for Plaintiffs

9                    UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

| | |
|---|---|
| 12  ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNESBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; KARYN TRIBBLE in her official capacity as Director of the Alameda County Behavioral Health Care Services Agency; and DOES 1 to 20, inclusive,,<br><br>Defendants. | Case No. 5:18-CV-07677<br><br>**JOINT RESPONSE TO OCTOBER 2, 2020 ORDER SETTING STATUS HEARING ON SANTA RITA JAIL COVID-19 RESPONSE**<br><br>Judge:  Hon. Nathanael Cousins |

## I. Population Reduction

<u>Plaintiffs' Statement:</u>  The number of new COVID cases in California is surging.[1] More people than ever before are in California hospitals due to the virus, and Governor Gavin Newsom is considering implementing an even more drastic stay-at-home order.[2] Despite this, the population of Santa Rita Jail (the "Jail") continues to rise, increasing the risk of the virus spreading in the Jail.  As of November 30, 2020, the population is 2,224, reflecting a 23.8 percent increase from the Jail's population in May this year.

Although, there are only two positive cases amongst the incarcerated population as of November 30, the COVID-19 update webpage shows three positive cases amongst staff or contractors, in addition to the six staff members or contractors who were able to return to work on November 29 and November 30.  In California prisons, out of 1,430 active cases amongst staff, 1,180 tested positive in the last two weeks.  *See* "CDCR/CCHCS COVID-19 Employee Status," California Department of Corrections and Rehabilitation (Nov. 25, 2020), https://www.cdcr.ca.gov/covid19/cdcr-cchcs-covid-19-status/.  Plaintiffs remain concerned that introduction of the virus by staff is inevitable as the number of cases in the community rises.

Plaintiffs continue to urge Defendants to reduce the jail population, in order to make social distancing, modified programming, isolation, and quarantine easier.  The joint expert, Mike Brady, has made similar recommendations in his recent reports.  On October 14, 2020, Plaintiffs sent Defendants a letter with requests for information about the space available at the jail for intake quarantine and for COVID-positive individuals or those awaiting pending results; out-of-cell time and staffing in medical isolation and intake

---

[1] Evan Webeck, "Coronavirus: California's Hospitalizations Reach All-time High," SAN JOSE MERCURY NEWS (Nov. 30, 2020 at 10:13 a.m.), https://www.mercurynews.com/2020/11/30/coronavirus-californias-hospitalizations-reach-all-time-high/.

[2] *Id.*; Maggie Angst, "Newsom: New California Stay-at-Home Order Could Drop This Week," San Jose Mercury News (Nov. 30, 2020 at 1:15 p.m.), https://www.mercurynews.com/2020/11/30/newsom-new-california-stay-at-home-order-could-be-unveiled-this-week/.

17088857.1[3656692.3]     1     Case No. 5:18-CV-07677

quarantine units; and testing refusals. Although Defendants have provided information on testing refusals, Defendants have not yet responded to the other requests for or provided a date for when Defendants will meet with joint neutral expert Mike Brady regarding his recommendations for addressing the population increase, as Defendants agreed to do during the October 2, 2020 status hearing. In addition to a response to the October 14, 2020 letter, Plaintiffs request that Defendants explain what factors are driving the ongoing rise in population and what steps, if any, the Jail and County officials are taking to try to reduce the growing population.

At this critical moment during the pandemic, it is incumbent that all of us work together to reduce the spread of this terrible disease. Reducing the congregate setting of the Jail is an important part of the preventive work that needs to be done to avoid devastating illness rates and the loss of life, as we are seeing in the California state prisons.

<u>Defendants' Statement:</u>

Alameda County Sheriff's Office continues to respond proactively to the global pandemic; its corrections-industry leading COVID-19 policies and procedures continue to mitigate the introduction and spread of COVID-19 at Santa Rita Jail. Of course, Alameda County Sheriff's Office is mindful that COVID-19 can spread rapidly, which is part of the reason Santa Rita Jail employs robust testing policies, a 14-day intake quarantine during which inmates are offered testing twice, quarantines housing units if any inmate presents with symptoms or tests positive, and employs a universal, mandatory mask policy for all persons within the confines of Santa Rita Jail. As it has from the outset of the pandemic, Santa Rita Jail's COVID-19 response will continue to be based on science, CDC Guidelines, California Department of Public Health and Alameda County Public Health Department guidance for the duration of the pandemic.

