Gregory B. Thomas (SBN 239870)
E-mail: gthomas@bwslaw.com
Temitayo O. Peters (sbn 309913)
e-mail: tpeters@bwslaw.com
Burke, Williams & Sorensen, LLP
1901 Harrison Street, Suite 900
Oakland, CA 94612-3501
Tel: 510.273-8780 Fax: 510.839.9104

Paul B. Mello (SBN 179755)
E-mail: pmello@hansonbridgett.com
Samantha D. Wolff (SBN 240280)
E-Mail: swolff@hansonbridgett.com
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

Attorneys for Defendants
COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; KARYN TRIBBLE in her official capacity as Director of the Alameda County Behavioral Health Care Services Agency;

Jeffrey L. Bornstein (SBN 099358)
Ernest Galvan (SBN 196065)
Kara J. Janssen (SBN 274762)
Rekha Arulanantham (SBN 317995)
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email: jbornstein@rbgg.com
        egalvan@rbgg.com
        kjanssen@rbgg.com
        rarulanantham@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNESBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; KARYN TRIBBLE in her official capacity as Director of the Alameda County Behavioral Health Care Services Agency; and DOES 1 to 20, inclusive,,<br><br>Defendants. | Case No. 5:18-CV-07677<br><br>**JOINT RESPONSE TO DECEMBER 2, 2020 ORDER CONTINUING STATUS HEARING ON SANTA RITA JAIL COVID-19 RESPONSE**<br><br>Judge:  Hon. Nathanael Cousins<br>Date:   January 15, 2021<br>Time:   9:00 am |

The parties jointly submit the following status report in response to the Court's Order entered at Docket 217, in which the Court asked the parties to provide an update including a report on the plan for providing COVID-19 vaccinations to staff and residents at Santa Rita Jail ("SRJ" or the "Jail").

## I. Updates Regarding Recent Increase in COVID-19-Positive inmates at Santa Rita Jail

Defendants' Statement:

The parties filed a detailed joint update on this topic as directed by the Court on January 4, 2021. (Dkt. 221.) Since then, Defendants offered expanded voluntary COVID-19 testing for staff and contractors at Santa Rita Jail on January 6, 8 and 11. Further, as of January 11, voluntary testing for staff and contractors is available seven days a week in the parking lot in front of Santa Rita Jail. As of January 12, Santa Rita Jail had 7 COVID-19-positive inmates, two of whom were symptomatic and 5 of whom were asymptomatic.

Plaintiffs' Statement:

The expansion of voluntary testing for staff is a helpful step. Plaintiffs have additional questions regarding how the testing site will operate, including whether testing is always available or must be scheduled by appointment and the percentage of staff and contractors accessing the new voluntary testing. Plaintiffs would also like to see expansion of the voluntary testing program to make it available to individuals incarcerated at the Jail. Plaintiffs are willing to meet and confer further with Defendants on these issues.

## II. Vaccine Distribution

On January 5, 2020, Plaintiffs' counsel sent the following questions regarding vaccine distribution to staff and residents at the Jail. In general, Plaintiffs are encouraging the County to prioritize vaccinating incarcerated persons, especially those who are medically vulnerable, as soon as possible because of how dangerous the virus can be in congregate settings for incarcerated persons and staff. Defendants' responses are provided below.

> **1. Is the Jail and/or the County a recipient for the vaccine or is it partnering with another entity to receive and store the vaccine?**

<u>Defendants' Response:</u>

Alameda County Health Care Services Agency ("HCSA") and Alameda County Public Health Department ("ACPHD") are currently the recipient of the vaccine. Wellpath has recently been approved by the State to directly receive doses at SRJ. For the first allocation, HCSA/ACPHD allocated doses to Wellpath. Wellpath will subsequently receive doses directly with the number of doses to be determined jointly between HCSA/ACPHD and Wellpath. Wellpath has capacity to store the Moderna vaccine.

