JEFFREY L. BORNSTEIN – 099358
ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       jbornstein@rbgg.com
             egalvan@rbgg.com
             kjanssen@rbgg.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNESBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; KARYN TRIBBLE in her official capacity as Director of the Alameda County Behavioral Health Care Services Agency; and DOES 1 to 20, inclusive,,<br><br>        Defendants. | Case No. 5:18-CV-07677<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CONSENT DECREE**<br><br>Date:    September 22, 2021<br>Time:    1:00 pm<br><br>Judge:  Hon. Nathanael Cousins |

[3750491.10]

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 2

I.      INTRODUCTION ...................................................................................... 2

II.     CASE BACKGROUND ............................................................................. 3

III.    SUMMARY OF PROPOSED SETTLEMENT ........................................ 5

IV.     ARGUMENT .............................................................................................. 11

        A.      Class Certification Has Been Granted and Remains Appropriate ................ 11

        B.      The Consent Decree is Fair, Reasonable, and Should Be Granted
                Preliminary Approval ................................................................................ 12

        C.      The Proposed Notice Satisfies Due Process and Should Be Approved ........ 13

        D.      The Court Should Approve the Proposed Scheduling Order, Including
                Setting a Date for the Fairness Hearing ..................................................... 14

V.      CONCLUSION ........................................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................... 12

*Frank v. Gaos*,
  139 S.Ct. 1041 (2019) ........................................................................................... 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 2012) .............................................................................. 12

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-cv-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ............... 12

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ................... 13

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .............................................................................. 12

*In re: Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prod. Liab. Litig.*,
  No. 2672 CRB (JSC), 2016 WL 6091259 (N.D. Cal. Oct. 18, 2016) ..................... 13

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ........................................................................... 12, 13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................ 14

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................ 13

*Ruch v. AM Retail Grp., Inc.*,
  No. 14-CV-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ............... 13

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) .......................................................................... 14

*Tadepalli v. Uber Techs., Inc.*,
  No. 15-CV-04348-MEJ, 2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) .......... 12, 13

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................................ 12

## STATUTES

29 U.S.C. § 705 .................................................................................................... 4, 11

42 U.S.C. § 12102 ................................................................................................ 4, 11

Cal. Gov't Code § 12926..................................................................................... 4, 11

WIC § 5150.............................................................................................................. 7

**OTHER AUTHORITIES**

William B. Rubenstein,
     Newberg on Class Actions, § 13.15 (5th ed. 2016)........................................ 12, 13

**RULES**

Fed R. Civ. P. 23.................................................................................................. passim

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CONSENT DECREE

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on September 22, 2021 or as soon thereafter as the matter may be heard, Plaintiffs Ashok Babu, Robert Bell, Ibrahim Keegan-Hornesby, Demarea Johnson, Brandon Jones, Stephanie Navarro, Roberto Serrano, and Alexander Washington ("Plaintiffs") will and hereby do move the Court for entry of an Order: (1) granting preliminary approval of the proposed class settlement agreement (the "Consent Decree") submitted herewith as Exhibit 1 to the Declaration of Kara Janssen in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement; (2) approving the manner and form of giving notice of the Consent Decree to the class and subclass members; (3) scheduling deadlines for objections; and (4) scheduling a fairness hearing regarding final approval of the Consent Decree.

In support of this motion, Plaintiffs state that the Consent Decree: (1) represents a comprehensive settlement of the issues raised in the above-captioned case; (2) offers a fair and equitable result to those affected by it; and (3) will result in significant long-term benefits both for class and subclass members as well as for Defendants.

The motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the attached Declaration of Kara Janssen and exhibits attached thereto; all pleadings and papers on file in this action; and any oral argument this Court permits.

Rule 23 of the Federal Rules of Civil Procedure does not require a hearing on a motion seeking preliminary approval of a class action settlement. Plaintiffs and Defendants County of Alameda; Gregory J. Ahern in his official capacity as Sheriff of the Alameda County Sheriff's Office; and Karyn Tribble in her official capacity as Director of the Alameda County Behavioral Health Care Services Agency ("Defendants") (collectively the "Parties") agree to forego a hearing unless the Court concludes that a hearing is necessary.

