HOSSEIN ALIZADEH
376 Appian Way
Union City, CA 94587
Telephone: 510-996-2951
Email: aaahossein@yahoo.com
*In Pro Per*

RECEIVED
DEC 27 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br>vs.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE, et. al.,<br>Defendants | No. 5:18-cv-07677 NC<br><br>HOSSEIN ALIZADEH'S OBJECTION TO THE PROPOSED CLASS SETTLEMENT AND CONSENT DECREE |

I, HOSSEIN ALIZADEH, declare as follows:

1. I am over the age of 18 and I make this declaration voluntarily and based on my own knowledge.

2. I am a resident of Alameda County. For over 20 years, I worked for the Veterans Administration as a rehabilitation specialist relating to drug and alcohol disorders.

3. My son, Torry, who is now 27 years old, has been diagnosed with paranoid schizophrenia and severe anxiety. He is Iranian/American, which makes him

particularly vulnerable to discrimination and abuse, especially in jail settings.

4. My son's depression and anxiety began in his early twenties and it gradually worsened over the time he was in college so that he was not able to finish his studies. He was briefly hospitalized in San Jose, but he was held there only two nights. He did not receive sufficient treatment. His condition worsened and he continued having delusions.

5. Since then, he was incarcerated in Santa Rita Jail two times, once for "driving under the influence" and once for "public intoxication." His case is pending hearings with the Department of Motor Vehicles and the court. For these reasons, he is at risk of being incarcerated again at Santa Rita Jail.

6. I am impacted by the settlement because of my concern over the care and conditions of my son when he was and might again be in the jail. Moreover, his incarceration traumatized our whole family as we knew Torry did not belong there and we feared for his life and safety. We were not able to visit him while he was incarcerated.

7. I write this declaration to object to the proposed settlement in *Babu v. County of Alameda* ("*Babu*"). If called to testify, I can and will testify as stated herein.

8. I am a member of Families Advocating for the Seriously Mentally Ill (FASMI), through which I have learned that the parties in *Babu* have reached a proposed settlement. Upon reviewing the summarized terms of the proposed consent decree, I have become concerned about many things, including the inappropriateness of my son's being held in jail, his worsening mental health, the lack of regular or substantive mental health treatment, the absence of options or plans for him upon release, and the predicted difficulties he may have in finding work or proper placements after having been incarcerated.

9. When Torry was in Santa Rita Jail, he did not receive treatment, even though he asked the staff to give him medication for his anxiety. His anxiety made sharing a cell space with others extremely difficult and he was frustrated that he

2

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

was confined in the jail cell for such long periods. He was terribly afraid while in Santa Rita Jail; he feared for his safety and the guards were hostile.

10. His experience of being in jail has only aggravated my son's mental illness. His paranoia has become much worse. He is always scared and much more belligerent than he had previously been.

11. Based on my understanding of the proposed settlement agreement, I do not believe that my son would get the type of mental health support he needed and still needs. The Consent Decree does not in any way provide for the kind of options that would have allowed him to get appropriate treatment. Moreover, the attorneys representing the plaintiffs' class did not consult with me or my son (as far as I know) and they are not representing our interests.

12. I agree the Consent Decree does propose some positive adjustments to the jail environment. It would be better to increase out-of-cell time – especially out-of-doors where the inmates can get more fresh air – as well as providing education, allowing inmates to see a caring counselor on a regular basis, and allowing more visits from family.

13. However, I object to the proposed settlement because such minimal (even though detailed) changes would not have provided what my son really needed – genuine treatment rather than incarceration. Even if everything in the proposed Consent Decree were implemented, the care at Santa Rita would be inadequate and my son's condition, particularly the anxiety and paranoia would worsen. Even if my son were to be considered eligible for the highest level of care that this proposed settlement provides, it would only guarantee that a clinician would see him twice a week and a psychiatrist would see him weekly. The rest of the care, will fall to deputies, who during my son's prior incarceration were hostile and punitive. Deputies do not become deputies because they are choosing to enter a caring job profession. They chose to enter a profession where the primary goal is control and domination through the use of force, hostility and imposition of fear. I highly doubt that merely providing some measure of "training" in how to "interact with" men-

3

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

tally ill persons would transform deputies (who are trained to be punitive and hostile) into being able to care for mentally ill individuals. And clearly, even at the highest level of care outlined in this proposed settlement, the bulk of the daily care would be left to the newly-hired deputies who do not have the personality, disposition nor training to do so.

