LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
528 Grand Avenue
Oakland, CA 94610
Telephone: (510) 329-2140
Facsimile:  (510) 580-9410
Email: yhuang.law@gmail.com

Attorney for Johney Davis, Jacobi Gaines,
           Richard Hill and Zachery Rideaux

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated.<br><br>              Plaintiffs,<br><br>       vs.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE, et al.,<br><br>              Defendants. | No. 5:18-cv-07677<br><br>DEANNA MOUTON'S DECLARATION IN SUPPORT OF THE OBJECTIONS OF JOHNEY DAVIS, JACOBI GAINES, RICHARD HILL, AND ZACHERY RIDEAUX, AND TO THE PROPOSED CLASS ACTION SETTLEMENT AND CONSENT DECREE |

I, DEANNA MOUTON, declare as follows:

1. I am completing my legal externship and I am a volunteer with the National Lawyers Guild, San Francisco Bay Area Chapter. I participated in this externship program to assist Babu class members in drafting their objections. As part of this externship, I received training from National Lawyers Guild attorneys in legal ethics, trauma-informed interviewing skills, and the content of the

1

1. proposed Consent Decree. The scope of my externship was intended to include a video interview with an assigned prisoner at the Alameda County Santa Rita Jail; as well as travel to the Jail for a non-contact, in person interview. Following the interview, I would then type up the Objection and conduct a subsequent interview, where I would read to the prisoner what I had drafted, make any requested changes, and finally submit a clean final document with their signature.

2. I assisted four class members with drafting and filing written objections: Jacobi Gaines, Richard Hill, Zachery Rideaux, and Johney Davis. Our initial conversations lasted approximately 25 minutes.

3. On November 3, 2021, at 9:30 am, I had a video interview with Mr. Jacobi Gaines. At the beginning of the video call, we experienced roughly four minutes of technical issues relating to sound. Various sounds echoe when prisoners conduct video visits, particularly screams, laughter and conversations carried out amongst the housing unit. Because of this, headphones are necessary and until my headphones were connected, we could not hear each other, thus the video visit was impossible. Additionally, Mr. Gains was frequently looking around and behind himself due to the lack of privacy and overall unsafe environment.

4. During this interview, Mr. Gaines elaborated on lack of programs within Santa Rita, particularly mental health services and specifically objecting to the Sheriff collecting further funds only to expand the jail rather than helping prisoners

5. On November 7 and November 19, of 2021, I had a video interview with Mr. Anthony Smith, where we discussed several topics. One in particular was the importance of trained mental health professionals understanding and ability to personally relate to the experience as an incarcerated, Black man. We also discussed the need for a therapeutic environment to facilitate mental health treatment as current conditions mirror lack of mental health resources in inner cities, ultimately, perpetuating untreated mental health. We also discussed Mr. Smith's lack of mental health treatment for several month as well as his belief that Santa Rita Jail utilizes medications as a blanket solution. Mr. Smith was observed to sit with muscle tension, difficulty relaxing, hypervigilant of his surroundings, and shielded his face from the camera, demonstrating discomfort.

2

**ALISHA MEHDI'S DECLARATION IN SUPPORT OF LEONARD JONES' OBJECTIONS TO SETTLEMENT**
*Babu, et al, et al v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 5:18-cv-07677

6. On November 21, 2021, I had a video interview with Mr. Richard Hill. During this interview, Mr. Hill conveyed his concern with several issues including treatment specific to Tri-Valley, mental health concerns, personal experience with mental health treatment in Santa Rita, importance of access to trained mental health professions that are of color, conditions of the overall environment, and special concerns related to COVID-19.

7. The video connection, during this interview was unreliable. The video connection cut out every couple of minutes, the quality of the video was poor, and I often had to yell because of the background noise Mr. Hill was surrounded by. Further, Mr. Hill did not have privacy during this video call. I observed that the deputies were not wearing facial coverings of any kind.

