LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
528 Grand Avenue
Oakland, CA 94610
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

Attorney for Objecting Class Members

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNSBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated.<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE, et al.,<br>　　　　　Defendants. | No. 5:18-cv-07677<br><br>DECLARATION OF LINA GARCIA SCHMIDT IN SUPPORT OF CLASS MEMBERS' OBJECTIONS TO THE PROPOSED CLASS ACTION SETTLEMENT AND CONSENT DECREE |

1

**DECLARATION OF LINA GARCIA SCHMIDT'S IN SUPPORT OF CLASS MEMBERS' OBJECTIONS**
*Babu, et al, et al v. Alameda County Sheriff's Office* United States District Court, Northern District of California, Case No. 5:18-cv-07677

LINA GARCÍA SCHMIDT'S DECLARATION IN SUPPORT OF CLASS MEMBER OBJECTIONS

I, Lina García Schmidt, declare as follows:

1. I am over the age of 18 and I make this declaration voluntarily and based on my own knowledge. If called to testify, I can and will testify as stated herein.

2. I am currently employed by the National Lawyers Guild – San Francisco Bay Area Chapter (NLG-SFBA, the Chapter). I am also a paralegal with the Law Offices of Yolanda Huang.

3. For over two decades, the National Lawyers Guild has maintained several public Hotlines, which provide legal assistance free of charge to community members who have been arrested in connection with the exercise of their First Amendment rights. In April of 2020, I was hired by the NLG-SFBA to develop and launch an additional Hotline specifically for people incarcerated in the Alameda County Santa Rita Jail. The NLG-SFBA approved this additional Hotline after receiving numerous reports from clients, their families, and community organizations that incarcerated people in the Jail, the majority of whom are pretrial, needed an outlet to report and amplify their concerns about Jail conditions.

4. The NLG-SFBA Santa Rita Jail Hotline launched in July of 2020 as a free, confidential phone number for incarcerated people to report concerns about COVID-19 as well as to obtain information about their rights. The Hotline was initially staffed by law students from the COVID-19 Rapid Response Systems Summer Institute, a collaboration between Justice Catalyst Law, the People's Parity Project and the Systemic Justice Project[1]. Hotline Workers logged over 500 calls from July through December 2020 alone from incarcerated people and community members who were deeply concerned about the Jail's COVID-19 protocols and frequent outbreaks.

5. The NLG-SFBA maintains an Internship Program in partnership with law school NLG Chapters, as well as a legal clinic at UC Hastings. The NLG-SFBA Internship Program provides law students with opportunities to receive pro bono hours or a stipend for their assistance with projects of the Chapter and its partner organizations. While law students

---

[1] https://systemicjustice.org/2020/05/covid-19-rapid-response-systems-summer-institute/

come and go every semester, a key event for the recruitment of law student interns is Progressive Law Day, held every September at the University of California, Hastings College of the Law. Until Fall 2021, between 2-5 law students worked with the Santa Rita Jail Hotline each semester.

6. At any given time, the Hotline has been in contact with around 300 people incarcerated in the Jail. As the Hotline Coordinator, I maintain and update a list of contacts who occasionally receive bulk mailings of information pertinent to their rights. One such mailing contained information about *Scholl v. Mnuchin,* the "CARES Act prison case," a blank IRS Form 1040, and filing instructions. This mailing left me with the impression that conveying important legal information to people incarcerated in the Jail requires patience and persistence, because the Jail persisted in using outdated or incorrect information regarding Economic Impact Payments.

7. At any given time, the Hotline is in contact with approximately 50 individuals who call on a regular basis. Some of these individuals have been in contact with the Hotline since its inception. Hotline Workers assist these individuals with concerns within the scope of the project, and endeavor at all times to maintain clear boundaries and mutual respect. While regular callers are aware that Hotline Workers are not mental health professionals and cannot provide legal advice, some callers have expressed that their mental health has benefited from the consistency of checking in with an advocate who will be accountable to them and ensure that their concerns are addressed.

