**FILED**

Feb 07 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHOK BABU, and others,<br><br>Plaintiffs,<br><br>v.<br><br>GREGORY J. AHERN, and others,<br><br>Defendants. | Case No. 18-cv-07677-NC<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CONSENT DECREE AND ATTORNEYS' FEES**<br><br>Re: ECF 283, 421 |

This case arises out of Plaintiff Ashok Babu, Robert Bell, Ibrahim Keegan-Hornesby, Demarea Johnson, Brandon Jones, Stephanie Navarro, Roberto Serrano, and Alexander Washington's class action complaint against Defendants County of Alameda, Gregory J. Ahern, and Carol Burton. Plaintiffs sought injunctive relief on behalf of the class of individuals incarcerated at the Jail, and the subclass of incarcerated individuals with mental health diagnoses and/or other psychiatric disabilities, for cruel and unusual use of isolation, failure to provide due process to prisoners, failure to provide adequate mental health care to prisoners, and failure to provide reasonable accommodations to prisoners with disabilities at Santa Rita Jail. ECF 1. In August 2020, Plaintiffs amended the complaint to include COVID-19 related deficiencies at the Jail. ECF 186. Over the past three years, the parties participated in seventeen settlement conferences that resulted in the proposed Consent Decree before the Court.

On September 24, 2021, the Court preliminarily approved the parties' proposed

1  Consent Decree and directed them to provide notice of the Consent Decree to the Class
2  and Subclass according to the Notice Plan. ECF 280. On January 12, 2022, Plaintiffs filed
3  the instant Motion for Final Approval. ECF 421. The Court held a hearing on the motion
4  on January 19, 2022, and determined it prudent to hold a second hearing on January 27,
5  2022, to hear directly from Class Members. Having considered Plaintiffs' Motions for
6  Final Approval and Attorneys' Fees, Defendants' Non-Opposition, and all of the testimony
7  presented at the Final Approval Hearings on January 19, 2022, and January 27, 2022, and
8  for good cause shown, IT IS HEREBY ORDERED as follows:

9      1.    All capitalized terms in this order shall have the meanings ascribed to those
10  terms in the Settlement Agreements, unless otherwise defined herein.

11      2.    All parties have consented to the jurisdiction of a magistrate judge under 28
12  U.S.C. § 636(c). ECF 12; ECF 15.

## I. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

14      3.    To approve a class action settlement under Federal Rule of Civil Procedure
15  23(e), a court must find the settlement "fair, adequate, and reasonable." *Hanlon v.*
16  *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In assessing the proposal, the court
17  may consider: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely
18  duration of further litigation; the risk of maintaining class action status throughout the trial;
19  the amount offered in settlement; the extent of discovery completed and the stage of the
20  proceedings; the experience and views of counsel; the presence of a governmental
21  participant; and the reaction of the class members to the proposed settlement." *Id.* at 1026.
22  The Court finds the Consent Decree fair, adequate, and reasonable in light of these factors.

23      4.    First, the Consent Decree reflects the strength of Plaintiffs' case as well as
24  the Defendants' position. The parties extensively evaluated the merits of the case and their
25  positions, and settlement at this time will avoid substantial costs to all parties and avoid the
26  delay and risks presented by further litigation. The Court is also satisfied that the Consent
27  Decree was reached after intensive and prolonged arm's length negotiations by capable
28  counsel, with input from the United States Department of Justice and under the supervision

of Magistrate Judge Laurel Beeler, and was not a product of fraud, overreaching, or collusion among the parties. *Id.* at 1290.

    5.    Second, the extent of discovery completed and the stage of proceedings support approval. The last four years of factual investigation and legal analysis were substantial. Even before filing the complaint, Class Counsel spent hundreds of hours communicating with incarcerated individuals by phone and in writing to understand the Jail's inhumane conditions. After filing the complaint, Class Counsel reviewed over 57,000 pages of documents, attended multiple tours of the Jail over approximately eight days, and retained neutral experts to investigate and render reports on the conditions in the Jail. The discovery process has been thorough.

