## Grievance #231498792

**Profile Photo:**
Profile Photo

**Inmate Info**

Name: KEITH WASHINGTON (1968-07-19)
Booking #: UME239
Submitted Date: 02/15/23 10:32
Submitted from Location/Room: S01C07/1 West
Current Location/Room: S02B07/2 West
Facility: Santa Rita Jail Alameda, CA

**Audit Photo:**
Audit Photo

**Form Info**

Category: Others
Form: Inmate Grievance - Single Level

**Grievance Info**

Status: CLOSED by Sgt. J Larosa
Facility Deadline: 03/02/23 23:59
Grievance Level: 1
Inmate can reply: No

**Details:**

For the Health, Welfare and Safety of detainees and Sheriff Deputies, the Rug on 1 Building (C-Pod) must be removed ASAP!!!

**Details:**

**Date Grievance Occurred:**
*Include month, day, and year.*
February 10th, 2023 thru PRESENT. PLEASE SEND ME A HARD COPY OF THIS GRIEVANCE.

**Grievance Details:**
*Be specific... (Names, dates, location, etc.)*
This grievance is submitted with the intent of raising the violation of decency and disregard for the Health and Safety of detainees forced to live on 1 BUILDING C-POD) AS WELL AS THE DEPUTIES WHO ARE ASSIGNED TO WORK HERE. This building was constructed around 1988 and the Rug on C-Pod (1 Building) HAS NOT BEEN REPLACED. As a result of the neglect and years of absorbing FECAL MATTER AND URINE from "Gassing" and other incidents. The Rug on C-Pod EMANATES A FOUL STENCH WHICH WARRANTS MUCH MORE THAN JUST CLEANING. As a detainee living here, I am sickened daily when I must force myself to eat my food in such an environment. Furthermore, I have heard numerous Deputies, AFBH STAFF AND MEDICAL STAFF COMPLAIN ABOUT THE FOUL NATURE OF THE ENVIRONMENT ON C-Pod. There are AIR BORNE PATHOGENS SUCH AS BLACK MOLD WHICH HAS FESTERED UNDERNEATH THIS RUG FOR YEARS AND THE SPORES ARE NOT DETECTABLE WITH THE NAKED EYE BUT YOU CAN PERCEIVE THE PHYSIOLOGICAL EFFECTS OF THE FUNGUS. THE GONZALES CIVIL LAWSUIT MAY BE THE PROPER VEHICLE TO ADDRESS THIS HEALTH AND SAFETY ISSUE. However, when we consider the Millions of tax payer dollars the ACSO and AFBH have garnered from the BABU CONSENT DECREE, AT THE VERY LEAST ACSO SHOULD BE MOTIVATED TO CREATE HUMANE WORK CONDITIONS FOR THE DEPUTIES AS WELL AS HUMANE LIVING CONDITIONS FOR THE DETAINESS FORCED TO LIVE IN SUB-HUMAN CONDITIONS. I REQUEST THAT YESSENIA SANCHEZ TAKE AN ACTIVE ROLE IN RESOLVING THIS HEALTH AND WELFARE ISSUE WITHOUT retaliation.

**Did you speak to a housing unit staff member?:**
*Name of Staff Member*
Yes Lieutenant Davis and several DEPUTIES who work here.

**Is this ADA related:**
No

**Is this PREA related?:**
Yes

**By submitting this form I am consenting to a search of my medical, dental, or mental health records for the purpose of this investigation only. This acts as a waiver to my HIPAA rights. Do you agree to these terms?:**
Yes

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 02/16/23 08:19 | Sgt. J Larosa | Staff Response | A work order to clean the carpets was submitted to Building Maintenance. The Projects Sergeant was forwarded this grievance to asses the carpet condition and determine if cleaning or replacement is warranted. Each Housing Unit undergoes routine maintenance and the facility has passed numerous inspections including annual health inspections. The carpet in Housing Unit #1 is not the original carpet from 1988 |
| 02/16/23 08:19 | Sgt. J Larosa | Changed Status | From 'Open' to 'Closed' |
| 02/15/23 10:32 | KEITH WASHINGTON | Submitted New | For the Health, Welfare and Safety of detainees and Sheriff Deputies, |

# Grievance #232933182

**Profile Photo:**
Profile Photo

**Inmate Info**

Name: KEITH WASHINGTON (1968-07-19)
Booking #: UME239
Submitted Date: 02/22/23 17:43
Submitted from Location/Room: S01C07/1 West
Current Location/Room: S02B07/2 West
Facility: Santa Rita Jail Alameda, CA

**Audit Photo:**
Audit Photo

**Form Info**

Category: Others
Form: Inmate Grievance - Single Level

**Grievance Info**

Status: CLOSED by Sgt. J Larosa
Facility Deadline: 03/09/23 23:59
Grievance Level: 1
Inmate can reply: No

**Details:**

NO OPPORTUNITY TO SHOWER IN OVER 72hrs on 1 Building (C-Pod). No Access to POD TIME in over 72hrs and counting!

