ERNEST GALVAN – 196065
KARA J. JANSSEN – 274762
AMY XU – 330707
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:  (415) 433-6830
Facsimile:  (415) 433-7104
Email:   egalvan@rbgg.com
         kjanssen@rbgg.com
         axu@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ASHOK BABU, ROBERT BELL, IBRAHIM KEEGAN-HORNESBY, DEMAREA JOHNSON, BRANDON JONES, STEPHANIE NAVARRO, ROBERTO SERRANO, and ALEXANDER WASHINGTON on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; GREGORY J. AHERN in his official capacity as Sheriff of the Alameda County Sheriff's Office; CAROL BURTON in her official capacity as Interim Director of the Alameda County Behavioral Health Care Services Agency; and DOES 1 to 20, inclusive,,<br><br>Defendants. | Case No. 5:18-CV-07677<br><br>**PLAINTIFFS' RESPONSE TO MOTION ENFORCING A JUDGEMENT FOR SPECIFIC ACT – FED. R. CIV. P.70**<br><br>Judge: Hon. Nathanael Cousins |

**INTRODUCTION**

Plaintiffs' Counsel submits this response pursuant to the Court's March 7, 2024 Order (ECF. No. 531) and in response to recent filings by class member R. Robertson at ECF No. 530.

In his filing, Mr. Robertson raises concerns on behalf of the disability subclass regarding equal access to (1) the Jail's inmate worker program, in particular for individuals housed in Housing Unit 21 West and Housing Unit 6 West, (2) the yard including the big and quasi-yards, and (3) equal access to educational programming including G.E.D. and English as a Second Language classes.  ECF No. 530 at 4-5.

**I.      CONSENT DECREE REQUIREMENTS**

The Consent Decree requires that Defendants provide "individuals with Psychiatric Disabilities [with] equal access, as compared to non-disabled individuals, to all programs, activities, and services . . . consistent with their classification and for which they are qualified," including vocational and work programs.  ECF No. 266-1 at 67.  This includes providing "reasonable modification and accommodations" to ensure equal access.  *Id.* at 63.  Further, the Consent Decree provides that "Behavioral Health Clients shall have equal access and opportunity to participate in . . . work opportunities . . . for which they are qualified."  *Id.* at 32.

The ADA components of the Consent Decree are monitored by Sabot Consulting ("ADA Expert") and custodial components are monitored by Terri McDonald ("Custodial Expert")

**II.     RELEVANT MONITORING REPORT FINDINGS**

**A.     Access to Work Programs**

In the most recent ADA report, dated October 25, 2023, the ADA Expert found the following in regard to work assignments:

> The ADA Joint Expert acknowledged that currently, based on housing assignment, some individuals are not eligible to work or are limited to work assignments such as housing unit workers. Some of the individuals interviewed made the following related comments or complaints; not eligible

to work; not eligible to work except for a unit worker; not interested in being a unit worker; have tried to be a unit worker but have always been denied; and not sure how to get a job. The ADA Expert did reconcile the ACSO Work Crew Assignment List against a recent disability tracking list. In the past, there was only one (1) individual from the ADA Coordinator's tracking list that was assigned to a work position (unit worker). The ADA Joint Expert is hopeful that with the new comprehensive screening/evaluation/testing process and soon-to-be expanded tracking system for all psychiatric disabilities, more qualified individuals coded as SMI, IDI, and LD will be provided more opportunities for job consideration and placement equivalent to nondisabled persons (in accordance with mental health and other considerations).

As previously detailed in this report, Re-Entry and Support Services/Programs staff interviewed acknowledged there are no job descriptions or documents listing essential functions for incarcerated person positions at SRJ (except for possibly a couple of assignments). Staff continued to state they would accommodate any individuals that had reasonable accommodation needs on the worksite if they were aware of their required accommodations.

ADA Third Monitoring Report at 65.[1]  The ADA Expert then made multiple recommendations including that ACSO "must develop job descriptions for all incarcerated person job assignments with listed essential job functions for each position" and "must have a process in place that allows for incarcerated persons with psychiatric, intellectual/developmental, and learning disabilities to receive reasonable accommodations for their disability while on the job."