With regard to the jail's population, which as of December 1, 2020 consisted of 2,206 inmates (with 155 awaiting transfer to CDCR), Alameda County Sheriff's Office will continue its close cooperation with federal, state and local justice stakeholders. Furthermore, as Alameda County Sheriff's Office has advised Plaintiffs' counsel, Alameda

County Probation Department, Pretrial Services Division, started a pilot program before the pandemic, which has the goals of increasing the safe and efficient release of arrestees and to validate and expand the use of risk assessments.  The assessment unit for this program, the function of which is to accurately identify risk level for failure to appear in court and to make recommendations regarding conditions of release, is based at Santa Rita Jail and operates 24 hours per day, seven days per week.  The assessment unit uses the Virginia Pretrial Risk Assessment Instrument Revised ("VPRAI-Revised") (2016), which evaluates a number of gender and race-neutral risk factors to recommend a supervision level from unsupervised release, to supervised release to detention.

Finally, on November 20, 2020 Sheriff Ahern sent a letter to the Alameda County Chiefs of Police and the Sheriff's Association to provide updates on Jail population and the status of $0 bail.  By way of background, at the onset of the pandemic, bail for most misdemeanor and felony offenses was set at $0 under Rule 4.115.  In June, Rule 4.115 was amended to expand the list of offenses exempted from $0 bail to include "a misdemeanor or felony violation alleged to have been committed when the arrestee had been previously released on their own recognizance or pursuant to $0 or other monetary bail."  Pursuant to this change persons previously released under their own recognizance, or pursuant to the $0 bail change, who re-offend and are brought to the Jail will be subject to bail under the Superior Court 2020 bail schedule.  Because this change may be contributing to population increases at the Jail, and concerns relating to the possible spread of COVID-19 and influenza, Sheriff Ahern wrote that "[i]n situations where circumstances permit individuals be cited and released in the field, we ask that your staff consider this option."  Sheriff Ahern noted that "[t]his will assist in our efforts to reduce additional risk factors which may cause further exposure to the Santa Rita Jail population by reducing the number of people entering the facility, as well as allowing for individuals arrested for minor offenses and misdemeanors to be released in the field."  Defendants are hopeful that this will help mitigate the risk of the spread of COVID-19 and assist in reducing population at the Jail.

## II. Reducing Testing Refusals

Plaintiffs' Statement:  On November 5, 2020, Defendants shared with Plaintiffs a spreadsheet documenting the number of COVID test refusals from the first day of testing on May 16, 2020 to November 3, 2020.  That same day, the Parties as well as Ben Rice, legal counsel for Wellpath, met and conferred on the issue.  The data reflected a variance in refusals by newly booked individuals from 6 percent to 69 percent.  For quarantined individuals, testing refusals varied from 0 to 97 percent.  Mr. Rice explained that, in the quarantined units, individuals tended to accept testing in large numbers or refuse testing in large numbers, and that it seemed to vary by the population of the particular unit.  He said that Wellpath continued to encourage individuals to take the test.

Mr. Rice agreed to find out whether medical staff could offer less intrusive methods of taking the test and whether Wellpath would take other steps, including extending the quarantine for individuals who were exposed to someone who tested positive for COVID-19 and refused testing to 14 days.  The parties also discussed the low number of tests offered to individuals upon release, as required by the Outbreak Control Plan.  The low number appears to be related to the fact Wellpath does not regularly receive at least 48 hours of notice prior to the individual's release. Defendants agreed to look into whether there are ways to improve the process, including potentially offering of a test as part of the standard release process, or otherwise increasing the number of individuals being offered testing upon release.  Plaintiffs request an update on these issues.