> **2. When does the County anticipate having vaccines available for either staff who work at or individuals incarcerated in the Jail?**

<u>Defendants' Response:</u>

SRJ is currently in phase 1a of the state's vaccine distribution plan, which provides for vaccination of health care workers. On Monday, January 11, Wellpath received doses of the Moderna vaccine to vaccinate clinical staff, including Wellpath and AFBH. Emergency services personnel are currently in phase 1b, tier 1 of the state's vaccination distribution plan and incarcerated individuals are currently in phase 1b, tier 2. Current estimates are late January for phase 1b, tier 1 and potentially late February/March for phase 1b, tier 2. However, these timelines could be expedited or delayed depending on vaccine availability and/or changes to the state's vaccination distribution plan.

> **3. Where will the vaccine available to individuals incarcerated at the Jail be stored? If the vaccine will be stored at the Jail, is that already arranged or will parts of the Jail require construction to ensure proper storage?**

<u>Defendants' Response:</u>

Wellpath has a pharmacy-grade refrigerator located on at SRJ in the pharmacy with a clear shelf for the vaccine. The plug is protected and the refrigerator is backed up by a generator. The refrigerator has a built-in thermometer and is checked daily.

> **4. Will the vaccine be available to individuals who are incarcerated at the same time it is available to staff and contractors?**

<u>Defendants' Response:</u>

As noted in the response to question 2, the State's guidelines for vaccination distribution prioritizes vaccination of staff.  While SRJ must comply with state requirements regarding vaccine distribution, it is Defendants' intention to make the vaccine available to all jail staff/contractors and incarcerated individuals as close together in time as possible.

5. **Please describe the County's prioritization for who receives the vaccine. Will the County prioritize vaccinating incarcerated individuals identified as medically vulnerable to serious illness from COVID-19 ("orange" patients) over others including non-medically vulnerable staff? Over other incarcerated individuals?**

Defendants' Response:

As noted in the response to questions 2 and 4, the State's guidelines for vaccination distribution provides for earlier vaccination of staff.  While Defendants must comply with state requirements regarding vaccine distribution, it is our intention to make the vaccine available to all jail staff/contractors and incarcerated individuals as close together in time as possible and to prioritize distributing the vaccine to "orange" inmates within phase 1b, tier 2.

6. **How will the County and the Jail keep track of who receives the vaccine?**

Defendants' Response:

PrepMod is the an online clinic management and appointment scheduling system that will be used by HCSA, ACPHD, and Wellpath to track who has been vaccinated, where it was given, and when the second dose is due.  (A different system or technology could be used in the future.)  Wellpath, in coordination with HCSA/ACPHD, will administer the vaccine to incarcerated individuals, and Wellpath will update and utilize PrepMod accordingly.

7. **How will the County track and make available doses to those who receive a first dose of the vaccine in Jail but are released before their second dose?**

Defendants' Response:

Inmates who receive their first dose in the jail and are released before their second

dose will be directed to county point of dispensing (POD) sites for their second dose.  The County may employ any or multiple of the following methods to ensure access to second doses:

- Advance scheduling of a second dose
- Information on PODs provided upon release
- Text messages
- Flagging protocols in PrepMod
- Outreach

**8. If an individual receives their first dose outside of the Jail and is then booked into the Jail, how will the County and Jail ensure they receive a second dose of the correct vaccine at the correct time?**

Defendants' Response:

HCSA and ACPHD have recommended that Wellpath ask whether the person has been vaccinated at booking and believe that Wellpath will be able to search PrepMod to see there if the inmate has a record of vaccination.  A limitation to note is that information provided at time of booking must match information provided at the time of vaccination to locate the record in PrepMod.

**9. What is the Jail's plan for vaccinating newly booked individuals?**

Defendants' Response:

Subject to state mandates and if the vaccine is available when people are booked, HCSA and ACPHD expect Wellpath to offer the vaccine to newly-booked individuals.