/ / /

/ / /

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3
4
5
6
7
8

The Proposed Consent Decree is designed to address fundamental issues endemic in the Santa Rita Jail ("Jail").  The Parties have worked diligently and cooperatively with the subject matter experts, and with the assistance of the Court, to develop and implement significant changes in the way the Jail addresses intake and classification, out-of-cell time, mental health care and treatment, suicide prevention, discharge planning, and several other core issues described further below.

9
10
11
12
13
14
15
16
17
18
19
20
21

The proposed Consent Decree[1] provides comprehensive injunctive relief to the certified class of all adults who are now, or in the future will be, incarcerated in the Jail and the certified subclass of all qualified individuals with a psychiatric disability who are now, or will be in the future, incarcerated in the Jail, while eliminating the risk of duplicative litigation.  The Consent Decree requires the County of Alameda, Alameda County Sheriff's Office ("ACSO"), Alameda County Forensic Behavioral Health ("AFBH") (collectively referred to as the "County" or "Defendants") to substantially change policies, procedures, and facilities pertaining to, among others: the provision of mental health care and treatment services; out-of-cell time and outdoor time; the use of restrictive housing; suicide prevention; programming and discharge planning for people with mental health disabilities; suicide prevention protocols including by limiting the use of safety cells; and other key areas of Jail operations.  It also continues to require robust measures to combat the spread of COVID-19 in the Jail.

22
23
24
25
26

The Consent Decree includes effective mechanisms for reporting, monitoring, and dispute resolution.  A team of joint neutral experts and Class Counsel will monitor the Defendants' compliance throughout the duration of the Consent Decree.  The Department of Justice will also receive access to the Jail and documents in connection with its April 22, 2021 report of investigation.  By its terms, the Consent Decree is expected to last

27
28

[1] The Consent Decree is attached as Exhibit 1 to the Declaration of Kara Janssen in Support of Joint Motion for Preliminary Approval of Class Settlement ("Janssen Decl.").

1  six years from the time it is finally approved and entered unless it is terminated earlier or

2  extended as set forth in the Consent Decree.

3        With the assistance of Magistrate Judge Laurel Beeler, the Parties worked

4  extensively to understand, study, and then negotiate the outcomes, goals and timetables for

5  the transformative changes that are required by the Consent Decree.  Declaration of Kara

6  Janssen In Support of Plaintiffs' Motion for Preliminary Approval ("Janssen Decl.") ¶ 2.

7  The proposed Consent Decree is fair, adequate, and reasonable, and is the product of

8  serious, informed, and non-collusive negotiations between experienced and knowledgeable

9  counsel.  It satisfies all the criteria for preliminary approval under Rule 23 of the Federal

10  Rules of Civil Procedure.  Additionally, the Parties' proposed notice and schedule for a

11  fairness hearing will allow class members an adequate opportunity to review and comment

12  on the Consent Decree and is consistent with the Parties' desire for prompt implementation

13  of the Consent Decree.

14        Accordingly, Plaintiffs ask that the Court:  (1) preliminarily approve the Consent

15  Decree; (2) approve the proposed form of the class notice and distribution plan; and (3) set

16  a deadline for filing of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs; (4) set

17  a deadline for class and subclass members to submit any objections to the Consent Decree;

18  (5) set a deadline for filing of Plaintiffs' Motion for Final Approval and for filing of

19  responses to any timely-filed class member objections; and (6) schedule a fairness hearing

20  to address Plaintiffs' Motion for Final Approval, request for attorneys' fees and costs, and

21  any objections.

22  **II.    CASE BACKGROUND**

23        Plaintiffs, on behalf of themselves and all others similarly situated, filed this federal

24  class action lawsuit ("Action") on December 21, 2018 challenging the adequacy of mental

25  health care and treatment at the Jail; suicide prevention and the use of safety cells; alleged

26  overuse of isolation and adequacy of out-of-cell time; access to programs, services and

27  activities, discharge planning, and sufficiency of accommodations in disciplinary

28  proceedings and in pre-planned use-of-force incidents for persons with psychiatric

1    disabilities.  Plaintiffs allege these conditions violate the Eighth and Fourteenth

2    Amendments of the U.S. Constitution, Article I, Sections 7 and 17 of the California

3    Constitution, the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA");

4    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, et. seq.; and California

5    Government Code 11135.  Dkt. No. 1.

6        On January 21, 2020, the Court certified the proposed class defined as "all adults

7    who are now, or in the future will be, incarcerated in the Alameda County Jail" ("Class")

8    and a subclass defined as "all qualified individuals with a psychiatric disability, as that