14. I believe that, had it not been for my son's mental illness and delusions, he would not have engaged in the behavior that got him arrested; he had always been law-abiding and cooperative. The proposed settlement does not contain provisions for releasing inmates from the jail or diverting them to a hospital or other mental health facility in order to get adequate treatment.

15. Supportive housing is very important, but the proposed settlement provides housing only inside the jail. My son and mentally ill persons like him, need therapeutic housing that is not inside or even near a jail – housing where they can feel safe and receive supportive visits from family and friends.

16. Because the proposed settlement provides for an enormous financial investment by the county in the services of the sheriff and the jail, it drains the financial and other resources that should instead be available to provide for adequate hospital space, quality supportive housing facilities with enough space so severely mentally ill persons will have an authentic option of care and treatment.

17. I ask the court to reject this proposed Consent Decree. We can do better. We need to do better.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on 22 of December, 2021, in Oakland, California.

HOSSEIN ALIZADEH

4

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office. United States District Court, Northern District of California, Case No. 5:18-cv-07677

JASMINE JESSOP
680 Sylvan Ave., Apt. 2
Mountain View, CA 94041
Phone: 510-648-8515
Email: jazzyjessop@gmail.com
*In Pro Per*

RECEIVED

DEC 27 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated<br>      Plaintiffs,<br>vs.<br>ALAMEDA COUNTY SHERIFF'S OFFICE, et. al.,<br>      Defendants | No. 5:18-cv-07677 NC<br><br>OBJECTIONS OF JASMINE JESSOP, ON BEHALF OF HERSELF AND HER SON LUCKY, TO THE PROPOSED CLASS ACTION SETTLEMENT AND CONSENT DECREE |

I, JASMINE JESSOP, declare as follows:

1. I am over the age of 18 and I am a licensed LVN.

2. I make this declaration voluntarily and based on my own knowledge.

3. I am currently homeless. Along with four of my children, I am currently staying in a shelter. I have bipolar I disorder but it is under control.

4. My 20-year-old son, Lucky, who is also mentally ill, is homeless on the streets of Fremont. He has been diagnosed with autism, schizophrenia and bipolar II disorder.

1

5. Lucky is Samoan/Pacific Islander. He has a large physique as well as brown skin, which has caused him to suffer discrimination and harsh treatment.

6. Lucky has been in and out of Santa Rita Jail at least 5 times over the last 6 months. Each time he was released on bail. For the reasons set out below, he is at risk of being incarcerated again at Santa Rita Jail.

7. I am impacted by the settlement because of my concern over the care and conditions of my son when he was and might again be in the jail.

8. I write this objection to the proposed settlement in *Babu v. County of Alameda* ("*Babu*"). If called to testify, I can and will testify as stated herein.

9. I am a member of Families Advocating for the Seriously Mentally Ill (FASMI), through which I have learned that the parties in *Babu* have reached a settlement. Upon reviewing the summarized terms of the proposed consent decree, I have become concerned about many things, including the inappropriateness of my son's being held in jail, his worsening mental health, the lack of regular or substantive mental health treatment, the absence of options or plans for him upon release, and his continuing difficulty in finding jobs and proper placements.

10. Lucky suffered from mental illness before he was incarcerated and he had been in John George Psychiatric Pavilion (John George) at one point. However, he remained optimistic and had hopes for the future. He wanted to go to college – to become a police officer, in fact.

11. However, Lucky's experience with arrest and incarceration in Santa Rita Jail have changed his personality and his mental health is much worse. The police who arrested him treated him violently; at one point they kicked his head while he was on the ground. In jail, he was wrongly categorized as "violent" and was inexplicably made to wear RED. Because of this, and given his size and skin color, he is now in constant fear. He says, "I'm afraid I will go to jail if I just walk outside!"