8. For the next interview, on November 21, 2021, I was scheduled for a video interview with Mr. Zachery Rideaux. Although Mr. Rideaux was scheduled for a video visit, he did not show up. It was later discovered that Mr. Rideaux was not informed of this visit despite his availability and desire to attend.

9. On November 24, 2021, I was able to meet with Mr. Rideaux over video after a previously failed attempt. While Mr. Rideaux was in a separate, secluded room, video connection was intermittently poor as well as limiting sound quality from an echo. Mr. Rideaux conveyed his frustrations regarding his experience with mental health services while incarcerated in Santa Rita, particularly lack of programs specific to mental health as well as the need for outpatient community-based services to minimize risk of recidivism.

10. On December 1, 2021, I met with Ms. Shawanda Black over video, who expressed concerns regarding psychiatric abuse in Santa Rita Jail, lack of notice regarding the Babu Settlement, excessive use of force by deputies, possible HIPPA violations, physical and emotional abuse, and harassment.

11. Ms. Black did not feel prepared for this interview due to being informed of this visit last minute. Ms. Black spent most of this visit expressing her concerns about a woman who appeared incapacitated in her room within Unit 24, Cell 15. Her identity is unknown as she does not speak. This particular prisoner hadn't left her room for weeks, though the room was covered in urine and

3

**ALISHA MEHDI'S DECLARATION IN SUPPORT OF LEONARD JONES' OBJECTIONS TO SETTLEMENT**
*Babu, et al, et al v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 5:18-cv-07677

feces. The smell permeated throughout the POD. Per Ms. Black, the deputies were aware of this prisoner, though no actions were done to assist, nor remedy the situation. On this same date, I was sent a letter from Mr. Gustavo Mora, a Classification Lieutenant, denying my entrance into Santa Rita Jail, based on an incomplete site application. After completing Mr. Mora's request and filling out a site Clearance form in its entirety, I was never granted access for contact visits, without explanation or response. As a result, my scheduled visit on December 10, 2021, was canceled and denied.

12.     Finally, I was assigned to visit with Ms. Johney Davis on November 28, 2021, via video. During this interview, Ms. Davis expressed concern with psychiatric abuse due to being prescribed with Benadryl for sleep as well as Posttraumatic Stress Disorder. Ms. Davis reported experiencing extremely adverse side effects. We also spoke about mental health concerns in relation to her race, gender, incarceration status, and experience with mental health services.

13.     In this interview, as with all of the other video visits, the video quality was fairly poor including intermittent disruptions in connection and the screen going black for the remaining four minutes and. There was also a noticeable delay in Ms. Davis being escorted in and out of the room for the visit. It was observed that 20 minutes past before Ms. Davis reached the screen to conduct the video visit and waited a significant amount of time to be escorted out despite utilizing the call button. Sanitary conditions were also of concern due to COVID-19 and Ms. Davis' significant health issues. She did not have access to nor was she provided resources to sanitize the phone used in the visit.

14.     After conducting my preliminary interviews, I was informed that I could not then go to Santa Rita for an in person, non-contact visit with my interviewee. I was told that Santa Rita Jail was objecting to my visit. I understand from my attorney supervisor that the resolution of this conflict took almost four weeks.

15.     Thus, finally, on November 26, 2021, I was able to conduct the scheduled in-person, non-contact interview for the first time, which took approximately 2 hours.

4

**ALISHA MEHDI'S DECLARATION IN SUPPORT OF  LEONARD JONES' OBJECTIONS TO SETTLEMENT**
*Babu, et al, et al  v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 5:18-cv-07677

16. On December 3, 2021, I arrived to Santa Rita Jail just before 10:00 am for a visit with Mr. Hill. I was unable to begin the visit until nearly 11:00 am. At 10:42 am I ran into my supervising attorney to discuss the delay. It appeared that once the deputies saw my supervising attorney, I was let into ITR just a few minutes later. Supposedly, there was an incident in Mr. Hill's unit that prompted the delay, however, every visit I experienced in ITR resulted in delays. At this visit in particular, I waited for almost an hour, was denied a paper pass and waited an additional twenty minutes to get into an ITR booth with Mr. Hill. Furthermore, I observed that booth number three was filled with trash that was caked together in a distant corner and there was visible dirt and debris everywhere. Additionally, I was unable to look at my interviewee directly because the phone cords are very short as well as the challenge of simply sitting comfortably. Because of the position of the stools, short phone cord, and limited space for writing, I was forced to stand up for this one hour interview.