8. One such regular caller was Plaintiff Stephanie Navarro. I spoke with Ms. Navarro frequently, at times once or twice per week, regarding her concerns about the treatment of people in Housing Unit 24E and the Jail's restriction of her access to the Grievance process. In a September 28, 2021 letter from the Central California Women's Facility (CCWF) Ms. Navarro informed me that she was as of yet unaware of the Settlement.

9. As the Hotline Coordinator, I attended many Joint Status Conferences for the *Babu* case in 2020 and 2021, to remain informed and to provide Hotline callers with information and copies of filings as requested. Plaintiffs' Counsel Kara Janssen also agreed to speak with Hotline Workers about the *Babu* case in July of 2020. I learned on June 24, 2021 that parties had reached agreement on most aspects of the Settlement.

10. After a review of the Consent Decree, NLG-SFBA attorneys drafted a questionnaire and frequently-asked questions (FAQ) document intended to inform Hotline callers about the Settlement and invite them to share their perspectives. These documents were clearly marked with the NLG-SFBA logo and two (2) copies were sent as legal mail on or around Thursday, September 9, 2021 to each of our approximately 270 contacts in custody.

11. The difficulty Hotline callers experienced obtaining information about their Economic Impact Payments led the NLG-SFBA to believe that Class Members would likely have difficulty obtaining information about the Settlement as well as be heard by the Court. And after the large volume of calls and letters received by the Hotline regarding Economic Impact Payments, the NLG-SFBA anticipated the need for additional support to ensure accountability to respondents. At Progressive Law Day 2021 on September 24, 2021, a supervising attorney and myself conducted an orientation to the Hotline and the NLG-SFBA announced an educational opportunity for students to participate in a legal clinic which would conduct visits at Santa Rita Jail. The timeline for this clinic was as follows:

| Date | Name | Duration | Purpose |
|---|---|---|---|
| Thursday, September 9 | Bulk mailing of FAQ & questionnaire | 1.5 hours | Inform Hotline correspondents |
| Friday, September 24 | Progressive Law Day 2021 | 11:00am-5:00pm | |
| Friday, September 24 | SRJ Hotline Worker Training (during Progressive Law Day) | 3 hours | Workshop (offered twice) to introduce law students to the work of the Hotline |
| Monday, September 27 | Transcribe questionnaire responses, interested students begin to reach out | Approximately 8 hours transcribing questionnaires | Identify respondents, pair them with a student interviewer |
| Tuesday, October 12 | Law Student Training | 2 hours | Legal Ethics & Logistics of Jail Visits |
| Tuesday, October 19 | Law Student Training | 1.5 hours | Trauma-Informed Interviewing |
| November 1 – December 10 | Preliminary Interviews | Approximately 28 hours of interviews | 23 volunteers interviewed approximately 60 respondents |
| Wednesday, November 3 | Visiting Consultation | 1.5 hours | Clinic participants consulted with Hotline Coordinator and NLG-SFBA attorney |
| Friday, November 12 | Visiting Consultation | 1.5 hours | Clinic participants consulted with Hotline Coordinator and NLG-SFBA attorney |

| Friday, December 3 | Visiting Consultation | 1.5 hours | Clinic participants consulted with Hotline Coordinator and NLG-SFBA attorney |
|---|---|---|---|
| Wednesday, December 8 | Visiting Consultation | 1.5 hours | Clinic participants consulted with Hotline Coordinator and NLG-SFBA attorney |
| Friday, December 17 | Preparation for In-Person Visits | 1.5 hours | Clinic participants consulted with supervising attorney to prepare for in-person interviews |
| Saturday, December 18 | In-Person Student Clinic Visits | 4 hours for each student | Visits from 10:00am-12:00pm with debrief from approximately 12:30-2:00pm |
| Sunday, December 19 | In-Person Student Clinic Visits | 3.5 hours for each student | Visits from 10:00am-12:00pm with debrief from approximately 12:30-1:30pm |
| December 27-30 | Final visits | 25 minutes for each student | Visits to read Objections in full |

12. There was an unprecedented amount of interest in this effort, with two (2) J.D.s and twenty-one (21) students responding from: UC Berkeley Law, UC Hastings College of the Law, Stanford Law School, Golden Gate University, and San Francisco Law School.