    6.    Third, Plaintiffs sued for injunctive relief, and the resultant Consent Decree provides substantial changes to the policies, procedures, and facilities at the Jail.

        a.    Some of the Consent Decree's benefits for Class Members are: implementation of a new classification system to determine custody levels, reconfiguration of outdoor recreation spaces to maximize out-of-cell time, adoption of policies to ensure that outdoor time is maximized, a new (over four times higher) minimum out-of-cell time requirement, implementation of an electronic information tracking system for out-of-cell time and access to the data for Class Counsel and the Joint Experts, establishment of an Inmate Advisory Council and Ombudsperson Program to provide a new venue at the Jail for incarcerated individuals to raise concerns, updated policies regarding program eligibility and expansion of program offerings, implementation of an updated written use-of-force policy that will be available for review, implementation of a tracking system for the current grievance process and stricter response timelines, requirements for Defendants to maintain sufficient mental health staff to allow access to all individuals, and COVID-19 precaution measures consistent with up-to-date public health guidance.

b. Some of the Consent Decree's benefits for Subclass Members are: requirements that Defendants ensure that individuals receive adequate metal health care, establishment of one or more Therapeutic Housing Units for people with serious mental illness, additional out-of-cell time for individuals in Therapeutic Housing Units, increased programming (with equal access for individuals with psychiatric disabilities) as a means to prevent self-harm, a requirement that AFBH be consulted before pre-planned uses of force on individuals with known psychiatric disabilities, improved discharge planning to ensure that individuals with mental health disabilities are able to transition seamlessly to community-based services upon release, and employment of a full-time ADA Coordinator to help facilitate ADA-related grievances and accommodation requests. This comprehensive injunctive relief will benefit all Class and Subclass members and weighs strongly in favor of approval.

7. Fourth, the views of Class Counsel, experienced prison class action litigators, weighs in favor of final approval. Class Counsel have conducted an extensive investigation in to the factual and legal issues raised in this action and endorse the Consent Decree as fair, adequate, and reasonable.

8. Fifth, approval is supported by the presence of the DOJ. In addition to its participation in the settlement process and non-opposition to the Consent Decree, the DOJ will continue to be involved in the monitoring and implementation of the Consent Decree. The DOJ will tour the Jail with the Joint Experts, receive independent access to the Jail and documents relevant to its April 22, 2021, report, and send its own mental health expert to tour the Jail twice a year. DOJ's substantial role in reaching and implementing this Consent Decree weighs in favor of final approval.

9. Sixth, Class Members and community member responses raised several concerns about conditions at the Jail and ultimately, further emphasized the need for the Consent Decree. During the notice period, objectors and interested community members

filed 131 responses to the Consent Decree. *See* ECF 286-381, 383-412. Of the 131 filings, 110 were from Class Members, thirteen were from interested community members (including former State Senator Loni Hancock), and nine were from organizations, including: Alameda County Families Advocating for the Seriously Mentally Ill, Alliance on Mental Illness (Alameda County Affiliate), the American Friends Service Committee, the Anti-Police Terror Project, Critical Resistance, Legal Services for Prisoners with Children, Mental Health First Oakland, the National Alliance on Mental Illness, Psychologists for Social Responsibility, and the National Lawyers Guild (San Francisco Chapter). At the January 19, 2022, hearing, the Court invited objectors' counsel and interested community members to respond to the Consent Decree. After hearing from 24 individuals, the Court continued the hearing to January 27, 2022, to hear directly from incarcerated Class Members. With substantial assistance from Class Counsel and Defendants, the Court was able to connect to the Jail and hear from the 37 Class Members who requested to speak. The objections and community responses raised common themes:

   a. First, numerous objectors raised concerns about commissary prices, poor quality of food, laundry service, and cell cleanliness. These topics are not at issue in this case; thus, the Court directs concerned individuals to look into whether the other two pending cases against the Jail to see if they raise their concerns: *Mohrbacher v. Alameda Cnty. Sheriff's Office et al.*, Case No. 3:18-cv-00050-JD (N.D. Cal.) and *Gonzalez et al. v. Ahern et al.*, Case No. 3:19-cv-07423-JSC (N.D. Cal.).
   b. Second, many spoke about inhumane conditions at the Jail, citing minimal out-of-cell time, lack of access to mental health resources, an unresponsive grievance process, and unchecked uses of force. The Court agrees that these conditions are unconstitutional, and they demonstrate the need for the reforms mandated in the Consent Decree.
   c. Third, Objector's Counsel, Yolanda Huang, argued that the Consent Decree offered no benefits for 96% of incarcerated individuals. *See* ECF

381 at 15. It is not clear how Ms. Huang arrived at this percentage. However, after evaluating the Consent Decree and hearing countless individuals testify about the lack of out-of-cell time, the Court is convinced that a reform is necessary and the increase provided by the Consent Decree, while perhaps not Ms. Huang's ideal, is markedly better than the current situation.