**Details:**

**Date Grievance Occurred:**
*Include month, day, and year.*
February 22, 2023

**Grievance Details:**
*Be specific... (Names, dates, location, etc.)*
I am writing this grievance in order to shed light on violations of the ADA(Americans with Disabilities Act), Section 504 of the Rehabilitation Act, California Government Code section 11135 as well as a BLATANT VIOLATION OF THE BABU CONSENT DECREE. My Pod partner and I were last offered an opportunity to SHOWER on Sunday, February 19th. Today is Wednesday, February 22nd, 2023 and we have yet to be given an opportunity to Have Pod Time, Shower, or given supplies in order to Clean our cells. The Alameda County SHERIFF'S Office continues to discriminate against individuals with Psychiatric Disabilities by denying US EQUAL ACCESS TO PROGRAMS, SERVICES AND/OR ACTIVITIES. When questioned on this topic, Building Sergeant Holland stated that his INABILITY to facilitate Pod Time or provide access to showers to inmates on C-Pod was due to STAFFING SHORTAGES. This is remarkable given the fact that the BABU SETTLEMENT AND CORRESPONDING CONSENT DECREE do not just provide FUNDING for staffing but the Babu Lawsuit specifically FOCUSED ON PROVIDING PROGRAM OPPORTUNITIES AND SERVICES FOR THE MENTALLY ILL. C-POD IS FULL OF INMATES LIKE MYSELF WHO ARE UNDER THE CARE OF ADULT FORENSIC BEHAVIORAL HEALTH (AFBH). There is already a serious problem on this Pod stemming from poor hygiene producing a foul odor in the Pod. This is exacerbated when we cannot get adequate opportunities to BATHE PROPERLY IN THE SHOWER. By default, we are also being denied access to POD TIME. NO POD TIME NO SHOWER!!!

**Did you speak to a housing unit staff member?:**
*Name of Staff Member*
Sergeant Holland

**Is this ADA related:**
Yes

**Is this PREA related?:**
No

**By submitting this form I am consenting to a search of my medical, dental, or mental health records for the purpose of this investigation only. This acts as a waiver to my HIPAA rights. Do you agree to these terms?:**
No

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 02/23/23 12:44 | Sgt. J Larosa | Staff Response | Your grievance has been assigned Tracking #23-0625 and is now under investigation. You will receive a response after a thorough investigation has been conducted. Additionally, a paper copy of this grievance submission will be delivered to you. |
| 02/23/23 12:44 | Sgt. J Larosa | Changed Status | From 'Open' to 'Closed' |
| 02/22/23 17:43 | KEITH WASHINGTON | Submitted New | NO OPPORTUNITY TO SHOWER IN OVER 72hrs on 1 Building (C-Pod). No Access to POD TIME in over 72hrs and counting! |



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

P.O. Box 390
San Francisco, California 94104-0390
T: (415) 433-6830 • F: (415) 433-7104
www.rbgg.com

Megan Rich
Email: MRich@rbgg.com

March 7, 2023

CONFIDENTIAL – LEGAL MAIL

Keith Washington, UME239
Santa Rita County Jail
5325 Broder Boulevard
Dublin, CA 94568-3309

    Re:   *Babu, et al., v. County of Alameda, et al.;* 5:18-cv-07677
          Our File No. 1378-03

Dear Mr. Washington:

    Thank you for meeting with us during our January 24-26, 2023 Monitoring Tour of Santa Rita Jail.

    During our tour, we toured the facilities, observed programming, classes, and groups, reviewed documentation, and interviewed Jail leadership, custody and mental health staff, and incarcerated people to monitor the Jail's compliance with the Consent Decree. The information you and other incarcerated persons provide to us is very helpful as we monitor the Jail's progress in reaching compliance with the requirements in the Consent Decree. Thank you for speaking with us and sharing your experiences. Within our interview, you reiterated incarcerated people do not always have access to the bathroom during pod time. Please let us know if any staff members deny you access to your cell when you ask to use the restroom moving forward.