The Custodial Expert also addressed this issue in their Third Report, noting that while the County has made "good strides in ensuring equal access to programs and there is much to build upon" and recommended that the County update the associated policies specifically to address identification and expansion of job opportunities for incarcerated

---

[1] Available at https://rbgg.com/wp-content/uploads/Babu-v.-Ahern-ADA-Final-Third-Monitors-Report-Non-Confidential.pdf. Class Counsel represents there are no differences in this any of the cited sections between the non-confidential or confidential reports.

person on the behavioral health caseload who are approved by their clinician to work."
Third Custodial Monitoring Report, pg. 27.[2]

### B.     Access to Programming

In the Custodial Expert's most recent report, dated October 25, 2023, the Custodial Expert found the County had not yet updated the policies associated with this provision but that:

> Despite not having updated the policies, the County continues to afford behavioral health incarcerated persons access to programming available in their assigned housing units, at the Sandy Turner Education Center, in the Chapel, in the Transition Center and through distance learning. The County continues to track daily attendance to programming and identifies the behavioral health population on the monthly tracking reports. It is hopeful that the County can ultimately rely on reports generated from the Guardian RFID system to monitoring but if that is not possible, it is anticipated that the Guardian RFID system can be used to confirm attendance in random samples during the next rating period, but the housing location of the participants needs to be included in the monthly program reports.

Third Custodial Monitoring Report, pg 26.  The Custodial Expert then reviewed data regarding programming for the period of January 2023 to June 2023 and found:

> Based on this review, it appears that 48 percent of the program day slots occurring off of the housing unit were filled by incarcerated persons receiving behavioral health services. It also appears that 42 percent of all program slots have been occupied by incarcerated persons on the behavioral health caseload. The one area that warrants additional review is the Transition Center, where only behavioral health incarcerated persons utilized 25 percent of the slots. Additionally, it is important that for future reports and to demonstrate substantial compliance that the County, Joint Experts and Counsel all trust that the monthly reports are accurate.

Third Custodial Monitoring Report, pg. 27.

---

[2] Available at https://rbgg.com/wp-content/uploads/Babu-v.-Ahern-Final-Non-Confidential-Report-McDonald.pdf. Class Counsel represents there are no differences in this any of the cited sections between the non-confidential or confidential reports.

The ADA Expert also address this topic in their most recent report and found that while "reportedly all incarcerated persons are eligible to take distance learning courses and most classes have now re-opened (post-COVID-19)" there are significant issues including that "Staff (teachers) continue to report that they do not receive an ADA tracking list (from ACSO or AFBH)." The ADA Expert further finds:

> There is also conflicting information as to whether individuals identified as BHI or mentally ill incarcerated persons are assigned to classroom instruction. Staff also indicated they do not currently have any individuals identified as IDI (or LD) assigned to education classes, and they have never had any IDI individuals assigned (though there are no exclusionary criteria based on disability alone). Staff have previously acknowledged that an individual identified as IDI has been enrolled in education classes previously. Education staff are not made aware (by ACSO, AFBH, or Wellpath) of any disabilities or accommodation needs. To the extent teachers become aware of any accommodation needs, they reportedly provide the accommodations.

Third ADA Monitoring Report, pg. 62.

### C. Access to Yard

The ADA Expert also monitors access to the yard for subclass members. In the most recent report, the ADA Expert found that while some individuals reported being able to access the quasi-yard and one individual had been able to access the larger yard, "[m]ost individuals interviewed stated they were not eligible and/or were not offered main yard/big yard." Third ADA Monitoring Report, pg. 59. Critically, the ADA Expert noted that he could not compare access to yard for those with disabilities "against other individuals without disabilities or the same disabilities" and recommended the Jail "continue to track out-of-cell time, including yard and pod time to ensure there is no disparity between outdoor and indoor recreation time offered to psychiatric, intellectually/developmentally disabled incarcerated persons and other individuals in relation to the assigned security levels and housing units." *Id*, pg. 60.

## III. REQUESTED RELIEF

The Joint Neutral Experts should further investigate Mr. Robertson's allegations to determine if individuals with psychiatric disabilities are being denied equal access to Five Keys Classes and Sandy Turner educational opportunities, work opportunities, and time in the outside and quasi-yards. Their current findings indicate that Defendants have not provided individuals with psychiatric disabilities equal access to work assignments and educational opportunities, and that Defendants have significant work to complete before reaching substantial compliance in these areas.

Class Counsel join Mr. Robertson's concerns regarding equal access to programming and request that the ADA Joint Expert (Sabot Consulting) and the Custodial Expert (Terri McDonald) review the (1) current distribution of subclass members serving as workers, whether as pod workers or in other jobs; (2) current distribution of subclass members enrolled in educational programming including classes offered at Sandy Turner specifically; and (3) current distribution of subclass members, or housing units containing subclass members, and whether they are offered yard in compliance with the Consent Decree. The Joint Experts last toured in January 2024 and the Parties are currently reviewing the draft reports from that tour with the final reports expected to be released publicly sometime in April of 2024. Class Counsel request an opportunity to further address this issue, and any improvements made by Defendants in response, before the Court following the additional review detailed above and completion of the most recent round of Joint Expert reports.

DATED: March 18, 2024   Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ Kara J. Janssen
     Kara J. Janssen

Attorneys for Plaintiffs