Defendants' Statement:

Defendants and Wellpath will continue to meet and confer with Plaintiffs to address their testing refusal questions.  However, now that Santa Rita Jail's COVID-19 response is alleged in the First Amended Complaint, and the parties are in ongoing negotiations, Defendants are mindful that detailed updates on this topic on the public Case Management Calendar may impact these ongoing negotiations, and the privileged nature of those efforts.  With regard to inmate release and refusals, it is true that frequently inmates are ordered released by appropriate authorities with little-to-no notice to ACSO, AFBH or Wellpath,

making offering COVID-19 testing to inmates at least 48 hours prior to release difficult.

**III.     COVID Spot Check Inspections by Sabot Consulting**

<u>Plaintiffs' Statement:</u>  On November 10, 2020, joint neutral expert Mike Brady of Sabot Consulting issued a report on his September 22, 2020 spot check inspection, for which Mr. Brady provided the Jail with two hours' notice[3].  Mr. Brady noted the following issues:

- lack of social distancing and inconsistent enforcement of masks in the kitchen;
- inconsistent enforcement of social distancing and mask policies;
- no weekend contact tracing, even if there are inmates who test positive in the inmate population outside of the medical isolation housing units for newly booked inmates; and
- insufficient documentation of the Intake, Transfer, Release processes or procedures modified to prevent the spread of COVID-19.

Mr. Brady also conducted a spot check inspection on November 20, 2020.  His report on this visit is forthcoming and will likely provide updates to the issues described above.  Plaintiffs request an update from Defendants regarding whether any actions have been, or will be, taken to address the concerns raised in Mr. Brady's November 10, 2020 report.

<u>Defendants' Statement:</u>

Alameda County Sheriff's Office will continue to post Mr. Brady's COVID-19 spot check reports as they become available.  Defendants note that they voluntarily agreed to these regular spot checks and that the overall tenor of Mr. Brady's reports has been complimentary of ACSO's COVID-19 response.  Plaintiffs' update did not point out that Mr. Brady's most recent report found staff mask compliance at "99.9%" (due to one contractor employee wearing his mask below his nose) and that "[t]he ACSO and Wellpath continue to do an excellent job of preventing/mitigating the spread of the Covid-19 virus within the secure perimeter of the Santa Rita Jail."

---

[3] Mr. Brady's report can be downloaded from Santa Rita Jail's COVID-19 Update webpage: https://www.alamedacountysheriff.org/admin_covid19.php.

Next, Mr. Brady has not circulated a draft report regarding his November 20 spot check. When he does, Mr. Brady will indicate "whether any actions have been, or will be, taken to address the concerns raised in Mr. Brady's November 10, 2020 report" and ACSO will respond appropriately.

## IV.   Translation of COVID-19 Educational Materials

<u>Plaintiffs' Statement:</u>  Defendants stated in the Parties' Joint Response to August 27 Order Continuing Status Hearing Re COVID-19 Response, Dkt. 205, that the Jail would receive materials translated into Korean, Tagalog, Mandarin, Cantonese, and Vietnamese by October 5, 2020. Plaintiffs focus on a few selected issues that Defendants confirm these materials are available at the Jail.

<u>Defendants' Statement:</u>

All posted COVID-19 materials have been translated into the above languages and are available on the inmate tablets, posted and provided as necessary.

## V.   Ongoing Settlement Negotiations

<u>Joint Statement:</u>  The Parties continue to engage in settlement discussions. The next settlement conference is scheduled for December 14, 2020.

Dated:  December 2, 2020          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  /s/ Rekha Arulanantham
     Rekha Arulanantham
     Attorneys for Plaintiffs

Dated:  December 2, 2020          BURKE, WILLIAMS & SORENSEN, LLP

By:  /s/ Gregory B. Thomas
     Gregory B. Thomas
     Attorneys for Defendants

Dated:  December 2, 2020          HANSON BRIDGETT LLP

By:  /s/ Paul B. Mello
     Paul B. Mello
     Attorneys for Defendants