**10. Will staff and contractors be required to take the vaccine? If not, why not?**

Defendants' Response:

HCSA/ACPHD/Health Officer is not mandating the vaccine for any population.

**11. What entity will administer the vaccination to staff and contractors? Will staff and contractors be vaccinated on-site at the Jail?**

Defendants' Response:

We anticipate that HCSA/ACPHD will deploy one or more PODs to vaccinate

staff/contractors on-site at the Jail. Staff/contractors may also be able to be vaccinated by their health care providers.

**12.    How will the Jail handle incarcerated individuals and staff who refuse the vaccine?**

Defendants' Response:

Because there is currently no evidence that the vaccine prevents transmission of the coronavirus, compliance with the same protective measures will apply whether or not vaccine is accepted by individuals who are incarcerated or are on staff at SRJ.

**13.    Who will be responsible for administering the vaccine to incarcerated individuals?**

Defendants' Response:

Wellpath, in coordination with HCSA/ACPHD, will administer the vaccine to incarcerated individuals.

**14.    What educational materials is the Jail developing regarding the vaccination and what steps does the Jail intend to take to encourage incarcerated individuals to take the vaccine?**

Defendants' Response:

County educational materials (to include print and video content) will be shared with Wellpath and ACSO to disseminate within the jail.

Plaintiffs' Statement:

Plaintiffs recognize that, as of the date of this filing, the State of California's vaccination plan prioritizes Alameda County Sheriff's Office ("ACSO") staff, as emergency services, in Phase 1B, Tier 1, ahead of individuals incarcerated at SRJ, who are in Phase 1B, Tier 2. Plaintiffs encourage Defendants to make the vaccine available to incarcerated individuals as close in time as possible to the vaccination of staff/contractors, as Defendants have stated they intend to do. Additionally, the State announced today it is expanding eligibility to all individuals 65 and up. Plaintiffs urge the County to begin vaccinating anyone in the Jail who is 65 or older as soon as possible and to also continue to prioritize other incarcerated individuals who are unable to avoid the virus as easily as individuals in the community. Plaintiffs raised this concern at the Parties' Meet and

Confer on January 13, 2021.

At the January 13, 2021 meet and confer, the Parties also discussed Plaintiffs' concern that individuals who receive a first dose of the vaccine at the jail and are released prior to receiving the second dose may run into difficulties accessing a timely second dose at a county POD.  To address this concern, Plaintiffs suggest that the Defendant County guarantee second doses to individuals who appear at a POD who have received the first dose.  Plaintiffs also recommend that Defendants assign a point person whom individuals who receive a first dose in the Jail may call if they encounter issues timely receiving the second dose.

Plaintiffs are willing to further meet and confer further with Defendants on these issues.

### III.     Population Reduction

<u>Plaintiffs' Statement:</u>

On January 7, 2021, during a meet and confer between the parties, Defendants' counsel informed Plaintiffs' counsel that the Superior Court of Alameda County had ordered the early release of 28 individuals from SRJ, as a result of coordination between the Alameda County Public Defender, Alameda County District Attorney's Office, and the Superior Court.  This amounts to 1% of the current population (2,135 according to the ACSO website[1]).  A much larger reduction in the population is necessary to allow for social distancing, modified programming, isolation of infected individuals, and quarantine of exposed individuals.  In prior reports, the Joint Expert, Mike Brady, recommended the population be reduced to 50% of the Jail's capacity, or approximately 1,800 individuals.  Ongoing re-evaluation of cases for release pending trial is one critical factor that must be refreshed and more aggressively utilized given that cases are not moving through the criminal courts at the normal pace due to the effects of the pandemic.  As a result, pre-trial detainees linger in the Jail awaiting delayed hearings and trials and in doing so during the

---

[1] https://www.alamedacountysheriff.org/admin_covid19.php

pandemic face the stress and risks associated with the lack of being able to socially distance.