9    term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government

10   Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the

11   Alameda County Jail" ("Disability Subclass").  Dkt. No. 64

12       As part of the General Order 56 process, the Parties agreed to retain a panel of Joint

13   Experts to tour the Jail and evaluate the policies, procedures, practices, and conditions in

14   the Jail and to complete reports with their findings.  Dkt. No. 29.  Copies of the Joint

15   Experts' reports were filed with the Court in March 2020 and are part of the record in this

16   case.  Dkt. Nos. 111, 112.  The Parties then used these reports, as well additional

17   information obtained from class members and other relevant parties, to negotiate the terms

18   contained in the Consent Decree attached hereto.  Janssen Decl. ¶ 2.

19       After the Class and Disability Subclass were certified, and while the Parties were

20   negotiating a resolution, the COVID-19 pandemic struck resulting in COVID-19 cases

21   among the Class.  The Parties engaged in a meet and confer process related to COVID-19

22   that was overseen by the Court that included spot-checks conducted by a third-party

23   expert.  Dkt. No. 127.  Due to the impact of COVID-19 on programs and services relevant

24   to the class allegations, including out-of-cell time, mental health treatment services, and

25   other programs, Plaintiffs filed a motion to amend the Complaint to include allegations

26   concerning COVID-19 related policies and practices on July 29, 2020.  Dkt. No. 173.  The

27   Court granted the motion on August 13, 2020 (Dkt. No. 184), and the Amended

28   Complaint, which did not alter the previously certified class or subclass definition, was

1  filed on August 17, 2020.  Dkt. No. 186.

2       Defendants have worked cooperatively with attorneys for the Class and Disability

3  Subclass to resolve the complex issues in this case including participating in extensive

4  good-faith settlement negotiations before Magistrate Judge Beeler; and meeting and

5  conferring with the Department of Justice following the issuance of their report regarding

6  the Jail on April 22, 2021.  Dkt. No. 247.  Once the Parties reached agreement on

7  injunctive relief, the Parties participated in two additional settlement conferences regarding

8  the issues of attorneys' fees and costs for work required to monitor implementation of the

9  Consent Decree and for work through final approval of the Consent Decree.  Dkt.

10  Nos. 264, 265.  All of these efforts were time- and resource- intensive but were necessary

11  to the Parties' ultimate successful resolution of this action.

12  **III.  SUMMARY OF PROPOSED SETTLEMENT**

13       The Consent Decree outlines reforms that Defendants will be required to implement

14  to address the issues raised in this Action and to significantly change how the Jail operates

15  in the future.  This case seeks only to improve Jail conditions and does not seek money

16  damages.  No one incarcerated in the Jail will receive any money as a result of this Action.

17  This Action does not affect any person's rights or ability to sue for monetary damages or to

18  petition for a writ of habeas corpus on their own behalf.

19       A complete copy of the proposed Consent Decree is attached as Exhibit 1 to the

20  Declaration of Kara Janssen.  The Consent Decree requires Defendants to take the

21  following key steps to improve conditions at the Jail:[2]

22       a)  Implement a new classification system, approved by Joint Expert Dr. James

23           Austin, that limits the use and duration of restrictive housing including a formal

24           process for the admission, review, and release of individuals to and from

---

[2] This summary of the proposed terms of the settlement is qualified in its entirety by the references to the provisions in the proposed Consent Decree (which includes a Remedial Plan).  In the event of any inconsistencies between the terms and provisions of the Consent Decree and the summary set forth herein, the terms and provisions of the Consent Decree shall govern.

1  Restrictive Housing, including an ongoing review process, that requires

2  approval by the Restrictive Housing Committee ("RHC").  Janssen Decl. ¶ 2,

3  Ex. 1 ("Consent Decree") at § III(C).  This new system prohibits the Jail from

4  placing individuals with serious mental illness in the most restrictive setting,

5  Step 1, absent a determination that the individual presents with such an

6  immediate and serious danger that there is no reasonable alternative and a

7  determination from a Qualified Mental Health Professional the placement is not

8  contraindicated and the individual is not a suicide risk or actively psychotic.  *Id.*

9  § III(D)(1)(a).

10  b)  Reconfigure outdoor recreation spaces to maximize out-of-cell time and yard

11  time and implement policies to ensure that outdoor recreation time is maximized

12  to the extent feasible for all individuals in restrictive housing.  *Id.* § III(D)(2).