12. In Santa Rita, he was placed in isolation or quarantine. I was not able to visit him.

2

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

13. He was terrified and desperately wanted to get out. He received no counseling or treatment, except for medications. When he was released, he was treated shamefully: he was released at 11:00 p.m., without shoelaces or a belt and -- since I had not been notified – he had to walk miles and miles, alone at night.

14. Most of all, his self-esteem is damaged; being in jail made him feel "like a criminal" even though he doesn't feel he has done anything wrong. He still has hopes of going to college, but he feels that his dreams have been shattered because he now has a "record."

15. I object to the proposed **Consent Decree** because so many of the terms are just buzz words and nothing in the proposed Consent Decree acknowledges the realities of Santa Rita Jail. The proposed Consent Decree talks about a "warm hand-off" but how can there possibly be a "warm hand-off" when the jail releases people at night after public transportation has shut down, when it releases people at night without the ability to call family and arrange a ride, when it releases people who have no place to go but out into the dark and the cold. How can this be a "warm hand-off"? The term sounds good, but has no substance.

16. I object to the proposed Consent Decree because what my son needs is not provided for in this Consent Decree. Although the Decree proposes innumerable adjustments to the jail environment, there is nothing in this Consent Decree that would benefit or help my son. My son needed genuine mental health care so he could become emotionally stable and learn skills so he can be successful in our society. Instead, the jail just incarcerated him, did not explain what was going on, gave him no guidance on how to navigate the system, and contributed to greater emotional and mental trauma. My son is not a criminal. What he needed was not to be incarcerated and further traumatized. Clearly, even if all the adjustments occurred, these adjustments would not be providing valid nor genuine mental health care for my son. He did not need to be punished for his mental illness; instead, he needed help to be emotionally stable and to develop the skills to be

3

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

successful.

17. The attorneys representing the plaintiffs' class did not consult with me or my son (as far as I know) and they are not representing our interests.

18. Based on my understanding of the proposed settlement agreement, I do not believe that my son would get the type of mental health support he needed and still needs. The Consent Decree does not in any way provide for options that would have allowed him to get appropriate treatment. Building up or increasing staffing inside the jail is NOT effective treatment. My son was HARMED not helped by being in jail, where he has been further traumatized and surrounded by an inmate population where they learn criminal behavior and defensive attitudes rather than healthy ones.

19. I object to the proposed settlement because it does not provide for the genuine care of inmates who, like my son, should not be in jail at all. It provides for an enormous financial investment by the county in the services of the sheriff and the jail. However, that money should instead be used to provide facilities that support mentally ill persons rather than making them feel like criminals. I do not believe that hiring hundreds more "deputies" would help create a therapeutic environment, even with some "training." Trained mental health clinicians may slightly improve what exists in the jail now, but serious mental health treatment needs to take place OUTSIDE the jail.

20. I object to the County's spending millions of dollars that should instead be available to provide for adequate hospital space, quality supportive housing facilities with enough space so that severely mentally ill persons will have authentic care and treatment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on 22 of December, 2021, in San Leandro, California.

_____
JASMINE JESSOP

4

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

DIANNE LAM
3724 Loma Vista Avenue
Oakland, CA 94619
Telephone: 510-500-7278
Email: dilamgoes@yahoo.com
*In Pro Per*

RECEIVED

DEC 27 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated

Plaintiffs,

vs.

ALAMEDA COUNTY SHERIFF'S OFFICE, et. al.,

Defendants

No. 5:18-cv-07677 NC

DIANNE LAM'S OBJECTION TO THE PROPOSED CLASS SETTLEMENT AND CONSENT DECREE

I, DIANNE LAM, declare as follows:

1. I am over the age of 18 and I am a resident of Alameda County.

2. I make this declaration voluntarily and based on my own knowledge.

3. I write this objection to the proposed settlement in *Babu v. County of Alameda* ("*Babu*"). If called to testify, I can and will testify as stated herein.