17. Upon the completion of this visit, Mr. Hill and I waited an additional 25 minutes for a deputy to appear despite utilizing the call button several times. Mr. Hill described enjoying the time out of his cell as it had been days. Mr. Hill also stated that he had experienced these delays before.

18. Subsequently, On December 8, 2021, I visited Mr. Hill for our second non-contact visit in booth five of the ITR unit. I observed a GTL recording stating that a confidential attorney visit would be recorded. Thus, we opted not to use the phone system and we were forced to talk through the glass by holding up papers, using sign language, mouthing words, and writing notes. These challenges made providing information and assistance difficult.

19. On December 18, 2021, I met with Ms. Johney Davis for the first time and requested a paper pass from one of the deputies at the booth. As the deputy brought the confidential, legal document over to Ms. Davis, I observed the deputy reading the document. Moments later the deputy left the booth, and I was left alone with Ms. Davis. It took over twenty minutes at the conclusion of the interview to receive the documents back, distributed during a paper pass. I then waited in the hallway near the cameras in order to be seen by the deputy at the desk.

**ALISHA MEHDI'S DECLARATION IN SUPPORT OF LEONARD JONES' OBJECTIONS TO SETTLEMENT**
*Babu, et al, et al v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 5:18-cv-07677

20. On December 23, 2021, I arrived to Santa Rita Jail at 9:45 am; however, I was denied the scheduled visit. Even though my visit had been scheduled and confirmed, I was not on the technician's list and was forced to come back the following day. I, again, observed the deputies and they were not wearing a mask.

21. I have visited Santa Rita jail on nine separate occasions, and on December 23, 2021, was the first time I experienced this kind of unnecessary, aggression from Deputy C. Brooks. Although I was assisted by a different deputy, deputy Brooks inserted herself for an unknown reason, and snapped at us, stating, "Can we get this going?!", even though we had been waiting since 9:45am and then had several of our visits canceled.

22. On December 24, 2021, I returned and was finally able to meet with Ms. Davis. At the end of the visit, I was locked in an attorney booth for about 40 minutes despite repeatedly hitting every call button I could and on every available call box.

23. On December 30, 2021, I attempted to meet with Mr. Zachery Rideaux for a video visit. I called the front desk at 10:31 a.m. and spoke to deputy Rodriguez. She then called the housing unit but Mr. Riddeaux was not transported to this visit, I waited the entire twenty-five minutes.

24. After my interviews, I then typed up each Objection and conducted a follow-up video visit where I read to each of them, their complete Objection; made any changes and corrections and then submitted the final to my supervision attorney.

25. I am making this declaration to inform the Court of the steps I took and the challenges I have experienced while attempting to communicate and meet with class members who sought assistance in filing objections. This declaration is also to inform the Court that the steps taken to schedule class member interviews were thorough and intended to ensure that the final written Objection reflects each individual class members' concerns and experiences.

26. The total time expended to produce these declarations, including travel to the jail, meeting with declarants, drafting and editing the declarations and reviewing and recording notes, was approximately, One hundred and twenty-three hours. I make this declaration under penalty of perjury

6

**ALISHA MEHDI'S DECLARATION IN SUPPORT OF LEONARD JONES' OBJECTIONS TO SETTLEMENT**
*Babu, et al, et al v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 5:18-cv-07677

under the laws of the State of California, executed this 30th day of December 2021 in Castro Valley, California.

*[signature]*

DEANNA MOUTON, J.D.

7

**DEANNA MOUTON DECLARATION IN SUPPORT OF CLASS MEMBERS' OBJECTIONS TO SETTLEMENT**
*Babu, et al, et al v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 5:18-cv-07677