13. Prior to conducting any visits, clinic participants received training from a NLG-SFBA attorney in legal ethics and the limitations and liabilities of the clinic, as well as a training in trauma-informed interviewing skills from a Wright Institute psychologist. While conducting their preliminary interviews, clinic participants participated in weekly case rounds with NLG-SFBA attorneys.

14. The NLG-SFBA received approximately 60 questionnaire responses. Several questionnaires also contained attachments with lengthy responses. All questionnaires and attachments were transcribed by a UC Berkeley Law student and subsequently reviewed by the legal team to determine appropriate follow-up. Respondents were only contacted for a preliminary interview if they clearly indicated that they would like an advocate to contact them so they could share their opinion and experience with the Jail about mental health services. All but five (5) respondents requested an interview. Two (2) of the five individuals who did not request a preliminary interview have submitted their Objections:

KEVIN REED, who contacted the NLG-SFBA Hotline directly for an interview; and KATRISH JONES.

15. I assisted nine (9) Class Members with drafting and filing their Objections: ALFONSO ARROYO (BEX646), WILLIAM EPTING (AQP388), RANDY HARRIS (ALR809), KEVIN MCCULLOM (AST468), TOMMY NAVARRETTE (BMP960), TIMOTHY PHILLIPS (UIB572), DAVID VIGIL (BEC950), ERIC WAYNE (BAK513), and TASHAWN WILLIAMS (BMQ099).

16. With the exception of Mr. Epting, I had spoken with all of these individuals before via telephone or video visit and was guided by my prior notes as well as their responses to the NLG-SFBA Settlement questionnaire. In Mr. Epting's case I was guided by notes from prior attorneys and representatives who had been in contact with him.

17. Each of these Class Members specifically requested assistance in drafting written objections.

18. My first step with Mr. Arroyo, Mr. Epting, Mr. Harris, Mr. McCullom, Mr. Navarrette, Mr. Phillips, and Mr. Wayne was a 1.5 to 2-hour visit at Santa Rita Jail. Mr. Vigil and Mr. Williams were initially interviewed by law student clinic participants.

19. Due to limitations in law students' schedules and further requests from additional Class Members, preliminary interviews were completed around approximately December 10.

20. Law student clinic participants were initially scheduled to conduct interviews at the Jail around mid-November. In November, I was informed that student clinic participants could not go into the Jail for in-person, non-contact visits because the Jail was objecting to their visits. I understand from my supervisor, Yolanda Huang, that the resolution of this conflict took approximately 4 weeks. This delay prohibited the NLG-SFBA from retaining all 23 clinic participants due to scheduling issues related to law school finals and the holiday season.

21. Due to these visiting and scheduling difficulties, the student clinic participant assigned to Mr. Vigil could not conduct an in-person interview. I obtained the consent of Mr. Vigil to review previous notes and conduct follow-up interviews.

22. On December 18, 2021, I joined law student clinic participants at the Jail for their scheduled, in-person, non-contact interviews. Due to a misunderstanding by a Deputy, law student Julia Clark-Riddell was mistakenly escorted to Intake, Transfer, and Release

(ITR) to visit my assigned interviewee, rather than to Housing Unit 8 to visit Tashawn Williams. The resolution of this issue took approximately one hour and resulted in my visiting Mr. Williams and obtaining his consent to conduct the in-person interview.