d. Fourth, some objectors stated that the Consent Decree should not be approved because the conditions at the Jail have not improved over time. The Court reinforces that the Consent Decree has not been implemented yet, so its effectiveness is to be seen.

e. Fifth, many objectors requested further discovery, but the Court reiterates that discovery has been thorough. Class Counsel spent over four years collecting information from individuals about Jail conditions and retained advice from the DOJ and correctional facility experts. Although more discovery may be beneficial, that benefit would come at the expense of Class Members who would continue to suffer under current conditions.

f. Sixth, objectors also raised concerns about the lack of monetary relief for Class Members or preclusion from future recovery. This complaint sought only injunctive relief, so Class Members are not barred from suing for individual damages. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) (stating that "a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damages claims y class members, even if based on the same events.") Further, the Consent Decree does not preclude future litigation based on future conduct or for injunctive relief on subjects not covered by the Consent Decree.

g. Seventh, Ms. Huang also labels the Consent Decree a "sham" and "sweet heart dance" pointing to the Board of Supervisor's Jail budget increase and Class Counsel's undeserved fees award. *See* ECF 381 at 20. As to

1  the first concern, Plaintiffs clarified that the Consent Decree does not
2  fund new positions, instead it sets requirements about how existing
3  positions must be staffed. ECF 432 at 5. Specifically, the Consent
4  Decree requires that new staff be assigned to the Jail and not diverted to
5  the Sheriff's other functions. Second, while discovery may not have
6  followed Ms. Huang's preferred path, the Court is assured by Judge
7  Beeler's supervision over the settlement process and the parties' efforts
8  over the last four years that discovery was sufficient. Finally, given the
9  extent of discovery and Class Counsel's other responsibilities in this case,
10  including the continued monitoring and implementation of the Consent
11  Decree, the agreed upon fees are reasonable.

    h. Finally, numerous objectors implored that the Jail should not be the County's primary mental health care facility. The Court whole-heartedly agrees with this sentiment. Approval of this Consent Decree is not intended to prevent Defendants or Alameda County from funding community-based mental health services. However, the Court cannot direct the County on how to allocate its finances. Ultimately, the decision to fund certain institutions over others is the County's. And if the County chooses to continue funding a jail, the Court seeks to ensure that the conditions in that jail are constitutional.

In sum, the pertinent objections do not dissuade the Court from approval because they highlight the pressing need to reform the Jail's policies and procedures.

    10. Finally, the Court finds that the Consent Decree satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A): it is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of federal rights.

//
//

## II. NOTICE DISTRIBUTION WAS APPROPRIATE

11. The Court finds that Class Counsel distributed notice in a manner and form consistent with the Preliminary Approval Order and Notice Plan and meets the requirements of due process and Federal Rule of Civil Procedure 23. Ms. Huang raised several concerns about the adequacy of notice, but the Court maintains that notice was sufficient. *See* ECF 381. First, the Class here is limited to individuals currently incarcerated at the Jail, so the Notice Plan's omission of individuals not currently incarcerated does not present a due process violation. Although individuals who are not currently at the Jail may later become incarcerated, they will receive notice of the Consent Decree at that time. Further, participation of hundreds of interested community members at both hearings indicates that, while not included in the formal Notice Plan, there was ample notice outside of the Jail. Second, the Court is satisfied by the parties' assurances in writing and at the hearings that notice was provided in several languages, including Spanish. *See* ECF 421 at 17. Finally, the Court does not doubt that some objectors may have had difficulties accessing paper copies of the documents, but the Court finds that Class Counsel's efforts to distribute copies of the Consent Decree and FAQs satisfy the Notice Plan and due process requirements. *Id.* at 18.

## III. MOTION FOR ATTORNEYS' FEES

12. This class action is certified pursuant to Federal Rule of Civil Procedure 23(b)(2). Thus, the Court may award attorneys' fees and costs under Rule 23(h).

13. Plaintiffs are "prevailing parties" under 42 U.S.C § 1983, 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b) and "successful parties" under Cal. Code Civ. Proc. § 1021.5. An attorneys' fees award is appropriate under the state law and federal fee-shifting statutes.