    We also are responding to your letter dated February 1, 2023 that we received on February 6, 2023, your letter dated February 12, 2023 that we received on February 17, 2023, and your letter postmarked February 22, 2203 that we received on February 24, 2023 and the multiple voicemails that we have received from you in February and this month. In your letter, you report that you have been <u>struggling with your mental health due to the poor conditions at the Jail.</u> Specifically, <u>you report that your mental health decompensation is in part due to the fact that you and Mr. Misch were moved to a new housing unit in 1 Building, C-Pod that is notorious for being unsanitary, assaultive, and providing restricted out-of-cell time. You believe that you were moved to this housing unit as a form of retaliation for filing grievances and communicating with our firm.</u> You

[4235527.1]

1.)

**CONFIDENTIAL – LEGAL MAIL**
Keith Washington, UME239
March 7, 2023
Page 2

report that Deputy Clinton confirmed in a grievance that he intentionally placed you and Mr. Misch in this housing unit as a form of retaliation although you have since been moved out of that unit. We take allegations of retaliation seriously and are raising this issue with Defendants. If you have a copy of the grievance, or the grievance number, where Deputy Clinton confirmed that this was done intentionally as a form of retaliation please provide that to us as well.

You also provide us with updates and information regarding the National Lawyers Guild incident and the subsequent retaliation you received because of this situation. Thank you for sending is a copy of the bar complaint and please feel free to update us if there are any changes or other developments regarding your complaint or if the situation worsens in any way.

Since then, you have been moved to E-Pod in Housing Unit 1, which you report is newly renovated, clean, and offers more out-of-cell time. However, you report that you receive less out-of-cell time when Deputy Clinton is working in this Pod. You report that you filed grievances regarding this issue, and that in their response, the Jail cited an outdated policy that incorrectly warrants Deputy Clinton to only provide two hours of out-of-cell time per day. You report that you will send us a copy of these grievance responses, and we will be sure to look out for those in the mail.

You also reported multiple use of force incidents against a severely mentally ill class member within C-Pod of Housing Unit 1. We thank you for sharing these details, and we are enclosing extra writing paper and stamped envelopes that you may share with this class member so that he can write to us. If you feel comfortable, please let him know that he may call us as well. If you have the approximate date of these incidents please let us know so that we can discuss them with Defendants.

✶ You also wrote to us regarding the recent deaths at the Jail, and you report that many of these deaths are results of inadequate medical attention and mental health care in the intake unit. We share your deep concern about these deaths at the Jail, and we appreciate the information you have shared with us regarding these incidents. We are enclosing the Press Release from Lieutenant Modeste regarding the death that occurred on February 13, 2023 at the Jail. ✶

We also saw that you filed a declaration to the court on January 27, 2023, February 6, 2023, and February 24, 2023 that addresses the recent deaths at the Jail, the lack of adequate mental health care at the Jail, the retaliation you have been receiving for filing grievances, the Covid-19 outbreaks at the Jail, and other concerns that you have regarding the treatment of incarcerated people at the Jail. You also emphasize the

**CONFIDENTIAL – LEGAL MAIL**
Keith Washington, UME239
March 7, 2023
Page 3

importance of out-of-cell time as a means to mitigate the prevalence of attempted and committed suicides at the Jail. You also report that many incarcerated people do not have access to tablets. Thank you for raising awareness of these issues and bringing them to our and the Court's attention.

      We hope that you continue to stay in touch with us if you experience difficulties with any of the issues covered by the Consent Decree. Please write to us or call us at 415-433-6830 if you have any additional case-related questions or concerns.

      Take care.

                          Sincerely,

                           ROSEN BIEN
                           GALVAN & GRUNFELD LLP

                           */s/ Megan Rich*

                  By:  Megan Rich
                        Paralegal Clerk

mr
Enclosures: SASE, writing paper, Press Release

[4235527.1]

3.)

Stephen Lofton, Elizabeth Laurel, Charles Johnson, and Cody Vanburen. These beloved community members who were incarcerated at Santa Rita Jail lost their lives in just the first 2 months of 2023, under the watch of the newly elected Sheriff Yesenia Sanchez. Seven other people at Santa Rita Jail experienced fentanyl overdoses in February alone. Enough is enough!