There is also a continuing backlog of people who are stuck in limbo in the Jail who cannot transfer out to other institutions. These include many who have been sentenced or have been directed to transfer to competency restoration programs at State hospitals. In both instances, they are stuck in the jail because neither CDCR nor the Department of State Hospitals are accepting transfers due to the pandemic and ongoing surge in cases. According to the Joint Expert's most recent COVID-19 inspection report, as of November 6, 2020, he identified 177 individuals sentenced to CDCR and 43 individuals awaiting transport to State Hospitals for competency restoration. In addition to contributing to the population increase, the inability to transfer individuals awaiting competency restoration to State Hospitals puts increased pressure on the Jail's already overburdened mental health clinicians. Although CDCR has announced that it will start accepting transfers this month, it will do so only in small numbers, and there is no indication that any transfers will be accepted from Alameda County in the first small groups. It is therefore more critical that justice partners work together to reduce the pre-trial population in the Jail as much as possible.

Plaintiffs reiterate that as the population of the Jail rises, the danger of the spread of the virus rises exponentially. There is also greater pressure on the jail to increase staffing on both the custody and mental health sides. Plaintiffs urge Defendants, the Public Defender's Office, the District Attorney's Office, Superior Court, and their federal counterparts to continue to review cases for release and further reduce the population at SRJ. Plaintiffs further echo the Joint Expert's recommendation that the County pursue a local competency restoration program as an alternative to transfer to the State Hospitals in order to assist in managing the size of the population and to provide these individuals the services they need and are entitled to.

Defendants' Statement:

Alameda County Sheriff's Office continues to respond proactively to the global

pandemic; its corrections-industry leading COVID-19 policies and procedures continue to mitigate the introduction and spread of COVID-19 at Santa Rita Jail.  Of course, Alameda County Sheriff's Office is mindful that COVID-19 can spread rapidly, which is part of the reason Santa Rita Jail employs robust testing policies, a 14-day intake quarantine during which inmates are offered testing twice, quarantine housing units if any inmate presents with symptoms or tests positive, ensures that all areas of Santa Rita Jail are thoroughly and regularly disinfected (and provides incarcerated persons with disinfectant, sanitizing wipes, and soap as needed), and employs a universal, mandatory mask policy for all persons within the confines of Santa Rita Jail.  As it has from the outset of the pandemic, Santa Rita Jail's COVID-19 response will continue to be based on science, CDC Guidelines, and California Department of Public Health and Alameda County Public Health Department guidance for the duration of the pandemic.

With regard to the Jail's population, as of January 13, 2021, Santa Rita Jail housed 2,094 incarcerated persons, which is lower than the population on December 1, 2020 at the time of the last comprehensive joint update.  Of that total, 175 persons are sentenced and pending transfer to the California Department of Corrections and Rehabilitation.  Alameda County Sheriff's Office will continue its close cooperation with federal, state and local justice stakeholders.

Next, on November 20, 2020, Sheriff Ahern sent a letter to the Alameda County Chiefs of Police and the Sheriff's Association to provide updates on Jail population and the status of $0 bail.  By way of background, at the onset of the pandemic, bail for most misdemeanor and felony offenses was set at $0 under Judicial Council Emergency Rule 4.115.  In June, Rule 4.115 was amended to expand the list of offenses exempted from $0 bail to include "a misdemeanor or felony violation alleged to have been committed when the arrestee had been previously released on their own recognizance or pursuant to $0 or other monetary bail."  Pursuant to this change persons previously released under their own recognizance, or pursuant to the $0 bail change, who re-offend and are brought to the Jail will be subject to bail under the Superior Court 2020 bail schedule.  Because this change

JOINT RESPONSE TO DECEMBER 2, 2020 ORDER CONTINUING STATUS HEARING ON SANTA RITA JAIL COVID-19 RESPONSE

may be contributing to population increases at the Jail, and concerns relating to the possible spread of COVID-19 and influenza, Sheriff Ahern wrote that "[i]n situations where circumstances permit individuals be cited and released in the field, we ask that your staff consider this option."  Sheriff Ahern noted that "[t]his will assist in our efforts to reduce additional risk factors which may cause further exposure to the Santa Rita Jail population by reducing the number of people entering the facility, as well as allowing for individuals arrested for minor offenses and misdemeanors to be released in the field."