13  c)  Ensure that people in the Jail are offered adequate out-of-cell time each day,

14  including a process for significantly increasing the amount of out-of-cell time

15  offered at the Jail within four months of the Effective Date.[3]  *Id.* § III(D)(1).

16  The Jail will continue to increase the amount of out-of-cell time offered until the

17  Jail reaches the new minimum out-of-cell times set out in the Consent Decree

18  which will ultimately require Defendants to offer at least:  14 hours out-of-cell

19  time per week for people in Restrictive Housing, Recreate Alone Status (Step 1);

20  21 hours out-of-cell time per week for people in Restrictive Housing, Recreate

21  Together Status (Step 2); and 28 hours out-of-cell time per week for people in

22  General Population celled housing.  *Id.*  Individuals housed in the most

23  restrictive setting within the Therapeutic Housing Units will be offered at least

24  28 hours of out-of-cell time per week and people housed in the less restrictive,

25  transitional units within the Therapeutic Housing Units will be offered at

26  least 35 hours of out-of-cell time per week.  *Id.* § III(G)(6).

27

28  [3] "Effective Date" is defined in Section II of the Consent Decree as "the date this Consent
Decree is approved and entered by the Court."

d)  Implement an electronic information tracking system to allow for comprehensive tracking of out-of-cell time within one year of the Effective Date.  *Id.* § III(D)(1).

e)  Ensure that people in the Jail receive adequate mental health care, including by ensuring adequate staffing; establishing levels of care; creating treatment teams and treatment plans for individuals who need them; providing treatment services in confidential settings, with consistent providers, and of appropriate clinical duration; implementing an electronic system to track referrals; providing daily mental health rounds in Restrictive Housing Units; ensuring psychotropic medications are ordered in a timely manner and consistently delivered, and implementing Therapeutic Housing Unit(s) to provide additional therapeutic and behavioral health services throughout the Jail.  *Id.* § III(G).

f)  Take additional measures to prevent suicide and self-harm in the Jail by adopting graduated suicide precautions, constructing suicide resistant cells, and severely curtailing the use of safety cells including by limiting placement in them to no more than 8 hours - which will be further reduced to no more than 4 hours after the construction of the suicide-resistant cells - and implementing procedures and assessments to identify individuals with mental health concerns, including those at risk of self-harm, upon intake and post-intake.  *Id.* § III(G)(4).

g)  Develop and implement standards and timelines for emergency referrals and handling of Welfare and Institutions Code § 5150 ("5150") psychiatric holds for incarcerated persons and coordinate with John George Psychiatric Pavilion ("John George") to promote continuity of care, including sharing records and information, track the number of 5150 holds initiated from the Jail, perform a quarterly review of all cases where individuals were sent to John George to identify any patterns, practices, or conditions that need to be addressed systematically; and assess and review the quality of the care and the quality of services provided to incarcerated clients and resultant outcomes including any

1    subsequent suicide attempts or further 5150s.  *Id.* § III(G)(5).

2    h) Provide programming within the facility as a means of suicide/self-harm

3    prevention and provide individuals with psychiatric disabilities equal access to

4    programs and services, including the Sandy Turner Center and Transition Center

5    programs, consistent with an individual's classification.  *Id.* § III(D)(3).

6    i) Establish an Inmate Advisory Council and Ombudsperson Program to work with

7    the Compliance Unit and senior Jail staff to provide individuals incarcerated at

8    the Jail a venue to raise and address new and ongoing concerns and possible

9    ways to improve living conditions at the Jail.  *Id.* § III(H),

10   j) Develop and implement an updated written use-of-force policy for all uses of

11   force both planned and un-planned at the Jail, including that force should only

12   be used in an amount that is objectively reasonable and appears necessary to

13   control the situation or stop the threat, and the force must be in the service of a

14   legitimate correctional objective.  *Id.* § III(E)(1).  The updated policy must

15   require clinical engagement from AFBH where appropriate including consulting

16   with AFBH prior to any pre-planned use of force on individuals with known

17   psychiatric disabilities, and coordinating with AFBH on de-escalation measures,

18   such as use of cooling down periods or other appropriate methods, to avoid or

19   otherwise limit the use of force as much as possible.  *Id.*

20   k) Limit the use of restraint devices for only the amount of time reasonably

21   necessary, prohibit such devices from being used as a punishment or as a

22   substitute for treatment and require notification of AFBH and medical staff any

23   time a restraint log is initiated for a Behavioral Health Client, so that they can

24   assess continuation of the restraint device.  *Id.* § III(E)(2).