4. I am impacted by the settlement because of my concern over the care and conditions of my son, who has been an inmate in Santa Rita Jail for four years and is currently an inmate there. I will keep his name anonymous unless he himself

1

chooses to file an objection.

5. I am an active member of Families Advocating for the Seriously Mentally Ill (FASMI) through which I have learned that the parties in *Babu* have reached a settlement. Upon reviewing the summarized terms of the proposed Consent Decree, I am concerned primarily because the proposal to invest substantial financial and other resources in the jail and sheriff's office would divert County funds from where they are really needed – in psychiatric acute, subacute and all levels of mental health care facilities.

6. Before my son was incarcerated, he was unable to access sufficient treatment because the mental health clinics were (and still are) so overwhelmed that they prevent full access to services. As a result of the inadequate services, my son's severe mental illness was allowed to worsen dramatically.

7. His mental illness worsened to the point where he attacked me and tried to kill me. He was arrested and is being held in Santa Rita Jail while awaiting space for him in Napa State Hospital.

8. Based on my understanding of the proposed settlement agreement, I do not believe that my son (or anyone with severe mental illness) would get the type of mental health treatment he needs. In reviewing Exhibit C of the "Mental Health Levels of Care" (Consent Decree, pp.104-106), I expect that my son would be in the category labeled MH4 ("Severe functional impairment") needing the highest "level of care." It was clear even to the drafters of the proposed settlement that persons at this level need serious hospitalization. It states that they "shall be evaluated for a possible <u>transfer to an acute psychiatric hospital</u> or placed in the highest level of therapeutic housing" (p.104). Persons at this level MH4 are seriously mentally ill and need serious mental health treatment, ideally in a psychiatric hospital. There is only one reason to include the option for "therapeutic housing" at all - and that is because there is not enough space in psychiatric hospitals outside the jail. *And that is exactly where the county's resources should be directed.*

2

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

9. The proposed services and goals for MH4 inmates under Exhibit C are vague and reflect a lack of understanding of what treatment of severe mental illness requires. The highest level of care would merely have a clinician see my son twice a week; that will *not* keep my son safe when he has to fight the cement walls of his cell when he has excruciating hallucinations. Will the psychiatrist spend more than 15 minutes with my son a week? Will the clinician spend more than an hour – may-be two - a week? The rest of the care will fall to deputies who are not mental health professionals; simply hiring hundreds more of them will not transform the jail environment into a mental health treatment facility. Deputies do not come into the job with a mindset of caring for ill persons; their job in the jail is primarily one of keeping control through the use of force. Even if deputies get a bit of "training" on dealing with the mentally ill, they will not become mental health professionals.

10. I object to the proposed settlement for the above reasons and because it continues to focus on the jail and using cells to house patients. Even if everything in the proposed Settlement were implemented, jail cells would not be transformed into are not therapeutic facilities. Even if the "therapeutic housing" is a separate building from the main cell blocks, it would still be in the jail and will still look and feel like a jail. A jail will not and cannot treat mentally ill persons like my son.

11. I further object to this proposed settlement because it fails in its basic responsibility, which is to develop a plan to provide genuine mental health care for persons like my son who have been incarcerated rather than treated. Clearly, even at the highest level of care outlined in this proposed settlement, the jail will fail to do so.

12. Because the proposed settlement provides for an enormous financial investment by the county in the services of the sheriff and the jail, it drains the financial and other resources that should instead be available to provide for adequate hospital space, quality supportive housing facilities with enough space so

3

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

that severely mentally ill persons will have an authentic option of care and treatment.

13. I object to this proposed consent decree and ask that the court not approve it, until there is a consent decree that will provide genuine care for mentally ill people like my son.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on 23 of December, 2021 in Berkeley, California.

_____
DIANNE LAM

4

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

BRIAN P. DODD
721 The Alameda
Berkeley, CA 94707
Telephone: 925-895-4239
Email: briandodd@comast.net
*In Pro Per*

RECEIVED

DEC 27 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated

Plaintiffs,

vs.