23. In addition to this misunderstanding, I experienced several delays and cancellations of my contact and non-contact visits, described below. Several of my scheduled contact visits were delayed by 45 minutes to 1 hour. I believe these delays occurred because no technicians were present to let me into the Housing Unit when I arrived, and technicians were not immediately responsive via the Jail's intercom. On two occasions, these contact visits were further delayed because Deputies who arrived did not have the proper keys to let me into the Housing Unit. These delays caused physical and emotional stress to interviewees and at times prevented me from seeing interviewees at all, such as Mr. McCullom on November 20, 2021 because visiting hours had ended. Also on November 20, 2021, Mr. Navarrette was forced to end our 2-hour scheduled visit early because he had to use the bathroom.

| Name | Visit | Comments | Visit | Comments | Visit | Comments | Visit | Comments |
|---|---|---|---|---|---|---|---|---|
| Alfonso Arroyo | 9/16/21 | 1 hour non-contact | 12/11/21 | 2-hour non-contact | 12/30/21 | 25-minute video; no-show | 12/31/21 | 25-minute video |
| William Epting | 11/19/21 | 1.5-hour contact, delayed | 11/26/21 | 1.5-hour contact; delayed 45 minutes | 12/30/21 | 25-minute video; delayed 5 minutes | | |
| Randy Harris | 11/20/21 | 1.5-hour contact; did not take place due to delays | 12/3/21 | 1.5-hour non-contact; canceled by Jail | 12/23/21 | 1.5-hour non-contact, delayed 1 hour | 12/30/21 | 25-minute video; no-show |
| Kevin McCullom | 11/2/21 | 2-hour non-contact, rescheduled by Jail to 1.5 hours in evening | 11/20/21 | 1.5 hour contact scheduled; did not take place due to delays | 12/3/21 | 1.5-hour non-contact | | |
| Tommy Navarrette | 9/30/21 | 1.5-hour non-contact | 11/20/21 | 1-hour contact, delayed by 45 minutes | 12/11/21 | 2-hour non-contact | 12/30/21 | 25-minute video; no-show |
| Timothy Phillips | 10/13/21 | 1 hour non-contact | 11/2/21 | 2-hour non-contact, rescheduled by Jail to | 11/20/21 | 1.5-hour contact, delayed by 1 hour | 12/23/21 | 1-hour non-contact; canceled by Jail |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | 1.5 hours in evening | | | | |
| David Vigil | 11/8/21 | 25-minute video | 12/11/21 | 1.5-hour non-contact; did not occur due to delays | 12/23/21 | 2-hour non-contact | 12/30/21 | 25-minute video |
| Eric Wayne | 11/19/21 | 1.5-hour contact; delayed by 1 hour | 12/1/21 | 25-minute video | 12/3/21 | 1.5-hour non-contact | 12/30/21 | 25-minute video |
| Tashawn Williams | 11/8/21 | 25-minute video (with Julia Clark-Riddell) | 12/18/21 | 1-hour non-contact; delayed by 1 hour | 12/30/21 | 25-minute video; was not brought to visiting booth | | |

24. On December 23, 2021 I was scheduled to visit with Randy Harris. Upon checking in at the Jail's front desk I was informed that this visit would take place in Housing Unit 6. This was unusual to me because I am aware that Mr. Harris is disabled and cannot go up the stairs as is required for visits in Housing Units 1-4, 6-9, and 21-25; and because our previous non-contact visits had been conducted in the Outpatient Housing Unit (OPHU). When I expressed this to the Technician, she claimed that Mr. Harris is issued a wheelchair "for transport only." Having reviewed Mr. Harris's medical records, I know that this is incorrect. I waited in the Jail lobby for approximately 30 minutes for the resolution of this issue. I was then approached by two Deputies who informed me that Mr. Harris had refused the visit and that my supervising attorney should instead attempt to reschedule. I then left the Jail. However, Mr. Harris later informed me that he did not refuse the visit but rather that no Deputies came to transport him to OPHU (Declaration of Randy Harris). This concerned me because while he often writes or calls to request visits, Mr. Harris is frequently not brought to scheduled video visits, making non-contact visits the sole reliable means of speaking with him.

25. In each of my non-contact and contact visits at the Jail, I confirmed that the individual understood the objections process and wanted to move forward with my assistance in drafting a declaration.

26. I attempted to visit with Alfonso Arroyo via video on December 30, 2021 to review Mr. Arroyo's declaration. Mr. Arroyo was never brought to this visit, so I immediately

rescheduled for December 31, 2021 at 11:00am and read the draft out loud word for word. I confirmed that everything was accurate, reflected his experiences, and that he wanted to share this declaration with the Court. Mr. Arroyo told me that the draft declaration reflected his experiences and opinions accurately and authorized me to sign it on his behalf. I told him that attorneys I work with would file the declaration with the Court by the December 31, 2021 deadline.