14. Plaintiffs are represented by Class Counsel at Rosen Bien Galvan & Grunfeld LLP. Class Counsel's requested rates are in line with market rates in the San Francisco Bay Area for work of similar complexity by attorneys of similar skills and experience. Class Counsel are experienced in litigating disability access, prisoner's rights, and other class actions. Specifically, Class Counsel have represented incarcerated

plaintiffs in such cases as: *Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882 (E.D. Cal. 2009); *Armstrong v. Newsom*, 484 F. Supp. 3d 808 (N.D. Cal. 2020); *Hernandez v. Cnty. of Monterey*, 306 F.R.D. 279 (N.D. Cal. 20150, *Brown v. Plata*, 131 S. Ct. 1910 (2011); and *G.F. v. Contra Costa Cnty.*, Case No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 159597 (N.D. Cal. Nov. 25, 2015).

15. The rates Class Counsel requests are reasonable and appropriate given their work in this litigation. Class Counsel's role included: hundreds of hours of pre-litigation investigation into conditions at the Jail; skilled litigation work in drafting the original complaint and amending the complaint to include COVID-19 related compliance failures; conducting several in-person visits to the Jail with neutral experts to further assess the context of classifications, use of restrictive housing, metal health care access, use of force, ADA accommodations, and other correctional practices; participating in several settlement conferences before Judge Beeler; and negotiating a Consent Decree with Defendants.

16. The time Class Counsel devoted to this case was appropriate given the length, intensity, and nature of the litigation. In calculating their fees, Class Counsel exercised billing judgments and reduced their lodestar; they have continued to exercise billing judgment for the work performed through December 31, 2021. *See* ECF 283-1. The Court finds these billing judgment reductions reasonable and appropriate.

17. Class Counsel is entitled to recover the costs advanced to bring this litigation on behalf of the Class. From September 1, 2017, through December 31, 2021, after reasonable billing judgment reductions, Class Counsel billed a total of 5121.6 hours for a lodestar of $2,911,278.50. After adding $35,364.39 in costs and expenses, Class Counsel's total bill comes to $2,946,642.89. The Court finds this total amount reasonable and appropriate. This amount does not include additional fees and costs for work that Class Counsel continues to perform. However, as agreed to in the Consent Decree, Class Counsel seek no more than $2,150,000.00 for work performed through the Effective Date.

18. Attorneys are entitled to recover fees for time spent monitoring and enforcing compliance with settlement agreements in civil rights lawsuits even if the

monitoring does not result in additional judicial relief.  Accordingly, Plaintiffs are entitled to attorneys' fees and costs for implementation and monitoring of the Consent Decree.

19. The agreed-upon monitoring process is appropriate and necessarily robust. The Consent Decree details extensive monitoring work to be performed by Class Counsel, including work required to implement policies required by the Consent Decree.

20. The parties have agreed to the following yearly caps on attorneys' fees for work performed to monitor and implement the Consent Decree: up to $550,000 for year one; up to $450,000 for year two; up to $375,000 for year three; up to $300,000 for each of years four and five; and up to $275,000 for year six and for each of any subsequent years. The Court finds these caps reasonable given the volume of the work to be performed.

21. The parties have further agreed to the following process for billing and payment of monitoring fees: At quarterly intervals starting three months after the Effective Date, Plaintiffs shall provide Defendants with a written demand for Monitoring Fees using Class Counsel's ordinary rates.  Such a demand shall be submitted within a reasonable time after the expiration of each quarterly period, and no later than thirty days absent written agreement otherwise.  Defendants shall issue payment within sixty days of receipt absent written agreement otherwise.  Demands made within the agreed-upon caps shall be presumed reasonable.  If the parties cannot agree as to reasonableness of hours incurred or work performed, their dispute shall be subject to the Dispute Resolution procedures set forth in the Consent Decree.  The Court finds this process reasonable and appropriate to ensure the accuracy of requests for monitoring fees and resolution of disputes and orders payment accordingly and subject to the provisions in Section VII of the Consent Decree.

**IV. CONCLUSION**

22. The Court GRANTS final approval of the Consent Decree and ORDERS the parties to comply with its terms.

23. Defendants are ORDERED to pay Plaintiffs $2,150,000.00 for reasonable attorneys' fees and costs.

//

24. Pursuant to Section X of the Consent Decree, the Court retains jurisdiction to enforce the terms and limitations of the Consent Decree and to resolve disputes regarding compliance with the Consent Decree.

**IT IS SO ORDERED.**

Dated:  February 7, 2022 _____
NATHANAEL M. COUSINS
United States Magistrate Judge