# CARE NOT DEATHS:
# VIGIL & NOISE PROTEST
# Saturday, April 1st at 1:00 pm
# Santa Rita Jail, 5325 Broder Blvd., Dublin

Holding space to grieve and express our solidarity for people held captive by Santa Rita Jail, **we invite you to bring instruments** to support our noise demonstration– a practice to break the isolation and alienation of cages to let folks inside know that we are fighting for them. This will be a family-friendly event and it will not be arrestable.

We demand that:
1. Sheriff Yesenia Sanchez and all law enforcement agencies in Alameda County immediately end their deadly practice of arresting and incarcerating people with mental health and substance needs.
2. Alameda County Board of Supervisors order an independent investigation of deaths in Santa Rita Jail, including a review of the contract with the private medical provider in the jail, Wellpath, which has utterly failed to prevent these deaths of people on intake.
3. Alameda County Board of Supervisors immediately fund over $50 million of life-saving community mental health services they committed to last year but have stalled to implement.

**Information and carpooling**: https://forms.gle/HecLF1XCRSa4Gpw57

# Care First Community Coalition (CFCC) Recommendations to Care First Jails Last Task Force
## March 2023

Alameda County faces multiple and interlocking crises. We have a crisis of racism: consistently upwards of 40% of those suffering from houselessness, incarceration, hospitalization, and police violence in the County are Black/African American, despite representing only 10.7% of the population. We have an incarceration crisis: more than 90% of those imprisoned in Santa Rita Jail are unsentenced, legally innocent. We face a housing crisis: the number of unhoused residents in Alameda County has risen by 73% in the last 5 years, and Black residents continue to be dramatically overrepresented in the county's unhoused population. And the County has a mental health and substance use disorder crisis, with uncoordinated and inadequate community-based treatment and services increasingly resulting in severely ill and traumatized residents being funneled into jail. **We call on the Care First Jails Last Task Force to address these human-caused crises with the urgency they demand.**

The following recommendations are based on the Budget Agenda that the coalition agreed upon and advocated to the County in 2022; we connect each recommendation to corresponding intercept(s), using the Intercept Framework shown below. In addition to the recommendations we share here, we support those in the Justice Involved Mental Health (JIMH) final report and those presented by Brian Bloom. At the same time, we recognize that implementing those and other recommendations requires sufficient funding, data, and transparency.

## Intercept Framework and Definitions

| | | |
|---|---|---|
| Intercept -2 | Prevention | Efforts to reduce the incidence, prevalence, or reoccurrence of behavioral health disorders and promote mental wellness throughout the community. |
| Intercept -1 | Early Intervention | Community-based programs and services that aim to provide support and care for individuals living with behavioral health needs prior to crisis. |
| Intercept 0 | Hospitals & Crisis Intervention | Service options available at the point of individual behavioral-health related crisis and may include among other options, emergency rooms, acute and subacute facilities, and crisis stabilization units. |
| Intercept 1 | Law Enforcement and Emergency Services | Point at which the emergency response system is engaged in a behavioral health-related crisis. |
| Intercept 2 | Initial Detention and Courts | Initial detention in a criminal justice facility such as a city or county jail or their preliminary involvement in the Court System. |
| Intercept 3 | Jail | Incarceration at a local correctional facility, with a focus on Santa Rita County Jail. |
| Intercept 4 | Reentry | Services provided for people upon release from local correctional facilities (Santa Rita Jail) as they reenter back into the community after incarceration. |
| Intercept 5 | Community Supervision | Term of probation or parole including the conditions of supervision and services provided by Probation or Parole Departments. |

Exhibit M-5    5:18-CV-07677-NC

## Data Recommendations to Measure Unmet Needs

1. **[Cross-cutting Intercepts] Identify and recommend ongoing county agency practices that measure unmet needs and service gaps.**

   The Alameda County Office of Homelessness Care and Coordination draws on periodic Point in Time counts of persons needing housing for the general population, but county agencies have not established practices to measure other unmet needs or gaps in services provided, including housing specific to behavioral health or re-entry populations, treatment services for mental illness, substance use disorder, or co-occurring disorders.