Finally, ACSO has requested that the California State Sheriff's Association assist in requesting CDCR to prioritize transfers of sentenced inmates. Defendants are hopeful that all of the steps outlined above will further mitigate the risk of the spread of COVID-19 and assist in reducing population at the Jail.

## IV. Ensuring Communication Between Newly Booked Individuals and their Counsel

Plaintiffs' counsel was recently contacted by individuals from the Alameda County Public Defender's office who expressed concerns that they are unable to initiate any confidential calls, video visits, or non-contact visits with their newly arraigned clients. This is due to the current 14 day intake quarantine policy which prohibits quarantined individuals from leaving their unit.  This is particularly problematic for clients facing serious charges and where an interview is needed to determine whether there is surveillance video that needs to be preserved or where an assessment is needed to determine the individuals mental state close in time to their arrest.  Currently individuals on quarantine are transported to areas away for their quarantined living unit in the Jail for video court but are not allowed to be transported to these areas for confidential video visits with appointed counsel.

Relying on newly arrested individuals to initiate these calls on their own is problematic because they do not yet have a relationship with their public defender, may not understand how to contact the office due to a developmental or psychiatric disability, and their public defender may be in court or otherwise occupied when they call and miss

their call with no ability to return it.  Additionally, while video visits may be scheduled using the GTL video visitation stations on the unit, this is not a confidential form of communication as the call can be overheard by anyone on the unit.

      This issue could be addressed in a variety of ways including by permitting criminal counsel to arrange for confidential video visits before or after court, developing a process where criminal counsel can schedule a call that a deputy would initiate for the client, and/or allowing for a confidential video visit to be held following the individual's arraignment.  Plaintiffs raised this issue with Defendants during our January 13, 2021 meet and confer and are willing to continue to meet and confer on this issue to find a solution.

## V.   Ongoing Settlement Negotiations

<u>Joint Statement:</u>

      The Parties continue to engage in productive settlement discussions and have reached tentative agreements in several areas, subject to final review by the Parties and approval by the County:

- COVID-19
- Classification
- Grievances
- Creation of Inmate Council and Ombudsperson Roles

      The Parties are making progress in negotiating other areas of a proposed Consent Decree including, but not limited to: ADA; Staffing; Provision of Programming, Recreation, and Out-of-Cell Time; Use of Force; Mental Health; and Discharge Planning.

      The Parties note that, for the first time in ten years, the Jail experienced no successful suicide attempts during the year 2020.  There are continued suicide attempts that have not been successful and the parties are continuing to work to find ways to increase mental health care to try to further reduce these incidents.  The next settlement conference is scheduled for January 19, 2021.

| | | |
|---|---|---|
| 1 | Dated: January 13, 2021 | Respectfully submitted, |
| 2 | | ROSEN BIEN GALVAN & GRUNFELD LLP |
| 3 | | By: /s/ *Kara Janssen* |
| 4 | | Kara Janssen<br>Attorneys for Plaintiffs |
| 5 | Dated: January 13, 2021 | BURKE, WILLIAMS & SORENSEN, LLP |
| 6 | | |
| 7 | | By: /s/ *Gregory B. Thomas* |
| 8 | | Gregory B. Thomas<br>Attorneys for Defendants |
| 9 | Dated: January 13, 2021 | HANSON BRIDGETT LLP |
| 10 | | By: /s/ *Paul B. Mello* |
| 11 | | Paul B. Mello<br>Attorneys for Defendants |