25   l) Develop written policies and procedures regarding discipline that must include

26   meaningful consideration of the relationship between the individuals' behavior

27   and any mental health or intellectual disability, the efficacy of disciplinary

28   measures versus alternative measures that are designed to effectuate change in

behavior through clinical intervention, and the impact of disciplinary measures on the health and well-being of prisoners with disabilities. *Id.* § III(E)(3). Defendants must also include AFBH in the disciplinary process relating to clients with serious mental illness ("SMI") and AFBH must be notified of, and included as appropriate, in the disciplinary process for AFBH clients without SMI. *Id.*

m) Provide incarcerated persons with psychiatric disabilities equal access to Jail programs, services, and activities through developing and implementing updated policies and procedures to: ensure effective communication; screen for psychiatric disabilities at intake; provide reasonable modifications and accommodations as necessary to ensure equal access to vocational, educational, recreational, and re-entry related programs; and provide for an ADA-specific request and grievance process for disability-related issues. *Id.* § III(J). Defendants must also continue to employ a full-time, dedicated ADA Coordinator and implement an electronic, real-time networked tracking system to track individual's disability-related accommodations. *Id.* § III(J)(1), (5).

n) Implement systems, including through close coordination between Alameda County Behavioral Health and the Jail, to facilitate the initiation or continuation of community-based services for people with mental health disabilities while incarcerated and to transition seamlessly into such services upon release. *Id.* § III(I).

o) Continue to take steps to address the ongoing COVID-19 pandemic including requiring face coverings, providing testing, screening and quarantining newly booked individuals, ensuring safe transportation to Court and other off-site locations, and regularly offering and making vaccines available to all incarcerated persons and staff who want to be vaccinated. *Id.* § III(A). The Consent Decree recognizes that science continues to evolve regarding COVID-19 and does not preclude Defendants from taking additional steps above

those listed therein to address the spread of COVID-19, or from modifying their response consistent with applicable public health guidance. *Id.*

p)  Develop a detailed plan setting forth key benchmarks for implementation of the terms of this Consent Decree within three months of the Effective Date, to be updated on a quarterly basis for the first two years following the Effective Date. *Id.* § IV(B).

q)  Review and revise all policies, procedures, and any necessary forms mentioned within the Consent Decree or otherwise needed to implement the provisions of this Consent Decree, in consultation with the Joint Experts and with input from Class Counsel, within six months of the Effective Date. *Id.* § IV(A).

r)  Train staff on any and all relevant and updated policies, procedures and forms within 90 days of finalization of any new policies, procedures, and forms. *Id.*

Joint neutral experts and Class Counsel will monitor the County's compliance with the Consent Decree. *Id.* § IV(C). The Joint Experts will tour the Jail twice a year and produce reports regarding their findings. *Id.* Class Counsel will also tour the Jail, up to three times a year for the first two years and then twice a year for the remainder of the term. *Id.* § IV(D). The Department of Justice's mental health subject matter expert will also receive access to the Jail twice per year and documents in connection with its April 22, 2021 report of investigation. *Id.* To the extent disputes arise, the Consent Decree contains a dispute resolution process that requires the Parties to meet and confer and attempt to mediate the dispute prior to coming back to the Court. *Id.* § V.

The Consent Decree shall remain in effect for a term of six years following the Effective Date unless it is terminated early or otherwise extended pursuant to the processes set forth in Section IX of the Consent Decree. *Id.* § IX.

Defendants have agreed to pay $2,150,000.00 to cover and fully resolve any and all of Plaintiffs' and Plaintiffs' Counsels' claims for attorneys' fees and costs incurred or attributable to work performed up through the Effective Date of the Consent Decree. This amount is less than Class Counsel's lodestar, which includes over 5,100 hours of work to

1   date, and includes payment of $12,856.65 in costs and expenses.  Janssen Decl. ¶ 3.