ALAMEDA COUNTY SHERIFF'S OFFICE, et. al.,

Defendants

No. 5:18-cv-07677 NC

BRIAN P. DODD'S OBJECTION TO THE PROPOSED CLASS SETTLEMENT AND CONSENT DECREE

I, BRIAN P. DODD, declare as follows:

1. I am over the age of 18 and I make this declaration voluntarily and based on my own knowledge.

2. I am a resident of Alameda County and am a retired software engineer.

3. My son, Kevin Dodd, was twice incarcerated in Santa Rita Jail, both times in 2019, and he is at risk of being incarcerated again. Kevin suffers from paranoia and auditory delusions due to his severe mental illness, which began in 2009.

3. I am impacted by the settlement because of my concern over the care and

1

conditions of my son when he was and might again be in the jail.

4. I write this declaration to object to the proposed settlement in *Babu v. County of Alameda* ("*Babu*"). If called to testify, I can and will testify as stated herein.

5. My wife and I are active members of Families Advocating for the Seriously Mentally Ill (FASMI) through which I learned that the parties in *Babu* have reached a settlement. Upon reviewing the summarized terms of the proposed consent decree, I have become concerned about many things, including the inappropriateness of his being held in jail, his worsening mental health which I witnessed resulting from traumatic solitary confinement, the lack of regular or substantive mental health treatment, the absence of options or plans for him upon release, and the difficulty of finding proper placements after he had this history of being in jail.

6. For various periods of time, Kevin has been placed under an LPS conservatorship. I have been told that it is the policy of the Alameda County's Public Guardian – which handles LPS conservatorships – that a person under an LPS conservatorship must be placed in a <u>licensed</u> housing facility.

7. For some time in 2018 and 2019, Kevin was living in a <u>licensed</u> housing facility in Hayward and began to have renewed serious episodes of his psychosis. In or around February 2019, Kevin was admitted to John George Psychiatric Pavilion ("John George"), as he had been many time times.

8. While he was in John George, an incident occurred, the details of which are a bit unclear to me but, as I have come to understand it, Kevin was frustrated or otherwise resisting some aspect of treatment and was pushing and/or flailing his arms. In doing so, he came in contact with a nurse or staff member. Although the staff member did not suffer substantive injury, the policy at John George at that time was to take incidents very seriously because there had recently been a death or serious injury among the staff in the facility. Therefore, the police were called.

2

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

Kevin was charged with misdemeanor assault and taken to Santa Rita Jail.

9. The district attorney and the judge were agreeable to dropping the charges and releasing Kevin to an appropriate living facility. However, because of the incident and incarceration, the housing facility where Kevin had previously lived would not allow him to return, and his case manager could not find another licensed facility that either had space or would accept him.

10. Because they had difficulty finding a housing placement, Kevin remained in Santa Rita Jail for over a month. He told us he spent most of his time alone in a solitary cell, eating meals by himself, with no medical or dental attention except for getting his medication.

11. While Kevin was in Santa Rita, visitation was very difficult. Most of the time, I could only visit him by means of a public pay videophone that was located in the front lobby of the jail and which allowed for no privacy at all. Moreover, the phone did not work very well and I could hardly communicate with him at all.

12. Kevin's experience in Santa Rita Jail was traumatic; he had very little if any communication with either inmates or staff. He became increasingly depressed and distraught, as did I. I found myself growing more anxious and losing sleep. As delays continued, my family and I worried because Kevin did not belong in jail, he was vulnerable to bullying, and he was made to feel like a criminal because of his mental illness.

13. The case manager said the only option was to place him in an UNLICENSED housing facility, which would mean that he would lose his protected status under the conservatorship. I did not understand the rationale behind that policy, but I reluctantly agreed to the plan in order to save Kevin from further jail trauma. As a result, he no longer had a conservator to oversee his treatment or placement.