27. I visited with William Epting via video on December 30, 2021 to review Mr. Epting's declaration. Mr. Epting's arrival was delayed by approximately 5 minutes, but Deputies granted an extension of time to our visit. I read the draft out loud word for word. I confirmed that everything was accurate, reflected his experiences, and that he wanted to share this declaration with the Court. Mr. Epting told me that the draft declaration reflected his experiences and opinions accurately and authorized me to sign it on his behalf. I told him that attorneys I work with would file the declaration with the Court by the December 31, 2021 deadline.

28. I conducted a non-contact visit with Randy Harris on December 23, 2021 to review his declaration. Mr. Harris approved the declaration and authorized me to sign it on his behalf but requested to add an incident which occurred around the date of our visit (Declaration of Randy Harris). I then attempted to visit with Mr. Harris via video on December 30, 2021 to confirm that this detail was accurate and reflected his experiences. Mr. Harris was not brought to this visit, and I was unable to reschedule before December 31, 2021.

29. I attempted to visit Tommy Navarrette via video on December 30, 2021 to review his declaration. Mr. Navarrette was never brought to this visit. When I attempted to reschedule to December 31, 2021 I was informed that no visiting stations at all were available in Mr. Navarrette's Housing Unit. Mr. Navarrette approved the declaration via telephone and authorized me to sign it on his behalf.

30. I attempted a non-contact visit with Timothy Phillips on December 23, 2021 to review an addendum and supplement to his Objection. I was informed by the Jail that this visit was canceled because there was insufficient space to maintain COVID-19 social distancing. Via multiple phone calls on December 29, 2021, I read the draft out loud word for word. I confirmed that everything was accurate, reflected his experiences, and that he wanted to

share this declaration with the Court. Mr. Phillips told me that the draft declaration reflected his experiences and opinions accurately and authorized me to sign it on his behalf. I told him that attorneys I work with would file the declaration with the Court by the December 31, 2021 deadline.

31. I visited with David Vigil via video on December 30, 2021 to review Mr. Vigil's declaration and read the draft out loud word for word. I confirmed that everything was accurate, reflected his experiences, and that he wanted to share this declaration with the Court. Mr. Vigil told me that the draft declaration reflected his experiences and opinions accurately and authorized me to sign it on his behalf. I told him that attorneys I work with would file the declaration with the Court by the December 31, 2021 deadline.

32. I visited with Eric Wayne via video on December 29, 2021 to review Mr. Wayne's declaration and read the draft out loud word for word. I confirmed that everything was accurate, reflected his experiences, and that he wanted to share this declaration with the Court. Mr. Wayne told me that the draft declaration reflected his experiences and opinions accurately and authorized me to sign it on his behalf. I told him that attorneys I work with would file the declaration with the Court by the December 31, 2021 deadline.

33. I conducted a non-contact visit with Tashawn Williams on December 18, 2021 to review his declaration. Mr. Williams approved the declaration and authorized me to sign it on his behalf. I then attempted to visit with Mr. Williams via video on December 30, 2021 to check in, confirm all details, and inform him that attorneys I work with would file the declaration with the Court by the December 31, 2021 deadline. Mr. Williams was not brought to this visit, and I was unable to reschedule before December 31, 2021.

34. I am making this declaration to inform the Court of the steps I have taken and the challenges I experienced in communicating with and meeting with Class Members. This declaration is also to inform the Court that the steps taken were thorough and intended to ensure that the final written objection submitted by each class member accurately and completely represented each Class member's concerns and experiences.

35. The declarations I drafted reflect honestly and accurately the discussions I had with these nine individuals.

I make this declaration under penalty of perjury under the laws of the State of California.

Executed this 31st day of December in Oakland, California.


                                              */s/ Lina Garcia Schmidt*
                                              Lina García Schmidt, Paralegal