   Responses from ACBH to the Grand Jury report recognize the lack of public-facing data or dashboards. External Quality Reports on the Department suggest that ACBH is organizing its data on services provided, but do not report on the nature or extent of gaps. In addition, the existence of waiting lists for CBO services, the proportion of people released from John George and Villa Fairmont because of lack of space, the number of people with SMI and/or substance use disorders incarcerated at Santa Rita or without housing, and the lack of demographic data of populations not receiving adequate services - all strongly suggest that there are significant unmet needs for services in the County.
   a. **Solution:** The Task Force should **develop recommended methods to identify and measure gaps in services (unmet needs) for persons who are NOT currently justice-involved**, but have exhibited behavioral health needs or are **at high risk** of behavioral health crisis and/or of becoming justice-involved.
       i. We strongly urge the Task Force to develop concrete recommendations for ongoing practices by county agencies to identify and measure such unmet needs for supportive housing, treatment, and other services whose absence increases the risks of incarceration.
   b. **Solution:** The data collected and reported must, in every possible instance, **include demographic information to facilitate addressing racial and geographic disparities** in services and outcomes.
   c. **Solution: Practices to measure unmet needs should include but not be limited to:**
       i. Annual surveys of CBOs contracted by ACBH for data on the number, demographics, diagnoses, and other information for adults on waiting lists that are maintained by those CBOs, and
       ii. Methods for generating reliable, comprehensive information on the housing needs and risk of homelessness of all ACBH clients in Alameda County, including the number of people with serious mental illness or substance use disorders who are housed with their families.

2. **[Cross-cutting Intercepts] Fund dedicated Alameda County Behavioral Health staff time and/or a consultant to conduct gap analysis[1]** to concretely measure unmet mental health needs, including those named above.
   a. Estimated cost: $200,000, reserves.

---

[1] Similar to what was done for the Home Together Plan, so that a plan may be developed to address the countywide mental health crisis.

(2)

3. [Cross-cutting Intercepts] **Assess and evaluate the causes of staff shortages and outcomes of efforts to recruit and retain behavioral health line staff in Alameda County.** This should include identifying housing options, workforce development (training) and funding to increase compensation that addresses workforce needs.

## Recommendations Regarding Budget & Finance Transparency

4. [Cross-cutting Intercepts] **Create transparency around the County's reserves and fund balances.**
   To implement the Task Force's recommendations and support County and community discussion of how to meet the County's Care First policy goals, public and regular information on the County's assets and prospective revenues are necessary.
   a. **Solution**: The County's Budget web page and Comprehensive Annual Financial Report should include consolidated sections that state clearly the amount of each fund balance, source, liabilities on those funds, changes since previous year, and conditions for use for each fund balance that the County controls.

5. [Cross-cutting Intercepts] **Increase and maintain Alameda County advocacy to the California and federal governments for legislation that expands funds**, especially for flexible funds that can be used to serve multiple populations, for both capital and program costs, and for types of supportive housing and services that have been difficult to fund.

6. [Cross-cutting Intercepts] **Create transparency of Alameda County's unspent state realignment funds designated for Medi-Cal services.** Unspent state realignment funds lose the federal match when services are not provided but the state has already paid the county.
   a. How much has been left unspent annually, and how much may be made available to address Task Force recommendations?

7. [Intercept 3] **Create a public accounting of unspent funds in Santa Rita Jail.** The funds allocated for the jail that remain unspent because of unfilled staff positions, as well as overtime, should be transparent and subject to proposals for re-investment. This accounting should include:
   a. An accounting of how much is being spent on overtime in the jail.
   b. A regular periodic accounting of funded vacant positions in Santa Rita Jail of ACSO, ACBH and contractor (e.g. Telecare) staff.

8. [Intercept 3] **Create a budget report on how the funds mandated by the Babu settlement have been allocated and spent**, and the **status of implementation** of the settlement's terms.

## Recommendations Regarding Continuity of Care and Programs
Totalling to $171 million in new investments
3 policy changes

(3)

9. **[Cross-cutting Intercepts - $43M Budget Investment] Fully fund the Alameda County Behavioral Health Department's countywide Forensic Plan[2]**, which includes funds for:
   a. Six CATT mobile crisis teams. Estimated cost: $6.6M, general fund. **Intcpt**
   b. Crisis 24-hour dispatch service. Estimated cost: $2.2M, general fund. **Intcpt 0**
   c. Expand voluntary residential treatment beds countywide. Estimated cost: $16.5M, reserves. **Intcpts 0 and 4**
   d. New board & care facilities. Estimated cost: $2.2M, reserves. **Intcpt -2**
   e. Facility for co-occurring mental illness/substance treatment. Estimated cost: $1.05M, reserves. **Intcpt 0**
   f. Hospital beds (25-bed subacute facility, 16-bed acute facility). Estimated cost: $9.5M, reserves. **Intcpt 0**
   g. Expand satellite urgent care clinic services. Estimated cost: $2M, general fund. **Intcpt -1**
   h. Re-entry support teams. Estimated cost: $1.08M, general fund. **Intcpt 4**
   i. Peer respite for persons from Santa Rita Jail, on probation, at risk. Estimated cost: $1M, general fund. **Intcpt 4**

   Estimated cost: $43M, various funding sources.