2   Defendants have further agreed to pay Plaintiffs' Counsels' monitoring fees, beginning as

3   of the Effective Date, subject to the following caps of up to: $550,000 for year one;

4   $450,000 for year two; $375,000 for year three; $300,000 for each of years four and five;

5   and $275,000 for year six and for each of any subsequent years in the event the Consent

6   Decree is extended.  *Id.* ¶ 2, Ex. 1 ("Consent Decree") § VII.

7   **IV.   ARGUMENT**

8        **A.    Class Certification Has Been Granted and Remains Appropriate**

9        On January 21, 2020, the Court found the requirements of Rules 23(a) and 23(b)(2)

10  satisfied and certified a class consisting of "All adults who are now, or in the future will

11  be, incarcerated in the Alameda County Jail" and a subclass defined as "All qualified

12  individuals with a psychiatric disability, as that term is defined in 42 U.S.C. § 12102, 29

13  U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are

14  now, or will be in the future, incarcerated in the Alameda County Jail."  Dkt. No. 64.  The

15  Amended Complaint filed August 17, 2021 did not alter these definitions.  Dkt. No. 184

16  at 4 ("Here, Babu seeks to amend his complaint to clarify their concerns regarding

17  Defendants' COVID-19 related policies and practices. *See* ECF 173-1. Babu does not seek

18  to alter their class definition or add additional claims or defendants.").

19        The class definition set forth in the Consent Decree has not changed and defines the

20  Class as "all adults who are now, or in the future will be, incarcerated in the Alameda

21  County Jail."  Consent Decree § I.  It further defines the Disability Subclass as "all

22  qualified individuals with a psychiatric disability, as that term is defined in 42 U.S.C.

23  § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and

24  who are now, or will be in the future, incarcerated in the Alameda County Jail."  *Id.*  The

25  definitions in the Consent Decree do not expand the class membership or legal claims that

26  this Court has previously certified.

27        The Class and Disability Subclass continue to meet the requirements of numerosity,

28  commonality, typicality, and adequacy of representation.  The Class and Disability

1   Subclass is still comprised of thousands of individuals who, like the class representatives,

2   have been similarly subjected to the same conditions and who seek declaratory and

3   injunctive relief consisting of systemic improvements to the Jail.

4       **B.    The Consent Decree is Fair, Reasonable, and Should Be Granted**
        **Preliminary Approval**

5

6       Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action

7   on court approval. *Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019). The Ninth Circuit

8   recognizes the "overriding public interest in settling and quieting litigation …

9   particularly … in class action suits …." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943,

10  950 (9th Cir. 1976); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

11  Cir. 1992) (There is a "strong judicial policy that favors settlements, particularly where

12  complex class action litigation is concerned."); *In re Syncor ERISA Litig.*, 516 F.3d 1095,

13  1101 (9th Cir. 2008) (same). A court may probe the parties' consensual agreement only

14  "to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696

15  F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

16  (9th Cir. 2012)); see Fed. R. Civ. P. 23(e)(2) (the court may approve settlement "only after

17  a hearing and on finding that it is fair, reasonable, and adequate.").

18      At the preliminary approval stage, the Court need only find that the proposed

19  settlement is within the range of reasonableness such that it is appropriate to disseminate

20  notice to the class and schedule a fairness hearing. *See* William B. Rubenstein, Newberg

21  on Class Actions, § 13.15 (5th ed. 2016) ("Newberg"); *In re Celera Corp. Sec. Litig.*, No.

22  5:10-cv-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015). "At this point,

23  the court's role is to determine whether the settlement terms fall within a reasonable range

24  of possible settlements, with 'proper deference to the private consensual decision of the

25  parties' to reach an agreement rather than to continue litigating." *Tadepalli v. Uber Techs.,*

26  *Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, at *8, 150 F.3d at 1027(N.D. Cal. Dec.

27  17, 2015).

28      To determine whether an agreement is fundamentally fair, adequate, and

1  reasonable, the Court may preview the factors that ultimately inform final approval:

2  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of

3  further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

4  amount offered in settlement; (5) the extent of discovery completed, and the stage of the

5  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

6  participant; and (8) the reaction of the class members to the proposed settlement.

7  *Tadepalli*, 2015 WL 9196054 at *11.  Nevertheless, where a settlement is the product of

8  arms-length negotiations conducted by experienced class counsel, the Court begins its

9  analysis with a presumption that the settlement is fair and reasonable.  *See* 5 Newberg

10  § 13.45; *In re: Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prod. Liab. Litig.*,

11  No. 2672 CRB (JSC), 2016 WL 6091259, at *10 (N.D. Cal. Oct. 18, 2016); *In re High-*

12  *Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D.