14. Kevin was released from Santa Rita Jail and placed in a board and care but he continued to be agitated and very anxious. Within a day or two there, he

3
OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et. al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

became very paranoid and he just left. It took a while to find him, but we eventually discovered that he had managed to get himself readmitted to John George. At some point, the case manager tried to place him in another home, but Kevin – still suffering symptoms of his severe mental illness – left again after one night.

15. Kevin remained stuck in the terrifying revolving door situation for several months. He would get into John George but was repeatedly released without notice to anyone, sometimes at night. Sometimes, he contacted me and I would go get him to find a motel or someplace for him to stay.

16. Eventually, Kevin was admitted to John George and put on a waiting list for transfer to Villa Fairmont ("Villa"), a sub-acute facility. At least twice, there was an opening at Villa, but both times his transfer was "deferred" due to some vaguely-described "inappropriate behavior" on his part (as it was described to us). We were all concerned about these delays because he was becoming increasingly frustrated and anxious. We urged John George to expedite the transfer.

17. Unfortunately, before he could be transferred, another "incident" occurred involving similar circumstances as the one earlier that year. Kevin was again taken to Santa Rita Jail for misdemeanor assault. At the very first hearing, the judge recognized that jail was not the appropriate place for Kevin. The judge ordered that Kevin be released to John George for evaluation, then to be transferred to Villa. The case managers could not transport him and the judge would not authorize transport by a sheriff, so I agreed to drive him. He was readmitted.

18. The proposed **Consent Decree** proposes innumerable adjustments to the jail environment; however, what my son really needed was not to be incarcerated but instead to receive adequate mental health treatment in a hospital or a licensed, quality housing facility where he would receive enough supportive assistance to help him recover and then live as independently as possible. Moreover, the attorneys representing the plaintiffs' class did not consult with me or my son and they are not representing our interests.

4

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

19. I believe that my son did not commit any crime before he was taken to jail. He was released twice from Santa Rita with charges having been dropped because the behavior that sent him there was a result of his mental illness and not criminal. Clearly, my son should not have been in jail at all.

20. I object to the proposed settlement because the care provided therein is grossly inadequate and would not meet my son's needs. Reviewing Exhibit C, the "Mental Health Levels of Care" (Consent Decree, pp.104-106), I see that when Kevin was incarcerated his "level of care" might have been as low as a MH2 ("Moderate functional impairment"). As such, he would only have been allocated "clinical care" once every 2 weeks with the possibility of seeing a psychiatrist "at least once a month" and he would have been locked down at least 20 hours a day. Also, the settlement does not define "clinical care." It might be simply a clinician checking in on my son for 15 minutes every two weeks. How does that even count as "care"?

21. Based on my understanding of the proposed settlement, I do not believe its provisions would provide for the kind of treatment and options that would have allowed him to get appropriate treatment. Given how slowly the jail moves, if he were in jail again for a month, he might only receive "clinical care" once or twice and he may not even be seen by a psychiatrist for medication purposes.

22. The conditions of the jail alone, even with all of the improvements outlined in the proposed Settlement, would not meet my son's needs nor adequately treat his mental illness. When he was incarcerated, the cell lock-down and lack of individual care contributed to the worsening of his mental health condition.

23. The provisions of the Settlement, which is focused on preventing self-harm, would not benefit Kevin – even though he is seriously mentally ill; he would not have been entitled to more treatment unless he was suicidal, which at that time he was not.

24. Because the proposed settlement provides for an enormous financial investment by the county in the services of the sheriff and the jail, it drains the

5

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677

financial and other resources that should instead be available outside of the jail. There were insufficient hospital and housing facilities available in which Kevin could rightly be placed upon release. Money is needed for adequate hospital and quality supportive housing facilities with enough space so that conserved and non-conserved severely mentally ill persons will have an authentic option of care and treatment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on 23 of December, 2021, in Berkeley, California.

_____
BRIAN P. DODD

6

OBJECTION TO SETTLEMENT AND CONSENT DECREE
Babu, et al, et al v. Alameda County Sheriff's Office United States District Court, Northern District of California, Case No. 5:18-cv-07677