   The County as of October 2022 had funded $8.63M of ACBH's $52M proposal. In addition, ACBH identified $5.6M of funding for services not in its original $52 proposal including $3.745M for wraparound services for transitional age and African American youth; and $1.2M for substance use mobile outreach teams. The BOS unanimously agreed in June 2022 to ask the CAO to identify funding sources for these investments; the CAO is currently expected to report to the Board in March 2023.

10. **[Cross-cutting Intercepts - Policy Change].** Ensure that families with formerly incarcerated/criminalized family members are not restricted from accessing affordable/supportive housing in Alameda County; create alternatives to Section 8 Housing that support system-impacted families.

11. **[Cross-cutting Intercepts - $6M Budget Investment + Policy] To maintain existing programs and services run by community behavioral health service providers, behavioral health community-based organization line staff should receive compensation equal to County staff in comparable positions.**
    a. **Solution:** This should begin with completing a 5% increase in compensation to stop the bleeding of staff in CBOs contracted with the County.
       - Estimated initial cost: $6 million ($6M), general fund.

---

[2] Data is from ACBH April 25, 2022 presentation to Joint Health & Public Protection Committee.

(4.)

- This includes County contracts with community health centers or FQHCs which provide prevention and early intervention services in the community.

12. **[Intercepts -2, -1, 4 & 5 - $80M Budget Investment + Data] Allocate county funds towards permanent supportive housing programs and services** for those who are unhoused, suffering from mental illness and/or substance use disorders, and/or are formerly incarcerated.

    The Office of Homeless Care and Coordination has identified a need for additional 4,195 units of supportive housing, beyond the current inventory of 3,215, which must be met over at least five years with County, State and other funds[3].
    
    a. **Solution:** Invest $80M, blend of reserves and general fund, to expand supportive housing units. $80 million would represent an increase from the approximately $46 million from the County's General Fund allocated in FY 2021-2022, which accounted for about one quarter of all funds dedicated to the Home Together plan.
    
    b. **Solution:** Expand licensed Board-and-Care facilities, which have been reduced in Alameda County and are designed to support highly impacted persons experiencing mental illness and/or substance use disorders.
    - This should include the Supportive Housing Community Land Alliance initially supported by an MHSA Innovation grant.
    - Support higher reimbursement rates for board-and-cares to match the reimbursement rates for comparable facilities for the developmentally disabled.
    
    c. **Solution:** Dedicate staff to facilitate return to supportive housing for those persons who lose access to it.
    
    d. **Solution:** Do an evaluation and analysis of AB 109 funding available for housing for formerly incarcerated people with behavioral health needs, including those with all types of convictions.

13. **[Intercept -1 - $7.7M Budget Investment] Implement 1 new voluntary crisis facility in underserved areas of the County, modeled on Amber House (Oakland).**
    a. Estimated annualized cost is $7.7M
    b. Amber House's 2-level facility offers the community a crisis stabilization unit (CSU) downstairs and crisis residential treatment (CRT) beds upstairs. The CSU operates as a voluntary drop-in center to stabilize individuals at risk of hospitalization or arrest in a safe and supportive space for up to 24 hours. Estimated annualized costs (general fund):

---

[3] This would represent an increase from previous year commitments of County funds, though it still falls short of the need identified in Alameda County's Home Together 2026 report. This plan aims to eliminate homelessness in the County by 2026. However, the investment needed in FY 2022-2023, according to that Plan, is greater than in later years, as we invest in permanent housing, not just temporary solutions or band-aids to a pervasive and systemic problem that is causing widespread suffering.

Exhibit M-5    5:18-CV-07677-NC

- CSU: 12 beds, 19 staff is $5.2M
- CRT: 12 beds, 13 staff is $2.5M
  c. **Solution:** The County should assess the extent and geography of needs for these services.
  d. **Solution:** The County should develop public education and awareness campaigns to promote utilization of these early intervention/diversion services and re-educate care coordinators to support individuals accessing these services.

14. **[Intercept -1 - $3M Budget Investment] Build 1 new CARES Navigation Center in an underserved area of Alameda County, and fully fund the existing CARES Navigation Center in Oakland.** Estimated cost: $3M+, general fund.