13  Cal. Oct. 30, 2013); *Tadepalli*, 2015 WL 9196054 *9.  Courts have further found an

14  absence of collusion when settlement negotiations are conducted by a third-party mediator.

15  *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *11 (N.D.

16  Cal. Mar. 24, 2016).  Thus, at this stage, so long as the settlement falls into the range of

17  possible approval—giving deference to the result of the parties' arms-length negotiations

18  and the judgment of experienced counsel following sufficient investigation—the

19  presumption applies and the settlement should be preliminarily approved.

20  **C.     The Proposed Notice Satisfies Due Process and Should Be Approved**

21  Notice provided under Rule 23(e) must "generally describe[ ] the terms of the

22  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

23  come forward and be heard."  *Lane*, 696 F.3d at 826 (quoting *Rodriguez v. West Publ'g*

24  *Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

25  The notice standard is satisfied here.  First, the proposed notice informs members of

26  the class of the relevant aspects of the litigation and the settlement, including:  (i) a brief

27  statement of this action, description of key terms of the Consent Decree, and its effect on

28  class member claims; (ii) the date and time of the hearing on final approval; (iii) the

deadline and process for submitting objections to the proposed Consent Decree; and (iv) the web page, phone number, and mailing addresses that may be used to obtain a copy of the Consent Decree in addition to the processes for viewing it within the Jail.  Janssen Decl. ¶ 2, Ex. 1 (Consent Decree), Ex. D (Proposed Notice).

The Parties have agreed to the following distribution plan, as set forth in the Consent Decree, including that notice shall be posted:  (1) in all intake and housing units of the Jails; (2) on Class Counsel's website; (3) on the tablets used by class members; and (4) on the television-notification system inside the Jail.  The Parties shall provide alternate format copies of the notice upon request.  Notice shall be posted/distributed by the Parties within twenty-one (21) days of the date of the Court's Order granting preliminary approval, and shall remain posted so long as the Consent Decree is in effect, absent further order of the Court.  *Id.* § VI(B).

The proposed notice and distribution plan will fairly apprise members of the Class and Disability Subclass of the settlement and their options with respect thereto, and fully satisfy due process requirements for a Rule 23(b)(2) class with no opt-out rights.  The Court should approve the proposed notice and direct that it be distributed as set forth herein.

### D. The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing

Once a court grants preliminary approval and notice is provided, the court conducts a "fairness hearing," at which all interested parties have an opportunity to be heard.  At such a hearing, the court conducts a substantive evaluation of the proposed settlement to determine whether it is "fundamentally fair, adequate, and reasonable."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

/ / /

/ / /

/ / /

The Parties propose the following schedule:

| Event | Date |
|---|---|
| Defendants to provide notice to the appropriate officials as required by the Class Action Fairness Act (CAFA) 28 U.S.C. § 1715(b) | Within 10 days of the filing of Preliminary Approval. |
| Posting notice by the County in all intake and housing units of the Jails | Within 21 days after entry of order granting preliminary approval |
| Creation of webpage by Class Counsel electronically publishing notice | Within 21 days after entry of order granting preliminary approval |
| Posting notice by the County on the tablets used by class members | Within 21 days after entry of order granting preliminary approval |
| Posting notice by the County on the television-notification system inside the Jail | Within 21 days after entry of order granting preliminary approval |
| Deadline for filing of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs | October 13, 2021 |
| Deadline for objections by class members | November 30, 2021 |
| Deadline for filing of Motion for Final Approval and for filing of responses to any timely-filed class member objections | December 7, 2021 |
| Hearing on Motion for Final Approval and on Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs | December 15, 2021 |

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court:  (1) grant preliminary approval of the Consent Decree; (2) approve and direct the publication of the class notice proposed by the Parties; and (3) adopt the schedule proposed herein for class member objections, filing of Motions for Attorneys' Fees and Costs and for Final Approval, and for hearing the motions and addressing objections.  Defendants have

1    reviewed this motion and do not oppose Plaintiffs' requests contained herein but intend to

2    file their own separate statement in support of preliminary approval.

3    DATED:  August 26, 2021                Respectfully submitted,

4                                           ROSEN BIEN GALVAN & GRUNFELD LLP

5

6                                           By:  /s/ Kara J. Janssen

7                                                Jeffrey Bornstein
                                                 Kara J. Janssen
8                                           Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CONSENT DECREE