    CARES Navigation Center is a misdemeanor diversion program for people with mental illness and substance-use disorder that redirects individuals arrested for misdemeanors out of the criminal justice system and into services. The centers will operate Monday through Friday 12-hours per day. (See also: Task Force member Brian Bloom's recommendations)
    a. **Solution - policy change:** Eligibility should not be limited to those arrested on misdemeanors. Estimated cost: $0.3M per facility, general fund
    b. **Solution - policy change:** Eligibility should be expanded beyond those on Medi-Cal.
    a. **Solution - data:** The Task Force should request specific data on the number and demographics of people brought to the CARES Navigation Center by each agency. This can help understand and address the disproportionate incarceration of African Americans and under-use of this service by some agencies.

15. **[Intercepts -1 & 4 - $25.5M Budget Investment] Double the number of people served by Full Service Partnerships, which are wrap-around services for people with severe mental illness and/or substance use disorders, *with a plan to further expand FSPs to meet the need*.** Estimated cost: $25.5M, general fund.

    The US Department of Justice, in its April 2021 issuance of findings against Alameda County, cited a need for Full Service Partnerships (FSPs) of 4,000 to 6,000 people in Alameda County, with a funded capacity for only 850. Since then, the County has added capacity, up to 1,005 FSP slots, but this falls far short of the need.

    Our recommended investment would only meet half the number of FSP slots recommended by the Behavioral Health Collaborative[4] and the need identified in the US

---

[4] The Behavioral Health Collaborative in March 2022 recommended a more than four-fold increase in Alameda County's FSP capacity to ensure the community is aware of the service, referrals are being appropriately made, and there are no wait lists, and to serve targeted priority populations, particularly transitional-age youth with a history of trauma or aggression, African American males, the LGBTQ population, the homeless population, and those struggling with substance use disorders.

Dept of Justice's litigation, but it would represent a start. These services will prevent longer hospital stays and recycling through institutionalization, and thus save inpatient beds for severely disabled individuals, quickly pay for themselves, generate significant savings in the high cost of locked facilities, and improve participants' quality of life.

The BOS unanimously agreed in June 2022 to ask the CAO to identify funding sources for expanding FSPs, but did not specify an expansion amount; the CAO is currently expected to report to the Board in March 2023.

16. **[Intercept 0 - $2M Budget Investment] Ensure fair compensation for mobile behavioral health crisis team (CATT and MCT) staff, and expand 24/7 city and county crisis response teams** to all parts of Alameda county; and to address the full range of mental health crises, substance use, and other nonviolent disputes that otherwise would only be addressed by law enforcement. Several reports indicate that persons who staff the County's crisis response teams are not paid adequately and work in unsustainable conditions.
    a. This complements $6.6M proposed in ACBH Forensic Plan to expand crisis response teams
    b. Estimated cost: $2M, general fund.

17. **[Intercept 0 - $3.9M Budget Investment] Re-acquire 27 subacute beds available at Villa Fairmont** that are currently leased out to neighboring counties or Kaiser. Estimated cost: $3.9M, general fund.
While some Care First Coalition members share the Department of Justice's critique of Alameda County's dependence on institutional care for people with serious mental illness, most Coalition members support investment in additional hospital beds for acute and subacute care.

The BOS unanimously agreed in June 2022 to ask the CAO to identify funding sources for purchasing back the leased Villa Fairmont beds; the CAO is currently expected to report to the Board in March 2023.

Signed:
   All of Us Or None
   American Friends Service Committee
   Asian Americans Advancing Justice / Asian Law Caucus*
   Behavioral Health Collaborative
   Berkeley Friends Racial Justice Action Team
   Community Health Center Network /Alameda Health Consortium
   Congregation Beth El
   East Bay Housing Organization
   East Bay Supportive Housing Collaborative
   Families Advocating for the Seriously Mentally Ill

Exhibit M-3

5:18-cv-07677-NC

Interfaith Coalition for Justice in our Jails
National Alliance on Mental Illness - Alameda County*
Restore Oakland

Also supporting these recommendations:
National Alliance on Mental Illness - East Bay

*Indicates organization is still considering the Coalition recommendations.

(8.)



**ROSEN BIEN
GALVAN & GRUNFELD LLP**

P.O. Box 390
San Francisco, California 94104-0390
T: (415) 433-6830 ▪ F: (415) 433-7104
www.rbgg.com

Kara J. Janssen
Email: kjanssen@rbgg.com

March 16, 2023

VIA ELECTRONIC MAIL ONLY

Gregory B. Thomas
Temitayo O. Peters
Burke, Williams & Sorenson LLP
1901 Harrison Street, Suite 900
Oakland, CA 94612-3501
gthomas@bwslaw.com
tpeters@bwslaw.com

Paul B. Mello
Samantha D. Wolff
Hanson Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
pmello@hansonbridgett.com
swolff@hansonbridgett.com

Re:   **Individual Advocacy re: Keith Washington (UME239)**
      *Babu et al. v. County of Alameda et al.*,
      N.D. Cal. No. 5:18-cv-07677-NC
      Our File No. 1378-03

Dear Counsel:

We write regarding class member Keith Washington (UME239).

Mr. Washington recently contacted us and said that on January 26, 2023, at 11:49am, Deputy Clinton (Badge #2608) retaliated against Mr. Washington by informing him that he would be moved to a "shit pod" if he continued to file grievances and communicate with our firm. On February 1, 2023, at approximately 3pm, Mr. Washington was moved to C-Pod in Housing Unit 1, which he reports smelled of fecal matter and urine. When Mr. Washington spoke to Sergeant Martinez about this move, he reported that staff members have typically placed incarcerated people with a history of violent assaults in C-Pod, as a form of punishment for their actions. Mr. Washington filed a grievance (Grievance #230757762) regarding this staff misconduct, and Mr. Washington reports that this grievance led Deputy Clinton to admit that he intentionally placed him in this housing unit as a form of retaliation. Sergeant Martinez attempted to resolve this issue by moving Mr. Washington to E-Pod in Housing Unit 1, which Mr. Washington reports to be much cleaner that C-Pod. This resolution, however, did not address Deputy Clinton's misconduct and ongoing retaliation against Mr. Washington. As you know, the Consent Decree requires that the Jail considers "the efficacy of disciplinary measures versus alternative measures that are designed to effectuate change

[4251475.1]

1.)

March 16, 2023
Page 2

in behavior through clinical intervention, and the impact of disciplinary measures on the health and well-being of [incarcerated people] with disabilities." See Section at III. E. 3 at page 27. **Class Counsel requests that Defendants investigate the reported retaliatory actions by Deputy Clinton.**

Moreover, Mr. Washington reports that on February 24, 2023, between 11am and 12pm, Deputy Clinton told Mr. Washington that he would only give Mr. Washington two hours of pod time per day and that the amount of pod time Mr. Washington can receive is up to his discretion. Mr. Washington filed a grievance (Grievance #233439392) regarding this issue, and the Jail cited Detention and Corrections Policy and Procedure 9.10 to justify the amount of pod time given to Mr. Washington. This policy, however, is outdated, and goes against the Consent Decree. As of June 7, 2022, the Consent Decree requires that individuals in General Population housed in celled settings "shall be offered at least **twenty-eight (28)** hours per week of out-of-cell time." *Id.* at 19:25-20:1. Individuals placed in Restrictive Housing, Recreate Alone Status ("Step 1") must be offered at least **ten (10)** hours per week of out-of-cell time, and individuals placed in Restrictive Housing, Recreate Together Status ("Step 2") shall be offered at least **seventeen (17)** hours per week of out of cell time. *See* Section at III. D. 1 at page 20. **Please ensure that the Jail abides by the out-of-cell time requirements listed in the Consent Decree and ensures staff members are aware of, and held accountable to, these requirements.**

Relatedly, the Consent Decree states that incarcerated people may be placed in Restrictive Housing only if they meet one of the following criteria, "(1) recent assaultive behavior resulting in serious injury; (2) recent assaultive behavior involving use of a weapon; (3) repeated patterns of assaultive behavior (such as gassing); (4) where they pose a high escape risk; or (5) repeatedly threatening to assault other incarcerated persons or Staff." *See* Section III.C.vi. Our understanding is that Mr. Washington does not fall into any of these criteria. Instead, Mr. Washington requires Restrictive Housing because the Jail is unable to house him safely in any other location. Please advise as to **Mr. Washington's classification status and whether he is placed in the Restrictive Housing program or being held in these units for other reasons, in which Mr. Washington should be offered at least twenty-eight (28) hours per week of out-of-cell time.**

Thank you for your attention to this important matter.

[4251475.1]

2)

March 16, 2023
Page 3

                    Sincerely,

                    ROSEN BIEN
                    GALVAN & GRUNFELD LLP

                    */s/ Kara J. Janssen*

          By:  Kara J. Janssen
                Senior Counsel

KJJ:mr

[4251475.1]

3.)